1   Reed R. Kathrein (139304)
    Lucas E. Gilmore (250893)
2   HAGENS BERMAN SOBOL SHAPIRO LLP
    715 Hearst Ave., Suite 202
3   Berkeley, CA  94710
    Telephone: (510) 725-3000
4   Facsimile:  (510) 725-3001
    reed@hbsslaw.com
5   lucasg@hbsslaw.com

6   *Attorneys for Plaintiff Kirk Himmelberg*

7   [Additional counsel on signature page]

8
                    UNITED STATES DISTRICT COURT
9
                   NORTHERN DISTRICT OF CALIFORNIA
10

11  KIRK HIMMELBERG, Individually and On          No.
    Behalf Of All Other Similarly Situated,
12                                                 **CLASS ACTION COMPLAINT
                                Plaintiff,          FOR VIOLATIONS OF THE
13                                                  FEDERAL SECURITIES LAWS**

14          v.                                      <u>CLASS ACTION</u>

15  VAXART, INC., CEZAR ANDREI FLOROIU,            DEMAND FOR JURY TRIAL
    WOUTER W. LATOUR, M.D., STEVEN J.
16  BOYD, KEITH MAHER, M.D., and
    ARMISTICE CAPITAL LLC,
17
                                Defendants.
18

19

20

21

22

23

24

25

26

27

28

010941-11/1334874 V1



715 HEARST AVE., SUITE 202, BERKELEY, CA  94710
(510) 725-3000 • FAX (510) 725-3001

1

**TABLE OF CONTENTS**

2
**Page**

3
I. INTRODUCTION ............................................................................................1

4
II. JURISDICTION AND VENUE ......................................................................3

5
III. PARTIES .........................................................................................................4

6
IV. SUBSTANTIVE ALLEGATIONS .................................................................5

7
    A. Background........................................................................................5

8
    B. Defendants' Materially False and Misleading Statements ...............6

9
    C. The Truth Emerges ...........................................................................8

10
V. CLASS ALLEGATIONS ..............................................................................11

11
VI. UNDISCLOSED ADVERSE FACTS ...........................................................13

12
VII. LOSS CAUSATION .....................................................................................14

13
VIII. SCIENTER ALLEGATIONS .......................................................................15

14
IX. THE PRESUMPTION OF RELIANCE .......................................................15

15
X. NO SAFE HARBOR .....................................................................................16

16
XI. CLAIMS AGAINST DEFENDANTS ..........................................................17

17
COUNT I VIOLATION OF SECTION 10(B) OF THE EXCHANGE ACT AND SEC
    RULE 10B-5 PROMULGATED THEREUNDER (AGAINST ALL
18
    DEFENDANTS)................................................................................................17

19
COUNT II FOR VIOLATIONS OF SECTION 20(A) OF THE EXCHANGE ACT
    (AGAINST THE CONTROL DEFENDANTS AND EXECUTIVE
20
    DEFENDANTS)................................................................................................19

21
XII. PRAYER FOR RELIEF ...............................................................................20

22
XIII. JURY DEMAND...........................................................................................21

23

24

25

26

27

28



715 HEARST AVE., SUITE 202, BERKELEY, CA  94710
(510) 725-3000 • FAX (510) 725-3001

Plaintiff Kirk Himmelberg, by and through his undersigned counsel, brings this action on behalf of himself and others similarly situated against Defendants. Plaintiff alleges the following based upon personal knowledge as to himself and his own acts and upon information and belief as to all other matters. Plaintiff's information and belief is based on the ongoing independent investigation of its undersigned counsel, which included a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Vaxart, Inc. ("Vaxart" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.

## I.     INTRODUCTION

1.     This is a securities class action on behalf of a class consisting of all other persons or entities who purchased or otherwise acquired securities of Vaxart, Inc. ("Vaxart" or the "Company") during the period from June 25, 2020 to July 25, 2020, inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.     The action arises from Defendants' fraudulent scheme to profit from artificially inflating the Company's stock price by announcing false and misleading information concerning Vaxart's oral COVID-19 vaccine candidate, including its purported involvement in "Operation Warp Speed" ("OWS"), a program which commits the federal government to massive funding for the development of COVID-19 vaccines.

3.     Founded in March 2004 and headquartered in South San Francisco, California, Vaxart is a clinical-stage company purportedly engaged in the discovery and development of vaccines for a variety of diseases that would be administered orally, rather than by injection. To date, Vaxart has never successfully developed a vaccine. Entering 2020, Vaxart had only 14-full time employees and a market capitalization of $17 million.

CLASS ACTION COMPLAINT - 1
No.
010941-11/1334874 V1



4.      In early 2020, the Company began working on a vaccine for COVID-19. Throughout 2020, Vaxart has periodically announced positive news regarding these efforts. During that time, Vaxart's stock price has dramatically increased. The Company's stock traded at just $0.35 per share at the beginning of 2020, but reached $2.92 by close of the market on June 2, 2020.

5.      Armistice Capital LLC ("Armistice") is a long-short equity hedge fund focused on the health care and consumer sectors and long-time major shareholder of Vaxart. As of June 3, 2020, Armistice held stock and warrants equaling approximately 30% of the outstanding stock. In addition, Armistice's Managing Member and its founder, principal and owner, Stephen J. Boyd, as well as Armistice's Managing Director, Keith Maher, M.D., serve as Directors on Vaxart's Board of Directors.

6.      On June 8, 2020, in furtherance of Defendants' scheme, Defendants amended Armistice's existing warrant agreements, allowing Armistice to potentially exercise its warrants on approximately 21 million shares of Vaxart immediately, which it could not have done under the original warrant agreements. Over the next week, Defendants also issued millions of dollars in favorable stock options to Vaxart's most senior executives.

7.      On June 25, 2020, Vaxart announced that it had entered into a Memorandum of Understanding with Attwill Medical Solutions Sterilflow, LP to enable production of a billion or more tablet COVID-19 vaccine does annually. In the press release, Vaxart's Chief Executive Officer, Defendant Cezar Andrei Floroiu claimed the deal would "enable the large scale manufacturing and ultimate supply of our COVID-19 vaccine for the US, Europe and other countries in need." The announcement was favorably received, with Vaxart's stock price nearly doubling from opening at $3.61 per share to closing at $6.26 on June 25, 2020.

8.      The next day, on June 26, 2020, Vaxart issued a second press release entitled "Vaxart's COVID-19 Vaccine Selected for the U.S. Government's Operation Warp Speed," claiming its vaccine has been selected to participate in a non-human challenge study, organized and funded by OWS. This announcement sent the price of Vaxart shares rocketing higher. In the press release, Vaxart's Chief Executive Officer, Defendant Cezar Andrei Floroiu said, "We are very pleased to be one of the few companies selected by Operation Warp Speed, and that ours is the only oral vaccine

CLASS ACTION COMPLAINT - 2
No.
010941-11/1334874 V1

HAGENS BERMAN

715 HEARST AVE., SUITE 202, BERKELEY, CA 94710
(510) 725-3000 • FAX (510) 725-3001

being evaluated." Cezar Andrei Floroiu added, "[O]ur vaccine is a room temperature-stable tablet, an enormous logistical advantage in large vaccination campaigns." As a result, the stock price jumped from $6.26 to $8.04 after opening at $11.49 with a high of $14.30.

9.     Taking full advantage of the amendments to the warrant agreements that Vaxart had granted on June 8, 2020, Armistice exercised all its 20.8 million warrants. Then, between June 26th and June 29th, during only two trading days (Friday, June 26 and Monday, June 29, 2020), Armistice sold 27.6 million Vaxart shares, reducing its overall beneficial ownership in Vaxart from 29% to 0.2%, reaping profits of approximately $200 million.

10.    But on July 25, 2020, details emerged revealing Defendants' deception concerning their pump and dump scheme. In particular, on July 25, 2020, *The New York Times* published an article entitled, "Corporate Insiders Pocket $1 Billion in Rush for Coronavirus Vaccine," covering suspiciously timed stock bets that had generated significant profits for senior executives and board members at companies developing vaccines and treatments. Vaxart was featured prominently in the article, and it clarified "Vaxart is not among the companies selected to receive significant financial support from Warp Speed." In response to this news, the price of Vaxart shares dropped sharply lower on July 27, 2020 from $12.29 to $11.16.

11.    By this action, Plaintiff seeks redress for losses he and other Vaxart investors suffered after purchasing common stock during the Class Period at artificially inflated prices.

## II.     JURISDICTION AND VENUE

12.    This action arises under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a), and 78t-1(a)), and Rule 10b-5 (17 C.F.R. § 240.10b-5) promulgated under the Exchange Act.

13.    This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

14.    Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b) and (c). At all relevant times, Vaxart conducted business in this District and maintained its headquarters in this District at 385 Oyster Point Boulevard, Suite 9A, South San Francisco, California 94080. In addition, many of the acts charged herein, including the

CLASS ACTION COMPLAINT - 3
No.

HAGENS BERMAN
715 HEARST AVE., SUITE 202, BERKELEY, CA 94710
(510) 725-3000 • FAX (510) 725-3001

preparation and dissemination of materially false and misleading information, occurred in substantial part in this District.

15.     In connection with the acts alleged herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the U.S. mails, interstate telephone communications, and the facilities of national securities exchanges.

### III.     PARTIES

16.     Plaintiff Kirk Himmelberg ("Mr. Himmelberg" or "Plaintiff"), as set forth in the certification filed with this Complaint, purchased Vaxart common stock during the Class Period and was damaged by Defendants' conduct alleged herein.

17.     Defendant Vaxart is a corporation organized under Delaware law and headquartered at 385 Oyster Point Boulevard, Suite 9A, South San Francisco, California 94080. Vaxart's stock trades on the NASDAQ, which is an efficient market, under the symbol "VXRT."

18.     Defendant Cezar Andrei Floroiu ("Floroiu") has served as a director of Vaxart since April 2020. In June 2020, Vaxart appointed Floroiu as its new Chief Executive Officer.

19.     Defendant Wouter W. Latour, M.D. ("Latour") served as Vaxart's President and Chief Executive Officer from February 2018 to June 2020. He has also served as a member of its Board of Directors from February 2018 to the present. Latour was appointed as Chairman of Vaxart's Board of Directors in December 2019 and continues to serve in that capacity. Before going public, Latour held various executive positions at Vaxart's predecessor entity, including President and Chief Executive Officer and sat on its Board.

20.     Defendant Steven J. Boyd ("Boyd") has served as a director of Vaxart since October 2019. Since 2012, Boyd has also served as the Chief Investment Officer of Defendant Armistice. Boyd is Armistice's Managing Member and its founder, principal and owner.

21.     Defendant Keith Maher, M.D. ("Maher") has served as a director of Vaxart since October 2019. He is a member of Vaxart's Compensation Committee. He has also served as Armistice's Managing Director since 2019.

22.     Defendants Boyd and Maher are referred to as the "Control Defendants".

CLASS ACTION COMPLAINT - 4
No.
010941-11/1334874 V1

HAGENS BERMAN

715 HEARST AVE., SUITE 202, BERKELEY, CA 94710
(510) 725-3000 • FAX (510) 725-3001

23. Defendants Floroiu and Latour are collectively referred to as the "Executive Defendants."

24. Defendant Armistice Capital LLC ("Armistice") is a hedge fund incorporated in Delaware. At relevant times hereto, it conducts and has conducted business in California in connection with its ownership of over 30% of the shares of Vaxart and its representation on and participation in the meetings of and actions of the Board of Directors of Vaxart by two of its principals, Defendants Boyd and Maher.

25. The Control Defendants and Executive Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Vaxart's reports to the SEC, as well as its press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market. Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance, and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public, and that the positive representations which were being made were then materially false and/or misleading. The Control Defendants and Executive Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information and were the result of the collective actions of the Control Defendants and Executive Defendants.

## IV. SUBSTANTIVE ALLEGATIONS

### A. Background

26. At the end of 2019, Vaxart was a company with 14 employees. It has never successfully developed a drug or vaccine. With the COVID-19 pandemic, and the rush of the government to provide funding for and contracts to companies with promising vaccines and cures, Defendants saw an opportunity to cash in on the scientific naivety of investors and politicians.

27. Throughout early 2020, Defendants made overly optimistic statements about their work on a vaccine for COVID-19, and watched their stock increase from just $0.35 at the beginning

CLASS ACTION COMPLAINT - 5
No.
010941-11/1334874 V1

of 2020 to above $3.19 in May 2020 after the federal government announced Operation Warp Speed. OWS promised to commit massive amounts of funding to companies developing COVID-19 vaccines.

28.     Defendants saw the OWS announcement to further inflate their stock price with misleading positive statements with the intent to sell shares immediately afterwards to make a profit . . . a classic "pump and dump."

29.     On June 3, 2020, it was publicly reported that the federal government would provide significant financing to seven companies selected for Operation Warp Speed. The identity of five of those companies was disclosed at that time, but two were not. Vaxart was not one of the identified Operation Warp Speed companies.

30.     On June 8, 2020, in furtherance of Defendants' scheme, Defendants amended Armistice's existing warrant agreements, allowing Armistice to potentially exercise all of its warrants immediately, which it could not have done under the original warrant agreements. Over the next week, Defendants also issued millions of dollars in favorable stock options to Vaxart's most senior executives.

**B.     Defendants' Materially False and Misleading Statements**

31.     On June 25, 2020 Defendants issued a press release, entitled "**Vaxart, Inc. Signs Memorandum of Understanding with Attwill Medical Solutions Sterilflow, LP**, *Enabling Production of A Billion or More COVID-19 Vaccine Doses Per Year Through Large Scale Lyophilization, Tableting and Coating,* which misleadingly suggested the Vaxart was close to production of a vaccine, stating:

> Vaxart, Inc. ("Vaxart" or the "Company"), a clinical-stage biotechnology company developing oral vaccines that are administered by tablet rather than by injection, announced today that it signed a Memorandum of Understanding with Attwill Medical Solutions Sterilflow, LP (AMS) affirming the parties' intent to establish AMS as a resource for lyophilization development and large scale manufacturing including tableting and enteric coating for Vaxart's oral COVID-19 vaccine. AMS will be assigning dedicated resources and equipment for the scale up and commercial production of the vaccine upon entering a formal agreement.
>
> "We believe AMS' experience coupled with its ability to manufacture a billion or more doses per year would be a beneficial addition to our



group of CDMO partners and enable the large scale manufacturing and ultimate supply of our COVID-19 vaccine for the US, Europe and other countries in need," said Andrei Floroiu, CEO of Vaxart Inc. "We believe our oral vaccines, generated on our proven platform, have the potential to offer superior protection against airborne viruses such as SARS-CoV-2 by triggering both mucosal and systemic immunity while being administered by a room temperature-stable tablet, an enormous logistical advantage in large vaccination campaigns."

On this news Vaxart's stock price doubled from $3.19 to $6.26 per share.

32.     On June 26, 2020 Defendants issued a press release misleadingly implying that the federal government's Operation Warp Speed had accepted Vaxart's supposed vaccine as part of its program. The press release, entitled "**Vaxart's Covid-19 Vaccine Selected for the U.S. Government's Operation Warp Speed**, *OWS to Test First Oral COVID-19 Vaccine in Non-Human Primates*, stated:

Vaxart, Inc., a clinical-stage biotechnology company developing oral vaccines that are administered by tablet rather than by injection, today announced that its oral COVID-19 vaccine has been selected to participate in a non-human primate (NHP) challenge study, organized and funded by Operation Warp Speed, a new national program aiming to provide substantial quantities of safe, effective vaccine for Americans by January 2021.

The study is designed to demonstrate the efficacy of Vaxart's oral COVID-19 vaccine candidate.

"We are very pleased to be one of the few companies selected by Operation Warp Speed, and that ours is the only oral vaccine being evaluated. SARS-CoV-2, the coronavirus that causes COVID-19, is primarily transmitted by viral particles that enter through the mucosa – nose, mouth or eyes – strongly suggesting that mucosal immunity could serve as the first line of defense," said Andrei Floroiu, Chief Executive Officer of Vaxart Inc. "In addition, our vaccine is a room temperature-stable tablet, an enormous logistical advantage in large vaccination campaigns."

On this news, Vaxart's stock price jumped from $6.26 to $8.04 per share.

33.     The statements referenced in ¶¶ 31-32 were materially false and/or misleading because they misrepresented and failed to disclose material information pertaining to the Company's business and operations, which were known to Defendants or recklessly disregarded by them. Specifically, Vaxart exaggerated the prospects of its COVID-19 vaccine candidate, including its purported role or involvement in OWS. Contrary to Defendants' statements, Vaxart's COVID-19 vaccine candidate had no reasonable prospect for mass production and marketing and was not among

CLASS ACTION COMPLAINT - 7
No.
010941-11/1334874 V1

HAGENS BERMAN
715 HEARST AVE., SUITE 202, BERKELEY, CA 94710
(510) 725-3000 • FAX (510) 725-3001

the companies selected to receive significant financial support from OWS to produce hundreds of millions of vaccine doses. Instead, Vaxart's COVID-19 vaccine candidate was merely selected to participate in preliminary U.S. government studies to determine potential areas for possible OWS partnership and support. At the time of making the statements, those studies were ongoing, and no determination had been made.

34.     Immediately following Vaxart's press release, Defendant Armistice cashed out of Vaxart. Taking full advantage of the amendments to the warrant agreements Defendants had granted on June 8, 2020, Armistice exercised its warrants to buy nearly 21 million Vaxart shares for either 30 cents or $1.10 a share. Then, between June 26th and June 29th, during only two trading days (Friday, June 26 and Monday, June 29, 2020), Armistice sold 27.6 million Vaxart shares, reducing its overall beneficial ownership in Vaxart from 29% to 0.2%, reaping profits of approximately $200 million.

35.     Vaxart's false statements also positioned Defendant Floroiu and other Vaxart insiders for big pay-days as stock options granted in early June had already vested and accrued in value. For example, when Defendant Floroiu became chief executive in mid-June, he received stock options that were worth about $4.3 million. A month later, those options were worth more than $28 million.

## C.     The Truth Emerges

36.     On July 25, 2020, the New York Times published an article revealing the misleading nature of Defendants' statements. In fact, Vaxart was not one of the companies selected to receive financial support from Operation Warp Speed to produce hundreds of millions of vaccine doses. The company had never developed a vaccine, and its main funder profited by over $200 million through undisclosed stock options granted just prior to the announcement. In significant part the article read:

> Corporate Insiders Pocket $1 Billion in Rush for Coronavirus Vaccine
>
> Well-timed stock bets have generated big profits for senior executives and board members at companies developing vaccines and treatments.
>
> On June 26, a small South San Francisco company called Vaxart made a surprise announcement: A coronavirus vaccine it was working on had been selected by the U.S. government to be part of Operation Warp Speed, the flagship federal initiative to quickly develop drugs to combat Covid-19.
>
> Vaxart's shares soared. Company insiders, who weeks earlier had received stock options worth a few million dollars, saw the value of

CLASS ACTION COMPLAINT - 8
No.
010941-11/1334874 V1

HB  HAGENS BERMAN

715 HEARST AVE., SUITE 202, BERKELEY, CA  94710
(510) 725-3000 • FAX (510) 725-3001

those awards increase sixfold. And a hedge fund that partly controlled the company walked away with more than $200 million in instant profits.

The race is on to develop a coronavirus vaccine, and some companies and investors are betting that the winners stand to earn vast profits from selling hundreds of millions – or even billions – of doses to a desperate public.

Across the pharmaceutical and medical industries, senior executives and board members are capitalizing on that dynamic.

They are making millions of dollars after announcing positive developments, including support from the government, in their efforts to fight Covid-19. After such announcements, insiders from at least 11 companies – most of them smaller firms whose fortunes often hinge on the success or failure of a single drug – have sold shares worth well over $1 billion since March, according to figures compiled for The New York Times by Equilar, a data provider.

In some cases, company insiders are profiting from regularly scheduled compensation or automatic stock trades. But in other situations, senior officials appear to be pouncing on opportunities to cash out while their stock prices are sky high. And some companies have awarded stock options to executives shortly before market-moving announcements about their vaccine progress.

The sudden windfalls highlight the powerful financial incentives for company officials to generate positive headlines in the race for coronavirus vaccines and treatments, even if the drugs might never pan out.

Some companies are attracting government scrutiny for potentially using their associations with Operation Warp Speed as marketing ploys.

For example, the headline on Vaxart's news release declared: "Vaxart's Covid-19 Vaccine Selected for the U.S. Government's Operation Warp Speed." But the reality is more complex.

Vaxart's vaccine candidate was included in a trial on primates that a federal agency was organizing in conjunction with Operation Warp Speed. But Vaxart is not among the companies selected to receive significant financial support from Warp Speed to produce hundreds of millions of vaccine doses.

"The U.S. Department of Health and Human Services has entered into funding agreements with certain vaccine manufacturers, and we are negotiating with others. Neither is the case with Vaxart," said Michael R. Caputo, the department's assistant secretary for public affairs. "Vaxart's vaccine candidate was selected to participate in preliminary U.S. government studies to determine potential areas for possible Operation Warp Speed partnership and support. At this time, those studies are ongoing, and no determinations have been made."

CLASS ACTION COMPLAINT - 9
No.
010941-11/1334874 V1

HAGENS BERMAN

715 HEARST AVE., SUITE 202, BERKELEY, CA 94710
(510) 725-3000 • FAX (510) 725-3001

Some officials at the Department of Health and Human Services have grown concerned about whether companies including Vaxart are trying to inflate their stock prices by exaggerating their roles in Warp Speed, a senior Trump administration official said. The department has relayed those concerns to the Securities and Exchange Commission, said the official, who spoke on the condition of anonymity.

* * *

Vaxart, though, is where the most money was made the fastest.

At the start of the year, its shares were around 35 cents. Then in late January, Vaxart began working on an orally administered coronavirus vaccine, and its shares started rising.

Vaxart's largest shareholder was a New York hedge fund, Armistice Capital, which last year acquired nearly two-thirds of the company's shares. Two Armistice executives, including the hedge fund's founder, Steven Boyd, joined Vaxart's board of directors. The hedge fund also purchased rights, known as warrants, to buy 21 million more Vaxart shares at some point in the future for as little as 30 cents each.

Vaxart has never brought a vaccine to market. It has just 15 employees. But throughout the spring, Vaxart announced positive preliminary data for its vaccine, along with a partnership with a company that could manufacture it. By late April, with investors sensing the potential for big profits, the company's shares had reached $3.66 — a tenfold increase from January.

On June 8, Vaxart changed the terms of its warrants agreement with Armistice, making it easier for the hedge fund to rapidly acquire the 21 million shares, rather than having to buy and sell in smaller batches.

One week later, Vaxart announced that its chief executive was stepping down, though he would remain chairman. The new C.E.O., Mr. Floroiu, had previously worked with Mr. Boyd, Armistice's founder, at the hedge fund and the consulting firm McKinsey.

On June 25, Vaxart announced that it had signed a letter of intent with another company that might help it mass-produce a coronavirus vaccine. Vaxart's shares nearly doubled that day.

The next day, Vaxart issued its news release saying it had been selected for Operation Warp Speed. Its shares instantly doubled again, at one pointing hitting $14, their highest level in years.

"We are very pleased to be one of the few companies selected by Operation Warp Speed, and that ours is the only oral vaccine being evaluated," Mr. Floroiu said.

Armistice took advantage of the stock's exponential increase – at that point up more than 3,600 percent since January. On June 26, a Friday, and the next Monday, the hedge fund exercised its warrants to buy nearly 21 million Vaxart shares for either 30 cents or $1.10 a share – purchases

HAGENS BERMAN

715 HEARST AVE., SUITE 202, BERKELEY, CA 94710
(510) 725-3000 • FAX (510) 725-3001

it would not have been able to make as quickly had its agreement with Vaxart not been modified weeks earlier.

Armistice then immediately sold the shares at prices from $6.58 to $12.89 a share, according to securities filings. The hedge fund's profits were immense: more than $197 million.

"It looks like the warrants may have been reconfigured at a time when they knew good news was coming," said Robert Daines, a professor at Stanford Law School who is an expert on corporate governance. "That's a valuable change, made right as the company's stock price was about to rise."

At the same time, the hedge fund also unloaded some of the Vaxart shares it had previously bought, notching tens of millions of dollars in additional profits.

By the end of that Monday, June 29, Armistice had sold almost all of its Vaxart shares.

Mr. Boyd and Armistice declined to comment.

Mr. Floroiu said the change to the Armistice agreement "was in the best interests of Vaxart and its stockholders" and helped it raise money to work on the Covid-19 vaccine.

He and other Vaxart board members also were positioned for big personal profits. When he became chief executive in mid-June, Mr. Floroiu received stock options that were worth about $4.3 million. A month later, those options were worth more than $28 million.

Normally when companies issue stock options to executives, the options can't be exercised for months or years. Because of the unusual terms and the run-up in Vaxart's stock price, most of Mr. Floroiu's can be cashed in now.

Vaxart's board members also received large grants of stock options, giving them the right to buy shares in the company at prices well below where the stock is now trading. The higher the shares fly, the bigger the profits.

"Vaxart is disrupting the vaccine world," Mr. Floroiu boasted during a virtual investor conference on Thursday. He added that his impression was that "it's OK to make a profit from Covid vaccines, as long as you're not profiteering."

On this news, Vaxart's stock fell from $12.29 to $11.16. As this news has been digested by the market, Vaxart's stock has fallen to as low as $8.90 on August 4, 2020.

## V.   CLASS ALLEGATIONS

37.   Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3) on behalf of a Class consisting of all those who purchased or otherwise

CLASS ACTION COMPLAINT - 11
No.

HB HAGENS BERMAN

715 HEARST AVE., SUITE 202, BERKELEY, CA 94710
(510) 725-3000 • FAX (510) 725-3001

acquired securities of Vaxart between June 25, 2020 and July 25, 2020, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants herein, the officers and directors of the Company at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

38.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Vaxart shares were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members of the Class. Class members who purchased Vaxart common stock may be identified from records maintained by Vaxart or its transfer agent(s) and may be notified of this class action using a form of notice similar to that customarily used in securities class actions.

39.    Plaintiff's claims are typical of Class members' claims, as all members of the Class were similarly affected by Defendants' wrongful conduct in violation of federal laws as complained of herein.

40.    Plaintiff will fairly and adequately protect Class members' interests and have retained competent counsel experienced in class actions and securities litigation.

41.    Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members. Among the questions of fact and law common to the Class are whether:

(a)    the federal securities laws were violated by Defendants' acts as alleged herein;

(b)    Defendants made statements to the investing public during the Class Period that were false, misleading or omitted material facts;

(c)    Defendants acted with scienter; and

(d)    Class members suffered compensable damages.

42.    A class action is superior to all other available methods for the fair and efficient adjudication of this action because joinder of all Class members is impracticable. Additionally, the damage suffered by some individual Class members may be relatively small so that the burden and

CLASS ACTION COMPLAINT - 12
No.

HB HAGENS BERMAN

715 HEARST AVE., SUITE 202, BERKELEY, CA 94710
(510) 725-3000 • FAX (510) 725-3001

expense of individual litigation make it impossible for such members to individually redress the wrong done to them. There will be no difficulty in the management of this action as a class action.

## VI.    UNDISCLOSED ADVERSE FACTS

43.    The market for Vaxart's securities was an open, well-developed and efficient market at all relevant times. As a result of these materially false and misleading statements and failures to disclose described herein, Vaxart's securities traded at artificially inflated prices during the Class Period. Plaintiff and the other members of the Class purchased or otherwise acquired Vaxart's securities relying upon the integrity of the market price of the Company's securities and market information relating to Vaxart and have been damaged thereby.

44.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Vaxart's securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse non-public information and misrepresented the truth about the Company, as well as its business, accounting, financial operations and prospects, as alleged herein.

45.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and the other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and misleading statements about Vaxart's financial well-being and prospects.

46.    These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements made during the Class Period resulted in Plaintiff and the other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

HB HAGENS BERMAN

715 HEARST AVE., SUITE 202, BERKELEY, CA 94710
(510) 725-3000 • FAX (510) 725-3001

## VII.    LOSS CAUSATION

47.    During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the prices of Vaxart's securities and operated as a fraud or deceit on Class Period purchasers of Vaxart's securities by failing to disclose to investors that the Company's financial results were materially misleading and misrepresented material information. When Defendants' misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the prices of Vaxart's securities fell precipitously as the prior inflation came out of the Company's stock price. As a result of their purchases of Vaxart's securities during the Class Period, Plaintiff and the other Class members suffered economic loss.

48.    By failing to disclose the true state of the Company's financial statements, investors were not aware of the true state of the Company's financial status. Therefore, Defendants presented a misleading picture of Vaxart's business practices and procedures. Thus, instead of truthfully disclosing during the Class Period the true state of the Company's business, Defendants caused Vaxart to conceal the truth.

49.    Defendants' false and misleading statements had the intended effect and caused Vaxart's common stock to trade at artificially inflated levels throughout the Class Period. The stock price drops discussed herein caused real economic loss to investors who purchased the Company's securities during the Class Period.

50.    The decline in the price of Vaxart's common stock after the truth came to light was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of Vaxart's common stock price declines negates any inference that the loss suffered by Plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors, or Company-specific facts unrelated to the Defendants' fraudulent conduct. The economic loss suffered by Plaintiff and the other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the prices of Vaxart's securities and the subsequent decline in the value of Vaxart's securities when Defendants' prior misrepresentations and other fraudulent conduct were revealed.

CLASS ACTION COMPLAINT - 14
No.
010941-11/1334874 V1



HAGENS BERMAN

715 HEARST AVE., SUITE 202, BERKELEY, CA 94710
(510) 725-3000 • FAX (510) 725-3001

## VIII.   SCIENTER ALLEGATIONS

51.     As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company during the Class Period were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

52.     As set forth herein, Defendants, by virtue of their receipt of information reflecting the true facts regarding Vaxart, their control over, receipt and/or modification of Vaxart's allegedly materially misleading statements and omissions, and/or their positions with the Company which made them privy to confidential information concerning Vaxart, participated in the fraudulent scheme alleged herein.

## IX.     THE PRESUMPTION OF RELIANCE

53.     At all relevant times, the market for Vaxart's common stock was efficient for the following reasons, among others:

(a)     Vaxart's stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Vaxart filed periodic reports with the SEC and the NASDAQ;

(c)     Vaxart regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     Vaxart was followed by numerous securities analysts employed by major brokerage firms who wrote reports which were distributed to those brokerage firms' sales force and certain customers. Each of these reports was publicly available and entered the public market place.



715 HEARST AVE., SUITE 202, BERKELEY, CA 94710
(510) 725-3000 • FAX (510) 725-3001

54.     As a result of the foregoing, the market for Vaxart's securities reasonably promptly digested current information regarding Vaxart from all publicly available sources and reflected such information in the price of Vaxart's securities. All purchasers of Vaxart securities during the Class Period suffered similar injury through their purchase of Vaxart securities at artificially inflated prices, and a presumption of reliance applies.

55.     A class-wide presumption of reliance is also appropriate in this action under the United States Supreme Court holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the claims asserted herein against Defendants are predicated upon omissions of material fact for which there is a duty to disclose.

## X.     NO SAFE HARBOR

56.     The federal statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward-looking, they were not identified as "forward-looking statements" when made, and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

57.     In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Vaxart who knew that the statement was false when made.

HB HAGENS BERMAN

715 HEARST AVE., SUITE 202, BERKELEY, CA 94710
(510) 725-3000 • FAX (510) 725-3001

# XI.   CLAIMS AGAINST DEFENDANTS

## COUNT I
### Violation of Section 10(b) of The Exchange Act
### And SEC Rule 10b-5 Promulgated Thereunder
### (Against All Defendants)

58.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein. This claim is asserted on behalf of all members of the Class against all Defendants.

59.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did (i) deceive the investing public, including Plaintiff and the other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Vaxart securities; and (iii) cause Plaintiff and the other members of the Class to purchase Vaxart securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

60.     These Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Vaxart securities in violation of § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. Defendants are sued as primary participants in the wrongful and illegal conduct charged herein. The Individual Defendants are also sued herein as controlling persons of Vaxart, as alleged herein.

61.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Vaxart securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Vaxart's finances and business prospects.

HAGENS BERMAN

715 HEARST AVE., SUITE 202, BERKELEY, CA  94710
(510) 725-3000 • FAX (510) 725-3001

62.     By virtue of their positions at Vaxart, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

63.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Vaxart, the Individual Defendants had knowledge of the details of Vaxart's internal affairs.

64.     The Control Defendants and Executive Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Vaxart. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Vaxart's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Vaxart securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Vaxart's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Vaxart securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

65.     During the Class Period, Vaxart securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or

CLASS ACTION COMPLAINT - 18
No.

HB HAGENS BERMAN

715 HEARST AVE., SUITE 202, BERKELEY, CA 94710
(510) 725-3000 • FAX (510) 725-3001

relying upon the integrity of the market, purchased or otherwise acquired shares of Vaxart securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Vaxart securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Vaxart securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

66.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Vaxart securities, which inflation was removed from its price when the true facts became known. Plaintiff and the Class would not have purchased Vaxart securities at the prices they paid, or at all, if they had been aware that the market price had been artificially and falsely inflated by these Defendants' misleading statements.

67.     As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages attributable to the material misstatements and omissions alleged herein in connection with their purchases of Vaxart securities during the Class Period.

68.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

**COUNT II**
**For Violations of Section 20(a) of The Exchange Act**
**(Against the Control Defendants and Executive Defendants)**

69.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

70.     This Count is asserted on behalf of all members of the Class against the Control Defendants and Executive Defendants, for violations of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

CLASS ACTION COMPLAINT - 19
No.
010941-11/1334874 V1

HAGENS BERMAN

715 HEARST AVE., SUITE 202, BERKELEY, CA 94710
(510) 725-3000 • FAX (510) 725-3001

71.     The Control Defendants and Executive Defendants were and acted as controlling persons of Vaxart within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions with the Company, participation in and/or awareness of the Company's operations and/or intimate knowledge of the Company's actual performance, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Each of the Individual Defendants was provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued, and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

72.     In addition, each of the Control Defendants and Executive Defendants had direct involvement in the day- to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein and exercised the same.

73.     As set forth above, the Control Defendants and Executive Defendants each violated § 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their controlling positions, the Control Defendants and Executive Defendants are liable pursuant to § 20(a) of the Exchange Act. As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## XII.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment as follows:

A.      Declaring the action to be a proper class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

B.      Awarding all damages and other remedies available under the Exchange Act in favor of Plaintiff and all members of the Class against Defendants in an amount to be proven at trial, including interest thereon;

CLASS ACTION COMPLAINT - 20
No.
010941-11/1334874 V1



C.     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

D.     Such other and further relief as the Court may deem just and proper.

### XIII.   JURY DEMAND

Plaintiff demands a trial by jury.

Dated: August 24, 2020

HAGENS BERMAN SOBOL SHAPIRO LLP

By:____*/s/ Reed R. Kathrein*_____
Reed R. Kathrein (139304)
Lucas E. Gilmore (250893)
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com

Steve W. Berman (*Pro Hac Vice forthcoming*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com

*Attorneys for Plaintiff Kirk Himmelberg*

CLASS ACTION COMPLAINT - 21
No.
010941-11/1334874 V1



715 HEARST AVE., SUITE 202, BERKELEY, CA  94710
(510) 725-3000 • FAX (510) 725-3001

<u>CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAW</u>

I, Kirk Himmelberg, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995:

1.      I have reviewed a complaint alleging securities fraud against Vaxart, Inc. (VXRT) and various of its executives, adopt its allegations and authorize its filing on my behalf.

2.      I did not acquire the security that is the subject of this action at the direction of Plaintiff's counsel in order to participate in this private action or any other litigation under the federal securities laws.

3.      I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired Vaxart securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

4.      To the best of my current knowledge, the attached sheet lists all of my transactions in Vaxart securities during the Class Period as specified in the Complaint.

5.      My transactions during the Class Period in the securities that are the subject of this action are set forth in the Chart attached hereto.

6.      During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.      I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such

DocuSign Envelope ID: FA3FB7E6-9E0F-418D-8138-7B251152E3F8

reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

**Executed** <u>                     </u> Aug 24, 2020 | 11:02 AM PDT
                           **(Date)**

DocuSigned by:

*Kirk Himmelberg*

04323DEDD2044EA...
                              **(Signature)**

<u>          Kirk Himmelberg          </u>
                **(Type or Print Name)**

**Kirk Himmelberg - Vaxart, Inc. (VXRT) Transactions**

**Class Period 06/25/20 - 07/25/20**

| **PURCHASES** | | | | **SALES** | | |
|---|---|---|---|---|---|---|
| Date | Shares | Share Price | | Date | Shares | Share Price |
| 06/30/20 | 9,900 | $8.4400 | | 07/15/20 | 39,000 | $14.8600 |
| 06/30/20 | 100 | $8.4300 | | | | |
| 07/14/20 | 12,929 | $16.2500 | | | | |
| 07/14/20 | 4 | $16.2200 | | | | |
| 07/14/20 | 300 | $16.2100 | | | | |
| 07/14/20 | 1,600 | $16.2300 | | | | |
| 07/14/20 | 2,902 | $16.2400 | | | | |
| 07/14/20 | 453 | $16.2700 | | | | |
| 07/14/20 | 812 | $16.2600 | | | | |
| 07/14/20 | 1,600 | $16.2300 | | | | |
| 07/16/20 | 1,006 | $15.7800 | | | | |
| 07/16/20 | 200 | $15.7700 | | | | |
| 07/16/20 | 798 | $15.7699 | | | | |
| 07/16/20 | 2,296 | $15.7900 | | | | |
| 07/16/20 | 1,006 | $15.7800 | | | | |
| 07/17/20 | 7,900 | $16.4000 | | | | |
| 07/17/20 | 22,100 | $16.3600 | | | | |
| 07/23/20 | 5,000 | $13.6300 | | | | |
| 07/23/20 | 5,700 | $13.5200 | | | | |