MENACHEM MENDY PIEKARSKI (SBN 326531)
Mendy.Piekarski@thompsonhine.com
RICCARDO DEBARI (*pro hac vice*)
Riccardo.DeBari@Thompsonhine.com
THOMPSON HINE LLP
335 Madison Avenue, 12th Floor
New York, New York 10017
Telephone: +1.212.344.5680
Fax: +1.212.344.6101

JONATHAN A. SHAPIRO (SBN 257199)
Jonathan.shapiro@bakerbotts.com
DANIEL MARTIN (SBN 306794)
Daniel.martin@bakerbotts.com
BAKER BOTTS LLP
101 California Street, Suite 3600
San Francisco, CA 94111
Telephone: +1.415.291.6200
Fax: +1.415.291.6300

Attorneys for Defendants Vaxart, Inc., Cezar
Andrei Floroiu, Wouter W. Latour, M.D.,
Todd C. Davis, Michael J. Finney, Robert A.
Yedid, Sean N. Tucker, and Margaret A. Echerd

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re VAXART, INC. SECURITIES LITIGATION<br><br>This Document Relates to:<br>ALL ACTIONS | Case No. 3:20-cv-05949-VC<br><br>**VAXART DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**<br><br>CLASS ACTION<br><br>Date:    May 13, 2021<br>Time:   10:00 a.m.<br>Place:   Courtroom 4, 17th Floor<br>Judge:  Hon. Vince Chhabria |

## TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ....................................................................................... vi

ISSUES TO BE DECIDED (CIVIL LOCAL RULE 7-4(A)(3)) .................................................. VI

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................... 1

I.  PRELIMINARY STATEMENT ............................................................................... 1

II.  FACTUAL BACKGROUND ..................................................................................... 2

III.  ARGUMENT ............................................................................................................. 4

A.  Plaintiffs' Failed Challenge to the OWS Release on June 26, 2020 ............ 4

1.  Vaxart's Statement Regarding OWS Was True—Not False, Nor Misleading .......................................................................................... 4

2.  Plaintiffs Cannot Forge a Disclosure Duty From *Motley Fool* and *Business Insider* ................................................................................ 6

3.  The CAC Allegations Are Insufficient to Establish Scienter .......... 7

4.  The CAC Fails to Allege the OWS Release Caused Their Losses 10

B.  Plaintiffs' Sundry Allegations About a Vendor Contract and Pre-Pandemic Norovirus Research Add Nothing ............................................. 11

1.  The Attwill Release ........................................................................ 11

2.  Statement Regarding Vaccine Development .................................. 13

3.  Norovirus Program Statements Preceding the Class Period .......... 14

C.  The CAC Fails to State a Claim for Control Person Liability Under Section 20(a) ............................................................................................ 15

CONCLUSION ............................................................................................................................ 16

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Amgen Inc. Secs. Litig.*,
  544 F. Supp. 2d 1009 (C.D. Cal. 2008) ............................................................... 16

*In re Apple Computer Sec. Litig.*,
  886 F.2d 1109 (9th Cir. 1989) ............................................................................. 10

*In re Ashworth Secs. Litig.*,
  No. 99-cv-0121-L(JAH), 2000 U.S. Dist. LEXIS 15237 (S.D. Cal. July 18, 2000) ....... 10

*Backman v. Polaroid Corp.*,
  910 F.2d 10 (1st Cir. 1990)..................................................................................... 7

*In re Bare Escentuals, Inc. Sec. Litig.*,
  745 F. Supp. 2d 1052 (N.D. Cal. 2010) ................................................................ 16

*Basic, Inc. v. Levinson*,
  485 U.S. 224 (1988)................................................................................................. 7

*Biotechnology Value Fund, L.P. v. Celera Corp.*,
  No. C 13-03248 WHA, 2014 U.S. Dist. LEXIS 26903 (N.D. Cal. Feb. 28, 2014) ......... 6

*Bonanno v. Cellular Biomedicine Grp., Inc.*,
  No. 15-cv-01795-WHO (N.D. Cal. May 20, 2016) ............................................... 11

*Brody v. Transitional Hosps. Corp.*,
  280 F.3d 997 (9th Cir. 2002) ............................................................................. 6, 8

challenges.*S. Ferry LP, No. 2 v. Killinger*,
  542 F.3d 776 (9th Cir. 2008) ............................................................................... 14

*Cho v. UCBH Holdings, Inc.*,
  No. C 09-4208 JSW, 2011 U.S Dist. LEXIS 100850 (N.D. Cal. May 7, 2011)................ 9

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys.* v. *Align Tech., Inc.*,
  856 F.3d 605 (9th Cir. 2017) ................................................................................. 5

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
  880 F. Supp. 2d 1045 (N.D. Cal. 2012) (Koh, J.)................................................... 9

*In re Clearly Canadian Sec. Litig.*,
  875 F. Supp. 1410 (N.D. Cal. 1995) ..................................................................... 15

*In re Copper Mt. Secs. Litig.*,
  311 F. Supp. 2d 857 (N.D. Cal. 2004) .................................................................. 14

*In re Cutera Sec. Litig.*,
   610 F.3d 1103 (9th Cir. 2010) ........................................................................................ 15

*In re CytRx Corp. Sec. Litig.*,
   No. CV 14-1956-GHK, 2015 U.S. Dist. LEXIS 91447 (C.D. Cal. July 13, 2015) .......................... 6

*In re Extreme Networks, Inc.*,
   No. 15-cv-04883-BLF, 2018 U.S. Dist. LEXIS 46638 (N.D. Cal. Mar. 21, 2018) ........................ 10

*Fadia v. FireEye, Inc.*,
   No. 5:14-cv-05204-EJD, 2016 U.S. Dist. LEXIS 157391 (N.D. Cal. Nov. 14, 2016) ...................... 8

*In re Hansen Natural Corp. Sec. Litig.*,
   527 F. Supp. 2d 1142 (C.D. Cal. 2007) ......................................................................... 11

*Jui-Yang Hong v. Extreme Networks, Inc.*,
   No. 15-cv-04883-BLF, 2017 U.S. Dist. LEXIS 64297 (N.D. Cal. Apr. 27, 2017) .......... 6, 10, 12, 14

*In re Lockheed Martin Corp. Secs. Litig.*,
   272 F. Supp. 2d 928 (C.D. Cal. 2002) ........................................................................... 14

*Loos v. Immersion Corp.*,
   762 F.3d 880 (9th Cir. 2014) ........................................................................................ 11

*McDermid v. Inovio Pharms., Inc.*,
   No 20-01402, 2021 US Dist. LEXIS 28203 (E.D. Pa. Feb. 16, 2021) .................................. 7

*McGovney v. Aerohive Networks, Inc.*,
   No. 18-CV-00435-LHK, 2019 US Dist LEXIS 228702 (N.D. Cal., Aug. 7, 2019) ..................... 9

*Metzler Inv. GMBH v. Corinthian Colls, Inc.*,
   540 F.3d 1049 (9th Cir. 2008) ............................................................................. 6, 8, 14

*Middlesex Ret. Sys. v. Quest Software Inc.*,
   527 F. Supp. 2d 1164 (C.D. Cal. 2007) ........................................................................ 16

*Milton Arbitrage Partners, LLC v. Syncor Int'l Corp. (In re Syncor Intl. Corp. Sec.
   Litig.)*,
   239 F. App'x 318 (9th Cir. 2007), *amended by*, No. 05-55748, 2007 U.S. App.
   LEXIS 25599 (9th Cir. Oct. 30, 2007) ........................................................................... 10

*Nguyen v. Endologix, Inc.*,
   No. 17-00017-AB, 2018 U.S. Dist. LEXIS 233252 (C.D. Cal. Sept. 6, 2018), *aff'd*,
   962 F.3d 405 (9th Cir. 2020) ........................................................................................ 15

*In re Numerex Corp. Sec. Litig.*,
   913 F. Supp. 391 (E.D. Pa. 1996) .................................................................................. 7

*In re OmniVision Tech., Inc. Sec. Litig.*,
   937 F. Supp. 2d 1090 (N.D. Cal. 2013) .......................................................................... 8

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
  759 F.3d 1051 (9th Cir. 2014) ................................................................................... 11, 13

*In re Questcor Sec. Litig.*,
  No. SA CV 12-01623-DMG, 2013 U.S. Dist. LEXIS 142865
  (C.D. Cal. Oct. 1, 2013) ............................................................................................... 6

*In re Rackable Sys., Inc. Sec. Litig.*,
  No. C 09-0222 CW, 2010 U.S. Dist. LEXIS 2663 (N.D. Cal. Jan. 13, 2010) .................................. 14

*Ronconi v. Larkin*,
  253 F3d 423 (9th Cir. 2001) ....................................................................................... 13

*Shurkin v. Golden State Vintners, Inc.*,
  471 F. Supp. 2d 998 (N.D. Cal. 2006), *aff'd*, 303 F. App'x 431 (9th Cir. 2008) ........................... 15

*In re Silicon Graphics Sec. Litig.*,
  183 F.3d 970 (9th Cir. 1999) ......................................................................................... 9

*State Teachers Ret. Bd. v. Fluor Corp.*,
  654 F.2d 843 (2d Cir. 1981)........................................................................................... 7

*In re Syntex Corp. Sec. Litig.*,
  95 F.3d 922 (9th Cir. 1996) ......................................................................................... 13

*Tai Jan Bao v. SolarCity Corp.*,
  No. 14-cv-01435-BLF, 2015 U.S. Dist. LEXIS 55711 (N.D. Cal. Apr. 27, 2015) ......................... 16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)................................................................................................ 8, 10

*In re Vantive Corp. Sec. Litig.*,
  283 F.3d 1079 (9th Cir. 2002) .................................................................................... 6, 12

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
  MDL No. 2672 CRB (JSC), 2017 U.S. Dist. LEXIS 1109 (N.D. Cal. Jan. 4, 2017) ...................... 16

*Webb v. SolarCity Corp.*,
  884 F.3d 844 (9th Cir. 2018) .................................................................................... 10, 16

*Welgus v. TriNet Grp., Inc.*,
  No. 15-cv-03625-BLF, 2017 U.S. Dist. LEXIS 207777 (N.D. Cal. Dec. 18, 2017),
  *aff'd*, 765 F. App'x 239 (9th Cir. 2019)......................................................................... 15

*Wochos v. Tesla, Inc.*,
  985 F.3d 1180 (9th Cir. 2021) ...................................................................................... 14

*Xiaojiao Lu v. Align Tech., Inc.*,
  417 F. Supp. 3d 1266 (N.D. Cal. 2019) ............................................................................ 6

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ............................................................................................... 13

**Statutes**

15 USC § 78u-5(c) ............................................................................................................... 12, 13

VAXART DEFENDANTS' MOTION TO DISMISS, Case No. 3:20-cv-05949-VC

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on May 13, 2021, at 10:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Vince Chhabria, located at United States District Court for the Northern District of California, San Francisco Division, 450 Golden Gate Avenue, San Francisco, California 94102, Defendants Vaxart, Inc., Cezar Andrei Floroiu, Wouter W. Latour, M.D., Todd C. Davis, Michael J. Finney, Robert A. Yedid, Sean N. Tucker, and Margaret A. Echerd (collectively, the "Vaxart Defendants") will and hereby do move to dismiss Plaintiffs' Consolidated Amended Complaint ("CAC") pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 ("PSLRA").

This Motion is based upon this Notice of Motion and Motion, the Vaxart Defendants' Memorandum of Points and Authorities, the Vaxart Defendants' Request for Judicial Notice, the Declaration of Menachem Mendy Piekarski and the exhibits attached thereto, the Armistice Defendants' Motion to Dismiss and supporting documents, which the Vaxart Defendants join, the Court's files in this action, the arguments of counsel, and any other matter that the Court may consider.

## ISSUES TO BE DECIDED (CIVIL LOCAL RULE 7-4(A)(3))

Should the Section 10(b) claim against the Vaxart Defendants be dismissed where Plaintiffs fail to plead facts plausibly showing: (i) any defendant made a materially false or misleading statement; (ii) a strong inference of scienter; and (iii) loss causation linking a decline in stock price to a corrective disclosure?

Should the Section 20(a) claim be dismissed where no primary violation is alleged, and where Plaintiffs fail to plead that Floroiu, Latour, Davis, Finney, Yedid, Tucker, Echerd, and/or Vaxart "controlled" any primary violators of the Exchange Act?

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    PRELIMINARY STATEMENT

Since January 2020, Vaxart and its small team have committed themselves to developing a shelf-stable vaccine tablet for COVID-19—the only oral vaccine candidate to begin Phase 1 human clinical trials.  If Vaxart's vaccine proves successful, its lack of refrigeration requirements could have critical ramifications for global vaccine distribution, especially to the developing world.  With investors closely following vaccine developers, Vaxart accurately informed the market of its progress and repeatedly cautioned investors of the risks inherent in vaccine development.  Unsurprisingly, during this rapidly evolving and uncertain pandemic era, Vaxart's stock price has fluctuated.

Plaintiffs found their own opportunity during the pandemic: suing Vaxart for a June 26, 2020 press release ("OWS Release") that its vaccine candidate was selected to participate in a non-human primate study "organized and funded by Operation Warp Speed."  Plaintiffs admit the announcement was true—Vaxart *was* selected to, and did, participate in the OWS primate study.  Instead, Plaintiffs assert that Vaxart committed fraud by not releasing a longer announcement to explain that the invitation to "participate" in the OWS study did not mean that the U.S. government would also directly pay Vaxart to develop its vaccine.

The Court should dismiss this case **because *it is premised on statements Vaxart never made*.** The OWS Release was correct.  There is nothing in the OWS Release that, in any way, implies or insinuates that Vaxart's participation in the OWS-funded primate study would mean that Vaxart also would be compensated.  Just as a district court in Pennsylvania recently held regarding a nearly identical statement from another biotech OWS primate study participant, this Court should recognize that Vaxart's June 26 statement should be taken for what it is—honest and complete on the topic addressed.

Faced with this glaring defect in their theory of the case, Plaintiffs spent months on an amended complaint that appears calculated to distract from the truth of the OWS Release by challenging a handful

of benign public statements combined with inflammatory and unsubstantiated rhetoric.  These efforts fail.  The Consolidated Amended Class Action Complaint's ("CAC") new fodder consists of:  (1) Vaxart's forward-looking announcement of a memorandum of understanding ("MOU") with a manufacturing vendor (Attwill) and allegations regarding that vendor's internal operations; (2) a vague and aspirational comment from Vaxart's chief science officer regarding the vaccine progress (which is true, and does not undermine the OWS Release); and (3) pre-Class Period commentary attributed to a "confidential witness" who was terminated from Vaxart months *before* OWS even existed.  These extraneous "new" allegations—which also ignore, misquote, or mischaracterize Vaxart's public statements—do not alter the fact that ***nowhere in the 58-page CAC is there a single Vaxart statement that hints at its receipt of federal compensation***.  Because none of the allegations state a claim against Vaxart and the Individual Vaxart Defendants,[1] the CAC should be dismissed in its entirety.

## II.     FACTUAL BACKGROUND

Vaxart is a clinical-stage biotechnology company primarily focused on the development of oral vaccines.  (CAC ¶¶ 33, 47).  Since February 2018 and prior to the Covid-19 pandemic, Vaxart's oral vaccine solution research focused on norovirus and seasonal influenza.  (*Id.* ¶¶ 48-49, 59.)

On January 31, 2020, Vaxart quickly reacted to the new crisis by initiating and announcing the beginning of its Coronavirus Vaccine Program.  Ex. 1.[2]  Though Vaxart had not yet brought a vaccine to market (and has never intimated otherwise),[3] it hoped its work with prior clinically-successful vaccine candidates could allow it to develop a temperature-stable oral COVID-19 vaccine.  Ex. 1.

Since then, Vaxart has made real progress on its COVID-19 vaccine program.  It announced on

---

[1] Wouter Latour, chairman of Vaxart's Board of Directors (the "Board"); Andrei Floroiu, director (and CEO since June 14, 2020); Todd Davis, Michael Finney, and Robert Yedid, current directors; Sean Tucker, founder and CSO; and Margaret Echerd, VP and Controller.

[2] Citations to "Ex." are to exhibits to the declaration of Menachem Mendy Piekarski.

[3] *See* Ex. 2 at ¶¶ 3-4 and Ex. 3 at pp. 39-40.

March 31, 2020 that "it had produced five COVID-19 vaccine candidates for testing in its preclinical models." Ex. 4.  On April 21, 2020, Vaxart announced that it "obtained positive pre-clinical results for its COVID-19 vaccine candidates, with several of the vaccine candidates generating immune responses in all tested animals after a single dose." Ex. 5.  On May 15, 2020, the U.S. government announced Operation Warp Speed as a public–private partnership to accelerate the development, manufacturing, and distribution of COVID-19 vaccines. Ex. 6.

On June 25, 2020, Vaxart issued a press release ("Attwill Release") announcing its MOU with Attwill Medical Solutions Sterilow, LP ("Attwill") describing "the parties' intent to establish [Attwill] as a resource for … manufacturing [and that Attwill] will be assigning dedicated resources and equipment for the scale up and commercial production of the vaccine upon entering a formal agreement." Ex. 7. The Attwill Release warned of "substantial risks and uncertainties" concerning whether Vaxart and Attwill would enter a "formal agreement," and "Vaxart's ability to develop and commercialize its [COVID-19 vaccine]." *Id.*

On June 26, 2020, Vaxart issued the OWS Release titled, "COVID-19 Vaccine Selected for the U.S. Government's Operation Warp Speed: OWS to Test First Oral COVID-19 Vaccine in Non-Human Primates." Ex. 8.  In it, Vaxart announced that "its oral COVID-19 vaccine has been selected to participate in a non-human primate (NHP) challenge study, organized and funded by Operation Warp Speed, a new national program aiming to provide substantial quantities of safe, effective vaccine for Americans by January 2021." *Id.* As Vaxart included in its public filings,[4] the OWS Release contained cautionary language about the vaccine candidate and the OWS NHP study.  Ex. 2 at ¶ 5.

*Nowhere* in the OWS Release did Vaxart indicate that it was being paid directly by OWS.  Ex. 10.  Nor did Vaxart say anything to imply that OWS would improve the company's financial prospects.  To the contrary, Vaxart cautioned that "new regulations or policies [concerning OWS] may

---

[4] *See, e.g.*, Ex. 2 at ¶¶ 1, 2, 6-9; Ex. 9 at 2, SA-2; Ex. 3 at pp. 8-14.

materially adversely affect our business and the development of our COVID-19 vaccine candidate.  Our oral COVID-19 vaccine candidate may not prove to be efficacious … we cannot assure you that Operation Warp Speed will have a positive impact on our financial results."  Ex. 9 at SA-2.

## III.    ARGUMENT

Plaintiffs have failed to "satisfy the dual heightened pleading requirements of F.R.C.P. Rule 9(b) and the Private Securities Litigation Reform Act (PSLRA), which require that the complaint plead both falsity and scienter with particularity." *City of Dearborn Heights Act 345 Police & Fire Ret. Sys.* v. *Align Tech., Inc.*, 856 F.3d 605, 613 (9th Cir. 2017).  Under Rule 8(a), Rule 9(b), and the PSLRA, Plaintiffs have not alleged a single material misstatement, made with scienter, that caused their alleged loss.

### A.    Plaintiffs' Failed Challenge to the OWS Release on June 26, 2020

#### 1.   Vaxart's Statement Regarding OWS Was True—Not False, Nor Misleading

Plaintiffs' entire case is built on a single phrase in the OWS Release—that Vaxart was "selected by Operation Warp Speed."  (CAC ¶ 18.)  Plaintiffs claim they were defrauded by that phrase because, according to them, it implied that Vaxart would receive federal funding to develop its vaccine, even though, in fact, "Vaxart was not … selected for funding by OWS."  (*Id.* ¶¶ 10, 139(a).)  That theory is hollow because the OWS Release says ***nothing*** about Vaxart receiving funding and even the CAC's selective, out-of-context quotes of the OWS Release do not suggest otherwise.

The actual text of the OWS Release is before the Court.  It is subtitled "***OWS to Test Oral COVID-19 Vaccine in Non-Human Primates***."  The CAC conspicuously makes only passing reference to the Release's opening and primary paragraph, which states that Vaxart's vaccine candidate "has been selected to participate in a non-human primate (NHP) challenge study" organized by OWS.  Ex. 8 and Ex. 10.  All that is true, and not alleged to be otherwise.  The OWS Release next quotes Vaxart's CEO, who expressed gratitude that OWS "selected" Vaxart, which clearly referred to the "select[ion] to participate" referenced in the prior sentence.  Nothing in the OWS Release communicated that Vaxart

was granted federal funding—thus, Plaintiffs' core fraud challenge to the OWS Release "ignores the actual content of Defendants' statements and draws 'unwarranted inferences' that the Court cannot accept." *Xiaojiao Lu v. Align Tech., Inc.*, 417 F. Supp. 3d 1266, 1277 (N.D. Cal. 2019) (allegations were "almost entirely untethered to the actual statements made by Defendants").[5]

For the same reason, the CAC pleads no basis for falsity, that is, why or how the OWS Release's language was materially misleading due to the failure to disclose that OWS had not agreed to pay Vaxart. *See In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1087 n.7 (9th Cir. 2002) (statements not misleading where "not necessarily inconsistent with underlying true facts."). The CAC provides no facts to suggest that "funding" is the *sine qua non* for participation in OWS—because it is not—and, therefore, fails to identify any misstatement. *See Metzler Inv. GMBH v. Corinthian Colls, Inc.*, 540 F.3d 1049, 1070-71 (9th Cir. 2008) (non-disclosure of investigations not misleading where issuer did not affirmatively "suggest[] it *was not* under any regulatory scrutiny"). There is simply nothing in the press release that "affirmatively create[s] an impression of a state of affairs that differs in a material way from the one that actually exists." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). Courts regularly dismiss securities "fraud" claims where, as here, the challenged statement is itself true.[6]

---

[5] The Individual Defendants (other than Mr. Floroiu) must also be dismissed from the Rule 10(b) claim because the CAC does not allege that they (as opposed to Vaxart) were the "makers" of Vaxart's statement, a basic pleading failure that cannot be cured by conclusory invocation of "group publishing." *See Biotechnology Value Fund, L.P. v. Celera Corp.*, No. C 13-03204 WHA, 2014 U.S. Dist. LEXIS 26903, at *16-17 (N.D. Cal. Feb. 28, 2014) (allegation of directors' "group-published" was insufficient under *Janus*); *In re Questcor Sec. Litig.*, No. SA CV 12-01623-DMG (FMOx), 2013 U.S. Dist. LEXIS 142865, at *26-29 (C.D. Cal. Oct. 1, 2013) ("[D]istrict courts in this circuit have largely concluded that the [group pleading] doctrine is incompatible with the PSLRA [and *Janus*]."). *In re CytRx Corp. Sec. Litig.*, No. CV 14-1956-GHK (PJWx), 2015 U.S. Dist. LEXIS 91447, at *20 (C.D. Cal. July 13, 2015) (following *Janus*, courts routinely disallow 10(b) claims "against defendants who merely requested, influenced, helped create or supplied information for the relevant false or misleading statements"). As for Mr. Floroiu, he should be dismissed because the only statement attributed to him—as having been grateful that Vaxart was selected—is not alleged to be false, or for that matter, insincere.

[6] *See Jui-Yang Hong v. Extreme Networks, Inc.*, No. 15-cv-04883-BLF, 2017 U.S. Dist. LEXIS 64297, at *48-49 (N.D. Cal. Apr. 27, 2017) (dismissing claim where, as here, fraud claims "bear[s] no connection to the substance of the statements themselves"); *Xiaojiao Lu*, 417 F. Supp. 3d at 1277 ("To allege falsity under the PSLRA, Plaintiff must account for the entirety of [the statements] on which they rely, and not simply invoke selective quoting" to create new basis for claims) (internal quotation marks and citation omitted).

That is *precisely* why, only weeks ago, Judge Pappert in the Eastern District of Pennsylvania rejected a virtually identical challenge to essentially the same press release about a different company's "participation" in an OWS primate study because "Defendants never claimed to be receiving vaccine funding and disclosed [that it] had been chosen for the NHP study." *McDermid v. Inovio Pharms., Inc.*, No 20-01402, 2021 US Dist. LEXIS 28203, at *35 (E.D. Pa. Feb. 16, 2021).

### 2.   Plaintiffs Cannot Forge a Disclosure Duty From *Motley Fool* and *Business Insider*

Plaintiffs cannot sidestep Ninth Circuit precedent and the on-point *McDermid* dismissal by claiming that the market was somehow confused about whether Vaxart was receiving OWS funding—a theory based not on Vaxart's statements, but entirely on a *Business Insider* article and a *Motley Fool* blog post, both dated June 26, 2020.[7]  Further, contrary to the CAC's mischaracterization, the *Business Insider* article only reported what Vaxart actually announced—*i.e.*, that Vaxart was selected for the OWS study— and not that Vaxart was receiving OWS funding.  *See* Ex. 12.  And, the single opinion of a *Motley Fool* blogger with unknown motives hardly constitutes market confusion giving rise to a duty to correct.  *See State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 850 (2d Cir. 1981) ("no duty to correct or verify rumors in the marketplace unless those rumors can be attributed to the company.").[8]

Regardless, even if some in the market were curious about whether Vaxart was receiving a government grant as part of OWS, public companies are *never* under a duty to start addressing whatever else may potentially bear on a topic that might be "interesting, market-wise."  *See Backman v. Polaroid Corp.*, 910 F.2d 10, 15-16 (1st Cir. 1990); *see also Basic, Inc. v. Levinson*, 485 U.S. 224, 239, n.17 (1988) ("Silence, absent a duty to disclose, is not misleading.").  Thus, even assuming *arguendo* some

---

[7] The CAC references a second, August 19 *Business Insider* article in support of falsity.  (CAC ¶ 193(b).)  However, the article (1) was subsequent to, and does not reflect the market's perception during, the Class Period, and (2) misquotes OWS' Slaoui, who, in fact, *did not mention Vaxart*. (*See* Ex. 11.)

[8] Indeed, even if the *Motley Fool* blogger was sincerely confused that the U.S. government was paying Vaxart, the federal securities laws do not impose on Vaxart a duty to un-confuse and protect an "unworldly naif" (or fool). *See In re Numerex Corp. Sec. Litig.*, 913 F. Supp. 391, 400 (E.D. Pa. 1996).

investor confusion (and there was none), the CAC does not allege with specificity how Vaxart affirmatively created that misimpression, as it must. *See Brody*, 280 F.3d at 1006. Despite the CAC's string of unrelated statements and salacious allegations of deception, the only allegedly actionable misstatement—the OWS Release—could not plausibly have led the market to an inaccurate conclusion regarding OWS funding. *See In re OmniVision Tech., Inc. Sec. Litig.*, 937 F. Supp. 2d 1090, 1102 (N.D. Cal. 2013) ("The mere fact that defendants' statements did not disabuse lead plaintiffs or analysts of their [inaccurate] conclusion…does not render the statements actionable."). The *OmniVision* decision is instructive in finding that, even in the context of market rumors, statements "consistent both with lead plaintiffs' deduction [of fraud] and with the opposite conclusion" are not actionable if they "did nothing to affirmatively lead the market toward one conclusion over the other." *Id.* at 1101 (dismissing claim because defendant did not expressly say it was Apple's iPhone vendor, and thus no duty to disclose termination of vendor contract despite market rumors).

Finally, Plaintiffs cannot save their false statement claim by conclusory reference to "scheme" liability under Rules 10b-5(a) and (c). (CAC ¶ 185). That is a label, not a particularized pleading. Plaintiffs' alternative "pump and dump" scheme is itself predicated on Vaxart's alleged false statement, which, as noted, it fails to allege and, in any event, is insufficient for scheme liability. *See Fadia v. FireEye, Inc.*, No. 5:14-cv-05204-EJD, 2016 U.S. Dist. LEXIS 157391, at *49-50 (N.D. Cal. Nov. 14, 2016) ("scheme liability does not apply" where, as here, the alleged scheme is the challenged statement).[9]

### 3. The CAC Allegations Are Insufficient to Establish Scienter

Plaintiffs also fail to specifically allege concrete facts creating a strong inference of scienter under the "formidable pleading requirements" of the PSLRA. *Metzler*, 540 F.3d at 1054-55; *Tellabs, Inc. v.*

---

[9] Nor does the CAC sufficiently allege how Defendants conferred any benefit on each other as part of a "*quid pro quo*" scheme. *See* Armistice Motion to Dismiss, Section I(C), which is incorporated by reference.

*Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323-24 (2007) (to establish strong inference of scienter, facts must be "compelling, "persuasive," "effective," and "powerful.").

First, the failure to plead any material statement in the OWS Release that was false when made, by definition, forecloses any theory that Vaxart published that Release intending to deceive (or, for that matter, acted recklessly).  *See City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1068 (N.D. Cal. 2012) (Koh, J.) ("it follows [from no misleading statement] that Plaintiffs have not adequately pled facts … that Defendants knew their statements to be false or misleading.").

Second, the CAC does not plead that each of the various Individual Vaxart Defendants, or for that matter anyone at Vaxart, had knowledge of information that conflicted with the OWS Release.  Their status as outside directors or officers alone is legally insufficient.  *See Cho v. UCBH Holdings, Inc.*, No. C 09-4208 JSW, 2011 U.S Dist. LEXIS 100850, at *32 (N.D. Cal. May 7, 2011) ("Plaintiffs must do more than allege that … key officers had the requisite knowledge by virtue of their … position[s]") (internal quotation marks and citation omitted).

Third, the "confidential witness" allegations do not plead scienter, just as they do not help Plaintiffs' threshold failure to plead a false statement.  Those CWs do not even purport to have any knowledge regarding OWS—indeed, the *only* CW who ever worked at Vaxart (CW1) is a *former* employee who Plaintiffs acknowledge was terminated on December 31, 2019, (CAC ¶ 61), long before Covid-19 was identified in the U.S. and, thus, before OWS was launched to cure it.  *See McGovney v. Aerohive Networks, Inc.*, No. 18-CV-00435-LHK, 2019 US Dist LEXIS 228702, at *60-61 (N.D. Cal., Aug. 7, 2019) (CWs not employed during class period entitled to "little weight").

Lacking facts probative of an intent to mislead, Plaintiffs resort to classically generic allegations of "motive and opportunity"—such as Vaxart's capital raises, routine options grants and other unrelated corporate activity that "are not sufficient to create a strong inference of [even] deliberate recklessness" with respect to the OWS Release.  *In re Silicon Graphics Sec. Litig.,* 183 F.3d 970, 974 (9th Cir. 1999).

Plaintiffs' generic allegation that Vaxart was motivated in June 2020 to inflate its stock price because it "needed cash" could be said of any company that needs money and sells stock (meaning, it could be said of every clinical-stage pharmaceutical aspirant). *See Rigel Pharm.*, 697 F.3d at 884 ("planning to raise capital in a stock offering" insufficient to plead scienter).

Similarly insufficient are Plaintiffs' boilerplate allegations about options grants to Individual Vaxart Defendants, which for decades the Ninth Circuit has rejected because stock-based compensation "motive and opportunity" is "common and ha[s] limited probative value as to scienter." *See Milton Arbitrage Partners, LLC v. Syncor Int'l Corp. (In re Syncor Intl. Corp. Sec. Litig.)*, 239 F. App'x 318, 321 (9th Cir. 2007) (regarding stock-based bonuses), *amended by*, No. 05-55748, 2007 U.S. App. LEXIS 25599 (9th Cir. Oct. 30, 2007). Plaintiffs' conclusion that the grants were "unusual in their amount and timing," adjectives without further explication, is not as "cogent and at least as compelling as any opposing [innocent] inference"—namely, that the options were granted prior to OWS, consistent with past company grants, and/or for legitimate reasons.[10] *Tellabs*, 551 U.S. at 324. Further, the CAC does not (and cannot) allege that the Individual Vaxart Defendants sold the options' related shares during the class period. *See Extreme Networks*, 2017 U.S. Dist. LEXIS 64297, at *75-76 (no scienter where no stock option sales during class period).[11] Thus, taken together, more compelling inference under *Tellabs*

---

[10]Indeed, the options to Latour, Tucker, and Echerd were granted on March 24 before OWS was even formed (*see* Ex. 13, p. 32 (describing March 24 grant)); the options to Floroiu were approved on April 14, relating to his Board election, and on June 13 for becoming CEO (*see* Ex. 13, p. 38 (describing award of 54,720 options to Floroiu upon election to board), p. 44 ("[e]ach independent non-employee director that [] joined the Board was awarded 54,720 options vesting … over three years."); Ex. 14 (describing time- and performance-based options to Floroiu upon appointment to CEO)); and outside directors Yedid, Davis and Finney received an annual option grant consistent with Vaxart's past equity compensation to directors (*see* Ex. 13, pp. 44 (same); Ex. 15). Plaintiffs also acknowledge that the options were approved by a majority of the Board and Vaxart's shareholders. (CAC ¶ 162 n.3.)

[11]In fact, Plaintiffs' allegation that that Defendant Latour exercised his options—and thereby <u>increased</u> his Vaxart stock position—during the class period further rebuts scienter. *See Webb v. SolarCity Corp.*, 884 F.3d 844, 856 (9th Cir. 2018) (defendants' increasing stock position during class period was inconsistent with scienter). Defendant Davis' alleged April 19 stock sales preceded the Class Period and therefore cuts against scienter or, at least, is irrelevant. *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1117 (9th Cir. 1989)("Large sales of stock before the class period … are inconsistent with plaintiffs' theory that defendants attempted to drive up the price of [the Company's] stock *during* the class period."); *In re Ashworth Secs. Litig.*, No. 99-cv-0121-L(JAH), 2000

is that the options were granted for routine and legitimate business reasons.  *See In re Extreme Networks, Inc.*, No. 15-cv-04883-BLF, 2018 U.S. Dist. LEXIS 46638, at *97-98 (N.D. Cal. Mar. 21, 2018) ("unusual stock option grant" did not give rise to scienter given lack of stock sales).[12]

### 4.   The CAC Fails to Allege the OWS Release Caused Their Losses

Plaintiffs also fail to plead loss causation.  Contrary to the CAC, the July 25 *New York Times* article is not a corrective disclosure because it confirms that Vaxart's vaccine was selected for the OWS study and, as mentioned, the OWS Release is silent regarding Vaxart's receipt of funding.  The article's reference to "concerns" relayed to the SEC also fails to establish loss causation.  *See Loos v. Immersion Corp.*, 762 F.3d 880, 890 n.3 (9th Cir. 2014) ("[T]he announcement of an investigation, standing alone and without any subsequent disclosure of actual wrongdoing, does not reveal to the market the pertinent truth of anything") (internal quotation marks and citation omitted).[13]

Similarly, the August 19 *Business Insider* article is a red herring.  Plaintiffs mischaracterize this article by alleging that OWS head Slaoui's comments were directed at Vaxart. (CAC ¶ 126).  However, Slaoui said nothing about Vaxart—indeed, the CAC omits the article's statement that "Slaoui didn't name specific companies."*See* Ex. 11.  Further, it did not reveal any new facts even compared to the July 25 *NYT* article, and thus any continued stock decline after the *NYT* article cannot be attributable to the alleged misstatements.  *See Bonanno v. Cellular Biomedicine Grp., Inc.*, No. 15-cv-01795-WHO, at *15 (N.D. Cal. May 20, 2016) ("New information is critical to demonstrating loss causation.").

---

U.S. Dist. LEXIS 15237, at *31 (S.D. Cal. July 18, 2000) ("scienter cannot be properly inferred" as to defendant who did not sell stock during the class period).

[12]Plaintiffs cannot rely on the "core operations" theory to establish scienter.  This theory requires a plaintiff to "produce either specific admissions by one or more corporate executives of detailed involvement in the minutia of a company's operations … or witness accounts demonstrating that executives had actual involvement in creating false reports." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.,* 759 F.3d 1051, 1062 (9th Cir. 2014).  The CAC does not even purport to allege either required component.

[13]Similarly, contrary to Plaintiffs' intimations, the mere fact of an open governmental investigation is also insufficient to establish scienter or a misstatement. *In re Hansen Natural Corp. Sec. Litig.,* 527 F. Supp. 2d 1142, 1162 (C.D. Cal. 2007) ("the mere existence of [an] investigation cannot support any inferences of wrongdoing or fraudulent scienter on the part of [a] company or its senior management.") (quotations and citation omitted).

**B.**     **Plaintiffs' Sundry Allegations About a Vendor Contract and Pre-Pandemic Norovirus Research Add Nothing**

Plaintiffs cannot save their failed challenge to the accurate OWS Release by raising a hodgepodge of unrelated, and also true, statements (1) regarding Vaxart's announcement of an MOU with Attwill; (2) its progress with vaccine development; and (3) pre-pandemic (and pre-Class Period) statements regarding the Company's norovirus program.   Standing alone, or read into the broader context, these new paltry allegations do not save the CAC.

**1.   The Attwill Release**

The CAC claims that the Attwill Release was a fraud because Attwill lacked the logistical competence or regulatory compliance necessary to manufacture vaccines.  (CAC ¶¶ 103-104).  This fails to allege a misleading statement for the following reasons.

First, Plaintiffs again mischaracterize, this time, the Attwill Release by selective quotation. Vaxart most assuredly did not "announce[] that it had partnered with Attwill to manufacture a billion or more doses per year," nor did it make any affirmative statements about Attwill's then-current logistical or regulatory capacity.  (CAC ¶¶ 136-137; *see* Exs. 7, 10.)  Rather, Vaxart stated that it signed a *preliminary MOU* reflecting "the parties' ***intent*** to establish [Attwill] as a ***resource*** for…manufacturing" its vaccine, if and when the vaccine was successfully developed.  *See* Exs. 7, 10 (emphasis added); *Vantive Corp.*, 283 F.3d at 1086-87 (statement touting strong sales capabilities not misleading despite sales team challenges); *Extreme Networks*, 2017 U.S. Dist. LEXIS 64297, at *48-49.

Second, the Attwill Release is a forward-looking statement protected under the PSLRA's safe harbor.  15 USC § 78u-5(c)).  Vaxart announced that "[Attwill] ***will be*** assigning dedicated resources and equipment for the ***scale up*** and commercial production of the vaccine ***upon entering a formal agreement***" with Vaxart and Floroiu "believe[d]" that Attwill's ability—after such scale up—"to manufacture a billion or more doses per year would … ultimate[ly]" benefit a Vaxart vaccine distribution.Ex. 7.The Attwill Release cautioned of the uncertainty that the parties would reach "a formal

agreement" or whether Vaxart's vaccine would prove successful at all. (*Id.*)[14] Vaxart's prediction—contingent on the occurrence of future events (such as FDA approval or execution of a contract)—was clearly forward-looking and inactionable. *See In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 930-31 (9th Cir. 1996) (predictions relying on FDA approval were inactionable "forecast[s of] a future event").[15]

Third, Plaintiffs fail to particularize any basis for falsity—that is they do not plead that Attwill's regulatory status or logistical incapacity rendered it unable to perform on the MOU as of the date of the Attwill Release (or, for that matter, ever). Vague allegations that some Attwill employees "felt overworked" and/or "assumed duties in other areas" are generically meaningless as a matter of law. *See Ronconi v. Larkin*, 253 F3d 423, 434 (9th Cir. 2001) ("Problems and difficulties are the daily work of businesspeople. That they exist does not make a lie out of any of the alleged false statements."). Similarly, the CAC fails to plead the "Gap Assessment's" specific findings, when it was issued, how long it would take for Attwill to remedy the "gaps," or why that could not be achieved under the parties' plan to "scale up" production once a formal agreement had been reached. *See id.* ("A company could experience 'serious operational problems,' … and still [meet projections]") (citation omitted).[16] If anything, Plaintiffs spotlight their failure to plead falsity by attributing the "truth" about Attwill to confidential Attwill witnesses—lower level quality control employees from before the class period—who are not alleged to possess "reliability and personal knowledge" to comment on Attwill's overall capabilities and future compliance strategy.[17] *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995

---

[14]Vaxart also cautioned that it "may not be able to reach a definitive agreement with [Attwill] on terms acceptable to [Vaxart], if at all." Ex. 9.

[15]Even a statement including both forward-looking and non-forward-looking statements, is protected if, when "examined as a whole, the challenged statement[] relate[s] to future expectations and performance." *Police Ret. Sys.*, 759 F.3d at 1059 (citation omitted).

[16]*See also Syntex Corp*, 95 F.3d at 930-31 (known deficiencies related to testing did not render forecast false, as the company could have known of deficiencies and planned to remedy them).

[17]CW2, a low-level former Attwill employee, conducted his regulatory Gap Assessment "early" in 2020, and separated from the company in July 2020. (CAC ¶¶ 107-111). The CAC is unclear whether CW3, who left the company in "June 2020," worked for Attwill during the Class Period *at all*. (*Id.* ¶ 107). Neither CW is competent

(9th Cir. 2009); *see also Extreme Networks*, 2017 U.S. Dist. LEXIS 64297, at *49-50 (CWs statement deficient because unclear how they "would have been privy" to company's broader strategy).

Fourth, Plaintiffs do not plead scienter as to the Attwill Release because they fail to plead "detailed allegations about the [D]efendants' ***actual exposure to information***" regarding Attwill's—a counterparty—alleged logistical or compliance challenges.*S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008) (emphasis added).[18]   Further, CW2 and CW3 are not alleged to have "had any interaction or communication with any of the defendants." *In re Rackable Sys., Inc. Sec. Litig.,* No. C 09-0222 CW, 2010 U.S. Dist. LEXIS 2663, at *22-23 (N.D. Cal. Jan. 13, 2010) (internal quotation marks and citation omitted).  And, as mentioned, Plaintiffs' "motive and opportunity" allegations are facially insufficient to establish scienter.

Finally, there is no loss causation.  That is, even if the Atwill Release somehow fraudulently inflated Vaxart's stock, Plaintiffs have not pleaded a resultant "loss" because they do not allege that the "truth" came out, which, standing alone, is sufficient grounds for dismissal.  *Metzler*, 540 F.3d at 1063.

### 2.   Statement Regarding Vaccine Development

The remarks of Vaxart's CSO, Sean Tucker, cited in the CAC are inactionable forecasts and corporate puffery, as "reasonable investors do not consider 'soft' statements or loose predictions important in making investment decisions." *In re Copper Mt. Secs. Litig.*, 311 F. Supp. 2d 857, 868 (N.D. Cal. 2004) (internal quotation marks and citation omitted).  Statements that Vaxart was "working really fast" and was "about [ready to] submit our IND … to start dosing people soon in the summer of [2020]," (CAC ¶ 137;), are "mildly optimistic, subjective assessment[s]," which "[do not] amount[ ] to

---

to provide information concerning Attwill subsequent to their termination.  *See Brodsky*, 630 F. Supp. 2d at 1115 ("the Court cannot rely on [terminated CW's] statements to support claims … for the entire class period").

[18]*See Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1194 (9th Cir. 2021) (CEO's statement not actionable unless he "*shared* [the CW's] gloomy view" and "*knew* their year's end goal was *impossible* to achieve….") (emphasis in original); *In re Lockheed Martin Corp. Secs. Litig.*, 272 F. Supp. 2d 928, 936-37 (C.D. Cal. 2002) (no scienter for statement "expecting to successfully conclude negotiations" with a counterparty who was unable to consummate).

a securities violation." *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010).  That human trials began in October does not render a Summer prediction "false" or make any material difference.  *See Nguyen v. Endologix, Inc.*, No. 17-00017-AB (PLAx), 2018 U.S. Dist. LEXIS 233252, at *16-17 (C.D. Cal. Sept. 6, 2018) (statements that "on track" and "doing as expected" despite known problems were "too ambiguous to be material" or for "falsity or scienter."), *aff'd*, 962 F.3d 405 (9th Cir. 2020).

Plaintiffs also fail to allege scienter or loss causation (*i.e.*, a corrective disclosure).  Nor could they, as Vaxart said nothing untrue about its vaccine progress and issued numerous cautionary public statements on development.  *See Welgus v. TriNet Grp., Inc*., No. 15-cv-03625-BLF, 2017 U.S. Dist. LEXIS 207777, at *41-42 (N.D. Cal. Dec. 18, 2017) (statement is only actionable if, "when read in light of all the information then available to the market …[it] convey[s] a false or misleading impression."), *aff'd*, 765 F. App'x 239 (9th Cir. 2019).

### 3.  Norovirus Program Statements Preceding the Class Period

Plaintiffs' redundant allegations regarding Vaxart's norovirus program all substantially predate the class period and are therefore irrelevant and inactionable.  *See In re Clearly Canadian Sec. Litig.*, 875 F. Supp. 1410, 1420 (N.D. Cal. 1995) (striking pre-class statements because "statements made…before or after the purported class period are irrelevant").  Plaintiffs also lack standing to assert claims regarding the norovirus statements, which were made before Plaintiffs' alleged purchases of Vaxart stock.  *See, e.g., Shurkin v. Golden State Vintners, Inc*., 471 F. Supp. 2d 998, 1022-23 (N.D. Cal. 2006), *aff'd*, 303 F. App'x 431 (9th Cir. 2008).  The CAC also fails to adequately allege how the norovirus statements—to discontinue the manufacturing aspect but continue to pursue partnerships—were actually false, nor do they identify a related corrective disclosure.  Claims based on the pre-class statements should therefore be dismissed.

C.     **The CAC Fails to State a Claim for Control Person Liability Under Section 20(a)**

Plaintiffs' control person claim should be dismissed because Plaintiffs' predicate Section 10(b) claim fails. *See Webb v. SolarCity Corp*., 884 F.3d 844, 858 (9th Cir. 2018).  Further, Plaintiffs do not "plead ***specific facts*** establishing" that any Individual Vaxart Defendant "exercised a ***significant degree*** of day to day operational control over" Vaxart, instead only reciting the boilerplate standard.  *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1081 (N.D. Cal. 2010) (internal quotation marks and citation omitted) (emphasis added).

The CAC's claims against outside directors, Yedid, Davis, and Finney are plainly inadequate because status as an officer or director alone is insufficient to demonstrate control.  *In re Amgen Inc. Secs. Litig*., 544 F. Supp. 2d 1009, 1037 (C.D. Cal. 2008).  The rote allegations that the outside directors had "access to" to the releases and/or power to prevent publication never suffice.  *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2017 U.S. Dist. LEXIS 1109, at *856-58 (N.D. Cal. Jan. 4, 2017) (conclusions that directors "involved in the day-to-day operations of" company and "direct[ed] their public statements" did not plead control).  Claims against officers Echerd and Tucker should be rejected for the same reason because Plaintiffs fail to plead any specific facts as to their conduct, much less control over Vaxart and their superiors.  *See Middlesex Ret. Sys. v. Quest Software Inc.*, 527 F. Supp. 2d 1164, 1194 (C.D. Cal. 2007) (dismissing 20(a) claim because it was unclear how officer could "control" peers and superiors).  And Plaintiffs cannot plead Latour's control because there are no specific allegations that Latour's title (Chairman) bestowed him with actual control over Vaxart during the class period, much less that he actually participated in the challenged conduct.  *See In re Volkswagen*, 2017 U.S. Dist. LEXIS 1109, at *856-58 (chairmanship alone is insufficient for control person liability); *Tai Jan Bao v. SolarCity Corp.*, No. 14-cv-01435-BLF, 2015 U.S. Dist. LEXIS 55711, at *15-16 (N.D. Cal. Apr. 27, 2015) (same).

## **CONCLUSION**

For the foregoing reasons, the CAC should be dismissed with prejudice in its entirety.

Dated: March 12, 2021

THOMPSON HINE LLP

By: */s/ Menachem Mendy Piekarski*
Menachem Mendy Piekarski (SBN 326531)
*Attorneys for Defendants Vaxart, Inc.*
*Cezar Andrei Floroiu, Wouter W. Latour, M.D.*
*Todd Davis, Michael Finney, Robert Yedid, Sean*
*Tucker, and Margaret Echerd*