**AKIN GUMP STRAUSS HAUER & FELD LLP**
NEAL R. MARDER (SBN 126879)
ALI R. RABBANI (SBN 253730)
JOSHUA A. RUBIN (SBN 308421)
SINA SAFVATI (SBN 313287)
1999 Avenue of the Stars, Suite 600
Los Angeles, California 90067
Email: nmarder@akingump.com
        arabbani@akingump.com
        rubinj@akingump.com
        ssafvati@akingump.com
Telephone:     310.229.1000
Facsimile:     310.229.1001

Attorneys for Defendants
ARMISTICE CAPITAL, LLC, STEVEN J. BOYD,
and KEITH MAHER, M.D.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

|  |  |
|---|---|
| In re VAXART, INC. SECURITIES LITIGATION<br><br>_____<br><br>This Document Relates to:<br>    ALL ACTIONS | Case No. 3:20-cv-05949-VC<br><br>**CLASS ACTION**<br><br>**ARMISTICE DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**<br><br>Date:      May 13, 2021<br>Time:      10:00 a.m.<br>Place:     Courtroom 4, 17th Floor<br>Judge:    Hon. Vince Chhabria |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on May 13, 2021, at 10:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Vince Chhabria, located at United States District Court for the Northern District of California, San Francisco Division, 450 Golden Gate Avenue, San Francisco, California 94102, Defendants Armistice Capital, LLC ("Armistice"), Steven J. Boyd, and Keith Maher, M.D. (collectively, the "Armistice Defendants") will and hereby do move to dismiss Plaintiffs' Consolidated Amended Complaint ("CAC") pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) and the Private Securities Litigation Reform Act of 1995 ("PSLRA").

This Motion is based upon this Notice of Motion and Motion, the Armistice Defendants' Memorandum of Points and Authorities, the Armistice Defendants' Request for Judicial Notice, the Declaration of Neal R. Marder and the exhibits attached thereto, the Vaxart Defendants' Motion to Dismiss and supporting documents, which the Armistice Defendants join, the Court's files in this action, the arguments of counsel, and any other matter that the Court may consider.

## ISSUES TO BE DECIDED (Civil Local Rule 7-4(a)(3))

1.  Should the Section 10(b) claim against Boyd and Maher be dismissed where Plaintiffs fail to plead facts plausibly showing: (i) Boyd or Maher "made" any challenged statement or engaged in any fraudulent or deceptive scheme; (ii) any statements were materially false or misleading; (iii) a strong inference of scienter; and (iv) loss causation linking a decline in stock price to a corrective disclosure?

2.  Should the Section 20(a) claim against the Armistice Defendants be dismissed where no primary violation is alleged, and where Plaintiffs fail to plead that Boyd, Maher, and Armistice "controlled" any primary violators of the Exchange Act?

3.  Should the Section 20A claim against Armistice be dismissed where no insider trading violation of the Exchange Act occurred and where neither Boyd nor Maher traded Vaxart stock while in possession of material non-public information?

i

ARMISTICE DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. 3:20-cv-05949-VC

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

FACTUAL BACKGROUND ....................................................................................................2

ARGUMENT .............................................................................................................................4

I.  PLAINTIFFS FAIL TO PLEAD A SECTION 10(b) CLAIM AGAINST
    BOYD OR MAHER.........................................................................................................4

      A.      Boyd and Maher Did Not "Make" Any Alleged Misrepresentations. ...........................4

      B.      Plaintiffs Fail to Allege Any False or Misleading Statements......................................4

      C.      Plaintiffs Fail to Allege That Boyd or Maher Acted with Scienter. .............................7

      D.      Plaintiffs Fail to Allege Loss Causation. ..................................................................11

II.  PLAINTIFFS FAIL TO ALLEGE A SECTION 20(a) CLAIM AGAINST THE ARMISTICE
    DEFENDANTS ...............................................................................................................12

      A.      Plaintiffs Fail to Allege a Section 20(a) Claim Against Boyd and Maher...................12

      B.      Plaintiffs Fail to Allege a Section 20(a) Claim Against Armistice..............................14

III.  PLAINTIFFS FAIL TO ALLEGE A SECTION 20A CLAIM ..................................................15

IV.  CONCLUSION .....................................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                    **Page(s)**

*In re Apple Computer Sec. Litig.*,
   886 F.2d 1109 (9th Cir. 1989) ......................................................................9

*In re Arrowhead Research Corp. Sec. Litig.*,
   2016 WL 6562066 (C.D. Cal. Mar. 29, 2016) .......................................15

*In re Autodesk, Inc. Sec. Litig.*,
   132 F. Supp. 2d 833 (N.D. Cal. 2000) .....................................................7

*In re Bare Escentuals, Inc. Sec. Litig.*,
   745 F. Supp. 2d 1052 (N.D. Cal. 2010) .................................................13

*In re BofI Holding, Inc. Sec. Litig.*,
   977 F.3d 781 (9th Cir. 2020) ..................................................................11

*Brodsky v. Yahoo! Inc.*,
   630 F. Supp. 2d 1104 (N.D. Cal. 2009) ...................................................8

*Browning v. Amyris, Inc.*,
   2014 WL 1285175 (N.D. Cal. Mar. 24, 2014)........................................6

*Bruce v. Suntech Power Holdings Co.*,
   2013 WL 6843610 (N.D. Cal. Dec. 26, 2013) .......................................12

*Burgess v. Premier Corp.*,
   727 F.2d 826 (9th Cir. 1984) ..................................................................13

*In re Clearly Canadian Sec. Litig.*,
   875 F. Supp. 1410 (N.D. Cal. 1995) ........................................................6

*In re CytRx Corp. Sec. Litig.*,
   2015 WL 5031232 (C.D. Cal. July 13, 2015) ..........................................4

*Dura Pharm., Inc. v. Broudo*,
   544 U.S. 336 (2005)................................................................................11

*Fadia v. FireEye, Inc.*,
   2016 WL 6679806 (N.D. Cal. Nov. 14, 2016) ........................................7

*In re FoxHollow Techs., Inc., Sec. Litig.*,
   2008 WL 2220600 (N.D. Cal. May 27, 2008) .........................................6

*In re Gupta Corp. Sec. Litig.*,
   900 F. Supp. 1217 (N.D. Cal. 1994) ...............................................12, 15

*In re Hansen Natural Corp. Sec. Litig.*,
  527 F. Supp. 2d 1142 (C.D. Cal. 2007) ...................................................................13

*In re Int'l Rectifier Corp. Sec. Litig.*,
  2008 WL 9453468 (C.D. Cal. Dec. 31, 2008) .........................................................14

*Janus Capital Grp. v. First Deriv. Traders*,
  564 U.S. 135 (2011) ...............................................................................................2, 4

*Local No. 8 IBEW Ret. Plan & Tr. v. Vertex Pharms., Inc.*,
  838 F.3d 76 (1st Cir. 2016) .......................................................................................9

*Loos v. Immersion Corp.*,
  762 F.3d 880 (9th Cir. 2014) ...................................................................................11

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
  540 F.3d 1049 (9th Cir. 2008) ...............................................................................7, 9

*In re Nektar Therapeutics*,
  2020 WL 3962004 (N.D. Cal. July 13, 2020)............................................................9

*In re NVIDIA Corp. Sec. Litig.*,
  768 F.3d at 1052 ......................................................................................................12

*O'Sullivan v. Trident Microsystems, Inc.*,
  1994 WL 124453 (N.D. Cal. Jan. 31, 1994).......................................................13, 15

*Oregon Pub. Employees Ret. Fund v. Apollo Grp. Inc.*,
  774 F.3d 598 (9th Cir. 2014) .....................................................................................7

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
  759 F.3d 1051 (9th Cir. 2014) ...............................................................................8, 11

*Rok v. Identiv, Inc.*,
  2017 WL 35496 (N.D. Cal. Jan. 4, 2017) ...............................................................11

*Ronconi v. Larkin*,
  253 F.3d 423 (9th Cir. 2001) .....................................................................................6

*Roth v. Solus Alt. Asset Mgmt. LP*,
  124 F. Supp. 3d 315 (S.D.N.Y. 2015)......................................................................10

*Rubke v. Capitol Bancorp Ltd.*,
  551 F.3d 1156 (9th Cir. 2009) ...................................................................................8

*S. Ferry LP, No. 2 v. Killinger*,
  542 F.3d 776 (9th Cir. 2008) ...............................................................................7, 10

iii

*Shurkin v. Golden State Vintners, Inc.*,
    471 F. Supp. 2d 998 (N.D. Cal. 2006) ......................................................................6

*In re Silicon Graphics, Inc. Sec. Litig.*,
    183 F.3d 970 (9th Cir. 1999) ....................................................................................9

*In re Solarcity Corp. Sec. Litig.*,
    274 F. Supp. 3d 972 (N.D. Cal. 2017) ....................................................................11

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
    2000 WL 1727405 (N.D. Cal. Sept. 29, 2000) ...............................................13, 15

*United States v. Smith*,
    155 F.3d 1051 (9th Cir. 1998) ..................................................................................7

*In re Versant Object Tech. Corp.*,
    2000 WL 33960105 (N.D. Cal. May 18, 2000) ......................................................13

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
    328 F. Supp. 3d 963 (N.D. Cal. 2018) ....................................................................15

*Webb v. SolarCity Corp.*,
    884 F.3d 844 (9th Cir. 2018) ..................................................................................12

*Wochos v. Tesla, Inc.*,
    985 F.3d 1180 (9th Cir. 2021) ..................................................................................6

*Xiaojiao Lu v. Align Tech., Inc.*,
    417 F. Supp. 3d 1266 (N.D. Cal. 2019) ....................................................................5

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) .............................................................................8, 11

**Statutes**

15 U.S.C. § 78u-5(c) .......................................................................................................6

**Other Authorities**

17 C.F.R. § 230.405 ......................................................................................................12

17 C.F.R. § 240.13d-1(a) ................................................................................................3

**Other Authorities (continued)**

17 C.F.R. § 240.16a-1(a)(1)............................................................................................3

Rule 10b-5(a) .............................................................................................................7

Rule 10b-5(b) ..........................................................................................................4, 7

Rule 10b-5(c) ............................................................................................................7

ARMISTICE DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. 3:20-cv-05949-VC

## PRELIMINARY STATEMENT

Stripped of its salacious conjecture, the CAC fails to adequately allege a single claim against the Armistice Defendants.  Rather, the CAC tells the story of Armistice's successful investment in Vaxart—a publicly-traded company focused on developing oral vaccines—before the COVID-19 pandemic.  Because the CAC does not sufficiently allege that the Armistice Defendants violated any law, the claims against them should be dismissed.

Armistice is an institutional investor that provides financing to development-stage companies in the pharmaceutical space.  In 2018, long before the COVID-19 pandemic, Armistice invested in Vaxart, which was developing oral norovirus and flu vaccines at the time. Armistice continued to provide the company with much needed capital, ultimately becoming a majority shareholder in late 2019 with two representatives on Vaxart's Board.  Armistice also acquired warrants to purchase additional shares of Vaxart stock in April and September 2019.

While COVID-19 has had a devastating effect on many industries, it has boosted the prospects of some businesses, including vaccine developers like Vaxart.  Vaxart's stock price increased during the first quarter of 2020 as the company announced a program to develop an oral coronavirus vaccine.  Armistice realized gains for its investors by selling much of its stock in Vaxart, reducing its beneficial ownership interest in the company to below 10% *before* the Class Period.  Following additional news regarding Vaxart's participation in a non-human primate study organized by Operation Warp Speed ("OWS"), Armistice exercised its warrants and sold almost all of its remaining stock, effectively exiting its position in a now-thriving company.  In the face of these straightforward facts—an investor buying low and selling high— Plaintiffs manufacture an alleged "pump-and-dump" scheme premised on statements Vaxart never made.  This story is patently false.  But, even assuming the truth of the CAC's allegations,

Plaintiffs fail to adequately allege any violation of law against the Armistice Defendants.

*First*, the CAC fails to allege a Section 10(b) claim against Boyd or Maher.  The CAC does not attribute a *single* misrepresentation to Boyd or Maher, nor does it sufficiently allege the falsity of any statement made by Vaxart.  The CAC also fails to make the necessary specific allegations to support a strong inference that Boyd or Maher acted with scienter.  Likewise, the CAC does not allege any corrective disclosure sufficient to establish loss causation.

*Second*, the CAC does not allege a single fact suggesting that Boyd and Maher had the significant day-to-day control of Vaxart necessary for a Section 20(a) violation.  Likewise, the control person claim against Armistice fails because, contrary to Plaintiffs' suggestion, Armistice owned less than 10% of Vaxart's stock during the relevant period.

*Third*, because Plaintiffs cannot point to an underlying securities law violation, and Armistice did not trade on material non-public information ("MNPI"), the CAC fails to allege that Armistice violated Section 20A.

## FACTUAL BACKGROUND

Armistice is an investment firm focused on health care and consumer companies.  CAC ¶ 44.  Steven Boyd is Armistice's founder and Chief Investment Officer, and Keith Maher, M.D. serves as Armistice's Managing Director.  *Id.*  Armistice began investing in Vaxart in 2018.  *Id.* ¶ 46.  By the end of 2019, Armistice owned more than 50% of Vaxart's outstanding shares.  *Id.* ¶ 55.  But starting in January 2020, Armistice's holdings in Vaxart began to decrease as a result of stock issuances and other dilutive events.  *See, e.g.*, Ex. 10, at 43.[1]  By June 3, 2020, Armistice held only 9.4% of Vaxart's stock.  CAC ¶¶ 83, 150.

In addition to holding shares of Vaxart common stock, Armistice acquired two series of

---

[1] All exhibits herein refer to the concurrently-filed Declaration of Neal R. Marder.

Vaxart warrants.  On April 11, 2019—a day on which Vaxart's stock price closed at $0.90 per

share—Armistice acquired warrants to purchase 4,090,909 shares of Vaxart common stock at

$1.10 per share.  *Id.* ¶ 51.  On September 30, 2019—a day on which Vaxart's stock price closed

at $0.36 per share—Armistice acquired warrants to purchase 16,666,667 shares of Vaxart

common stock at $0.30 per share.  *Id*. ¶ 54.  Each warrant included a "blocker" provision.

Blocker provisions protect the warrant holder—here, Armistice—from crossing certain

ownership thresholds that trigger SEC filing obligations.  *See, e.g.*, 17 C.F.R. § 240.13d-1(a); *id.*

§ 240.16a-1(a)(1).  The $1.10 warrants originally had a 4.99% blocker, meaning Armistice could

not exercise the warrants if it already owned more than 4.99% of Vaxart's outstanding shares.

Similarly, the $0.30 warrants originally had a 9.99% blocker, meaning Armistice could not

exercise the warrants if it already owned more than 9.99% of the company's outstanding shares.

The warrants also provided Armistice the right to change the threshold percentages of the

blockers by providing 60 days' notice to Vaxart, subject to an upper bound of 9.99%.  Ex. 8, at

5-6; Ex. 9, at 5-6.  This notice provision related only to Armistice's ability to increase the

beneficial ownership limitations, and did *not* affect its ability to freely exercise the warrants.  *Id.*

　　　In October 2019, Boyd and Maher joined Vaxart's Board.  CAC ¶ 56.  Armistice has

never had any other representatives or appointees on the Board.  At all relevant times, the Board

consisted of at least seven, and sometimes eight, directors.  *Id*. ¶¶ 34-40.

　　　On June 5, 2020, Vaxart's Board approved amendments to the warrants by unanimous

written consent, increasing the beneficial ownership limitations on both series to 19.99%.  *Id.*

¶ 95.  Through the warrant amendments, Armistice also relinquished the right to change the

blocker percentage threshold on 60 days' notice.  *Id.*  The warrant amendments did not award

any new shares or warrants to Armistice, nor did they alter the price or duration of the original

warrants.  Ex. 7, at 216.  These essential pricing terms remained "in full force and effect."  *Id.*

Armistice did not trade in Vaxart stock between June 3 and June 26, 2020.  CAC ¶ 150.

After Vaxart's announcement regarding the OWS primate study was made public on June 26,

2020, Armistice began exercising its warrants.  Armistice could not exercise all of its warrants at

once due to the 19.99% blocker, so it necessarily had to do so in blocks, successively selling

down its holdings and then buying back below the 19.99% threshold.  On June 26 and 29, 2020,

Armistice sold the stock it acquired through the exercise of the warrants.  *Id*. ¶¶ 114-15.

## ARGUMENT

I.    <u>PLAINTIFFS FAIL TO PLEAD A SECTION 10(b) CLAIM AGAINST BOYD OR
      MAHER</u>

   A.    **Boyd and Maher Did Not "Make" Any Alleged Misrepresentations.**

Only the "maker" of a false or misleading statement may be liable under Rule 10b-5(b).

*Janus Capital Grp. v. First Deriv. Traders*, 564 U.S. 135, 142 (2011).  Yet, in the entire 205-

paragraph CAC, Plaintiffs do not attribute *any* challenged statement to Boyd or Maher.  Nor does

the CAC allege that Boyd or Maher influenced or helped draft any challenged statement.  For

that reason alone, Plaintiffs' Rule 10b-5(b) claim against Boyd and Maher should be dismissed.[2]

   B.    **Plaintiffs Fail to Allege Any False or Misleading Statements.**

Plaintiffs also fail to identify any false statement that could support their 10b-5 claims.[3]

First, Vaxart's June 26, 2020 press release was not false or misleading.  This statement was

---

[2] To overcome *Janus*, Plaintiffs try to allege that Boyd and Maher had "ultimate authority" over the challenged statements by helping create the press releases.  CAC ¶ 43.  But this conclusory assertion does not transform Boyd and Maher into "makers" of the challenged statements.  *See In re CytRx Corp. Sec. Litig.*, 2015 WL 5031232, at *6 (C.D. Cal. July 13, 2015) (following *Janus*, courts routinely disallow Section 10(b) claims "against defendants who merely requested, influenced, helped create, or supplied information for the relevant false or misleading statements").

[3] The Armistice Defendants incorporate by reference the Vaxart Defendants' arguments here.  *See* Vaxart Defendants' Motion to Dismiss, Section III.A(i)-(ii), III.B(i)-(iii).

subtitled "*OWS to Test First Oral COVID-19 Vaccine in Non-Human Primates*," and explained that Vaxart's oral vaccine candidate had "been selected to participate in a non-human primate (NHP) challenge study, organized and funded by Operation Warp Speed . . . ." Ex. 2. Plaintiffs *admit* this statement was true—Vaxart *was* selected to participate in a non-human primate study organized and funded by OWS. CAC ¶¶ 15, 117, 139. And analyst reports published after the press release recognized that Vaxart's inclusion in OWS was limited to "a non-human primate challenge study." Ex. 5. Plaintiffs nonetheless allege that Vaxart misled investors by stating it was "one of the few companies selected by Operation Warp Speed." CAC ¶¶ 15, 18, 117, 138-39. According to Plaintiffs, this statement was false and misleading because it implied that Vaxart was selected to receive funding by OWS to produce its vaccine candidate. *Id.* But the June 26, 2020 press release says *nothing* about Vaxart receiving funding for its vaccine candidate, and the single, out-of-context phrase on which Plaintiffs' entire case rests— that Vaxart was "selected" by OWS—does not suggest otherwise. Ex. 2. Plaintiffs cannot allege falsity by "cherry-picking portions of Defendants' statements and ignoring other portions . . . to make inferences contradicted by the statements viewed properly as a whole." *Xiaojiao Lu v. Align Tech., Inc.*, 417 F. Supp. 3d 1266, 1275-76 (N.D. Cal. 2019).

Second, Plaintiffs fail to allege that Vaxart's June 25, 2020 press release announcing its memorandum of understanding ("MOU") with Attwill Medical Solutions Sterilow, LP ("Attwill") was false or misleading. Contrary to Plaintiffs' blatant mischaracterization, Vaxart did not "declar[e] that the Company had signed an MOU with Attwill 'to manufacture a billion or more doses per year' of Vaxart's COVID-19 vaccine." CAC ¶ 136. The press release states that Vaxart signed an MOU "affirming the parties' *intent* to establish [Attwill] as a resource for . . . manufacturing" its vaccine "*upon entering a formal agreement*." Ex. 1. Such forward-

5

ARMISTICE DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. 3:20-cv-05949-VC

looking statements are not actionable under the PSLRA.  15 U.S.C. § 78u-5(c); *Browning v. Amyris, Inc.*, 2014 WL 1285175, at *13 (N.D. Cal. Mar. 24, 2014) (statement "'we expect to produce between 2 million and 3 million liters of Biofene this year,' falls under the PSLRA's safe harbor").  Moreover, the vague statements from Plaintiffs' confidential witnesses ("CW")— lower level quality control employees—that Attwill *may* have faced logistical challenges or regulatory obstacles do not render the June 25, 2020 press release false or misleading.  *See Ronconi v. Larkin*, 253 F.3d 423, 424 (9th Cir. 2001) ("serious operational problems" and "substantial difficulty" insufficient under PSLRA); *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1194 (9th Cir. 2021) (CEO's statement not actionable unless he "*shared* [CW's] gloomy view" and "*knew* their year's end goal was *impossible* to achieve . . . .") (emphasis in original).

Third, Plaintiffs' allegations regarding Vaxart's norovirus program are not actionable because they were made months before the Class Period.  CAC ¶¶ 128-35; *see In re FoxHollow Techs., Inc., Sec. Litig.*, 2008 WL 2220600, at *15 n.10 (N.D. Cal. May 27, 2008) (statements before or after the class period not actionable); *In re Clearly Canadian Sec. Litig.*, 875 F. Supp. 1410, 1420 (N.D. Cal. 1995) (striking pre-class statements because "statements made . . . before or after the purported class period are irrelevant").  Plaintiffs also lack standing to assert claims based on statements that were made before Plaintiffs allegedly purchased Vaxart stock.  *See Shurkin v. Golden State Vintners, Inc.*, 471 F. Supp. 2d 998, 1022-23 (N.D. Cal. 2006).  Moreover, even assuming Plaintiffs had standing and these statements were actionable (and they are not), Vaxart's norovirus statements were neither false nor misleading.  As Plaintiffs acknowledge, the Form 8-K Vaxart filed on January 2, 2020, announcing that the company "had laid off its manufacturing division," shows that Vaxart intended to prioritize "***partnering opportunities***, including [its] norovirus and universal influenza programs, ***and not on***

*manufacturing capabilities*." *Id.* ¶ 62; Ex. 12, at 2 (emphasis added).

For these reasons, the Court should not only dismiss Plaintiffs' Rule 10b-5(b) claim, but also their Rule 10b-5(a) and (c) scheme liability claims, which are predicated on the very same alleged misstatements discussed above.  CAC ¶¶ 150, 154, 156-57, 160, 164; *see also Oregon Pub. Employees Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 610 (9th Cir. 2014) (where plaintiffs failed to adequately allege falsity, scheme liability premised on insider trading also failed); *Fadia v. FireEye, Inc*., 2016 WL 6679806, at *17-18 (N.D. Cal. Nov. 14, 2016) (holding "scheme liability does not apply" where misstatement is sole basis for scheme liability).

### C.    Plaintiffs Fail to Allege That Boyd or Maher Acted with Scienter.

Plaintiffs also fail to satisfy the "formidable pleading requirements" to adequately allege scienter.  *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1055 (9th Cir. 2008).

First, the CAC does not adequately allege that Boyd or Maher knew of or were exposed to any information contradicting Vaxart's public statements.  *See S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008) (PSLRA requires "detailed allegations about the defendants' actual exposure to information").  Their status as directors is insufficient to establish scienter. *See In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833, 844 (N.D. Cal. 2000) ("[P]laintiffs must do more than allege . . . requisite knowledge by virtue of [defendants'] 'hands on' positions.").  Plaintiffs' pleading failure likewise forecloses Plaintiffs' scheme liability claims under Rule 10b-5(a) and (c).  *See United States v. Smith*, 155 F.3d 1051, 1069 (9th Cir. 1998) (scheme liability claims under Section 10(b) require scienter "that the suspected inside trader *actually used* material non-public information in consummating his transaction") (emphasis added).

The vague CW statements in the CAC cannot alter this conclusion.  None of the CWs are alleged to have any knowledge, much less "personal knowledge," that Boyd or Maher received

any information, let alone specific information, that conflicted with Vaxart's statements.

*Brodsky v. Yahoo! Inc.*, 630 F. Supp. 2d 1104, 1115-16 (N.D. Cal. 2009).  The only CW

employed by Vaxart (CW1) allegedly interacted with Defendant Latour, but not Boyd or Maher.

CAC ¶¶ 60-65.  Nor does the CAC allege that CW2 or CW3, former Attwill employees, reported

their "findings" about Attwill's alleged "regulatory gaps" to the Individual Defendants.  *Id.*  ¶¶

107-12.  Plaintiffs cannot establish scienter by relying on CWs who "lack first hand knowledge

regarding what [Boyd and Maher] knew or did not know."  *Police Ret. Sys. of St. Louis v.*

*Intuitive Surgical, Inc.*, 759 F.3d 1051, 1063 (9th Cir. 2014).

      Second, the CAC's allegation of "motive and opportunity" consisting of warrant

executions, trading activity, and Vaxart's allegedly "desperate financial position," CAC ¶¶ 154-

59, 165-69, is not sufficient to establish the requisite strong inference of scienter.  *Rubke v.*

*Capitol Bancorp Ltd.*, 551 F.3d 1156, 1166 (9th Cir. 2009) ("motive and opportunity"

allegations, such as seeking to acquire shares "for financial as well as strategic reasons" or

purchasing "shares at a discount to fair value," are "hardly indicative of scienter").  Likewise,

circumstantial evidence of alleged unusual sales activity is insufficient to impute scienter to

Boyd or Maher.  *See* CAC ¶¶ 154-59.  Trading is "suspicious only when it is dramatically out of

line with prior trading practices at times calculated to maximize the personal benefit from

undisclosed inside information."  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1005

(9th Cir. 2009) (internal quotation marks and citation omitted).  Courts consider three factors on

trading activity that must raise a strong inference of scienter: "(1) the amount and percentage of

shares sold by insiders; (2) the timing of the sales; and (3) whether the sales were consistent with

the insider's prior trading history."  *Id.*  Here, Plaintiffs' own allegations undercut any notion that

scienter can be imputed to Boyd or Maher based on Armistice's trading.  Most importantly,

8

ARMISTICE DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. 3:20-cv-05949-VC

*Armistice sold 18 million shares <u>before</u> the Class Period*.  CAC ¶¶ 8, 78–83, 86, 156(a).  "Large sales of stock before the class period" "are inconsistent with plaintiffs' theory that defendants attempted to drive up the price of [the company's] stock *during* the class period."  *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1117 (9th Cir. 1989) (emphasis in original).  Nor are Armistice's sales during the Class Period suggestive of scienter, "given the incentive for all holders to sell."  *In re Nektar Therapeutics*, 2020 WL 3962004, at *16 (N.D. Cal. July 13, 2020).  A stock price "increase—no matter what its cause—creates a substantial incentive for holders [like Armistice] to sell unless they believe the price will continue to rise and are willing to wait."  *Local No. 8 IBEW Ret. Plan & Tr. v. Vertex Pharms., Inc.*, 838 F.3d 76, 85 (1st Cir. 2016).  Moreover, the CAC does not allege that Armistice's sales during the Class Period were "dramatically out of line with prior trading practices."  *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999); *see also Metzler*, 540 F.3d at 1067 (no inference of scienter where trading is consistent with pre-class period sales).  Rather, Armistice's sales history reflects that, after investing in Vaxart, Armistice understandably wanted to realize its gains.[4]

Similarly, Plaintiffs have failed to establish scienter based on an alleged *quid pro quo* scheme.  CAC ¶¶ 160-64.  Plaintiffs' theory that the Armistice Defendants obtained "extremely lucrative abatements from restrictions on their existing Vaxart warrants" fundamentally misunderstands—or willfully misrepresents—the terms of the warrant amendments.  *Id.* ¶ 160.  The warrant amendments primarily did one thing—they increased the "blocker" provision for both series of warrants to 19.99%.  Since blocker provisions act to protect the *warrant holder*— here, Armistice—from crossing certain ownership thresholds that trigger disclosure obligations

---

[4] Plaintiffs wrongly assert that Armistice sold roughly 45 million shares of Vaxart stock during the Class Period.  CAC ¶ 148; *see also id.* ¶ 156(a).  This figure includes Armistice's trades from *before* the Class Period, which, as discussed above, undercut Plaintiffs' claims.

under federal security laws, lifting these restrictions did not materially benefit Armistice.  *See, e.g.*, *Roth v. Solus Alt. Asset Mgmt. LP*, 124 F. Supp. 3d 315, 323 (S.D.N.Y. 2015) ("To avoid the consequences of crossing certain ownership thresholds, holders of convertible securities can limit conversion rights by way of conversion caps . . . .").  Indeed, Armistice could have sold its shares in the *same way* with or without the warrant amendments.[5]  Ex. 8, at 5-6; Ex. 9, at 5-6.  Likewise, Plaintiffs' contention that the warrant amendments allowed Armistice to exercise the warrants without a 60-day notice period is contradicted by the warrants and the warrant amendments themselves.  Ex. 7, at 216; Ex. 8, at 5-6; Ex. 9, at 5-6.  The *only* 60-day notice period in the warrants related to Armistice's right to increase the blocker threshold—*not* its ability to exercise the warrants.  The warrants were always freely exercisable subject to the blocker limitations, both before and after the amendments.[6]

Finally, Plaintiffs cannot meet their scienter burden through a core operations theory, which only allows an inference of scienter in rare circumstances "where the nature of the relevant fact is of such prominence that it would be 'absurd' to suggest that management was without knowledge of the matter."  *S. Ferry LP, No. 2*, 542 F.3d at 786 (citation omitted).  The core operations theory must be buttressed by either "specific admissions by one or more corporate executives of detailed involvement in the minutia of a company's operations" or "witness accounts demonstrating that executives had actual involvement in creating false

---

[5] Whether the blocker was 9.99% or 19.99%, Armistice was free to exercise the warrants up to the blocker threshold and then sell back down, repeating the process until all of its warrants were exercised.  All Armistice needed to do to exercise the warrants was email an exercise notice to Vaxart, after which Armistice was free to sell the shares acquired by the exercise.  Thus, at most, the warrant amendments merely impacted the number of times Armistice had to repeat this process.

[6] The options grants to the Individual Vaxart Defendants are also insufficient to establish scienter for the reasons stated in the Vaxart Defendants' Motion to Dismiss, Section III.A(iii), which the Armistice Defendants incorporate by reference.

reports." *In re Solarcity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 1011-12 (N.D. Cal. 2017)

(quoting *Police Ret.*, 759 F.3d at 1062).  But the CAC alleges nothing of the sort.  Without more,

Plaintiffs' core operations allegations fail.[7]

> ### D.    Plaintiffs Fail to Allege Loss Causation.

The Section 10(b) claim also fails to adequately allege loss causation.  *Loos v. Immersion

Corp.*, 762 F.3d 880, 897 (9th Cir. 2014).[8]  The July 25, 2020 *New York Times* article, *see* Ex. 3,

is not a corrective disclosure.  As explained above, Vaxart's June 26, 2020 press release made

clear that Vaxart was selected to *participate* in a non-human primate challenge, and not, as

Plaintiffs allege (CAC ¶¶ 118-23), to receive *financial support* from OWS.  *See Rok v. Identiv,

Inc.*, 2017 WL 35496, at *19 (N.D. Cal. Jan. 4, 2017) (disclosure insufficient to plead loss

causation if it does "not reveal any fraud").  Nor was the *New York Times* article a corrective

disclosure simply because it states that Health and Human Services "relayed" its "concerns" to

the SEC.  CAC ¶ 121; *see Loos*, 762 F.3d at 889 ("[T]he announcement of an investigation,

standing alone and without any subsequent disclosure of actual wrongdoing, does not reveal to

the market the pertinent truth of anything.").  Similarly, the August 19, 2020 *Business Insider*

article is not a corrective disclosure because it did not release any new information to the market

regarding Vaxart, and rather referred to an article from months earlier.  *See* Ex. 4.  *See Rok*, 2017

WL 35496, at *18 (disclosure that "added no new information . . .  [was] not sufficient to

---

[7] As the Ninth Circuit has recognized, a "comprehensive" and "holistic[]" review of the Section 10(b) claim "cannot transform a series of inadequate allegations into a viable inference of scienter."  *Zucco Partners*, 552 F.3d at 1008.  And, as set forth above, Plaintiffs' individual allegations of scienter fail to pass PSLRA muster.

[8] Without any particularized facts on loss causation, the Section 10(b) claim cannot stand. *See In re BofI Holding, Inc. Sec. Litig*., 977 F.3d 781, 789 (9th Cir. 2020) ("Merely purchasing shares at an inflated price . . . does not cause an investor to suffer economic loss as a result of the fraud.") (citing *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005)).

demonstrate loss causation") (citing cases).

Moreover, Plaintiffs do not allege how or when the challenged statements about the Attwill MOU were revealed to the market or caused a change in stock price.  Plaintiffs point to two "corrective disclosures," but neither even reference the Attwill MOU.  *See* Exs. 3-4; *see also* CAC ¶¶ 142-45.  Plaintiffs also admit they did not suffer loss from the statements about the norovirus program, *see* CAC ¶ 63, foreclosing any claim based on those statements.  *Bruce v. Suntech Power Holdings Co.*, 2013 WL 6843610, at *7 (N.D. Cal. Dec. 26, 2013).

## II.   PLAINTIFFS FAIL TO ALLEGE A SECTION 20(a) CLAIM AGAINST THE ARMISTICE DEFENDANTS

A plaintiff asserting a Section 20(a) claim for control person liability must allege: (1) a primary violation of federal securities laws, and (2) that the defendant "exercised actual power [or control] over the primary violator."  *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d at 1052.  Plaintiffs do neither here.  First, as explained above and in the Vaxart Defendants' Motion to Dismiss, Plaintiffs fail to sufficiently allege an underlying violation of Section 10(b) by Vaxart.  This alone is fatal to the 20(a) claim against the Armistice Defendants.  *Webb v. SolarCity Corp.*, 884 F.3d 844, 858 (9th Cir. 2018).  Second, even if Plaintiffs adequately alleged that Vaxart violated Section 10(b), they fail to allege that the Armistice Defendants "direct[ly] or indirect[ly]" possessed "the power to direct or cause the direction of the management and policies" of Vaxart.  17 C.F.R. § 230.405.  Other than reciting the "control person" standard, CAC ¶ 195, Plaintiffs do not allege any specific facts showing control as required under the PSLRA.  *In re Gupta Corp. Sec. Litig.*, 900 F. Supp. 1217, 1243 (N.D. Cal. 1994) ("conclusory" allegations of control insufficient).

### A.   Plaintiffs Fail to Allege a Section 20(a) Claim Against Boyd and Maher.

In a misguided attempt to plead that Boyd and Maher "controlled" Vaxart, Plaintiffs refer

to their "high-level positions with the Company," CAC ¶ 195, presumably a reference to their

seats on Vaxart's Board. But a director "is not automatically liable as a control[] person" merely

by virtue of his or her board seat. *O'Sullivan v. Trident Microsystems, Inc.*, 1994 WL 124453, at

*18 (N.D. Cal. Jan. 31, 1994) (citing *Burgess v. Premier Corp.*, 727 F.2d 826, 832 (9th Cir.

1984)). Instead, Plaintiffs must "plead ***specific facts*** establishing that the[y] exercised a

***significant degree*** of day to day operational control over the company." *In re Bare Escentuals,*

*Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1081 (N.D. Cal. 2010) (emphasis added). Here, rather

than alleging particularized facts demonstrating significant operational control by Boyd and

Maher, the CAC only parrots the boilerplate legal standard. CAC ¶ 196. This is insufficient.

*See In re Versant Object Tech. Corp.*, 2000 WL 33960105, at *17 (N.D. Cal. May 18, 2000).[9]

For similar reasons, allegations that Boyd and Maher "had unlimited access to[] copies of

the Company's . . . statements alleged by Plaintiffs to be misleading prior to and/or shortly after

these statements were issued, and had the ability to prevent the issuance of the statements or

cause the statements to be corrected" are insufficient. CAC ¶ 195. A company's directors will

almost by definition have *access* to a company's public statements, and "conclusory allegations

of [a director's] purported ability to prevent the issuance of the alleged false reports . . . do not

constitute particular evidence of control" sufficient to survive a motion to dismiss. *In re Splash*

*Tech. Holdings, Inc. Sec. Litig.*, 2000 WL 1727405, at *16 (N.D. Cal. Sept. 29, 2000).

Plaintiffs' bald assertion that Boyd and Maher "authorized and approved the issuance of

the spring-loaded options and the Armistice warrant amendments" does not establish control

---

[9] Conclusory assertions that directors "participat[ed] in and/or [were] aware[] of the Company's operations and/or intimate knowledge of the false financial statements" are "insufficient to state a claim for control person liability." *In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1163 (C.D. Cal. 2007).

person liability.  CAC ¶¶ 34-35.  First, as discussed above, the CAC's scheme liability allegations are predicated on alleged misrepresentations by Vaxart, which Boyd and Maher are not plausibly alleged to have controlled.  *Id*. ¶¶ 150, 154-57, 160; *see also In re Int'l Rectifier Corp. Sec. Litig.*, 2008 WL 9453468, at *9 (C.D. Cal. Dec. 31, 2008) (no control liability where plaintiffs did not "allege[] that [corporate officer] had authority over the preparation of the financial statements or press releases or conference calls containing the misleading statements").

Moreover, even if the warrant amendments and option awards were somehow relevant to Plaintiffs' Section 20(a) claims, and they are not, the CAC fails to allege Boyd or Maher exercised control over these corporate decisions.  As Plaintiffs must admit, the amendments to Armistice's warrants were approved through *unanimous board consent*.  CAC ¶ 95.[10]  Boyd and Maher, constituting two members of a seven or eight member board, cannot plausibly be alleged to have "controlled" Vaxart's decisions on this issue.

### B.    Plaintiffs Fail to Allege a Section 20(a) Claim Against Armistice.

Plaintiffs' Section 20(a) claim, based on the allegation that Armistice was a controlling shareholder of Vaxart and could appoint two board members, fares no better.  CAC ¶¶ 46, 56.  Plaintiffs cannot plausibly allege that Armistice owned a majority of Vaxart's common stock *at any point* during the Class Period.  Instead, Plaintiffs allege only that Armistice was a majority shareholder as of October 2019, nearly *nine months* before the Class Period began.  *Id.* ¶¶ 46, 55; Ex. 10, at 43.  This is irrelevant.  As Plaintiffs concede, Armistice sold 18.2 million shares of Vaxart stock in the months leading up the Class Period.  CAC ¶¶ 8, 78-83, 86.  And so, by June 3, 2020, Armistice's position in Vaxart was down to 7 million shares—only 9.4% of Vaxart's outstanding shares.  *Id*. ¶ 83.  Thus, through the entire Class Period, Armistice was a minority

---

[10] Also, as discussed below, Armistice owned less than 10% of Vaxart's stock at this time.

shareholder with the ability to appoint a minority of Vaxart's Board.  Courts have dismissed

similar control person claims.  *See, e.g.*, *Splash Tech.*, 2000 WL 1727405, at *16 (dismissing

control person claim against 20% shareholder that appointed director to issuer's board).[11]

## III.   PLAINTIFFS FAIL TO ALLEGE A SECTION 20A CLAIM

Plaintiffs' insider trading claim under Section 20A fails like the others.  First, as

discussed above and in the Vaxart Defendants' Motion to Dismiss, Plaintiffs have failed to allege

an underlying violation of any securities law.  *See In re Volkswagen "Clean Diesel" Mktg., Sales*

*Practices, & Prod. Liab. Litig.*, 328 F. Supp. 3d 963, 987 (N.D. Cal. 2018).  Second, Plaintiffs

fail to allege any particularized facts showing that the Armistice Defendants possessed or

knowingly used any MNPI.  Plaintiffs' MNPI allegations are predicated on the same alleged

false and misleading statements underlying Plaintiffs' Section 10(b) claim.  CAC ¶ 150.  As

explained above, Plaintiffs fail to adequately allege that any of these statements were false or

misleading, or that the Armistice Defendants knew of their falsity.  Plaintiffs therefore cannot

point to any information Armistice knew that was not generally available.  *In re Arrowhead*

*Research Corp. Sec. Litig.*, 2016 WL 6562066, at *11 (C.D. Cal. Mar. 29, 2016).

## IV.   CONCLUSION

For these reasons, and those in the Vaxart Defendants' Motion to Dismiss, the Armistice

Defendants respectfully request that this Court dismiss the CAC against them with prejudice.

---

[11] Plaintiffs allege that Board member Defendant Floroiu "had been employed by Armistice Capital" and that he was a "personal friend" of Boyd.  CAC ¶¶ 36, 73.  These facts do not plausibly suggest Armistice's control over Vaxart.  *See Splash Tech.*, 2000 WL 1727405, at *16 (fact that "the majority of [issuer's] officers were former []employees" of minority shareholder did not suggest minority shareholder was control person).  As a minority shareholder entity, Armistice simply had no control over Vaxart, even if it appointed two of its Board members.  *See Gupta*, 900 F. Supp. at 1243 ("Novell's position as a minority shareholder of Gupta with an agent on the board does not establish control person liability"); *O'Sullivan*, 1994 WL 124453, at *18 (9.5% stock ownership and board appointee insufficient to plausibly allege control).

Dated:  March 12, 2021

Respectfully submitted,

**AKIN GUMP STRAUSS HAUER & FELD LLP**

By:  <u>*/s/ Neal R. Marder*</u>
              Neal R. Marder
              *Attorneys for the Armistice Defendants*