# EXHIBIT A

*7-27-22*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re VAXART, INC. SECURITIES LITIGATION | Master Case No.: 3:20-cv-05949-VC |
| | <u>CLASS ACTION</u> |
| *This Document Relates to:* | |
| *ALL ACTIONS* | |

## STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement (the "Stipulation") is entered into by and among (a) lead plaintiffs Wei Huang and Langdon Elliot ("Lead Plaintiffs") and additional plaintiff Ani Hovhannisyan (collectively, with Lead Plaintiffs, "Plaintiffs"), on behalf of themselves and the putative Settlement Class[1]; (b) defendants Vaxart, Inc. ("Vaxart"); and (c) certain current or former Vaxart officers and/or directors, namely defendants Andrei Floroiu ("Floroiu"), Wouter W. Latour ("Latour"), Todd Davis ("Davis"), Michael Finney ("Finney"), Robert Yedid ("Yedid") and Sean Tucker ("Tucker") (collectively, with defendant Vaxart, the "Settling Defendants"), by and through the parties' respective counsel.  The Stipulation is intended by Plaintiffs and the Settling Defendants to fully, finally and forever resolve, discharge, release and settle the Released Claims (as defined below) upon and subject to the terms and conditions hereof, and to be submitted pursuant to Rule 23 of the Federal Rules of Civil Procedure for approval by the Court.

WHEREAS, on August 24, 2020, plaintiff Kirk Himmelberg filed the first of several related putative class action complaints, styled *Kirk Himmelberg v. Vaxart, Inc., et al.*, No. 3:20-cv-05949, alleging violations of federal securities laws against Vaxart, Floroiu, Latour, Stephen J. Boyd ("Boyd"), Keith Maher ("Maher"), and Armistice Capital LLC ("Armistice") in this Court;

WHEREAS, following the filing of certain related actions and the submission of various motions to consolidate related cases and appoint lead plaintiffs and lead counsel, by order dated December 9, 2020 the Court (1) consolidated all related actions with this action; and (2) appointed plaintiffs Wei Huang and Langdon Elliot as lead plaintiffs, and Hagens Berman Sobol Shapiro LLP as lead counsel, in this Action;

WHEREAS, on January 29, 2021, Plaintiffs filed their Consolidated Amended Class Action Complaint (the "Consolidated Complaint");

---

[1] All capitalized words and terms that are not otherwise defined in text have the meaning to ascribed to them below in the section entitled "Definitions."

WHEREAS, on March 12, 2021, Settling Defendants Vaxart, Floroiu, Latour, Davis, Finney, Yedid and Tucker, together with former defendant Margaret A. Echerd ("Echerd"), filed their Motion to Dismiss the Consolidated Complaint;

WHEREAS, on March 12, 2021, Non-Settling Defendants Armistice, Boyd, and Maher filed a separate Motion to Dismiss the Consolidated Complaint;

WHEREAS, Plaintiffs thereafter submitted their briefs and supporting papers in opposition to the Defendants' respective motions to dismiss; Defendants submitted reply briefs in support of their respective motions; and the Court heard oral argument on the motions on May 13, 2021;

WHEREAS, in the course of oral argument on May 13, 2021, Plaintiffs moved for leave to amend the operative complaint;

WHEREAS, on May 13, 2021, the Court granted Plaintiffs' request for leave to amend, and set a briefing schedule for amendment and filing responses, and denied the Defendants' then-pending motions to dismiss as moot;

WHEREAS, on June 10, 2021, Plaintiffs filed their First Amended Consolidated Class Action Complaint (which, *inter alia,* dropped Echerd as a defendant);

WHEREAS, on July 8, 2021 (a) Defendants Vaxart, Floroiu, Latour, Davis, Finney, Yedid, and Tucker (collectively), and (b) Defendants Armistice, Boyd, and Maher (collectively), both filed separate Motions to Dismiss the First Amended Consolidated Class Action Complaint (collectively, the "Renewed Motions to Dismiss");

WHEREAS, on August 9, 2021, the Court approved a stipulation among the parties that provided for the filing of a Corrected First Amended Consolidated Complaint (the "Amended Complaint"), which Plaintiffs filed later that same day;

WHEREAS, Plaintiffs thereafter submitted their briefs and supporting papers in opposition to the Defendants' respective Renewed Motions to Dismiss, and Defendants submitted reply briefs in support of those respective Renewed Motions to Dismiss;

WHEREAS, on September 30, 2021, the Court heard oral argument on the Renewed Motions to Dismiss, and thereafter directed both Plaintiffs and defendant Vaxart to submit certain additional letter-briefing relevant to Defendants' Renewed Motions to Dismiss;

WHEREAS, by order dated December 22, 2021, the Court granted in part and denied in part Defendants' Renewed Motions to Dismiss, whereby the Court (a) sustained various claims against Defendants Vaxart, Floroiu, Latour, Yedid, Davis, Finney, Tucker, Boyd, and Maher; (b) granted the Renewed Motion to Dismiss Defendant Armistice (and, by implication, certain claims against Boyd and Mayer to the extent that such claims were based on their Armistice, as opposed to Vaxart, capacities); and (c) granted Plaintiffs leave to amend those claims that had been dismissed;

WHEREAS, beginning in January 2022, Defendant Vaxart and Plaintiffs commenced preliminary discussions regarding the possibility of trying to resolve at least some of the claims as against at least some of the Defendants through mediation, and Plaintiffs and defendant Vaxart— together with the other Defendants—ultimately agreed to retain a highly experienced mediator of securities class actions, the Hon. Layn R. Phillips (U.S.D.J., ret.) (the "Mediator") for that purpose;

WHEREAS, following the submission of comprehensive mediation statements and other materials, on April 11, 2022, all Parties attended a full-day mediation via Zoom under the auspices of the Mediator;

WHEREAS, the April 11, 2022 mediation session did not result in an agreement, but the Mediator encouraged the parties to continue negotiations;

WHEREAS, on April 28, 2022, following additional discussions with counsel for Plaintiffs and counsel for Vaxart and the other Settling Defendants, the Mediator made a "mediator's proposal" for a partial settlement, under which, *inter alia*: (a) Plaintiffs (on behalf of themselves and the putative class) would settle, compromise and release all claims against Vaxart and its officers, directors, employees, agents and representatives (in their capacities as such) in exchange for the Settling Defendants' payment of $12,000,000 (with the possibility of certain additional, but relatively small, sums being payable under certain conditions, which ultimately totaled $15,000) and co-operation in providing certain discovery; but (b) all claims against Armistice as well as defendants Boyd and Maher (except in their capacities as former directors of Vaxart) would be expressly preserved and excluded from the scope of the proposed settlement and any related release;

WHEREAS, the Settling Parties accepted the "mediator's proposal" in principle, subject to the resolution of certain matters related primarily to the scope of the releases and the scope and timing of certain discovery to be provided by the Settling Defendants;

WHEREAS, on June 10, 2022, consistent with the terms of the "mediator's proposal," the Settling Parties executed a Memorandum of Understanding (the "Memorandum of Understanding") documenting the material terms of this settlement;

WHEREAS, on July 27, 2022, the Settling Parties executed an amendment to the Memorandum of Understanding that modified certain of the Settling Defendants obligations with respect to the production of documents;

WHEREAS, after taking into account the uncertainties, risks and likely costs and expenses of further litigation over the Released Claims in this complex securities action, Plaintiffs believe

that the settlement set forth herein as to the Settling Defendants is fair, reasonable, and in the best interests of Settlement Class Members (as defined herein);

WHEREAS, the Settling Defendants have denied and continue to deny each and all of the claims alleged by Plaintiffs, including all allegations of wrongdoing, fault, damages or liability whatsoever arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in this Action, but also after taking into account the potential costs, uncertainties, and risks of further litigation, have therefore determined to fully and finally settle and resolve the claims asserted against them in the manner and upon the terms and conditions set forth herein;

NOW, THEREFORE, without any admission or concession whatsoever on the part of any Plaintiff of any lack of merit of any claims in the Action, and without any admission or concession whatsoever on the part of the Settling Defendants of any liability, wrongdoing, fault, or lack of merit in the defenses they have asserted in the Action, the Settling Parties hereby STIPULATE AND AGREE, by and through their respective undersigned attorneys, and subject to judicial approval as further set forth herein, in consideration of the benefits flowing to the Parties hereto from the Settlement, that all Released Claims (as defined below) as against the Released Defendant Parties (as defined below) and all Released Defendants' Claims (as defined below) as against the Released Plaintiffs' Parties (as defined below) shall be compromised, resolved, settled, released, and discharged, upon and subject to the following terms and conditions, as set forth below:

## 1. DEFINITIONS

As used in this Stipulation, the following terms have the meanings specified below:

1.1 "Action" (or "this Action") means *In re Vaxart, Inc. Securities Litigation*, No. 3:20-cv-05949-VC, pending in the United States District Court for the Northern District of California.

1.2 "Additional Plaintiff" means plaintiff Ani Hovhannisyan.

1.3     "Additional Plaintiffs' Counsel" means the law firm of Scott + Scott Attorneys at Law LLP.

1.4     "Alternative Judgment" means a form of judgment with terms materially different from those set forth in the form of judgment that is attached hereto as Exhibit B.

1.5     "Armistice" means Armistice Capital LLC.

1.6     "Armistice Entities" means and includes (a) any fund or other investment vehicle, whether structured as a partnership, corporation, joint venture, limited liability company, or otherwise (and including any of such entity's predecessors, successors or assigns) managed or advised by Armistice, any affiliate of Armistice, Boyd and/or Maher (and including but not limited to Armistice Capital Master Fund Ltd.), or in which Armistice, Boyd or Maher had or have a controlling interest; and (b) any investment advisor or management firm, whether structured as a partnership, corporation, joint venture, limited liability company, or otherwise (and including any of such entity's predecessors, successors or assigns), controlled by, and/or directly or indirectly majority owned by, Armistice, Boyd and/or Maher.

1.7      "Attorneys' Fees and Expenses" means any portion of the Gross Settlement Fund approved by the Court for payment to counsel who have represented Plaintiffs, including such counsel's attorneys' fees, costs, litigation expenses, and fees and expenses of experts (excluding Notice and Administration Expenses).

1.8     "Authorized Claimant" means a Settlement Class Member who submits a timely and valid Proof of Claim form to the Claims Administrator.

1.9     "Award to Plaintiffs" means any portion of the Gross Settlement Fund approved by the Court for payment to Plaintiffs for their service to the Settlement Class in this Action, and of reasonable costs and expenses directly relating to the representation of the Settlement Class pursuant to 15 U.S.C. § 78u-4(a)(4).

1.10    "Bar Order" means the language set forth at ¶¶16-17 of the proposed Judgment attached hereto at Exhibit B.

1.11    "Barred Claims" means any claims for contribution or indemnification, however styled, by any Person or entity, whether arising under state, federal or common law, or any other law, rule or regulation, that are based upon, arise out of, or relate to the Released Claims, and the alleged injury to such Person or entity is based on, arises from, or relates to that Person's or entity's alleged liability to the Settlement Class or any Settlement Class Member, provided, however, that "Barred Claims" does not mean or include

(i)     any such claims that may not be barred or discharged under applicable state or federal law;

(ii)    claims, if any, under the terms of any agreements or contractual arrangements among or between any of the Released Defendant Persons (including any Released Defendant Person's insurers), or arising out of Vaxart's corporate by-laws or charter, or arising out of common law fiduciary duties owed by any Released Defendant Person, except to the extent that such claims are barred or discharged, or required to be barred or discharged, under applicable state or federal law; or

(iii)   any claims for contribution or indemnification against Floroiu, Latour, Davis, Finney, Yedid, Tucker, Boyd and Maher other than in their capacities as current or former Vaxart officers or directors, except to the extent that such claims are barred or discharged, or required to be barred or discharged, under applicable controlling state or federal law.

For purposes of this definition of "Barred Claims" only, but only if and to the extent necessary to render the provisions of paragraph 16 of the Judgment (attached as Exhibit B hereto) compliant with applicable state or federal law (including the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4), "Released Defendant Persons" also include Floroiu, Latour, Davis, Finney, Yedid, Tucker, Boyd and Maher generally, without being limited to their capacities as current or former Vaxart officers or directors.

1.11A. "Claim Form" has the same meaning as "Proof of Claim" (defined below);

1.12    "Claimant" refers to a putative Settlement Class Member who submits a Proof of Claim.

1.13    "Claims Administrator" means A.B. Data, Ltd, or such other claims administration firm that may be appointed by the Court to administer the Settlement and disseminate notice to the Settlement Class.

1.14    "Class Period" means the period between June 15, 2020 through August 19, 2020, inclusive.

1.15    "Court" (or "this Court") means the United States District Court for the Northern District of California.

1.16    "Defendants" refers, collectively, to Vaxart, Floroiu, Latour, Davis, Finney, Yedid, Tucker, Boyd, Maher and Armistice.

1.17    "Derivative Actions" means and includes (i) *Ennis v. Latour, et al.*, Case No. 20-civ-03253 (Cal. Super. Ct. San Mateo Cty.); (ii) *In re Vaxart, Inc. Stockholder Litigation*, Case No. 2020-0767-PAF (Del. Ct. of Chancery); and (iii) *Roth v. Armistice LLC*, 1:20-cv-08872 (S.D.N.Y);

1.18    "Effective Date" means the date on which all of the conditions set forth below in ¶10.1 shall have been satisfied.

1.19    "Escrow Account" means the segregated and separate interest-bearing escrow account to be established with the Escrow Agent (subject to judicial oversight) into which the Settlement Amount will be deposited for the benefit of Settlement Class Members, and which will thereafter hold the assets of the Settlement Fund (subject to the making of such awards, payments, and distributions as authorized herein).

1.20    "Escrow Agent" means Huntington National Bank or its duly appointed successor, or such other bank as may be proposed by Plaintiffs' Counsel and approved by the Court.

1.21    "Fairness Hearing" means the hearing scheduled by the Court to determine whether (i) the Settlement is fair, reasonable, and adequate, (ii) the Plan of Allocation is fair, reasonable

and adequate; and (iii) Plaintiffs' Counsel's request for an award of Attorneys' Fees and Expenses, including any Awards to Plaintiffs, is reasonable.

1.22    "Fee and Expense Application" has the meaning given that term in ¶7.1 below.

1.23    "Final" shall mean, with respect to the Judgment of the Court dismissing or declining to dismiss with prejudice the claims brought against the Settling Defendants (or against defendants Boyd and Maher in their capacities as former directors of Vaxart), a Judgment:

(a)    as to which there is no pending stay, motion for reconsideration, motion for rehearing, motion to vacate, appeal, petition for writ of certiorari or similar request for relief;

(b)    if no appeal or review is filed, the day following the expiration of the time to appeal or petition for review; or

(c)    if there is an appeal or review, the day after such Judgment is affirmed or the appeal or review is dismissed or denied, and such Judgment is no longer subject to further judicial review, including upon appeal or review by writ of certiorari.

1.24    "Gross Settlement Fund" means the Settlement Amount plus all interest earned thereon.

1.25    "Individual Defendants" refers to and includes Floroiu, Latour, Davis, Finney, Yedid, Tucker, Boyd and Maher.

1.26    "Judgment" means either (i) the proposed judgment to be entered approving the Settlement, substantially in the form attached hereto as Exhibit B; or (ii) an Alternative Judgment, if expressly agreed in writing by all the Settling Parties.

1.27    "Lead Counsel" means the law firm of Hagens Berman Sobol Shapiro LLP.

1.28    "Lead Plaintiffs" means plaintiffs Wei Huang and Langdon Elliot.

1.29    "Mediator" means the Hon. Layn R. Phillips (U.S.D.J., ret.).

1.30    "Memorandum of Understanding" refers to the Memorandum of Understanding, together with its Exhibits, entered into among the Settling Parties as of June 10, 2022, and the July 27, 2022 amendments thereto.

1.31    "Net Settlement Fund" means the Gross Settlement Fund less: (i) taxes on the income thereof and any Tax Expenses; (ii) the Notice and Administration Expenses as authorized by this Stipulation; (iii) Attorneys' Fees and Expenses authorized by the Court; (iv) any Award to Plaintiffs authorized by the Court; and (v) any other fees and expenses authorized by the Court.

1.32    "Non-Settling Defendants" means Boyd and Maher.

1.33    "Notice" means the Notice of Proposed Settlement of Class Action, substantially in the form attached hereto as Exhibit A-1, which is to be sent to members of the Settlement Class.

1.34    "Notice and Administration Expenses" means the reasonable costs and expenses incurred in connection with locating Settlement Class Members; preparing, printing, mailing, and publishing the Notice and the Summary Notice; soliciting the submission of proofs of claims; assisting with the submission of proofs of claim; processing Proof of Claim and Release forms; administering and distributing the Net Settlement Fund to Authorized Claimants; tax preparation expenses; and paying escrow fees and costs (if any).  All such Notice and Administration Expenses shall be paid from the Settlement Fund.

1.35    "Parties" refers to the undersigned parties to this Stipulation.

1.36    "Person" means any individual, corporation, partnership, limited liability company or partnership, limited partnership, professional corporation, association, joint stock company, trust, estate, unincorporated association, government or any political subdivision or agency thereof, and any other type of legal or political entity, any representative, and, as applicable, his, her or its respective spouses, heirs, predecessors, successors-in-interest, representatives, and assigns.

1.37    "Plaintiffs" refers collectively to Lead Plaintiffs and the Additional Plaintiff.

1.38    "Plaintiffs' Counsel" means Lead Counsel and Additional Plaintiff's Counsel.

1.39    "Plan of Allocation" means the plan for allocating the Net Settlement Fund described in the Notice, or in any alternate plan approved by the Court, whereby the Net Settlement

Fund shall be distributed to Authorized Claimants.  Any Plan of Allocation is not part of the Stipulation, and the Released Defendant Persons shall have no liability with respect thereto.

1.40    "Preliminary Approval Order" means the proposed order preliminarily approving the Settlement and directing notice thereof to the Settlement Class, substantially in the form attached hereto as Exhibit A.

1.41    "Proof of Claim" means the Proof of Claim and Release, substantially in the form attached hereto as Exhibit A-2 to Exhibit A.

1.42    "Related Persons", with respect to a Person, means (a) their immediate family members and any trust that such Person is the settlor of or which is for their benefit and/or the benefit of their family; (b) their subsidiaries, parent entities, divisions, and departments; and (c), for any of the entities or Persons listed at (a) or (b) above, their respective past and present officers, directors, managing directors, partners, employees, auditors, accountants, representatives, insurers, trustees, trustors, agents, attorneys, professionals, predecessors, successors, assigns, heirs, executors, and administrators, in their capacities as such.

1.43    "Released Claims" means any and all claims, rights, demands, obligations, damages, actions or causes of action, or liabilities whatsoever, of every nature and description, including both known claims and Unknown Claims, whether arising under federal, state, common or foreign law or regulation, that have or could have been asserted in the Action against any of the Released Defendant Persons by Plaintiffs or any Settlement Class Member that (a) arise out of or relate in any way to the purchase or acquisition of Vaxart common stock during the Class Period and (b) arise out of or relate in any way to the acts, facts, events, occurrences, statements, representations or omissions that were or could have been alleged or asserted by Plaintiffs or any member of the Settlement Class in the Action, or which could have been alleged in the Action, provided, however, that the following are expressly excluded from the definition of Released Claims: (i) all claims asserted in the Derivative Actions; (ii) all claims that have been or may in the future be brought against Armistice; (iii) all claims that have been or may in the future be

brought against Boyd, except to the extent that such claims are or may be brought against Boyd in his capacity as a former director of Vaxart; and (iv) all claims that have been or may in the future be brought against Maher, except to the extent that such claims are or may be brought against Maher in his capacity as a former director of Vaxart.  In addition, "Released Claims" does not include any claims to enforce any of the terms of this Stipulation.

1.44    "Released Defendants' Claims" means all claims, demands, rights, remedies, liabilities, and causes of action of every nature and description whatsoever, whether based on federal, state, local, statutory, or common law, or any other law, rule, or regulation, including both known and Unknown Claims, by any of the Released Defendant Persons (or any of their successors or assigns) against any of the Plaintiffs or any of Plaintiffs' attorneys which arise out of or relate in any way to the institution, prosecution, assertion, settlement, or resolution of this Action or the Released Claims, except for claims to enforce any of the terms of this Stipulation.

1.45    "Released Defendant Persons" means (i) Vaxart, (ii) Floroiu, Latour, Davis, Finney, Yedid, Tucker, Boyd and Maher in their respective capacities as current or former officers or directors of Vaxart; and (iii) each of Vaxart's, Floroiu's, Latour's, Davis's, Finney's, Yedid's, Tucker's, Boyd's and Maher's respective Related Persons. Notwithstanding any other term or provision to the contrary contained in this Stipulation, however, "Released Defendant Persons" does not include, and instead specifically excludes: (a) Armistice; (b) the Armistice Entities; (c) Armistice's and the Armistice Entities' respective Related Persons in their capacities as such (including Boyd and Maher in their Armistice capacities); and (d) Floroiu's, Latour's, Davis's, Finney's, Yedid's, Tucker's, Boyd's and Maher's respective Related Persons insofar as such Related Person's liability to any Settlement Class Member derives from or is based upon acts or omissions of Floroiu, Latour, Davis, Finney, Yedid, Tucker, Boyd or Maher that were made in any capacity other than their respective capacities as a Vaxart officer or director.

1.46    "Released Plaintiff Persons" means (i) the Plaintiffs and all Settlement Class Members; and (ii) each of their Related Persons.

1.47    "Settlement" means the settlement of the Action on the terms set forth in this Stipulation.

1.48    "Settlement Amount" means the sum of US $12,015,000.00 (twelve million fifteen thousand U.S. dollars) in cash, to be deposited into the Escrow Account pursuant to ¶2.1.

1.49    "Settlement Class" (or "Class") means all Persons who purchased or otherwise acquired Vaxart common stock between June 15, 2020, and August 19, 2020, inclusive (the "Class Period"), and were damaged thereby. Excluded from the Settlement Class are all Defendants and all Armistice Entities; their respective successors and assigns; the past and current officers, directors, partners and managing partners of Vaxart, Armistice, and any Armistice Entity; the members of the immediate families of the Individual Defendants; the legal representatives, heirs, parents, wholly-owned subsidiaries, successors, and assigns of any excluded Person; and any entity in which any excluded Persons have or had a majority ownership interest, or that is or was controlled by any excluded Persons.  Also excluded from the Settlement Class will be those Persons who file valid and timely requests for exclusion in accordance with the Court's Preliminary Approval Order.

1.50    "Settlement Class Member" (or "Class Member") means any Person who falls within the definition of Settlement Class (as defined above).

1.51    "Settlement Distribution Order" means an order to be entered by the Court, upon application of Plaintiffs' Counsel, in accordance with ¶4.10 below, which authorizes the Claims Administrator to distribute the Net Settlement Fund to Authorized Claimants.

1.52    "Settlement Fund" refers to the account to be established by the Escrow Agent to hold the Settlement Amount and any interest earned thereon.

1.52A  "Settling Defendants" refers, collectively, to defedants Vaxart, Andrei Floroiu ("Floroiu"), Wouter W. Latour ("Latour"), Todd Davis ("Davis"), Michael Finney ("Finney"), Robert Yedid ("Yedid") and Sean Tucker ("Tucker").

1.53 "Settling Defendants' Counsel" means the law firms of (i) Thompson Hine LLP; and (ii) Goodwin Procter LLP.

1.54 "Settling Parties" means Settling Defendants and Plaintiffs.

1.54A "Summary Notice" means Summary Notice of (I) Pendency of Class Action and proposed Partial Settlement, (II) Settlement Fairness Hearing; and (III) Motion for Attorneys' Fees and Litigation Expenses, substantially in the form attached hereto as Exhibit A-3.

1.55 "Taxes and Tax Expenses" means: (i) taxes (including any interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon Vaxart with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a qualified settlement Fund for Federal or state income tax purposes; and (ii) expenses and costs incurred in connection with the operation and implementation of ¶5.3 (including, without limitation, expenses of tax attorneys and/or accountants, and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in ¶5.3).

1.56 "Unknown Claims" means: (i) any claims that the Plaintiffs or any Settlement Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Defendant Persons, which if known by him, her, or it, might have affected his, her, or its decision(s) with respect to the Settlement, including, but not limited to, the decision not to object to the Settlement, provided such claim arises out of or relates to the purchase or acquisition of Vaxart common stock; and (ii) any Released Defendants' Claims that any Settling Defendant does not know or expect to exist in his, her, or its favor, which if known by him, her, or it might have affected his, her, or its decision(s) with respect to the Settlement. With respect to any and all Released Claims and Released Defendants' Claims, the Settling Parties stipulate and agree that upon the Effective Date, the Settling Parties shall expressly waive, and each of the Settlement Class Members shall be deemed to have waived and by operation of the Judgment shall have waived, any and all provisions, rights, and benefits conferred by any law of any state or territory

of the United States, or principle of common law that is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides: "A general release does not extend to claims which the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or releasing party." The Plaintiffs acknowledge, and the Settlement Class Members shall be deemed by operation of the Judgment to have acknowledged, that the inclusion of "Unknown Claims" in the definitions of Released Claims and Released Defendants' Claims was separately bargained for and a key element of the Settlement of which this release is a part.

 1.57 "Vaxart" means Vaxart, Inc.

## 2. THE SETTLEMENT CONSIDERATION; ESTABLISHMENT OF ESCROW ACCOUNT

 2.1. Vaxart shall pay, or cause to be paid, in cash, the sum of U.S. $12,015,000.00 (twelve million fifteen thousand U.S. dollars) to settle and release the Released Claims, to be paid by wire into the Escrow Account (to be established for the benefit of the Settlement Class) within 30 (thirty) calendar days after the Court signs and enters the Preliminary Approval Order. Plaintiffs' Counsel shall provide to Settling Defendants' Counsel the wire instructions for the Escrow Account, and an IRS Form W-9 for the Settlement Fund, within five (5) business days of the Court's signing of the Preliminary Approval Order.

 2.2. Settling Defendants shall also provide certain document production and discovery cooperation as set forth in the Memorandum of Understanding, including (a) producing all of the documents described under the heading "Documents to Be Produced" in Exhibit B to the Memorandum of Understanding, consistent with the terms for production thereof as set forth in said Exhibit B, and subject to such extensions as may be reasonably necessary to resolve any disputes as provided for therein; and (b) cooperating in making witnesses available for deposition should Plaintiffs seek formal discovery regarding their non-released claims against Armistice or any Armistice Entities (including any of their officers, directors, managing partners, or agents, in their capacities as such). The Memorandum of Understanding, which provides that disputes

thereunder shall be resolved by the Mediator, shall not be filed with the Court unless the Court so directs or unless reasonably necessary to enforce its terms, nor shall it otherwise be disclosed unless ordered by the Court. The Court may examine the relevant provisions of the Memorandum of Understanding if so requested by the Court, and if the Court requires that they be filed, the Parties shall request that they be filed under seal.

2.3.    The Settlement Fund shall be used to pay: (i) Taxes and any Tax Expenses, the Notice and Administration Expenses as authorized by this Stipulation; (iii) Attorneys' Fees and Expenses authorized by the Court; (iv) any Award to Plaintiffs authorized by the Court; and (iv) other fees and expenses, if any, authorized by the Court. The balance of the Settlement Fund remaining after the above payments shall constitute the Net Settlement Fund, which shall be distributed to the Authorized Claimants in accordance with this Stipulation.

2.4.    The Settlement is non-recapture, *i.e.* it is not a claims-made settlement. Upon the occurrence of the Effective Date, no Settling Defendant, Released Defendant Person, or any other Person or entity who or which paid any portion of the Settlement Amount, including, without limitation, Settling Defendants' insurance carriers, shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever.

2.5.    Any sums required to be held in escrow hereunder shall be held by the Escrow Agent, which shall be controlled by Plaintiffs' Counsel (subject to the supervision of the Court) for the benefit of the Settlement Class until the Effective Date. To the extent that money is not paid out from the Settlement Fund as authorized by this Stipulation or as otherwise ordered by the Court, all assets held by the Escrow Agent in the Settlement Fund shall be deemed to be held in *custodia legis* and shall remain subject to the jurisdiction of the Court until such time as they shall be distributed or returned pursuant to this Stipulation and/or further order of the Court. Other than amounts disbursed for Notice and Administration Expenses, Taxes and Tax Expenses, and Attorneys' Fees and Expenses, the remainder of the Settlement Fund shall not be distributed before the Effective Date occurs. The Escrow Agent shall not disburse the Settlement Fund, or any portion

thereof, except as provided in this Stipulation, or upon order of the Court. The Escrow Agent shall bear all risks related to the holding of the Settlement Fund in the Escrow Account.

2.6.    The Escrow Agent, at the direction of Plaintiffs' Counsel, shall invest all funds exclusively in eligible investments, meaning obligations issued or guaranteed by the United States Government or any agency or instrumentality thereof, backed by the full faith and credit of the United States, or fully insured by the United States Government or an agency thereof, and the Escrow Agent (unless otherwise instructed by Plaintiffs' Counsel) shall reinvest the proceeds of these obligations or instruments as they mature in similar instruments at their then-current market rates. Interest earned on the money deposited into the Escrow Account shall be part of the Settlement Fund.

2.7.    Neither the Settling Parties nor their respective counsel shall be liable for the loss of any portion of the Settlement Fund, nor have any liability, obligation, or responsibility for (a) the payment of claims, taxes, legal fees, or any other expenses payable from the Settlement Fund; (b) the investment of any Settlement Fund assets; or (c) any act, omission, or determination of the Escrow Agent.

## 3.  SCOPE AND EFFECT OF SETTLEMENT

3.1.    The obligations incurred pursuant to this Stipulation shall be in full and final disposition of: (i) the Action as against the Settling Defendants; (ii) any and all Released Claims as against the Released Defendant Persons; and (iii) any and all Released Defendants' Claims as against the Released Plaintiff Persons, as more fully set forth herein.

3.2.    Upon the Effective Date of this Settlement, Plaintiffs and each of the Settlement Class Members, on behalf of themselves and their Related Persons, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, waived, relinquished and discharged, and shall forever be enjoined from prosecuting, all Released Claims against each Released Defendant Person, whether or not such Plaintiff or Settlement Class Member executes and delivers a Proof of Claim.  For the avoidance of doubt, however, nothing in the foregoing

provision or any other provision of this Stipulation is intended to, or should be construed or interpreted as, releasing, waiving, relinquishing, discharging, enjoining or otherwise limiting any claim by the Plaintiffs or the Settlement Class Members against (a) Boyd or Maher, except in their capacities as former Vaxart directors; (b) Boyd and Maher's Related Persons, insofar as such Related Person's liability to any Settlement Class Member derives from or is based upon acts or omissions of Boyd or Maher that were made on behalf of Armistice (or any Armistice Entity), or were otherwise made in any capacity other than their respective capacities as a former Vaxart director; and (c) Armistice and the Armistice Entities and their respective Related Persons in their capacities as such.

3.3.    Upon the Effective Date of this Settlement, Settling Defendants and each of the Released Defendant Persons (other than defendants Maher and Boyd and their Related Persons in their capacities as such) shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, waived, relinquished and discharged, and shall forever be enjoined from prosecuting, each and every one of the Released Defendants' Claims against each Released Plaintiff Person.

3.4.    Upon the Effective Date of this Settlement, no Person may bring or pursue any Barred Claims against any Released Defendant Persons.

3.5.    The releases provided in this Stipulation shall become effective immediately upon the occurrence of the Effective Date without the need for any further action, notice, condition or event.

**4.      ISSUANCE OF NOTICE; ADMINISTRATION AND CALCULATION OF CLAIMS, FINAL AWARDS, AND DISTRIBUTION OF NET SETTLEMENT FUND**

4.1.    The Claims Administrator shall (a) administer the issuance of notice to the Settlement Class in accordance with the terms of the Preliminary Approval Order and any other orders of the Court, (b) determine the validity of the Proofs of Claim submitted and calculate the recognized loss amounts of Authorized Claimants that shall be allowed, (c) administer the

distribution of the Net Settlement Fund to Authorized Claimants; and (d) otherwise provide such claims administration services as are customary in settlements of this type, subject to such supervision of Plaintiffs' Counsel and (as appropriate or as circumstances may require) the Court. The Claims Administrator shall be retained subject to the condition that it agrees to be subject to the jurisdiction of the Court.

4.2.    Notice and Administration Expenses shall be paid from the Settlement Fund. Notwithstanding that the Effective Date has not yet occurred, Plaintiffs' Counsel may pay (or cause to be paid) from the Escrow Account the actual costs of notice and related administrative expenses without further court order, up to US $300,000 (three hundred thousand U.S. dollars).  In no event shall the Plaintiffs or Plaintiffs' Counsel be responsible to pay any amount for Notice and Administration Expenses.

4.3.    Vaxart will cooperate in good faith in the class notice process and, for purposes of identifying and giving notice to the Settlement Class, shall use reasonable efforts to provide to the Claims Administrator (at no cost to the Settlement Class and within twenty (20) calendar days of the execution of this Stipulation) the last known names and addresses of all Persons or entities who, based on the records of Vaxart or its transfer agent, are likely Settlement Class Members or nominees of Settlement Class Members. In addition, no later than ten (10) calendar days following the filing of this Stipulation with the Court, Vaxart shall serve the notice required under the Class Action Fairness Act, 28 U.S.C. § 1715 et seq. ("CAFA") on behalf of all Settling Defendants. Vaxart shall be solely responsible for the costs of the CAFA notice and administering the CAFA notice.  The Parties agree that any delay by Vaxart in timely serving the CAFA notice will not provide grounds for delay of the Fairness Hearing or entry of the Judgment.

4.4.    The Released Defendant Persons shall have no role in, or any liability, obligation, or responsibility for, the dissemination of the Notice (other than as provided in ¶4.3 above), the administration of the Settlement, or the distribution of the Settlement Fund, including with respect to: (i) any act, omission, or determination by Plaintiffs' Counsel or the Claims Administrator, or

any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; or (iii) the payment or withholding of any taxes, expenses, and/or costs incurred with the taxation of the Settlement Fund or the filing of any federal, state, or local returns.

4.5.    Each Settlement Class Member wishing to participate in the Settlement shall be required to submit to the Claims Administrator a Proof of Claim, substantially in the form set forth in Exhibit A-2 hereto and as approved by the Court, which, *inter alia,* will also provide for the release of all Released Claims as against all Released Defendant Persons.  Each Proof of Claim must be signed under penalty of perjury by the beneficial owner(s) of the Vaxart common stock that are the subject of the Proof of Claim, or by someone with documented authority to sign for the beneficial owner(s), and must be supported by such documents as specified in the Instructions contained in the Proof of Claim form.

4.6.    All Proofs of Claim must be postmarked or received within the time prescribed in the Preliminary Approval Order unless otherwise ordered by the Court. Any Settlement Class Member who fails to submit a properly completed Proof of Claim within such period as shall be authorized by the Court shall be forever barred from receiving any payments pursuant to this Stipulation or from the Net Settlement Fund (unless Plaintiffs' Counsel in its discretion deems such late submission to be a formal or technical defect and waives the lateness of the submission in the interest of achieving substantial justice, or unless by order the Court approves that Settlement Class Member's untimely submitted Proof of Claim), but will in all other respects be subject to the provisions of this Stipulation and the Judgment (or any Alternative Judgment), including, without limitation, the release of the Released Claims and dismissal of the Action. Provided that it is received before the motion for approval of the Settlement Class Distribution Order is filed, a Proof of Claim shall be deemed to have been submitted when posted if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the

instructions thereon. In all other cases, the Proof of Claim shall be deemed to have been submitted when actually received by the Claims Administrator.

4.7.     Each Proof of Claim shall be submitted to and reviewed by the Claims Administrator who shall determine, under the supervision of Plaintiffs' Counsel, in accordance with this Stipulation and any applicable orders of the Court, the extent, if any, to which each claim shall be allowed, subject to review by the Court pursuant to ¶4.9 below.

4.8.     Proofs of Claim that do not meet the submission requirements may be rejected. Prior to rejecting a Proof of Claim, the Claims Administrator shall communicate with the Claimant to give the Claimant the opportunity to remedy any curable deficiencies in the Proof of Claim submitted. The Claims Administrator, under the supervision of Plaintiffs' Counsel, shall notify in a timely fashion and in writing, all Claimants whose Proofs of Claim they propose to reject in whole or in part, setting forth the reasons thereof, and shall indicate in such deficiency notice that the Claimant whose claims are to be rejected has the right to review by the Court if the Claimant so desires and complies with the requirement of ¶4.9 below.

4.9.     If any Claimant whose claim has been rejected in whole or in part desires to contest such rejection, the Claimant must, within twenty (20) calendar days after the date of mailing of the notice required by ¶4.6 above, serve upon the Claims Administrator a written statement of reasons indicating the Claimant's ground for contesting the rejection along with copies of any supporting documentation, and requesting a review thereof by the Court. If a dispute concerning a claim cannot be otherwise resolved, Plaintiffs' Counsel shall thereafter present the request for review to the Court.

4.10.    The administrative determination of the Claims Administrator accepting and rejecting claims shall be presented by Plaintiffs to the Court in a motion for approval of the Settlement Class Distribution Order.

4.11.    Without regard to whether a Proof of Claim is submitted or allowed, each Claimant who declines to be excluded from the Settlement Class shall be deemed to have submitted to the

jurisdiction of the Court with respect to such Claimant's claim, and such Claimant's claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that Claimant's status as a Settlement Class Member and the validity and amount of the Claimant's claim. No discovery shall be allowed on the merits of the Action or Settlement in connection with processing of the Proofs of Claim.

4.12.   Payment pursuant to this Stipulation shall be deemed final and conclusive against all Settlement Class Members. All Settlement Class Members whose claims are not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund, but shall otherwise be bound by all of the terms of the Judgment (or Alternative Judgment) to be entered in the Action and the releases provided for in this Stipulation, and will be barred from bringing any action against the Released Defendant Persons arising out of or relating to the Released Claims.

4.13.   All proceedings with respect to the administration, processing, and determination of claims described in this Stipulation and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of the Court.

4.14.   After the Claims Administrator calculates the recognized losses of each Authorized Claimant, Plaintiffs' Counsel shall file a motion for distribution of the Net Settlement Fund with the Court, requesting the Court (a) to authorize the payment from the Settlement Fund any as yet unpaid Notice and Administration Expenses; (b) to resolve (if it has not previously done so or been asked to do so) any objections with respect to any rejected or disallowed claims; and (c) approve the distribution of the Net Settlement Fund to the Authorized Claimants upon final resolution of any rejected or disallowed claims.  Such motion shall not be filed until after all of the following conditions have been met: (i) the Effective Date has occurred; (ii) all claims have been processed, and all Claimants whose claims have been rejected or disallowed, in whole or in part, have been notified and provided the opportunity to be heard by the Claims Administrator concerning such

rejection or disallowance; and (iii) all matters with respect to the Fee and Expense Application have been resolved by the Court, and any appeals therefrom have been resolved or the time therefor has expired.

4.15.    If any balance remains in the Net Settlement Fund six (6) months after the date of the initial distribution the Net Settlement Fund (by reason of tax refunds, uncashed checks or otherwise), Plaintiffs' Counsel shall request the Claims Administrator, if economically feasible and reasonable, to reallocate such balance among those Authorized Claimants who have cashed their checks in an equitable fashion, after payment of any unpaid costs or fees incurred in administering the Net Settlement Fund for such redistribution.  If any balance shall still remain in the Net Settlement Fund six (6) months after such re-distribution, then such balance shall be contributed to a non-sectarian, non-profit Section 501(c)(3) organization as may be deemed appropriate by the Court.

4.16.    No Person shall have any claim against any Released Defendant Persons (including any Settling Defendants' Counsel), any Released Plaintiff Persons (including any Plaintiffs' Counsel), or the Claims Administrator, based on determinations or distributions made substantially in accordance with this Stipulation and the Settlement contained herein, the Plan of Allocation, or any orders of the Court.

## 5.  TAX TREATMENT

5.1.    The Settling Parties agree that the Settlement Fund is intended at all times to be a qualified settlement fund within the meaning of Treasury Regulation §1.46813-1 and §468B of the Internal Revenue Code, as amended, for the taxable years of the Settlement Fund, beginning with the date it is created. In addition, the Escrow Agent and, as required, Plaintiffs and Vaxart, shall jointly and timely make such elections as are necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treas. Reg. §1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Claims

Administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

5.2.    For purposes of §468B of the Internal Revenue Code, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Claims Administrator. The Claims Administrator shall timely and properly file all tax returns necessary or advisable with respect to the Settlement Fund, and make all required tax payments, including deposits of estimated tax payments in accordance with Treas. Reg. §1.468B-2(k). Such returns (as well as the election described in ¶5.1 above) shall be consistent with this paragraph and reflect that all Taxes and Tax Expenses (including any estimated Taxes and Tax Expenses, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein.

5.3.    All Taxes and Tax Expenses shall be paid out of the Settlement Fund. In all events, the Released Defendant Persons shall have no liability for Taxes and Tax Expenses. Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court. The Escrow Agent shall be obligated (notwithstanding anything in this Stipulation to the contrary) to withhold from distribution to Settlement Class Members any funds necessary to pay such Taxes and Tax Expenses, including the establishment of adequate reserves for any Taxes and Tax Expenses. Plaintiffs and Vaxart agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this paragraph.

5.4.    The Released Defendant Persons shall have no liability for or obligations with regard to Taxes and Tax Expenses. The Escrow Agent, through the Settlement Fund, shall indemnify and hold each of the Released Defendant Persons harmless for any Taxes and Tax Expenses (including, without limitation, taxes payable by reason of such indemnification).

5.5.    Plaintiffs and Plaintiffs' Counsel shall have no liability for or obligations with regard to Taxes and Tax Expenses. The Escrow Agent, through the Settlement Fund, shall

indemnify and hold each of Plaintiffs and Plaintiffs' Counsel harmless for any Taxes and Tax Expenses (including, without limitation, taxes payable by reason of such indemnification).

## 6. ALLOCATION OF NET SETTLEMENT FUND

6.1.    The Claims Administrator shall determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's Recognized Claim as defined in the Plan of Allocation described in the Notice annexed hereto as Exhibit A-1, or in such other Plan of Allocation as the Court approves.

6.2.    The Plan of Allocation set forth in the Notice is not a necessary term of this Stipulation and it is not a condition of this Stipulation that any particular Plan of Allocation be approved.  The Plan of Allocation shall be prepared and proposed (subject to judicial approval) solely by Plaintiffs' Counsel.  Settling Defendants will have no involvement in or responsibility for preparing the Plan of Allocation and will take no position with respect to the proposed Plan of Allocation or such Plan of Allocation as may be approved by the Court.  The Plan of Allocation, and any changes thereto, is a matter separate and apart from the Settlement between the Settling Parties, and any decision by the Court concerning the Plan of Allocation, or any changes thereto, and any appeal of any order relating thereto or reversal or modification thereof, shall not operate to, or be grounds to, terminate, modify or cancel, or affect the enforceability of, this Stipulation, or affect or delay the validity or finality of the Judgment (or Alternative Judgment) approving the Settlement. Each Authorized Claimant shall be allocated a *pro rata* share of the Net Settlement Fund based on his, her or its Recognized Claim compared to the total Recognized Claims of all accepted claimants.

6.3.    Settling Defendants shall have no involvement in the solicitation or review of Proofs of Claim, and shall have no involvement in the administration process itself, which shall be conducted by the Claims Administrator in accordance with this Stipulation, the Plan of Allocation, and any orders that may be entered by the Court. No Claimant or Authorized Claimant shall have

any claim against any Released Defendant Person or their counsel based on, or in any way relating to, the distributions from the Settlement Fund.

6.4.    No Authorized Claimant shall have any claim against Plaintiffs' Counsel or the Claims Administrator based on, or in any way relating to, the distributions from the Net Settlement Fund that have been made substantially in accordance with this Stipulation and any applicable orders of the Court.

## 7.  THE FEE AND EXPENSE APPLICATION

7.1.    Plaintiffs' Counsel will submit an application to the Court (the "Fee and Expense Application") for an award of Attorneys' Fees and Expenses, including for (i) attorneys' fees and payment of litigation costs and expenses incurred in connection with the prosecution of the Action, plus interest on such amounts awarded at the same rate as earned on the Settlement Fund until paid; and (iii) one or more Awards to Plaintiffs.

7.2.    Any Attorneys' Fees and Expenses awarded by the Court shall be payable from the Gross Settlement Fund immediately upon entry by the Court of an order awarding such amounts, notwithstanding the existence of any timely filed objections thereto, or potential for appeal or collateral attack on the Settlement or any part thereof.  Plaintiffs' Counsel shall thereafter be solely responsible for allocating the Attorneys' Fees and Expenses among all counsel who have represented Plaintiffs or the proposed Settlement Class in a manner in which Plaintiffs' Counsel may or have agreed based on their assessment of the overall respective contributions of such counsel to the initiation, prosecution, and resolution of the Action.  However, if and when, as a result of any appeal and/or further proceedings on remand, or successful collateral attack, any Attorneys' Fees and Expense award is overturned or reduced, or if the Settlement is terminated or is not approved by the Court, or if there is an appeal and any order approving the Settlement does not become final and binding upon the Settlement Class, then, within fifteen (15) business days after receiving notice from any Settling Defendants' Counsel or such an order from a court of appropriate jurisdiction, each Plaintiffs' Counsel law firm shall refund to the Settlement Fund such

Attorneys' Fees and Expenses previously paid to them, plus interest thereon at the same rate as earned on the Settlement Fund, in an amount consistent with such reversal or reduction.

7.3.    Any Awards to Plaintiffs shall be paid from the Settlement Fund ten (10) calendar days following the Judgment becoming Final.

7.4.    The Released Defendant Persons shall have no responsibility for or liability with respect to any payment or allocation of any award of Attorneys' Fees and Expenses from the Settlement Fund.  Settling Defendants will take no position with respect to the Fee and Expense Application.

7.5.    It is agreed that the procedure for and the allowance or disallowance by the Court of any Fee and Expense Application shall be considered by the Court separate and apart from its consideration of the fairness, reasonableness, and adequacy of the Settlement, and any order or proceeding relating to the Fee and Expense Application, and any appeal of any order relating threreto or reversal or modification thereof, shall not operate to, or be grounds to, terminate, modify, or cancel this Stipulation or affect or delay its finality, and shall have no effect on the terms of this Stipulation or on the validity or enforceability of this Settlement. The approval, finality and effectiveness of the Settlement shall not be contingent on an award of Attorneys' Fees and Expenses, or on any Awards to Plaintiffs.

## 8.  THE PRELIMINARY APPROVAL ORDER

8.1.    Promptly after execution of this Stipulation, the Settling Parties shall submit the Stipulation together with its exhibits to the Court and shall jointly apply for entry of a Preliminary Approval Order in connection with settlement proceedings substantially in the form annexed hereto as Exhibit A, providing for, among other things:  (a) preliminary approval of the Settlement as set forth in this Stipulation; (b) the setting of deadlines for the mailing of the Notice and dissemination of the Summary Notice; (c) the setting of deadlines for Settlement Class Members to submit Proofs of Claim, requests for exclusion from the Settlement Class (also known as "opt-out" requests), or objections to the proposed Settlement, Plan of Allocation and/or the Fee and

Expense Application ("Objections"); (d) the setting of the time, date and location for the Fairness Hearing; (e) approval of Lead Counsel's recommended Claims Administrator; and (f) approval of the form and content of the Notice, the Proof of Claim and Release, and the Summary Notice, respectively, substantially in the forms of Exhibits A-1, A-2 and A-3 attached hereto.

8.2.    Any Settlement Class Member who wishes to opt out of the Settlement must submit a timely written request for exclusion (including any required documentation) on or before the deadline for doing so set by the Court, in accordance with the Preliminary Approval Order and the Notice (a "Request for Exclusion").  Requests for Exclusion on behalf of groups, including "mass" or "class" opt-outs, will not be permitted.  Any Settlement Class Member who does not submit a timely and valid written request for exclusion will be bound by all Court proceedings, orders and judgments, whether or not he, she, or it timely submits a Proof of Claim and Release.

8.3.    Any Settlement Class Member who wishes to object to the fairness, reasonableness or adequacy of this Settlement or to any aspect of the Plan of Allocation or the Fee and Expense Application must do so in the manner specified and within the deadlines specified in the Preliminary Approval Order and the Notice.

8.4.    As part of the motion or application for entry of the Preliminary Approval Order, the Settling Parties, unless they otherwise agree in writing, shall request that the Court hold the Fairness Hearing, on a date to occur at least twenty-one (21) calendar days after the deadline(s) referenced in ¶¶8.1-8.3 above for Settlement Class Members to submit any Requests for Exclusion or Objections.

8.5.    The Settling Parties shall request that the postmark deadline for objecting to and/or submitting Requests for Exclusion from this Settlement be set at least sixty (60) calendar days after the date for the initial mailing of the Notice as set forth in the Preliminary Approval Order. The Claims Administrator shall promptly notify Lead Counsel and Settling Defendants' Counsel upon receipt of any Requests for Exclusion.

## 9.  THE JUDGMENT

9.1.    Following the issuance of Notice, Plaintiffs shall file with the Court a motion for final approval of the Settlement and entry of a Judgment substantially in the form of Exhibit B hereto.  Should Plaintiffs so request, the Settling Defendants shall join in requesting final approval of the Settlement and entry of a Judgment substantially in the form of Exhibit B hereto.

9.2.    The Settling Parties understand and agree that the entry of a bar order is integral to and an essential term of the settlement and, as such, the Judgment will contain a bar order as specified in paragraphs 16-17 of Exhibit B hereto.

9.3.    The Judgment will provide that the Non-Settling Defendants shall be entitled to a reduction of any judgment that may be entered against them in this Action equal to the greater of: (i) the Settlement Amount; or (ii) the Released Defendant Persons' proportionate share of the fault.

## 10.    EFFECTIVE DATE OF SETTLEMENT; TERMINATION

10.1.    The Effective Date of the Settlement shall be the date on which all of the following events have occurred:

(a) the Court has entered the Preliminary Approval Order in all material respects;

(b) the full amount of the Settlement Amount has been paid into the Escrow Account pursuant to ¶2.1 above;

(c) No Settling Defendant or group of Settling Defendants have exercised its right (if applicable) to terminate the Settlement pursuant to ¶10.4 below or to the Supplemental Agreement pursuant to ¶10.5 below, and its options (if applicable) to do so have expired in accordance with the terms of the Stipulation and/or the Supplemental Agreement;

(d) Plaintiffs have not exercised their right (if applicable) to terminate the Settlement pursuant to ¶10.4, and their option (if applicable) to do so has expired in accordance with the terms of the Stipulation; and

(e) the Court has entered the Judgment (or Alternative Judgment) following issuance of Notice to the Settlement Class that approves the Settlement, and such Judgment has become Final.

10.2.   Upon the occurrence of all of the events referenced in ¶10.1 above, Plaintiffs shall have, and each Settlement Class Member shall hereby be deemed to have, and by operation of the Order and Final Judgment shall have, fully, finally, and forever released, waived, settled, and discharged, the Released Defendant Persons from and with respect to the Released Claims, whether or not such Settlement Class Members have executed a Proof of Claim.

10.3.   Upon the occurrence of all of the events referenced in ¶ 10.1 above, any obligation (if otherwise applicable) of the Escrow Agent to return any funds from the Settlement Fund to Vaxart pursuant to ¶10.7 or any other provision of this Stipulation shall be absolutely and forever extinguished.

10.4.   Vaxart, or a majority of Plaintiffs, through their respective counsel, shall each, in their respective discretions, but in all events subject to ¶10. herein, have the right to terminate the Settlement and this Stipulation by providing written notice of their election to do so ("Termination Notice") to all other counsel for the Settling Parties within thirty (30) calendar days of:

a.      the Court's Final non-appealable refusal to enter the Preliminary Approval Order in any material respect;

b.      the Court's Final non-appealable refusal to approve this Stipulation or any material part of it (except with respect to any decision by the Court concerning the Fee and Expense Application and Plan of Allocation);

c.      the Court's Final non-appealable refusal to enter the Judgment (or an Alternative Judgment) in any material respect; or

d.      the date on which the Judgment (or an Alternative Judgment) is modified or reversed in any material respect by a Court of Appeals or the United States Supreme Court and such modification or reversal has become Final.

10.5.    If, prior to the Fairness Hearing, Persons who otherwise would be Settlement Class Members have timely submitted a valid request for exclusion ("Request for Exclusion") from the Settlement Class in accordance with the provisions of the Preliminary Approval Order and the Notice issued pursuant thereto, and who have not retracted their Request for Exclusion before the Fairness Hearing, and such Persons in the aggregate purchased Vaxart common stock during the Class Period in an amount equal to or greater than the amount specified in a separate Supplemental Agreement between the Settling Parties (the "Supplemental Agreement"), then Vaxart, in its sole discretion, shall have the option to terminate this Stipulation and Settlement in accordance with the requirements and procedures set forth in the Supplemental Agreement.   Plaintiffs' Counsel shall, however, have the opportunity to seek retraction of any Request for Exclusion prior to the Fairness Hearing.  The Supplemental Agreement shall not be filed with the Court unless and until a dispute among the Settling Parties concerning its interpretation or application arises, or as otherwise ordered by the Court, nor shall the Supplemental Agreement otherwise be disclosed unless ordered by the Court.  The Court may examine the Supplemental Agreement if so requested by the Court, and if the Court requires that it be filed, the Parties shall request that it be filed under seal.

10.6.    If Vaxart (or its successor) does not pay or cause to be paid the Settlement Amount in full within the time period specified in ¶2.1 of this Stipulation, then Plaintiffs' Counsel, in their sole discretion, may, at any time prior to the Court entering the Judgment (or an Alternative Judgment): (i) terminate the Settlement by providing written notice to counsel for the Settling Parties; (ii)  seek to enforce the terms of the Settlement and this Stipulation and seek entry of a judgment and/or order effecting and enforcing the terms of this Stipulation; and/or pursue such other rights as Plaintiffs and the Settlement Class may have arising out of the failure to timely pay the Settlement Amount in full into the Escrow Account.

10.7.    Except as otherwise provided herein, in the event the Settlement is terminated in accordance with its terms, the Judgment (or Alternative Judgment) is vacated, or the Effective

Date fails to occur, then (a) the Settling Parties shall be deemed to have reverted to their respective statuses and positions in the Action as of the date of this Stipulation, and the fact and terms of the Settlement shall not be admissible in any trial of the Action and, except as otherwise expressly provided, the Settling Parties shall proceed in all respects as if this Stipulation and any related orders had not been entered, and (b) any portion of the Settlement Amount previously paid by or on behalf of the Settling Defendants, together with any interest earned thereon (and, if applicable, repayment of any award of Attorneys' Fee and Expenses), less any actual and reasonable Notice and Administration Costs incurred and any Taxes paid or due, shall be returned within fourteen (14) business days after the date of the event causing termination to the party, insurer or other entity that contributed the funds.  Notwithstanding anything to the contrary herein, however, the provisions of ¶¶ 1.1-1.57, 2.6-2.7, 4.2, 4.4, 5.1-5.5, 7.2, 10.5, 10.7-10.8 and 11.8 shall survive termination.

10.8.   If this Stipulation is terminated pursuant to its terms at the request of Vaxart or the Plaintiffs, the Escrow Agent or the Escrow Agent's designee shall (a) apply for any tax refund owed to the Settlement Fund and (b) pay the proceeds of any tax refund, after deduction of any fees and expenses incurred in connection with such refund application(s), to Vaxart.

10.9.   No order of the Court or modification or reversal of any order of the Court concerning the Plan of Allocation or the amount of any attorneys' fees, costs, and expenses awarded by the Court shall constitute grounds for termination of the Stipulation.

## 11.    MISCELLANEOUS PROVISIONS

11.1.   The Settling Parties acknowledge that it is their intent to consummate the Settlement contemplated by this Stipulation.

11.2.   The Settling Parties shall use their best best efforts and take all necessary steps to consummate the Settlement contemplated herein, and the Settling Parties and their respective counsel agree to cooperate reasonably with one another in seeking judicial approval of the Preliminary Approval Order, the Stipulation and the Settlement, and the entry of the Judgment (or

an Alternative Judgment), and to promptly agree upon and execute all such other documentation as may be reasonably required to obtain final judicial approval of the Settlement and to effectuate and implement all terms and conditions of this Stipulation.

11.3.   The administration and consummation of the Settlement as embodied in this Stipulation shall be under the authority of the Court, and the Court shall also retain jurisdiction for purposes of, *inter alia,* entering orders relating to the Fee and Expense Application, the Plan of Allocation, and the enforcement of the terms of this Stipulation.

11.4.   The Settling Parties agree that the Settlement Amount, and the other terms of the Settlement, were negotiated at arm's length and in good faith by the Settling Parties, and that the Settlement was reached voluntarily and only after negotiations conducted under the auspices of a highly experienced mediator (the Hon. Layn Phillips) during which all Settling Parties were represented by experienced and competent legal counsel.

11.5.   By executing this Stipulation, each of the Settling Parties represents that they have the right, legal capacity, power and authority to enter into this Stipulation and to perform their obligations hereunder, without requiring additional consent, approval, or authorization of any other person, board, entity, tribunal, or other regulatory or governmental authority;

11.6.   By executing this Stipulation, each of the Settling Parties represents that the execution and delivery of this Stipulation and the performance of each and every obligation in this Stipulation does not and will not result in a breach of or constitute a default under, or require any consent under, any duty, relationship, contract, agreement, covenant, promise, guarantee, obligation or instrument to which the executing Settling Party is a party or by which the executing Settling Party is bound or affected;

11.7.   Each Settling Party agrees that no representations, warranties, inducements, covenants, or promises of any kind or character have been made by any other Settling Party, Released Person, or anyone else to induce the execution of this Stipulation except as expressly provided in this Stipulation, and that this Stipulation and its exhibits, together with the

Supplemental Agreement and the provisions of the Memorandum of Understanding relating to certain discovery obligations of the Settling Defendants, constitutes the entire agreement between the Settling Parties.

11.8.   Each Settling Party represents and warrants that they have had the opportunity to be represented by counsel of their choice throughout the negotiations which preceded the execution of this Stipulation and in connection with the preparation and execution of this Stipulation, and that they have been afforded sufficient time and opportunity to review this Stipulation with counsel of their choice.

11.9.   All of the exhibits attached hereto are hereby incorporated by reference as though fully set forth in this Stipulation.

11.10.  No amendment or modification of this Stipulation shall be effective unless in writing and signed by, or on behalf of, all of the Settling Parties.

11.11.  Whenever this Stipulation requires or contemplates that a Settling Defendant shall or may give notice to Plaintiffs (or Plaintiffs' Counsel), or that Plaintiffs shall or may give notice to a Settling Defendant (or Settling Defendants' Counsel), unless otherwise specified such notice shall be provided by email and next business day express delivery service, as set forth below, to the below-listed counsel:

If to Plaintiffs or Plaintiffs' Counsel:

> HAGENS BERMAN SOBOL SHAPIRO LLP
> c/o Reed R. Kathrein
> 715 Hearst Avenue, Suite 202
> Berkeley, CA 94710
> reed@hbsslaw.com
>
> and
>
> SCOTT+SCOTT ATTORNEYS AT LAW LLP
> c/o William C. Fredericks
> 230 Park Avenue, 17th Floor
> New York, NY 10169
> wfredericks@scott-scott.com

If to Settling Defendants or Settling Defendants' Counsel:

THOMPSON HINE LLP
c/o Riccardo M. DeBari
335 Madison Avenue, 12th Floor
New York, NY  10017-4611
Riccardo.DeBari@thompsonhine.com

11.12.  Except as otherwise provided herein, each Settling Party shall bear its own costs. Plaintiffs' Counsels' Attorneys' Fees and Expenses, subject to Court approval, shall be paid only out of the Settlement Fund, and the Released Defendant Persons shall have no obligation with respect to the payment of said Attorneys' Fees and Expenses.

11.13.  Plaintiffs' Counsel, on behalf of the Settlement Class, are expressly authorized to take all appropriate action required or permitted to be taken by the Settlement Class pursuant to this Stipulation to effectuate its terms, and to enter into any written modifications or amendments to this Stipulation on behalf of the Settlement Class.

11.14.  This Stipulation shall be binding upon, and inure to the benefit of, the successors, assigns, executors, administrators, heirs, and representatives of the Settling Parties. No assignment shall relieve any Settling Party hereto of any obligations hereunder.

11.15.  This Stipulation and all exhibits hereto shall be governed by, construed, performed, and enforced in accordance with the laws of the State of California without regard to its rules of conflicts of law, except to the extent that federal law requires that federal law governs.

11.16.  The Plaintiffs, on behalf of themselves and each member of the Settlement Class, and the other Settling Parties hereby irrevocably submit to the jurisdiction of the Court for any suit, action, proceeding, or dispute arising out of or relating to this Stipulation, the applicability of this Stipulation, or the enforcement of this Stipulation. The administration and consummation of the Settlement as embodied in this Stipulation shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering orders providing for awards of Attorneys' Fees and Expenses to Plaintiffs' Counsel, any Award to Plaintiffs, and enforcing the terms of this Stipulation.

11.17.  The Settling Parties acknowledge that each Settling Party has participated jointly and equally in the negotiation and preparation of this Stipulation. In the event an ambiguity or question of intent or interpretation arises, such ambiguity or question shall not be construed against any Settling Party, and no presumption or burden of proof shall arise from favoring or disfavoring any Settling Party solely by virtue of the authorship of any of the provisions of this Stipulation, and instead this Stipulation shall be construed as if all Settling Parties participated equally in the drafting of all such provisions.

11.18. Neither this Stipulation, nor the fact of the Settlement, is an admission or concession by Released Defendant Persons of any liability or wrongdoing whatsoever. This Stipulation shall not constitute a finding of the validity or invalidity of any factual allegation or any claims in the Action or of any liability or wrongdoing by any of the Released Defendant Persons. This Stipulation, the fact of settlement, the settlement proceedings, the settlement negotiations, and any related documents, shall not be used or construed as an admission of any factual allegation, fault, liability, or wrongdoing by any person or entity, and shall in no event be offered or received in evidence as an admission, concession, presumption, or inference against any party in any action or proceeding of any nature, or otherwise referred to or used in any manner in or before any court or other tribunal, except in such proceeding as may be necessary to enforce this Stipulation.

11.19.  The Settling Parties agree not to assert in any forum that the Action was brought by Plaintiffs or defended by Settling Defendants in bad faith or without a reasonable basis, and further agree not to assert in any forum that any Settling Party violated any provision of Rule 11 of the Federal Rules of Civil Procedure, the Private Securities Litigation Reform Act of 1995, or any other similar statute, rule, or law, relating to the commencement, prosecution, maintenance, defense, litigation or settlement of the Action.

11.20.  All agreements made and orders entered during the course of this Action relating to the confidentiality of information shall survive this Settlement.

11.21.  The headings in this Stipulation are used for purposes of convenience and ease of reference only and are not meant to have legal effect.

11.22.  The waiver by one Settling Party of any breach of this Stipulation by any other Settling Party shall not be deemed a waiver by any other Settling Party of such breach, nor shall it be deemed a waiver of any other breach of this Stipulation, including any prior or subsequent breach of this Stipulation. The provisions of this Stipulation may not be waived except by a writing signed by the affected Settling Party or counsel for that Settling Party. No failure or delay on the part of any Settling Party in exercising any right, remedy, power, or privilege under this Stipulation shall operate as a waiver thereof or of any other right, remedy, power, or privilege of such Settling Party under this Stipulation; nor shall any single or partial exercise of any right, remedy, power, or privilege under this Stipulation on the part of any Settling Party operate as a waiver thereof or of any other right, remedy, power, or privilege of such Settling Party under this Stipulation, or preclude further exercise thereof or the exercise of any other right, remedy, power, or privilege.

11.23.  The Settling Parties agree that nothing contained in this Stipulation shall cause any Settling Party to be the agent or legal representative of another Settling Party for any purpose whatsoever, nor shall this Stipulation be deemed to create any form of business organization between the Settling Parties, nor is any Settling Party granted any right or authority to assume or create any obligation or responsibility on behalf of any other Settling Party, nor shall any Settling Party be in any way liable for any debt of another Settling Party as a result of this Stipulation except as explicitly set forth in this Stipulation.

11.24. The Settling Parties agree that this Settlement is not contingent on any of the Settling Parties settling with any other party in the Action or in any other litigation, nor is it contingent in any way upon the outcome of Plaintiffs' efforts to pursue non-released claims against Armistice or any Armistice Entities (including any of their officers, directors, managing partners, or agents, in their capacities as such).

11.25.  All counsel and any other person executing this Stipulation and any of the exhibits hereto, or any related settlement documents, warrant and represent that they have full authority to do so on behalf of their respective clients, and that they similarly have the authority to take all appropriate actions required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

11.26.  This Stipulation may be executed in one or more original, photocopied, PDF copies or facsimile counterparts, and facsimile or scanned signatures shall have the same force and effect as original signatures, and the exchange of fully executed copies of this Stipulation may similarly be effectuated by pdf/email to the email addresses shown below for the Parties' respective counsel. All executed counterparts and each of them shall be deemed to be one and the same instrument. A copy of the complete set of executed counterparts of this Stipulation shall be electronically filed with the Court.

IN WITNESS WHEREOF, the Settling Parties, intending to be legally bound by this Stipulation, have caused this Stipulation to be executed, by their duly authorized attorneys, as of July 27, 2022.

THOMPSON HINE LLP


By: _____
Riccardo M. DeBari
Renee Zaytsev
Brian Lanciault
335 Madison Avenue, 12th Floor
New York, NY  10017-4611
Telephone: (212) 344-5680
Riccardo.DeBari@thompsonhine.com
Renee.Zaytsev@thompsonhine.com
Brian.Lanciault@thompsonhine.com

*Counsel for Settling Defendants Vaxart, Inc.,*
*Andrei Floroiu, Wouter W. Latour, M.D., Todd C.*
*Davis, Michael J. Finney, Robert A. Yedid, and*
*Sean N. Tucker*

**GOODWIN PROCTER LLP**

Jonathan A. Shapiro (SBN 257199)
Three Embarcadero Center, Suite 2800
San Francisco, CA 94111
Telephone: (415) 733-6000
jshapiro@goodwinlaw.com

*Additional Counsel for Settling Defendants
Vaxart, Inc., Andrei Floroiu, Wouter W. Latour,
M.D., Todd C. Davis, Michael J. Finney, Robert
A. Yedid, and Sean N. Tucker*

**HAGENS BERMAN SOBOL SHAPIRO LLP**

By: Reed R. Kathrein

Digitally signed by Reed R.
Kathrein
Date: 2022.07.27 22:39:26
-07'00'

Reed R. Kathrein
Lucas E. Gilmore
Raffi Melanson
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Tel:  (510) 725-3000
reed@hbsslaw.com
lucasg@hbsslaw.com
raffim@hbsslaw.com

Steven W. Berman
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com

*Counsel for Lead Plaintiffs Wei Huang and
Langdon Elliot and the Proposed Class*

**SCOTT+SCOTT, ATTORNEYS AT LAW,
LLP**

By: _____

William C. Fredericks
Jeffrey Jacobson
230 Park Avenue, 17th Floor

New York, NY 10169
Tel: (212) 223-6444
wfredericks@scott-scott.com
jjacobson@scott-scott.com

David R. Scott
156 South Main St.
Colchester, CT  06415
(860) 537-5537
david.scott@scott-scott.com

*Counsel for Additional Plaintiff Ani Hovhannisyan*