Reed R. Kathrein (139304)
Lucas E. Gilmore (250893)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com

*Lead Counsel*

[Additional counsel on signature page.]

William C. Fredericks (*pro hac vice*)
Jeffrey P. Jacobson (*pro hac vice*)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 233-6444
Facsimile:  (212) 233-6334
wfredericks@scott-scott.com
jjacobson@scott-scott.com

*Additional Counsel*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re VAXART, INC. SECURITIES LITIGATION | Case No. 3:20-cv-05949-VC |
| | CLASS ACTION |
| *This Document Relates to:*<br>    *ALL ACTIONS* | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SPOLIATION SANCTIONS**<br><br>Hearing Date: June 27, 2024<br>Time: 10:00 a.m.<br>Courtroom: 4, 17th Floor<br>Judge: Hon. Vince Chhabria |

**[REDACTED VERSION]**

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on June 27, 2024, at 10:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Vince Chhabria, located at the U.S. District Court for the Northern District of California, San Francisco Division, 450 Golden Gate Avenue, San Francisco, California 94102, Lead Plaintiffs Wei Huang and Langdon Elliott and Additional Plaintiff Ani Hovhannisyan (collectively, "Plaintiffs") will and hereby do respectfully move this Court for the imposition of sanctions against Defendants Armistice Capital, LLC ("Armistice Capital"), Armistice Capital Master Fund Ltd. ("Armistice Master Fund," and together with Armistice Capital, "Armistice"), Steven J. Boyd ("Boyd"), and Keith Maher ("Maher") (collectively, the "Armistice Defendants") for the spoliation of electronically stored information ("ESI").

Plaintiffs' Motion requests that the Court enter one or more of the following sanctions, pursuant to Federal Rules of Civil Procedure 37(b), 37(e)(1), and 37(e)(2):

(i)     a default judgment against the Armistice Defendants; or

(ii)    in the alternative, a mandatory adverse inference against the Armistice Defendants, instructing the jury to find that the elements of falsity and scienter have been established with regard to Plaintiffs' Securities Exchange Act of 1934 ("Exchange Act") §10(b), Rule 10b-5(a) and (c), scheme liability claims and the elements of knowledge and scienter have been established with regard to Plaintiffs' §20A insider trading claim; and

(iii)   reimbursement to Plaintiffs for their time and expenses incurred investigating the Armistice Defendants' spoliation and moving for sanctions, including the preparation of this Motion and all subsequent briefing.

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities below, the Declaration of Jeffrey P. Jacobson in Support of Plaintiffs' Motion for Spoliation

Sanctions ("Jacobson Decl."), the exhibits attached thereto,[1] the Corrected Second Amended Consolidated Class Action Complaint (ECF No. 258) ("SAC"), the Court's files in this Action, the arguments of counsel, and any other matter that the Court may consider.

## ISSUES TO BE DECIDED

1. <u>Spoliation</u>.  Whether the Armistice Defendants spoliated by wiping (i) all ESI from Maher's phone and (ii) all text messages between Boyd and Maher ("Boyd-Maher texts") from Boyd's phone, after the Armistice Defendants learned of a government subpoena, the commencement of this Action, and a U.S. Securities and Exchange Commission ("SEC") document request.

2. <u>Culpability</u>.  Whether the Armistice Defendants are culpable given their failure to take any steps to preserve the Boyd-Maher texts and personally deleting, or directing the deletion of, the texts from their devices.

3. <u>Terminating Sanctions</u>.  Whether terminating sanctions are warranted given that by April 1, 2021, the Armistice Defendants and their counsel knew of the ESI destruction but failed to disclose it to Plaintiffs for 28 months (including while engaging in nine months of discovery negotiations), in violation of Court rules and orders, even after receiving Plaintiffs' document requests.

4. <u>Alternative Sanctions</u>.  If terminating sanctions are not warranted or are premature, whether a mandatory jury instruction on the elements of falsity, knowledge, and scienter is warranted in order to remedy the spoliation and prejudice to Plaintiffs' case.

5. <u>Monetary Sanctions</u>.  Whether Plaintiffs and Plaintiffs' Counsel are entitled to reimbursement for the time and resources they spent (i) investigating the Armistice Defendants' spoliation and moving for sanctions and (ii) incurred in negotiating and pursuing ESI when, at the time the negotiations took place, the texts had already been deleted.

---

[1]      Unless otherwise stated, all "Ex. _" references herein are exhibits to the Jacobson Decl.

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

I.     INTRODUCTION ...................................................................................................1

II.    FACTUAL BACKGROUND.................................................................................4

    A.    Boyd and Maher Played an Essential Role in the Alleged Scheme .................................4

    B.    Boyd and Maher Conducted Armistice Business Via Text, Including Business Related to Their Alleged Insider Scheme to Dump Armistice's Vaxart Shares......................................................................................................4

    C.    The Armistice Defendants Failed to Preserve Texts After Receiving the Subpoena........................................................................................................5

    D.    Boyd and Maher Irrevocably Destroy Relevant ESI From Their Respective Phones Eight Months *After* Receipt of the Grand Jury Subpoena and Seven Months *After* the Commencement of This Action............................................6

    E.    Armistice's Forensic Expert Fails to Recover Any Boyd-Maher Texts.........................7

    F.    Defendants Conceal the Destruction of the Contents of Boyd and Maher's Phones from Plaintiffs for Almost Two-and-a-Half Years, and Then Lose Boyd's iPhone...............................................................................................8

    G.    Plaintiffs' Investigation into Spoliation Has Been Extensive..........................................9

III.    ARGUMENT......................................................................................................11

    A.    Legal Standard ................................................................................................11

    B.    The Armistice Defendants Should Be Sanctioned Pursuant to Rule 37(e)(1) and (2) ..........................................................................................................12

        1.    The Armistice Defendants Had a Duty to Preserve the ESI on Boyd and Maher's Cell Phones as of July 2020..........................................12

        2.    The Armistice Defendants Failed to Take Reasonable Steps to Preserve ESI...........................................................................................12

        3.    The Lost ESI Cannot Be Restored or Replaced...................................14

        4.    The Armistice Defendants Prejudiced Plaintiffs' Ability to Prosecute This Action, Warranting Sanctions Pursuant to Rule 37(e)(1) ............................................................................................15

        5.    Defendants Acted with Intent to Deprive Plaintiffs of the Deleted Texts, Warranting Sanctions Under Rule 37(e)(2) ..............................17

IV.   THE ARMISTICE DEFENDANTS VIOLATED THE COURT'S ESI PROTOCOL ORDER AND REPEATEDLY MISLED THE COURT AND PLAINTIFFS, WARRANTING SANCTIONS UNDER RULE 37(B) ................................... 19

V.   TERMINATING SANCTIONS ARE MERITED UNDER RULES 37(B), (E)(1), & (E)(2) .................................................................................................................... 20

 A. The Armistice Defendants Acted with "Willfulness, Fault, or Bad Faith" ................... 20

 B. The Five Factors Collectively Favor Terminating Sanctions ........................................ 22

 C. In the Alternative, the Court Should Impose a Mandatory Jury Instruction ................. 23

 D. Plaintiffs Are Entitled to Reimbursement for the Time and Expenses They Incurred Investigating the Armistice Defendants' Spoliation, Moving for Sanctions, and Negotiating Discovery Requests ........................................................... 25

VI.   CONCLUSION ..................................................................................................................... 25

## TABLE OF AUTHORITIES

**PAGE(S)**

### CASES

*Adriana Int'l Corp. v. Thoeren,*
913 F.2d 1406 (9th Cir. 1990) ...................................................................................23

*Al Otro Lado, Inc. v. Wolf,*
2021 WL 631789 (S.D. Cal. Feb. 18, 2021) .............................................................24

*Am. Career Coll. Inc. v. Medina,*
673 F. Supp. 3d 1139 (C.D. Cal. 2023) .............................................11, 16, 20, 21

*Anheuser-Busch, Inc. v. Nat. Bev. Distribs.,*
151 F.R.D. 346 (N.D. Cal. 1993), *aff'd*, 69 F.3d 337 (9th Cir. 1995)...................20

*Anheuser-Busch, Inc. v. Nat. Beverage Distributors,*
69 F.3d 337 (9th Cir. 1995) .......................................................................17, 23, 25

*Apple Inc. v. Samsung Elecs. Co., Ltd.,*
881 F. Supp. 2d 1132 (N.D. Cal. 2012)....................................................................24

*Balla v. Idaho State Bd. of Correction,*
119 F. Supp. 3d 1271 (D. Idaho 2015) ....................................................................16

*Brewer v. Leprino Foods Co., Inc.,*
2019 WL 356657 (E.D. Cal. Jan. 29, 2019) ............................................................14

*Burris v. JPMorgan Chase & Co.,*
566 F. Supp. 3d 995 (D. Ariz. 2021) ................................................................16, 19

*Colonies Partners, L.P. v. Cnty. of San Bernardino,*
2020 WL 1496444 (C.D. Cal. Feb. 27, 2020) ................................................. *passim*

*Comput. Task Grp. Inc. v. Brotby,*
364 F.3d 1112 (9th Cir. 2004) ..................................................................................22

*Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills,*
482 F.3d 1091 (9th Cir. 2007) .....................................................................20, 21, 22

*CrossFit, Inc. v. Nat'l Strength & Conditioning Ass'n,*
2019 WL 6527951 (S.D. Cal. Dec. 4, 2019) .....................................................12, 21

*Deerpoint Grp., Inc. v. Agrigenix, LLC,*
2022 WL 16551632 (E.D. Cal. Oct. 31, 2022)...................................................24, 25

*Dickinson Frozen Foods, Inc. v. FPS Food Process Sols. Corp.,*
2023 WL 6866273 (9th Cir. Oct. 18, 2023) ............................................................11

*Dish Network L.L.C. v. Jadoo TV, Inc.*,
   2022 WL 11270394 (N.D. Cal. Oct. 19, 2022) ................................................................24

*Est. of Bosco by & Through Kozar v. Cnty. of Sonoma*,
   640 F. Supp. 3d 915 (N.D. Cal. 2022) .............................................................13, 14, 18

*Facebook, Inc. v. OnlineNIC Inc.*,
   2023 WL 9019050 (N.D. Cal. Nov. 15, 2023) ....................................................12, 22, 23

*First Fin. Sec., Inc. v. Freedom Equity Grp., LLC*,
   2016 WL 5870218 (N.D. Cal. Oct. 7, 2016) ...........................................................16, 18

*Fourth Dimension Software v. DER Touristik Deutschland GmbH*,
   2021 WL 5919821 (N.D. Cal. Dec. 15, 2021).........................................................12, 19

*Gaina v. Northridge Hosp. Med. Ctr.*,
   2019 WL 1751825 (C.D. Cal. Feb. 25, 2019) .........................................................17, 25

*Garrison v. Ringgold*,
   2020 WL 6537389 (S.D. Cal. Nov. 6, 2020) ...............................................................23

*Glover v. BIC Corp.*,
   6 F.3d 1318 (9th Cir. 1993) .....................................................................................24

*GN Netcom, Inc. v. Plantronics, Inc.*,
   2016 WL 3792833 (D. Del. Jul. 12, 2016) ..................................................................16

*Henry v. Gill Indus., Inc.*,
   983 F.2d 943 (9th Cir. 1993) ...................................................................................21

*hiQ Labs, Inc. v. LinkedIn Corp.*,
   639 F. Supp. 3d 944 (N.D. Cal. 2022)........................................................................12

*In re Napster, Inc. Copyright Litig.*,
   462 F. Supp. 2d 1060 (N.D. Cal. 2006)......................................................................24

*In re StubHub Refund Litig.*,
   2023 WL 3092972 (N.D. Cal. Apr. 25, 2023) ..............................................................19

*Jerry Beeman & Pharm. Servs., Inc. v. Caremark Inc.*,
   322 F. Supp. 3d 1027 (C.D. Cal. 2018) ......................................................................16

*Jimenez v. Menzies Aviation Inc.*,
   2016 WL 3232793 (N.D. Cal. June 13, 2016)..............................................................24

*John v. Cnty. of Lake*,
   2020 WL 3630391 (N.D. Cal. July 3, 2020) ................................................................14

*Jones v. Riot Hosp. Grp. LLC*,
   2022 WL 3682031 (D. Ariz. Aug. 25, 2022).................................................................19

*Keating v. Jastremski*,
    2020 WL 1809139 (S.D. Cal. Apr. 9, 2020)..................................................................22

*Kische USA LLC v. Simsek*,
    2018 WL 620493 (W.D. Wash. Jan. 29, 2018) ..............................................................17

*Laub v. Horbaczewski*,
    2020 WL 9066078 (C.D. Cal. July 22, 2020)................................................................14

*Leon v. IDX Sys. Corp.*,
    464 F.3d 951 (9th Cir. 2006) .................................................................... *passim*

*Malone v. U.S. Postal Serv.*,
    833 F.2d 128 (9th Cir. 1987) .......................................................................................23

*Medina v. Boeing Co.*,
    2022 WL 599021 (C.D. Cal. Jan. 27, 2022) .................................................................12

*Micron Tech., Inc. v. Rambus Inc.*,
    645 F.3d 1311 (Fed. Cir. 2011) ...................................................................................16

*Morehead v. City of Oxnard*,
    2023 WL 8143973 (C.D. Cal. Oct. 4, 2023)..............................................13, 15, 17, 18

*Multifeeder Tech., Inc. v. Brit. Confectionery Co.*,
    2012 WL 4135848 (D. Minn. Sept. 18, 2012).............................................................19

*Payne v. Exxon Corp.*,
    121 F.3d 503 (9th Cir. 1997) .......................................................................................21

*Phan v. Costco Wholesale Corp.*,
    2020 WL 5074349 (N.D. Cal. Aug. 24, 2020) .....................................................13, 15

*RG Abrams Ins. v. Law Offs. of C.R. Abrams*,
    342 F.R.D. 461 (C.D. Cal. 2022)........................................................................16, 18, 19

*Scott Griffith Collaborative Sols., LLC v. Falck N. Cal. Corp.*,
    2021 WL 4846926 (N.D. Cal. Sept. 10, 2021) ............................................................24

*Shafer v. Skyline Advanced Tech. Servs.*,
    2021 WL 2662100 (N.D. Cal. June 29, 2021)..............................................................13

*Swisher Hygiene Franchise Corp. v. Clawson*,
    2018 WL 8642738 (D. Ariz. Oct. 15, 2018).................................................................20

*Valley Eng'rs Inc. v. Elec. Eng'g Co.*,
    158 F.3d 1051 (9th Cir. 1998) ...............................................................................20, 23

*Waymo LLC v. Uber Techs., Inc.*,
    2018 WL 646701 (N.D. Cal. Jan. 30, 2018) ................................................................16

*WeRide Corp. v. Kun Huang*,
    2020 WL 1967209 (N.D. Cal. Apr. 24, 2020) .......................................................................... *passim*

*Wisk Aero LLC v. Archer Aviation Inc.*,
    2023 WL 2277112 (N.D. Cal. Feb. 28, 2023) ................................................................................14

## STATUTES, RULES, AND REGULATIONS

Federal Rules of Civil Procedure
    Rule 10b-5(a) ................................................................................................................................1
    Rule 10b-5(a) ................................................................................................................................1
    Rule 10b-5(b) ................................................................................................................................1
    Rule 10b-5(c) ................................................................................................................................1
    Rule 26 .......................................................................................................................................20
    Rule 26(f) ............................................................................................................................ *passim*
    Rule 30(b)(6) .......................................................................................................................2, 3, 9
    Rule 34 ................................................................................................................................3, 9, 10
    Rule 37 .................................................................................................................11, 13, 15, 24
    Rule 37(b) ........................................................................................................................12, 19, 20
    Rule 37(b)(2) .........................................................................................................................19, 20
    Rule 37(b)(2)(A) ....................................................................................................................12, 19
    Rule 37(e) ............................................................................................................................ *passim*
    Rule 37(e)(1) .................................................................................................................11, 15, 17
    Rule 37(e)(1) ..............................................................................................................................12
    Rule 37(e)(2) .................................................................................................................11, 12, 17
    Rule 37(e)(2) ..............................................................................................................................19

15 U.S.C.
    §78u-4(b)(3)(C)(i) ....................................................................................................................9, 12

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Eight months after receipt of a grand jury subpoena and seven months after the commencement of this Action, the Armistice Defendants destroyed critical text messages necessary to the Action's prosecution in March 2021.  Then they disposed of one of the two phones on which the texts were located.  Then the Armistice Defendants and their counsel actively hid the spoliation from Plaintiffs and the Court for 28 months, until August 2023.  Serious sanctions are warranted.

Plaintiffs allege that in June 2020, the Armistice Defendants orchestrated a scheme to inflate Vaxart's share price via two false and misleading press releases and sold approximately $267 million-worth of Vaxart common stock while in possession of inside information.  On this basis, Plaintiffs alleged, and the Court sustained, violations of Exchange Act §§10(b), 20(a), and 20A.[2]  In finding Plaintiffs alleged scienter and sustaining Rule 10b-5(a) and (c) scheme liability and §20A insider trading claims, the Court cited to and relied on texts exchanged between Maher and Vaxart Chief Executive Officer ("CEO") Andrei Floroiu ("Floroiu") regarding the timing of the press releases.  In discovery, the Vaxart Defendants produced numerous texts between one of the Vaxart Defendants, such as Floroiu or Vaxart director Bob Yedid, and either Boyd or Maher.  Those texts make clear that Boyd and Maher routinely conducted Armistice-related business via text.  Through subpoenas of Boyd and Maher's cell phone carriers, Plaintiffs know that Boyd and Maher exchanged over 1,000 texts during the Class Period (June 15 to August 19, 2020, inclusive), over 320 texts on the days immediately prior to and after the issuance of the two key press releases and Armistice's insider sales, and at least 75 texts on June 24 and 25 alone, the exact days Plaintiffs allege Boyd and Maher coordinated the two press releases.

---

[2]    The Court dismissed Plaintiffs' Rule 10b-5(b) claims, as well as §20(a) "control person" liability claims with respect to the Armistice Defendants' alleged control over Vaxart Inc. ("Vaxart") and the Vaxart Defendants.  In addition to sustaining Plaintiffs' Rule 10b-5(a) and (c) and §20A claims, the Court sustained Plaintiffs' §20(a) claims with respect to (i) Boyd and Maher's control over Armistice Capital and (ii) Boyd, Maher, and Armistice Capital's control over Armistice Master Fund.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████ no efforts were made to save, store, or backup any Boyd-Maher texts, so that the only copies of those texts were those existing on Boyd and Maher's respective devices (an Apple iPhone 11 Pro ("iPhone") and a Google OnePlus 6 Android ("Android")).

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ And again, neither Armistice nor Boyd and Maher's outside counsel, Akin Gump Strauss Hauer & Feld LLP ("Akin Gump"), made any efforts to save, store, or backup the contents of the phones following the issuance of the litigation preservation notice.  A belated attempt, post-ESI destruction, by a forensic vendor to recover the texts recovered nothing of use.  And, as Akin Gump recently told Plaintiffs, neither Akin Gump nor any Defendant have current possession of – or even "know the specific whereabouts" of – Boyd's device. As a result, copies of over a thousand Maher-Boyd texts no longer exist.

████████████████████████████████████████████████████████

████████████████████████████████████ for the next two and a half years the Armistice Defendants and their counsel actively misled Plaintiffs and the Court by failing to disclose the ESI destruction and repeatedly affirming their compliance with all applicable rules regarding evidence preservation.  For example, in negotiating with Plaintiffs' Counsel the first of several Joint Rule 26(f) Report and Case

Management Plans ("Rule 26(f) Statements") in May 2021 (just weeks after the texts were deleted) – which was later filed on January 19, 2022 (almost 10 months after the deletions) – Akin Gump agreed to submit to the Court language stating that they "have complied, and will continue to comply with" the applicable Private Securities Litigation Reform Act of 1995 ("PSLRA") rules "related to evidence preservation." Over the next two years, Armistice's counsel would make four more such representations to the Court, including in the Parties' joint Stipulation and Order Establishing the Protocol for the Production of Documents and Electronically Stored Information, which this Court so-ordered on February 24, 2022 (ECF No. 200) ("ESI Protocol Order").

At a late August 2023 meet-and-confer regarding Plaintiffs' Second Set of Requests for Production of Documents ("Plaintiffs' 2nd RFPs"), Akin Gump finally revealed the ESI destruction. Plaintiffs then moved expeditiously by, *inter alia*, (1) issuing subpoenas to Boyd and Maher's cell phone carriers and software providers, AT&T, T-Mobile, Apple, and Google, (2) deposing Armistice's GC, Kohn, in a Fed. R. Civ. P. 30(b)(6) deposition, (3) issuing document demands on the Armistice Defendants and their forensic vendor, (4) retaining their own forensic data expert, and (5) issuing a Fed. R. Civ. P. 34 Notice of Inspection request to the Armistice Defendants to obtain and inspect Boyd and Maher's devices. Through these efforts, Plaintiffs uncovered the extent of the ESI destruction after analyzing thousands of pages of records produced by AT&T and T-Mobile that revealed the existence – but not the contents – of over 1,000 Class Period Boyd-Maher texts, including over 600 texts from June 2020, over 320 texts from June 15 through June 30, and 75 texts from just the key June 24 and 25 dates.

Extraordinary, serious sanctions, including a default judgment, are warranted. Under applicable Ninth Circuit case law, the Armistice Defendants engaged in willful spoliation with the intent to deprive Plaintiffs of the ESI it needs to prove its case at summary judgment and trial. In the alternative, Plaintiffs request a mandatory jury instruction on the elements of knowledge, falsity, and scienter. Plaintiffs also request monetary sanctions for the time and resources spent investigating the spoliation, moving for sanctions, and negotiating the production of ESI that did not exist at the time the negotiations took place.

## II.    FACTUAL BACKGROUND

### A.    Boyd and Maher Played an Essential Role in the Alleged Scheme

Plaintiffs allege that Boyd, Armistice Capital's founder, sole owner, and Chief Investment Officer, and Maher, Armistice's Managing Director, orchestrated the alleged scheme individually, and through the two Armistice entities they controlled, to manipulate Vaxart's share price in order to sell Vaxart shares at artificially inflated prices.  SAC ¶¶40-41, 150-208, 337, 354.[3]  Apart from the (now-settled) Vaxart Defendants, Boyd and Maher are the only individual defendants.  *Id.* at ¶49.

### B.    Boyd and Maher Conducted Armistice Business Via Text, Including Business Related to Their Alleged Insider Scheme to Dump Armistice's Vaxart Shares

Boyd and Maher used texts to orchestrate key parts of the fraudulent scheme.  For example, as the Court noted, "the day before the Attwill press release was put out, Maher ***texted*** Floroiu to make sure that when we release news that it hits the tape ***and that it hits early in the morning***, like before 8am."  MTD II Order at 4 (emphasis added); *see also* Ex. 26-A; SAC ¶173.  The Court added that "[i]t's not difficult to infer that, based on that text and the phone call that preceded it, *id.*, Maher understood the value of these press releases to Armistice's trading plan."  MTD II Order at 4.[4]

---

[3]      *See also* Order re Motion to Dismiss, dated May 25, 2023 (ECF No. 293) ("MTD II Order") at 5-6 ("Accepting the allegations in the complaint as true, the Armistice Defendants did not merely trade on material nonpublic information; they participated in an intentional scheme to manipulate the price of Vaxart shares for the purpose of selling them at an artificially inflated price. They conspired to appoint Floroiu—a 'plaything of Armistice,' Compl. ¶ 268—as CEO to carry out an aggressive (and misleading) PR campaign; worked to change Vaxart's insider trading blackout period to capitalize on the speculation about Operation Warp Speed, ¶¶ 170–71; pushed Vaxart to release the news about the NHP study, ¶ 184; and sold a substantial number of shares to profit from Vaxart's misleading statements, ¶ 206.").

[4]      Other examples of substantive texts preserved and produced by Vaxart and Armistice that involved Boyd or Maher and an employee or director of Vaxart (but not texts exchanged privately between Boyd and Maher) include: texts between Maher and Floroiu regarding Armistice's "slate of 4 directors" for Vaxart (Ex. 26-B; SAC ¶85); texts between Boyd and Vaxart's Chief Science Officer about potential government funding (Ex. 26-C; SAC ¶¶99-100); texts from Boyd to Floroiu directing him to lift the warrant blocker limit to "19.9% or higher" (Ex. 26-D; SAC ¶139); texts among Boyd, Maher, and Floroiu about a June 3, 2020 article about Operation Warp Speed ("OWS") and Vaxart's prospects for government funding (Ex. 26-E; SAC ¶134); texts between Boyd and Floroiu about installing Floroiu as Vaxart CEO (Ex. 26-F; SAC ¶¶84, 143 F.7); texts between Boyd and Floroiu about the upcoming week of June 22, 2020, being "fun" and Vaxart share price increases (Ex. 26-G; SAC ¶147 F.9); and texts

The records obtained from Boyd and Maher's cell phone carriers reveal that the texts produced by Vaxart reflect only a fraction of all relevant Boyd-Maher texts.  For example, Boyd and Maher exchanged 629 texts **with each other** in June 2020 – the month in which Plaintiffs allege Boyd and Maher (i) received confirmation that Vaxart had not been selected for OWS; (ii) conspired to install Floroiu as Vaxart's new CEO; (iii) changed Vaxart's insider trading policy; (iv) coerced the issuance of the June 24 and 25, 2020 press releases; and (v) sold approximately $267 million in Vaxart common stock.  SAC ¶¶150-206; *see* Ex. 1 (text records obtained from AT&T, with the Boyd-Maher texts highlighted), Ex. 2 (text records obtained from T-Mobile, with the Boyd-Maher texts highlighted), Ex. 3 (list of all dates and times of texts between Boyd and Maher from June 1 through August 19, 2020).[5]

**C.     The Armistice Defendants Failed to Preserve Texts After Receiving the Subpoena**

On July 25, 2020, *The New York Times* revealed that "Vaxart is not among the companies selected to receive significant financial support from [Operation] Warp Speed to produce hundreds of millions of vaccine doses."  SAC ¶211.  Two days later, the U.S. Attorney's Office for the Northern District of California subpoenaed Vaxart for ███████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

---

from Boyd and Maher to various Vaxart Board members about amending Vaxart's insider trading policy (Ex. 26-H; SAC ¶171).

[5] ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████    ███████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████    On August 24, 2020, this Action was

commenced.  ECF No. 1.  The following day, August 25, 2020, the SEC requested substantially similar

documents as the grand jury subpoena.  ██████████  SAC ¶217.

However, at no point prior to the texts' deletion did the Armistice Defendants or their counsel

take **any** steps to save or preserve them.  █████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████

**D.**     **Boyd and Maher Irrevocably Destroy Relevant ESI From Their Respective Phones Eight Months *After* Receipt of the Grand Jury Subpoena and Seven Months *After* the Commencement of This Action**

████████████████████████████████████████████████████

████████████████████████████████████████████████████

---

[6] ████████████████████████████████████████████████████
████████████████████████████████████

[7] ████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
█████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████

As a result, as of the end of March 2021, the Boyd-Maher texts had been deleted from both Boyd's iPhone and Maher's Android, without any copies having been preserved. ███████████

**E.      Armistice's Forensic Expert Fails to Recover Any Boyd-Maher Texts**

On April 1, 2021, Armistice retained Contact Discovery Services, LLC ("CDS").[9] ████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

---

[8] ██████████████████████████████████████████████████

[9] █████████████████████████████████████████████████████
███████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████   Ultimately, CDS was unable to recover any Boyd-Maher texts from either Boyd's

iTunes or iCloud data, or from Maher's device.   ████████████████████████

### F.   Defendants Conceal the Destruction of the Contents of Boyd and Maher's Phones from Plaintiffs for Almost Two-and-a-Half Years, and Then Lose Boyd's iPhone

Despite learning of the spoliation on or about March 31, 2021, the Armistice Defendants did not

inform Plaintiffs for almost two-and-a-half years.   On August 29, 2023, Akin Gump first informed

Plaintiffs of the text deletions at the end of a meet-and-confer regarding Plaintiffs' document requests.

*See* R. Kathrein Ltr. to N. Marder, Aug. 30, 2023, Ex. 10 (recapping discussion of the prior day).[11]

Prior to this disclosure, Defendants had already repeatedly misled Plaintiffs – and the Court – by

claiming they had satisfied all applicable rules regarding evidence preservation.   For example, the

Parties' first Rule 26(f) Statement, filed January 19, 2022, states in §IV:

> The parties certify that they have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information. Further, the parties confirm that they met and conferred . . . regarding the reasonable and proportionate steps they have taken to preserve evidence relevant to the issues reasonably evident in this action.
>
> The parties have complied, and will continue to comply, with the provision of the Private Securities Litigation Reform Act of 1995 ("PSLRA") related to evidence preservation, 15 U.S.C. § 78u-4(b)(3)(C)(i).

ECF No. 185.[12]   The Armistice Defendants would make similar misrepresentations in later Rule 26(f)

Statements filed August 8 and September 1, 2022, and on July 7, 2023.   ECF Nos. 220, 232, 306.   And

---

10   ████████████████████████████████████████████████████
████████████████████████████████████████████████

11   By the time Akin Gump revealed the ESI destruction, Plaintiffs' Counsel had spent over ***nine months*** negotiating search parameters – *e.g.*, custodians, time frames, search terms – with Akin Gump in 2022 (prior to the stay of discovery on September 8, 2022) and in 2023, following the MTD II Order.

12   The Parties originally drafted this language in May 2021, just weeks after the Armistice Defendants' Counsel allegedly learned of Boyd and Maher's destruction of the texts. Ex. 16.   However, the Rule 26(f) Statement was not filed until January 19, 2022, because the case management conference originally scheduled for May 2021 was adjourned until February 2, 2022.   ECF No. 190.

as part of a jointly negotiated proposed ESI Protocol Order that the Court so-ordered on February 24, 2022 (ECF No. 200), the Armistice Defendants also misled this Court when they represented:

> ***The parties understand their preservation obligations under applicable law*** and agree that quickly following the deadline for Initial Disclosures, the parties will meet and confer to attempt to reach an agreement on the following: [listing search parameters including time frames, categories, custodians, and data sources].

ECF Nos. 197, 200 at §III (emphasis added).

On February 6, 2024, after being served with Plaintiffs' Fed. R. Civ. P. 34 Notice of Inspection, Akin Gump informed Plaintiffs' Counsel that "(1) Armistice, Akin, and Boyd do not have current possession of the phone that Mr. Boyd was using in March 2021, and (2) Armistice, Akin and Boyd do not know the specific whereabouts of the phone at the present moment."  Ex. 11 at 1.

### G.   Plaintiffs' Investigation into Spoliation Has Been Extensive

Promptly after learning of Defendants' ESI destruction, Plaintiffs took the following steps:

Fed. R. Civ. P. 30(b)(6) Deposition.   On September 1, 2023, Plaintiffs served the Armistice Defendants with a draft Notice of 30(b)(6) Deposition, requesting that Armistice promptly designate a person to be deposed about the ESI destruction.  *See* Ex. 12.  As noted above, Plaintiffs took that deposition on October 31, 2023.  *See* Exs. 6-7.

Requests for Production and Notice of Inspection.   On October 16, 2023, Plaintiffs served (i) their Third Set of Requests for Production of Documents to Armistice Defendants ("Plaintiffs' 3rd RFPs") seeking documents regarding their ESI preservation and recovery efforts, and (ii) a Rule 34 Notice to Inspect Boyd and Maher's phones.  Ex. 13.  Defendants claimed work product privilege as to all non-duplicative documents in their possession connected to CDS, refused to produce Maher's phone for independent analysis, and also stated that neither Akin Gump, Armistice, nor Boyd "have current possession" or "know the specific whereabouts" of Boyd's iPhone.  Ex. 14 at 1; Ex. 15 at 3; Ex. 11 at 1.

Subpoenas to Cell Phone Carriers and Software Providers.   On October 16, 2023, Plaintiffs subpoenaed Boyd and Maher's respective cell phone carriers, AT&T and T-Mobile, and their respective

iPhone and Android software providers, Apple and Google.  *See* Exs. 17-20.  While Apple and Google objected that they are barred from disclosing the contents of electronic communications in response to subpoenas or courts order (*see* Ex. 21 at 2; Ex. 22 at 1), AT&T and T-Mobile produced thousands of pages reflecting the considerable extent of Boyd's and Maher's texts during 2020.  *See* Exs. 1-2. Although these productions did not reveal the ***contents*** of any texts, the logs listing the participants' phone numbers, dates, and times of texts demonstrate Boyd and Maher's extensive texting during the Class Period, including their exchange of 1,024 texts during the Class Period, 629 texts in June 2020, 60 texts on June 8 (the day of Vaxart's Board of Directors meeting), 324 texts from June 15 to 30, and 75 texts on June 24 and 25 (the exact days Plaintiffs allege Boyd and Maher coordinated the two press releases).  *See* Exs. 1-3.

Subpoena to CDS.  After learning at the October 31, 2023 deposition that the Armistice Defendants had retained CDS, on November 3, 2023, Plaintiffs subpoenaed CDS for documents regarding CDS' data recovery efforts.  ███████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

Retained Forensic Expert.  Plaintiffs retained International Litigation Services, LLC ("ILS"), a forensic data firm to advise about ESI destruction and review Kohn's testimony and the CDS production. Based on the limited information made available by CDS and the Armistice Defendants, ILS concluded that CDS may not have used best forensic recovery practices in attempting to recover data from the phones, but concurs that based on what purportedly exists today, there is virtually no chance to recover the texts exchanged between Boyd and Maher.  *See* Ex. 23 (ILS declaration in support of this Motion).

## III.   ARGUMENT

### A.   Legal Standard

When a litigant prejudicially or intentionally destroys material necessary to the prosecution of the action, which they had a clear duty to preserve, serious penalties are warranted including terminating sanctions. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006); *WeRide Corp. v. Kun Huang*, 2020 WL 1967209, at *12 (N.D. Cal. Apr. 24, 2020); *see also Am. Career Coll. Inc. v. Medina*, 673 F. Supp. 3d 1139, 1147 (C.D. Cal. 2023) ("Rule 37 provides the means by which courts not only enforce discovery procedures, but also punish and deter discovery misconduct.").[13]

Rule 37(e) provides for two types of sanctions when "[ESI] that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." FED. R. CIV. P. 37(e).  Under Rule 37(e)(1), "upon finding prejudice to another party from loss of the information, [the court] may order measures no greater than necessary to cure the prejudice[,]" and/or under Rule 37(e)(2), "upon finding that the party acted with the intent to deprive another party of the information's use in the litigation [the court] may: (A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment." *Id.*; *hiQ Labs, Inc. v. LinkedIn Corp.*, 639 F. Supp. 3d 944, 975 (N.D. Cal. 2022).

Courts may also sanction parties pursuant to Rule 37(b) when a litigant "fails to obey an order to provide or permit discovery, including an order under Rule 26(f)." FED. R. CIV. P. 37(b)(2)(A); *Facebook, Inc. v. OnlineNIC Inc.*, 2023 WL 9019050, at *12 (N.D. Cal. Nov. 15, 2023), *report & recommendation adopted*, 2022 WL 17371092 (N.D. Cal. Oct. 17, 2022).[14]

---

[13]    The Ninth Circuit also recently affirmed that "[u]pon a finding of spoliation, the district court ha[s] discretion to impose sanctions pursuant to its inherent power." *Dickinson Frozen Foods, Inc. v. FPS Food Process Sols. Corp.*, 2023 WL 6866273, at *2 (9th Cir. Oct. 18, 2023).

[14]    Courts apply a "preponderance of the evidence" standard to spoliation motions, *CrossFit, Inc. v. Nat'l Strength & Conditioning Ass'n*, 2019 WL 6527951, at *10 (S.D. Cal. Dec. 4, 2019), and hold that "an employee's misconduct with regard to spoliation can be imputed to an employer," *Colonies Partners,*

**B.     The Armistice Defendants Should Be Sanctioned Pursuant to Rule 37(e)(1) and (2)**

1.     The Armistice Defendants Had a Duty to Preserve the ESI on Boyd and Maher's Cell Phones as of July 2020

"As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." *Fourth Dimension Software v. DER Touristik Deutschland GmbH*, 2021 WL 5919821, at *9 (N.D. Cal. Dec. 15, 2021) (internal quotations omitted).   A party's obligation to preserve evidence arises when litigation is pending or becomes reasonably foreseeable. *Medina v. Boeing Co.*, 2022 WL 599021, at *2 (C.D. Cal. Jan. 27, 2022).[15]

As of July 2020, the Armistice Defendants were fully aware of their duty to preserve all potentially relevant material relating to Vaxart.   That month, on July 27, Vaxart received its first grand jury subpoena relating to its OWS statements and the Armistice Defendants' sales, ███████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████   In August 2020, the SEC issued a substantially similar document request, and this Action was commenced.   █████   SAC ¶217; ECF No 1.[16]

2.     The Armistice Defendants Failed to Take Reasonable Steps to Preserve ESI

Once a duty to preserve is triggered, a litigant must take "reasonable steps" to preserve all potentially relevant information. Fed. R. Civ. P. 37(e); *Shafer v. Skyline Advanced Tech. Servs.*, 2021 WL 2662100, at *6 (N.D. Cal. June 29, 2021).   The 2015 Advisory Committee Notes to Rule 37 list four

---

*L.P. v. Cnty. of San Bernardino*, 2020 WL 1496444, at *10 (C.D. Cal. Feb. 27, 2020), *report & recommendation adopted*, 2020 WL 1491339 (C.D. Cal. Mar. 27, 2020).

[15]     The PSLRA also imposes an independent duty on litigants to preserve all material during the pendency of the discovery stay "as if they were the subject of a continuing request for production of documents from an opposing party under the Federal Rules of Civil Procedure."  15 U.S.C. §78u-4(b)(3)(C)(i).  *See also id.* at (C)(ii) ("A party aggrieved by the willful failure of an opposing party to comply with clause (i) may apply to the court for an order awarding appropriate sanctions.").

[16] ███████████████████████████████████████████████████████
███████████████████████████████████████████████

factors that courts look to in determining whether "reasonable steps" were taken to preserve ESI: (1) a party's "good-faith operation of an electronic information system"; (2) a "party's sophistication with regard to litigation"; (3) "the extent to which a party knew of and protected against such risks"; and (4) whether the information is "destroyed by events outside the party's control." *See Est. of Bosco by & Through Kozar v. Cnty. of Sonoma*, 640 F. Supp. 3d 915, 924-25 (N.D. Cal. 2022).

Here, Defendants took no steps whatsoever to preserve, save, or store the Boyd-Maher texts prior to their deletion. ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ Courts routinely sanction parties for similar failures. *See, e.g.*, *Morehead v. City of Oxnard*, 2023 WL 8143973, at *8-9 (C.D. Cal. Oct. 4, 2023) (applying sanctions where "Defendants fail to identify any concrete steps they took to search for and preserve the [evidence] before [its deletion]"); *Phan v. Costco Wholesale Corp.*, 2020 WL 5074349, at *3 (N.D. Cal. Aug. 24, 2020) (applying sanctions where "there is no evidence that defendant took reasonable steps to *preserve* the evidence, i.e., maintain it in a secure place where it could be located at a later date") (emphasis in original); *Laub v. Horbaczewski*, 2020 WL 9066078, at *4 (C.D. Cal. July 22, 2020) (recommending sanctions where litigant "chose not to backup his text messages that were stored on his iPhone"); *John v. Cnty. of Lake*, 2020 WL 3630391, at *6 (N.D. Cal. July 3, 2020) (recommending sanctions where "there was no attempt to image [defendants'] cell phones"); *Brewer v. Leprino Foods Co., Inc.*, 2019 WL 356657, at *10 (E.D. Cal. Jan. 29, 2019) (internal quotations omitted) (sanctioning litigant who "made no effort to back-up or preserve the Galaxy S3 prior to its loss").[17]

None of the 2015 Advisory Committee factors aid the Armistice Defendants. They cannot claim good-faith or lack of sophistication as "[i]gnorance of this obligation of preservation, especially from

---

[17]    *Cf. Wisk Aero LLC v. Archer Aviation Inc.*, 2023 WL 2277112, at *5 (N.D. Cal. Feb. 28, 2023) (finding that the defendant took reasonable steps to preserve evidence when it instructed employees to remove the trade secret data in question and forensically imaged the entire computer at issue within one month of the start of litigation).

sophisticated parties who have the assistance of experienced counsel, is not persuasive." *Colonies*, 2020 WL 1496444, at *8.  They cannot claim that they protected against the risk of deletion █████████ ███████████████████████ nor can they claim a lack of control over the deletion because in assessing this factor courts "need to assess the extent to which a party knew of and protected against such risks." FED. R. CIV. P. 37(e) Advisory Committee Notes to 2015 Amendments.  The Armistice Defendants had *eight months* to preserve the texts and protect against their loss before deletion, but failed to do so. *Bosco*, 640 F. Supp. 3d at 925 (rejecting defendants' good faith and lack of control assertions because "nothing was out of their control for the year during which they had the original undeleted [ESI].").

Additionally, the Armistice Defendants' failure to preserve the Boyd-Maher texts promptly after being put on notice of their relevance to pending inquiries and actual litigation pales in comparison to ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████ And Boyd's phone is now missing.  Ex. 11 at 1.  Nothing in the Armistice Defendants' story constitutes a situational "good faith" effort to preserve evidence, yet thwarted by unexpected events beyond their control.[18]

### 3.    The Lost ESI Cannot Be Restored or Replaced

Before imposing Rule 37(e) sanctions, courts must also consider whether the lost ESI can be restored or replaced through additional discovery.  *Morehead*, 2023 WL 8143973, at *9.  ██████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████

---

[18]    In contrast, the 2015 Advisory Committee Notes to Rule 37 list the following examples of instances where loss of ESI may plausibly be outside of a litigant's control: "the computer room may be flooded, a 'cloud' service may fail, a malign software attack may disrupt a storage system."

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████ and none of the Armistice Defendants, their counsel, or CDS are in possession of, or "know the specific whereabouts" of Boyd's device (Ex. 11 at 1).  Further, Plaintiffs' subpoenas to Apple, Google, AT&T, and T-Mobile were only able to obtain records evidencing that the text messages were definitely sent – over one thousand during the Class Period – but not the text messages themselves.  Exs. 1-3. Plaintiffs' expert has also submitted a declaration in support of this Motion contending that the likelihood of recovery of the texts at this point – three years after the deletion, with one phone missing and another reset to factory mode – is "near zero."  Ex. 23 at ¶¶25, 29, 34, 38; *see also id.* at ¶3(b).  And there is no substitute for the missing texts.  *See Phan*, 2020 WL 5074349, at *3 (no substitute for lost ESI, especially with the passage of time where "[m]emories fade and deponents may be biased in their recollections").

        4.     The Armistice Defendants Prejudiced Plaintiffs' Ability to Prosecute This Action, Warranting Sanctions Pursuant to Rule 37(e)(1)

To sanction a party under Rule 37(e)(1), the Court must determine whether the loss of the ESI "prejudices" the non-spoliating party, *i.e.*, "whether the [spoliating party's] actions impaired [the non-spoliating party's] ability to go to trial or threatened to interfere with the rightful decision of the case." *Leon*, 464 F.3d at 959 (alterations in original); *Medina*, 673 F. Supp. 3d at 1151 (terminating sanctions warranted where defendants' deletion of texts "obstruct[ed] Plaintiffs' ability to present a comprehensive case at trial.").  Courts recognize that proving lost evidence is relevant can be difficult "because the evidence no longer exists," and that it requires the movant to "only come forward with plausible, concrete suggestions as to what [the destroyed] evidence might have been."  *RG Abrams Ins. v. Law Offs. of C.R. Abrams*, 342 F.R.D. 461, 507 (C.D. Cal. 2022).[19]  Once a party establishes spoliation, the burden shifts

---

[19]     *See also Balla v. Idaho State Bd. of Correction*, 119 F. Supp. 3d 1271, 1282 (D. Idaho 2015) ("Prejudice can be hard to measure in the spoliation context, given that the documents that would show prejudice most clearly are, by definition, destroyed.").

to the spoliator to show a lack of prejudice.  *Jerry Beeman & Pharm. Servs., Inc. v. Caremark Inc.*, 322 F. Supp. 3d 1027, 1037 (C.D. Cal. 2018) ("[S]poliation of evidence raises a presumption that the destroyed evidence goes to the merits of the case, and further, that such evidence was adverse to the party that destroyed it.").[20]  And rebutting the presumption is difficult for the spoliator, who "can hardly assert any presumption of irrelevance as to the destroyed documents."  *Burris v. JPMorgan Chase & Co.*, 566 F. Supp. 3d 995, 1014 (D. Ariz. 2021) (quoting *Leon*, 464 F.3d at 959).[21]

Even without burden shifting, Plaintiffs have shown prejudice.  Boyd and Maher texted Vaxart personnel often during the Class Period on Vaxart matters, including: the timing of press releases; OWS; Vaxart's prospects for government funding; their plans to install Floroiu as Vaxart CEO; Armistice's "slate" of directors; the warrant blockers; Vaxart's insider trading policy; and Vaxart's share price.  *Id.* at §II.B.  And text logs also reveal that Boyd and Maher exchanged – *just between themselves* – *629 texts* in June 2020, contemporaneously with all key events at issue, including *60 texts* on June 8 and *75 texts* on June 24 and 25.  Exs. 1-3.  Plaintiffs' inability to access, review, and utilize this material is therefore highly prejudicial to their ability to prosecute the Action.  *Anheuser-Busch, Inc. v. Nat. Beverage Distributors*, 69 F.3d 337, 353-54 (9th Cir. 1995); *Gaina v. Northridge Hosp. Med. Ctr.*, 2019 WL 1751825, at *4 (C.D. Cal. Feb. 25, 2019) (prejudice in party's inability to rely on deleted text messages in conducting discovery, at summary judgment, and trial); *see also Kische USA LLC v. Simsek*, 2018 WL 620493, at *7 (W.D. Wash. Jan. 29, 2018) (prejudice to non-spoliator "obvious" when spoliator argues at summary judgment there is no, or insufficient, evidence in support of an element).

---

[20]    *See also Waymo LLC v. Uber Techs., Inc.*, 2018 WL 646701, at *17 (N.D. Cal. Jan. 30, 2018) ("Having frustrated its adversary's attempts to mine these facts for damning evidence, Uber cannot now evade spoliation by speculating that all of the lost information was benign."); *First Fin. Sec., Inc. v. Freedom Equity Grp., LLC*, 2016 WL 5870218, at *3 (N.D. Cal. Oct. 7, 2016) (finding presumption against defendant-spoliator that deleted texts were adverse).

[21]    *See also Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1328 (Fed. Cir. 2011) ("spoliator bears the 'heavy burden' to show a lack of prejudice to the opposing party"); *GN Netcom, Inc. v. Plantronics, Inc.*, 2016 WL 3792833, at *10 (D. Del. Jul. 12, 2016) (sanctions against spoliator who failed to meet "heavy burden of showing no prejudice").

In alleging the Armistice Defendants' duty to preserve the Boyd-Maher texts – coupled with their failure to take reasonable steps to actually do so, the Parties' inability to restore or replace the ESI, and prejudice – Plaintiffs have satisfied all of the Rule 37(e)(1) requirements necessary for sanctions.

> 5. Defendants Acted with Intent to Deprive Plaintiffs of the Deleted Texts, Warranting Sanctions Under Rule 37(e)(2)

Sanctions under Rule 37(e)(2) require a "finding that the [spoliating] party acted with the intent to deprive another party of the information's use." FED. R. CIV. P. 37(e)(2); *Morehead*, 2023 WL 8143973, at *11; *WeRide*, 2020 WL 1967209, at *12.[22] Courts find that a spoliator's conduct satisfies the intent requirement where the evidence shows, or it is reasonable to infer, that the "party purposefully destroyed evidence to avoid its litigation obligations." *Id.*; *see also Colonies*, 2020 WL 1496444, at *9; *Morehead*, 2023 WL 8143973, at *11 ("[courts] must look to circumstantial evidence to determine intent"). "Relevant factors can include, *inter alia*, the timing of the destruction, the method of deletion (e.g., automatic deletion vs. affirmative steps of erasure), selective preservation, the reason some evidence was preserved, and, where relevant, the existence of institutional policies on preservation." *Id.*

The relevant factors point to Boyd and Maher's intent to deprive. First, Boyd and Maher were on notice that the texts they privately exchanged were likely the ***most relevant*** documents demonstrating their role in, and liability for, the events at issue. *Bosco*, 640 F. Supp. 3d at 928; *First Fin.*, 2016 WL 5870218, at *3 (defendants' spoliation of texts suggests they possessed "incriminating text messages, realized the text messages would be discoverable, and, by deleting the text messages, acted improperly upon their shared intent to keep incriminating facts out of evidence"); *see also Leon*, 464 F.3d at 959 ("A party's destruction of evidence qualifies as willful spoliation if the party has some notice that the

---

[22]    Unlike Rule 37(e)(1), "[t]here is no requirement that the court find prejudice to the non-spoliating party under Rule 37(e)(2)." *Id.* at *9. "This is because the finding of intent required by the subdivision can support not only an inference that the lost information was unfavorable to the party that intentionally destroyed it, but also an inference that the opposing party was prejudiced by the loss of information that would have favored its position." FED. R. CIV. P. 37(e) Advisory Committee Notes to 2015 Amendments.

documents were *potentially* relevant to the litigation before they were destroyed[]") (emphasis in original). ██████████████████████████████████████████████████████████

████████████████████████████████████████ *Colonies*, 2020 WL 1496444, at *9.

Next, the timing of the spoliation – occurring (i) ***eight months*** after receipt of the grand jury subpoena ████████████████████████████████ (ii) seven months after commencement of this Action and receipt of the SEC information request (ECF No. 1; ████ (iii) weeks after Boyd and Maher's resignation from Vaxart on January 28, 2021, and the filing of Plaintiffs' Consolidated Amended Class Action Complaint on January 29, 2021 (SAC ¶¶40-41; ECF No. 84), and (iv) days after the Armistice Defendants initially moved to dismiss the Action on March 12, 2021 (ECF No. 101) – also indicates wrongful intent.  *RG Abrams*, 342 F.R.D. at 508 (timing of deleted texts "a few months after service of the Complaint" indicates intent).

Third, the alleged circumstances, including the methods of deletion, in which the texts were deleted ██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████ strongly indicate "not merely a failure to take the required reasonable steps to preserve the text messages, but rather an indisputably intentional destruction of evidence."  *RG Abrams*, 342 F.R.D. at 506; *see also Fourth Dimension*, 2021 WL 5919821, at *11 ("timing and circumstances of the deletion" demonstrate an intent to deprive).

Finally, the Armistice Defendants' intent is further supported by their multi-year cover-up of their spoliation and repeated false assurances to Plaintiffs and this Court that they "have complied, and will continue to comply with" the PSLRA's evidence preservation requirements.  *Supra* at §II.F; *Burris*, 566 F. Supp. 3d at 1017 ("[T]he sheer number of obfuscatory actions undertaken by [the spoliator] . . . evince an unusually clear level of intent to deprive [the non-spoliator] of potentially relevant ESI.").

The totality of the circumstantial evidence here of the Armistice Defendants' intent is damning, and easily meets Rule 37(e)(2)'s requirements for sanctions.

IV.     **THE ARMISTICE DEFENDANTS VIOLATED THE COURT'S ESI PROTOCOL ORDER AND REPEATEDLY MISLED THE COURT AND PLAINTIFFS, WARRANTING SANCTIONS UNDER RULE 37(B)**

Rule 37(b)(2) authorizes sanctions against a party who "fails to obey an order to provide or permit discovery." FED. R. CIV. P. 37(b)(2)(A); *WeRide*, 2020 WL 1967209, at *8. The Parties negotiated the ESI Protocol Order, so-ordered by this Court on February 24, 2022, which states that "[t]he parties understand their preservation obligations." ECF No. 200 at §III. At the time of filing, the Armistice Defendants had already failed to preserve the Boyd-Maher texts, which had been spoliated almost one year earlier. The Armistice Defendants' conduct is therefore sanctionable in two respects. First, the Armistice Defendants misled Plaintiffs and the Court about their ability to produce relevant material at the time of the filing of the [proposed] ESI Protocol Order. *In re StubHub Refund Litig.*, 2023 WL 3092972, at *2 (N.D. Cal. Apr. 25, 2023) ("Litigants should figure out what they are able to do *before* they enter into [a court-ordered] agreement to do something.") (emphasis in original); *see also Jones v. Riot Hosp. Grp. LLC*, 2022 WL 3682031 (D. Ariz. Aug. 25, 2022) (terminating sanctions granted against litigant who deleted phone records prior to the filing of the ESI Protocol); *Multifeeder Tech., Inc. v. Brit. Confectionery Co.*, 2012 WL 4135848 (D. Minn. Sept. 18, 2012) (sanctions granted against litigant who deleted documents in violation of ESI Protocol).

Second, the Armistice Defendants falsely asserted in ***multiple*** Rule 26(f) Statements that they had "complied, and will continue to comply with" the PSLRA's document preservation mandate. ECF No. 185 at 3-4 (Jan. 19, 2022), ECF No. 220 at 7 (Aug. 8, 2022), ECF No. 232 at 6 (Sept. 1, 2022), ECF No. 306 at 5-6 (July 7, 2023). Such behavior is independently sanctionable given the "substantial prejudice to the system of justice and this court's integrity if a litigant were permitted to mislead the court." *Anheuser-Busch, Inc. v. Nat. Bev. Distribs.*, 151 F.R.D. 346, 349 (N.D. Cal. 1993), *aff'd*, 69 F.3d 337 (9th Cir. 1995) (granting terminating sanctions under Rule 37(b)(2)). In *Swisher Hygiene Franchise Corp. v. Clawson*, 2018 WL 8642738, at *6-8, *13, *15 (D. Ariz. Oct. 15, 2018), the court entered default judgment under Rule 37(b) after finding multiple analogous Rule 26 "acts," including: (i) deleted

ESI, ████████████████████████████████████████████████████████ an

explanation the court found "not credible," (ii) the filing of a false affidavit regarding the ESI at issue,

and (iii) defendants' counsel's efforts to conceal the spoliation.  *See also Conn. Gen. Life Ins. Co. v. New*

*Images of Beverly Hills*, 482 F.3d 1091, 1097 (9th Cir. 2007) (affirming terminating sanctions against

litigant whose "pattern of deception and discovery abuse made it impossible" to have "any reasonable

assurance that the truth would be available"); *Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1058

(9th Cir. 1998) ("Where a party so damages the integrity of the discovery process that there can never

be assurance of proceeding on the true facts, a case dispositive sanction may be appropriate.").

## V.      TERMINATING SANCTIONS ARE MERITED UNDER RULES 37(B), (E)(1), & (E)(2)

"[C]ourts may . . . issue terminating sanctions under either Rule 37(b) or Rule 37(e) when a party

acts so egregiously by failing to comply with a discovery order or intentionally spoliating evidence,"

including where a party engages in "a pattern of disregard for Court orders and deceptive litigation tactics

that threaten to interfere with the rightful decision of a case."  *Medina*, 673 F. Supp. 3d at 1149.  After

determining the spoliator acted with "willfulness, fault, or bad faith," courts then weigh five factors:

> (1) the public's interest in expeditious resolution of litigation; (2) the court's need to
> manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring
> disposition of cases on the merits; and (5) the availability of less drastic sanctions.

*Id.* at *6 (quoting *Leon*, 464 F.3d at 958); *CrossFit*, 2019 WL 6527951, at *5; *Conn. Gen.*, 482 F.3d at

1096; *Payne v. Exxon Corp.*, 121 F.3d 503, 507 (9th Cir. 1997).[23]

### A.      The Armistice Defendants Acted with "Willfulness, Fault, or Bad Faith"

Willfulness may be shown where "'the party ha[d] some notice that the documents were

potentially relevant to the litigation before they were destroyed,'" and "bad faith" may be shown by

demonstrating tactics "'***delaying*** or disrupting the litigation or hampering enforcement of a court order.'"

---

[23]      "While the district court need not make explicit findings regarding each of these factors, a finding
of willfulness, fault, or bad faith is required for dismissal to be proper."  *WeRide*, 2020 WL 1967209, at
*8 (quoting *Leon*, 464 F.3d at 958); *Medina*, 673 F. Supp. 3d at 1150.

*WeRide*, 2020 WL 1967209, at *10 (quoting *Leon*, 464 F.3d at 959) (alteration and emphasis in original).

For example, the court in *Medina* followed the "well-established" principle that "disobedient conduct

not shown to be outside the control of the litigant" demonstrates "willfulness, bad faith, or fault" and

granted terminating sanctions.  673 F. Supp. 3d at 1150 (quoting *Henry v. Gill Indus., Inc.*, 983 F.2d 943,

948 (9th Cir. 1993)).

The Armistice Defendants acted with the requisite "willfulness, fault, or bad faith" sufficient to

warrant terminating sanctions.  The Armistice Defendants and their counsel, all highly sophisticated

participants, were on notice of the need to preserve relevant material as of July 2020 when Vaxart

received the grand jury subpoena, █████████████████████████████████████████████████████

██████████████████  *Supra* at §II.C.  The Armistice Defendants not only then failed to take reasonable

steps to preserve the texts (*id.* at §§II.C-D), but ████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████████

██████████████████████  and (iii) the disposal of Boyd's phone (Ex. 11).[24]  Then, the Armistice

Defendants orchestrated a multi-year effort to conceal the ESI destruction, issuing ***four*** false Rule 26(f)

Statements to the Court and submitting a proposed ESI Protocol Order of which they knew they were in

immediate violation.  *Supra* at §II.F.  The Armistice Defendants then compounded their deception, by

purporting to engage Plaintiffs' Counsel in good faith regarding Plaintiffs' 1st and 2nd RFPs for ***nine***

***months*** in total.  *Id.*

---

24 █████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████████

██████████  *Keating v. Jastremski*, 2020 WL 1809139, at *11, *14 (S.D. Cal. Apr. 9, 2020) (finding
explanation for deletion of ESI "not credible" and granting terminating sanctions).

**B.**      **The Five Factors Collectively Favor Terminating Sanctions**

The factors courts consider before imposing terminating sanctions favor such relief here.[25]  "The first factor, 'the public's interest in expeditious resolution of litigation' and the second factor, 'the court's need to manage its dockets' generally favor terminating sanctions," *Facebook*, 2022 WL 2289067, at *10 (quoting *Comput. Task Grp. Inc. v. Brotby*, 364 F.3d 1112, 1115 (9th Cir. 2004)).  These factors "are easily met" when a spoliator fails to inform the court or opposing party about the spoliation, wasting judicial resources and opposing counsel's time.  *WeRide*, 2020 WL 1967209, at *10 (sanctioning defendant-spoliator who failed to inform plaintiffs and the court for "about two months" after the spoliation occurred, during which time the court "considered multiple motions to compel the production of documents that no longer existed"); *see also Brotby*, 364 F.3d at 1115 ("Where a court order is violated, the first and second factors will favor sanctions.").  Here, the Armistice Defendants concealed the spoliation for almost two-and-a-half years, during which they (i) engaged in nine months of negotiations regarding Plaintiffs' 1st and 2nd RFPs, (ii) filed four false Rule 26(f) Statements stating they "have complied, and will continue to comply with" the PSLRA rules "related to evidence preservation," (iii) filed a false proposed ESI Protocol Order stating they "understand their preservation obligations," and (iv) disposed of Boyd's iPhone.

The third factor, "[t]he risk of prejudice to the party seeking sanctions[,] is the most important factor for case dispositive sanctions because it 'looks to whether the [spoliating party's] actions impaired the [non-spoliating party's] ability to go to trial or threatened to interfere with the rightful decision of the case.'"  *Facebook*, 2022 WL 2289067, at *10 (quoting *Leon*, 464 F.3d at 959); *Garrison v. Ringgold*,

---

[25]      "This 'test' is not mechanical. It provides the district court with a way to think about what to do, not a set of conditions precedent for sanctions or a script that the district court must follow."  *Conn. Gen.*, 482 F.3d at 1096.

2020 WL 6537389, at *5 (S.D. Cal. Nov. 6, 2020); *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990). Plaintiffs have demonstrated prejudice. *Supra* at §III.B.4.[26]

The fifth factor, "the availability of less drastic sanctions," also militates in favor of terminating sanctions. The lost texts cannot be restored or replaced, precluding any cure for the Armistice Defendants' spoliation. *Supra* at §III.B.3. The Armistice Defendants' active concealment of the spoliation also independently warrants terminating sanctions. "There is no point to a lawsuit, if it merely applies law to lies. True facts must be the foundation for any just result. Sometimes, as in *Anheuser–Busch*, a party's discovery violations make it impossible for a court to be confident that the parties will ever have access to the true facts." *Valley Eng'rs*, 158 F.3d at 1058.[27]

## C.     In the Alternative, the Court Should Impose a Mandatory Jury Instruction

If the Court declines to enter a default judgment, in the alternative the Court may impose a mandatory adverse inference against the Armistice Defendants. Under Rule 37, there are three types of adverse inference instructions: (1) a jury instruction "that certain facts are deemed admitted and must be accepted as true"; (2) "a mandatory presumption"; and (3) an instruction that "permits (but does not require) a jury to presume that the lost evidence is both relevant and favorable to the innocent party." *Dish Network L.L.C. v. Jadoo TV, Inc.*, 2022 WL 11270394, at *3 (N.D. Cal. Oct. 19, 2022); *Apple Inc.*

---

[26]     While the fourth factor – "public policy favoring disposition of cases on their merits" – "usually cuts against sanctions," *Facebook*, 2022 WL 2289067, at *10, this factor alone "is not sufficient to outweigh the other four factors," *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 133 n.2 (9th Cir. 1987), particularly when "the prejudice to [the non-spoliator] is so great that it outweighs this factor," *WeRide*, 2020 WL 1967209, at *11. *See also Valley Eng'rs*, 158 F.3d at 1058 ("[Spoliator's] conduct in the litigation has cast such a pall upon EEC's integrity and upon a fair and just resolution on the merits that no alternative sanction could be effective.").

[27]     While courts are directed to consider a set of sub-factors to assess this factor – (1) "the feasibility of less drastic sanctions" and explain why alternative sanctions would be inappropriate; (2) whether it "implemented alternative sanctions before ordering dismissal," and (3) whether the Court issued a warning of the possibility of dismissal, *Facebook*, 2022 WL 2289067, at *11 (quoting *Leon*, 464 F.3d at 960) – the Ninth Circuit has held that "despite all this elaboration of factors, we have said that it is not always necessary for the court to impose less serious sanctions first, or to give any explicit warning. . . . The list of factors amounts to a way for a district judge to think about what to do, not a series of conditions precedent before the judge can do anything." *Valley Eng'rs*, 158 F.3d at 1057.

*v. Samsung Elecs. Co., Ltd.*, 881 F. Supp. 2d 1132, 1150 (N.D. Cal. 2012).  A party seeking an adverse

inference must satisfy a three-part test:

> (1) that the party having control over the evidence had an obligation to preserve it at the time it
> was destroyed; (2) that the records were destroyed with a 'culpable state of mind' and (3) that
> the evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact
> could find that it would support that claim or defense.

*Deerpoint Grp., Inc. v. Agrigenix, LLC*, 2022 WL 16551632, at *22 (E.D. Cal. Oct. 31, 2022); *Apple*,

881 F. Supp. 2d at 1138.  This test is easily satisfied here.  First, as of July 2020, the Armistice Defendants

had a duty to preserve the Boyd-Maher texts, ███████████████████████████████████

████████████████████  Second, as demonstrated above (*supra* at §§III.B.5, V.A), the Armistice

Defendants acted with a "culpable state of mind."[28]  The lost texts are indisputably relevant to Plaintiffs'

ability to establish scheme liability and insider trading (*supra* at §§II.D) and highly prejudicial to

Plaintiffs' ability to navigate through discovery, summary judgment, and trial (*id.* at §III.B.4).  *Anheuser-*

*Busch*, 69 F.3d at 353-54; *Gaina*, 2019 WL 1751825, at *4.

Therefore, Plaintiffs respectfully request a mandatory jury ***instruction*** on the elements of falsity,

knowledge, and scienter.  By contrast, although the Court also has discretion to issue merely a jury

***presumption*** (whether mandatory or permissive), such a lesser remedy would be inadequate here, as it

---

[28]       *See, e.g.*, *Scott Griffith Collaborative Sols., LLC v. Falck N. Cal. Corp.*, 2021 WL 4846926, at
*6 (N.D. Cal. Sept. 10, 2021), *report & recommendation adopted sub nom. Falck USA, Inc. v. Scott
Griffith Collaborative Sols., LLC*, 2021 WL 4846244 (N.D. Cal. Oct. 4, 2021) (emphasis in original)
("[T]he 'culpable state of mind' factor is satisfied by a showing that the evidence was destroyed
knowingly, even if without intent to breach a duty to preserve it, or *negligently*."); *Jimenez v. Menzies
Aviation Inc.*, 2016 WL 3232793, at *4 (N.D. Cal. June 13, 2016) ("culpable state of mind" does not
require showing "of any malicious or wanton conduct"); *In re Napster, Inc. Copyright Litig.*, 462 F. Supp.
2d 1060, 1074, 1078 (N.D. Cal. 2006) (spoliator's "grossly negligent" failure "to preserve evidence, by
failing to implement a litigation hold and instead relying on [another defendant] to preserve [the
spoliator's] emails" constituted the requisite "culpable state of mind"); *see also Glover v. BIC Corp.*, 6
F.3d 1318, 1329 (9th Cir. 1993) ("a finding of 'bad faith' is not a prerequisite to this corrective
procedure"); *Al Otro Lado, Inc. v. Wolf*, 2021 WL 631789, at *5 (S.D. Cal. Feb. 18, 2021), *report &
recommendation adopted sub nom. Al Otro Lado, Inc. v. Mayorkas*, 2021 WL 1170212 (S.D. Cal. Mar.
29, 2021) ("The requisite culpable state of mind for purposes of spoliation and adverse inference
instructions does not require a finding of bad faith, but only a party's 'conscious disregard' of its
preservation obligations.").

would simultaneously leave Plaintiffs "deprived of the evidence necessary to prove its case" and "equally helpless to rebut any material that [the Armistice Defendants] might use to overcome that presumption." *WeRide*, 2020 WL 1967209, at *11.

> **D.    Plaintiffs Are Entitled to Reimbursement for the Time and Expenses They Incurred Investigating the Armistice Defendants' Spoliation, Moving for Sanctions, and Negotiating Discovery Requests**

During the almost two-and-a-half years the Armistice Defendants actively concealed the spoliation, Plaintiffs' Counsel spent approximately nine months negotiating search parameters pursuant to Plaintiffs' 1st and 2nd RFPs, pursuing material that did not exist at the time the negotiations took place. *Supra* at §II.F.  Further, to date, Plaintiffs' Counsel have expended significant time and resources investigating Defendants' spoliation. *Id.* at §II.G.  Accordingly, Plaintiffs are entitled to reimbursement of their time and expenses incurred negotiating the two RFPs, investigating the spoliation, and moving for sanctions. *Deerpoint*, 2022 WL 16551632, at *18-22; *Colonies*, 2020 WL 1496444, at *13.[29]

## VI.    CONCLUSION

The Armistice Defendants intentionally and prejudicially spoliated critical evidence necessary to the prosecution of this Action through their deletion of the Boyd-Maher texts and the disposal of Boyd's iPhone.  Then they orchestrated a multi-year effort to conceal the text message destruction from Plaintiffs, and actively mislead this Court through the filing of false Rule 26(f) Statements and a false proposed ESI Protocol Order.  The most serious sanctions are warranted.

DATED: April 29, 2024                            Respectfully submitted,

---

[29]    Plaintiffs' Reply submission will include a declaration delineating their lodestar and expenses.

**HAGENS BERMAN SOBOL SHAPIRO LLP**

*/s/ Reed R. Kathrein*
Reed R. Kathrein (139304)
Lucas E. Gilmore (250893)
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com

Steve W. Berman (*pro hac vice*)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com

Raffi Melanson (*pro hac vice*)
55 Cambridge Pkwy, Suite 301
Cambridge, MA 02141
Telephone: (617) 482-3700
Facsimile:  (617) 482-3003
raffim@hbsslaw.com

*Counsel for Proposed Class Representatives*
*Wei Huang and Langdon Elliott*

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
John T. Jasnoch (281605)
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 233-4565
Facsimile:  (619) 233-0508
jjasnoch@scott-scott.com

William C. Fredericks (*pro hac vice*)
Jeffrey P. Jacobson (*pro hac vice*)
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 233-6444
Facsimile:  (212) 233-6334
wfredericks@scott-scott.com
jjacobson@scott-scott.com

*Counsel for Proposed Class Representative
Ani Hovhannisyan*

**THE SCHALL LAW FIRM**
Brian J. Schall (290685)
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Telephone: (310) 301-3335
Facsimile:  (310) 388-0192
brian@schallfirm.com

*Additional Counsel*