**CONRAD | METLITZKY | KANE LLP**
MIRANDA KANE (SBN 150630)
WARREN METLITZKY (SBN 220758)
NATHAN THEOBALD (SBN 328837)
217 Leidesdorff Street
San Francisco, CA 94111
Telephone: (415) 343-7100
Facsimile: (415) 343-7101
Email: mkane@conmetkane.com
        wmetlitzky@conmetkane.com
        ntheobald@conmetkane.com

**AKIN GUMP STRAUSS HAUER & FELD LLP**
NEAL R. MARDER (SBN 126879)
JOSHUA A. RUBIN (SBN 308421)
SINA SAFVATI (SBN 313287)
LILLIAN RAND (SBN 341581)
1999 Avenue of the Stars, Suite 600
Los Angeles, CA 90067
Email: nmarder@akingump.com
        rubinj@akingump.com
        ssafvati@akingump.com
        lrand@akingump.com

*Attorneys for Defendants ARMISTICE CAPITAL*
*LLC, ARMISTICE MASTER FUND, LTD,*
*STEVEN J. BOYD, and KEITH MAHER, M.D.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re VAXART, INC. SECURITIES LITIGATION | Lead Case No. 3:20-cv-05949-VC |
| | District Judge: Hon. Vince Chhabria |
| | <u>CLASS ACTION</u> |
| This Document Relates to:<br>    ALL ACTIONS | **ARMISTICE DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS** |
| | Hearing Date: June 27, 2024<br>Hearing Time: 10:00 AM |

<u>**TABLE OF CONTENTS**</u>

**Page**

I.      INTRODUCTION ...........................................................................................1

II.     BACKGROUND ...........................................................................................1

     A.    DISCOVERY TO DATE HAS BEEN ROBUST. ..................................................1

     B.    THE ARMISTICE DEFENDANTS TOOK IMMEDIATE STEPS TO
            PRESERVE ALL POTENTIALLY RELEVANT EVIDENCE. ...........................2

     C.    DESPITE GOOD-FAITH AND LARGELY SUCCESSFUL EFFORTS TO
            PRESERVE AND WITH NO MALICIOUS INTENT, A TEXT THREAD WAS
            DELETED AND IS NOT RECOVERABLE. ...........................................................3

          1.    Boyd Inadvertently Deleted One Text Thread in March 2021. ..................4

          2.    Consistent with his Personal Practice, Maher Had Already Deleted Any
              Texts from June and July 2020 between Himself and Boyd When the
              Litigation Hold Issued......................................................................................5

     D.    AFTER LEARNING OF THE INADVERTENT DELETION, ARMISTICE
            MOBILIZED IMMEDIATELY TO ATTEMPT TO RECOVER THE DELETED
            TEXT THREAD. ...............................................................................................6

     E.    WITH A GOOD-FAITH UNDERSTANDING OF THEIR OBLIGATIONS,
            COUNSEL FOR ARMISTICE DISCLOSED THE INADVERTENT LOSS OF
            THE TEXT THREAD ON AUGUST 29, 2023. ...................................................7

III.    LEGAL STANDARDS .................................................................................8

IV.     ARGUMENT ...............................................................................................9

     A.    PLAINTIFFS' REQUEST FOR SANCTIONS IGNORES THE REASONABLE
            STEPS DEFENDANTS TOOK TO PRESERVE ESI. .........................................9

     B.    PLAINTIFFS' CASES DO NOT SUPPORT THE EXTREME SANCTIONS
            SOUGHT. .......................................................................................................11

     C.    PLAINTIFFS GROSSLY OVERSTATE THEIR ALLEGED PREJUDICE
            UNDER RULE 37(E)(1)..................................................................................13

          1.    Plaintiffs' Alleged Prejudice is At Odds with the Extensive Discovery
              Produced to Date..............................................................................................14

          2.    Plaintiffs Fail to Furnish "Concrete Suggestions" in Support of Their
              Theory..............................................................................................................15

3.     The Deleted Text Thread Could Not be Recovered Regardless of the Timing of Counsel's Disclosure. ...............................................................17

D.     PLAINTIFFS' "VERY SEVERE" SANCTIONS OF DISMISSAL OR ADVERSE INFERENCE ARE NOT ADEQUATELY TAILORED TO THE LOSS OF ONE TEXT THREAD. ........................................................17

1.     Default Judgment is Inappropriate and Constitutes Grave Overreach.......18

2.     Adverse Inferences Constitute a Drastic, Severe Sanction that is not Warranted...................................................................................................18

E.     AS COUNSEL AFFIRMATIVELY DISCLOSED THE LOSS OF THE TEXT THREAD WHEN IT BELIEVED IN GOOD FAITH THAT SUCH OBLIGATION AROSE, RULE 37(B) SANCTIONS ARE INAPPROPRIATE. 21

1.     Counsel Abided by its Good-Faith Interpretation of its Disclosure Obligations. ...............................................................................................21

2.     Counsel Truthfully Represented at All Times that It Understood and Complied with the Preservation Obligations. ............................................22

V.     CONCLUSION...................................................................................................24

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Al Otro Lado, Inc. v. Wolf*,
  2021 WL 631789 (S.D. Cal. Feb. 18, 2021), *report and recommendation adopted sub
  nom., Al Otro Lado, Inc. v. Mayorkas*, 2021 WL 1170212 (S.D. Cal. Mar. 29, 2021) ...........14

*Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*,
  69 F.3d 337 (9th Cir. 1995) ....................................................................................14, 23

*Belden v. Cnty. of San Bernardino*,
  2020 WL 8515014 (C.D. Cal. Nov. 10, 2020)........................................................................13

*Bolyard v. Village of Sherman*,
  2022 WL 16738647 (N.D. Ill. Nov. 7, 2022) .........................................................................11

*Estate of Bosco by and Through Kozar v. Cnty. of Sonoma*,
  640 F. Supp. 3d 915 (N.D. Cal. 2022) ....................................................................................19

*Brewer v. Leprino Foods Co., Inc.*,
  2019 WL 356657 (E.D. Cal. Jan. 29, 2019) ...........................................................................11

*Burris v. JPMorgan Chase & Co.*,
  566 F. Supp. 3d 995 (D. Ariz. 2021), *aff'd*, 2024 WL 1672263 (9th Cir. Apr. 18,
  2024) .......................................................................................................................................12

*Chinitz v. Intero Real Estate Servs.*,
  2020 WL 7389417 (N.D. Cal. May 13, 2020) ..........................................................................8

*Colonies Partners, L.P. v. Cnty. of San Bernardino*,
  2020 WL 1496444 (C.D. Cal. Feb. 27, 2020)......................................................8, 10, 17, 18

*Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*,
  482 F.3d 1091 (9th Cir. 2007) ................................................................................................13

*Doe LS 340 v. Uber Techs, Inc.*,
  2024 WL 107929 (N.D. Cal. Jan. 9, 2024) .............................................................................11

*Facebook, Inc. v. OnlineNIC Inc.*,
  2022 WL 17371092 (N.D. Cal. Oct. 17, 2022).................................................................13, 19

*Fast v. GoDaddy.com LLC*,
  340 F.R.D. 326 (D. Ariz. 2022) ..............................................................................................21

*Gaina v. Northridge Hosp. Med. Ctr.*,
  2018 WL 6258895 (C.D. Cal. Nov. 21, 2018), *aff'd*, 2019 WL 1751825 (C.D. Cal.
  Feb. 25, 2019) .........................................................................................................................20

i

*Gaina v. Northridge Hosp. Med. Ctr.*,
    2019 WL 1751825 (C.D. Cal. Feb. 25, 2019).........................................................................14

*Gault v. United States*,
    2022 WL 4292340 (C.D. Cal. Aug. 23, 2022), *report and recommendation adopted*,
    2022 WL 4291320 (C.D. Cal. Sept. 15, 2022) ...............................................................9, 23

*GN Netcom, Inc. v. Plantronics, Inc.*,
    2016 WL 3792833 (D. Del. July 12, 2016) ..........................................................................12

*hiQ Labs, Inc. v. LinkedIn Corp.*,
    639 F. Supp. 3d 944 (N.D. Cal. 2022) ........................................................................ *passim*

*Hynix Semiconductor Inc. v. Rambus Inc.*,
    897 F. Supp. 2d 939 (N.D. Cal. 2012).............................................................................8, 18

*Jackson Fam. Wines, Inc. v. Diageo N. Am., Inc.*,
    2014 WL 595912 (N.D. Cal. Feb. 14, 2014) .......................................................................21

*John v. Cnty. of Lake*,
    2020 WL 3630391 (N.D. Cal. July 3, 2020)........................................................................10

*Jones v. Riot Hospitality Grp. LLC*,
    95 F.4th 730 (9th Cir. 2024) ...................................................................................17, 18, 20

*Keating v. Jastremski*,
    2020 WL 1809139 (S.D. Cal. Apr. 9, 2020).......................................................................12

*Kelly v. Fashion Nova, Inc.*,
    2023 WL 8006877 (C.D. Cal. Oct. 30, 2023), *report and recommendation adopted*,
    2023 WL 8006392 (C.D. Cal. Nov. 16, 2023).....................................................................10

*Kische USA LLC v. Simsek*,
    2018 WL 620493 (W.D. Wash. Jan. 29, 2018)....................................................................18

*Laub v. Horbaczewski*,
    2020 WL 9066078 (C.D. Cal. July 22, 2020).........................................................10, 18, 19

*Leon v. IDX Sys. Corp.*,
    464 F.3d 951 (9th Cir. 2006) ..........................................................................................12, 13

*Lokai Holdings LLC v. Twin Tiger USA LLC*,
    2018 WL 1512055 (S.D.N.Y. Mar. 12, 2018) ......................................................................8

*Med. Lab. Mgmt. Consultants v. Am. Broad. Cos., Inc.*,
    306 F.3d 806 (9th Cir. 2002) ...............................................................................................16

*Micron Tech., Inc. v. Rambus Inc.*,
    645 F.3d 1311 (Fed. Cir. 2011)............................................................................................12

*Multifeeder Tech., Inc. v. British Confectionery Co. Ltd.*,
   2012 WL 4135848 (D. Minn. Sept. 18, 2012) ......................................................................22

*Optronic Techs., Inc. v. Ningbo Sunny Elec. Co., Ltd.*,
   2020 WL 3617907 (N.D. Cal. July 2, 2020) .........................................................................8

*Or. Public Emps. Ret. Fund v. Apollo Grp. Inc.*,
   774 F.3d 598 (9th Cir. 2014) ..............................................................................................16

*In re Oracle Sec. Litig.*,
   627 F.3d 376 (9th Cir. 2010) ..............................................................................................14

*Phan v. Costco Wholesale Corp.*,
   2020 WL 5074349 (N.D. Cal. Aug. 24, 2020) ....................................................................10

*Resolute Forest Prods., Inc. v. Greenpeace Int'l*,
   2022 WL 16637990 (N.D. Cal. Nov. 2, 2022), *report and recommendation adopted*,
   2023 WL 4311255 (N.D. Cal. Apr. 10, 2023) ...............................................................10, 11

*RG Abrams Ins. v. Law Offices of C.R. Abrams*,
   342 F.R.D. 461 (C.D. Cal. 2022) ...................................................................................13, 15

*Rodriguez v. Google, LLC*,
   2021 WL 8085492 (N.D. Cal. Dec. 1, 2021) .........................................................................9

*SG Cowen Secs. Corp. v. U.S. Dist. Ct. for N. Dist. of Cal.*,
   189 F.3d 909 (9th Cir. 1999) ..............................................................................................22

*Spencer v. Lunada Bay Boys*,
   2017 WL 11527978 (C.D. Cal. Nov. 29, 2017).....................................................................11

*In re StubHub Refund Litig.*,
   2023 WL 3092972 (N.D. Cal. Apr. 25, 2023) .....................................................................22

*Swisher Hygiene Franchise Corp. v. Clawson*,
   2018 WL 8642738 (D. Ariz. Oct. 15, 2018) ........................................................................23

*Valley Eng'rs Inc. v. Elec. Eng'g Co.*,
   158 F.3d 1051 (9th Cir. 1998) .......................................................................................13, 23

*Waymo LLC v. Uber Techs., Inc.*,
   2018 WL 646701 (N.D. Cal. Jan. 30, 2018) .............................................................12, 20, 21

*WeRide Corp. v. Kun Huang*,
   2020 WL 1967209 (N.D. Cal. Apr. 24, 2020) ...........................................................8, 12, 19

*Wisk Aero LLC v. Archer Aviation Inc.*,
   2023 WL 2277112 (N.D. Cal. Feb. 28, 2023) ................................................................18, 19

**Other Authorities**

Fed. R. Civ. P. 26(f) ...................................................................................................22, 23

Fed. R. Civ. P. 30(b)(6) ...................................................................................................7, 8

Fed. R. Civ. P. 37 ..................................................................................................9, 11, 18

Fed. R. Civ. P. 37(b) ......................................................................................................8, 21

Fed. R. Civ. P. 37(b)(2)(A) .................................................................................................8

Fed. R. Civ. P. 37(e) ......................................................................................................8, 18

Fed. R. Civ. P. 37(e)(1) ..................................................................................................8, 13

Fed. R. Civ. P. 37(e)(2) ..................................................................................................8, 17

CASE NO. 3:20-CV-05949-VC                                              OPP. TO SPOLIATION MOT.

## I.    INTRODUCTION

Regrettably—and unintentionally—one text thread between two individual defendants was deleted and cannot be recovered.  Plaintiffs seize on this to now move for severe sanctions.  Plaintiffs overreach; the disproportionate nature of the requested sanctions cannot be reconciled with the facts.  Plaintiffs have received upwards of 90,000 documents, including scores of communications and text messages between and amongst the critical parties, including Vaxart, Steven Boyd, and Dr. Keith Maher.  And Plaintiffs' decision not to depose Boyd and Maher—the parties with direct evidence of the issues for which they seek adverse inference sanctions—is telling.  Plaintiffs allege that they have somehow been severely prejudiced, assert that they cannot adequately prove their case, and ask for default judgment, adverse inferences, and monetary sanctions.  To be sure, in hindsight, additional steps could have been taken.  But that does not give Plaintiffs license to ignore the reasonable preservation steps that were taken and then ask the Court to infer—without a scintilla of evidence—that the Armistice Defendants intended to deceive (all evidence says that they did not).  Plaintiffs also accuse the Armistice Defendants of delaying the disclosure of the deletion.  But even if disclosure had been made earlier, Plaintiffs do not argue that it would have made a difference (and it would not have).  Moreover, once the discovery stay was lifted and the parties moved past the pleading stage, counsel *affirmatively* disclosed the issue and complied with Plaintiffs' inquiry.  And counsel never misrepresented the issue to Plaintiffs or the Court.

With so little, Plaintiffs now ask for too much too soon.  The Court should deny Plaintiffs' unmeasured and premature request for spoliation sanctions.

## II.    BACKGROUND

### A.    Discovery to Date Has Been Robust.

The Court is familiar with the factual allegations underlying this action.  In short, at issue are two press releases issued by Vaxart that Plaintiffs allege were designed to mislead the market.  The parties

1

have engaged in multiple rounds of motions practice over almost three years.  *See* Declaration of Joshua A. Rubin in Support of the Armistice Defendants' Opposition to Plaintiffs' Motion for Spoliation Sanctions ("Rubin Decl.") ¶¶ 2–3, 13–14.  Plaintiffs have also obtained substantial discovery.  The Vaxart Defendants produced nearly 100,000 documents, including substantial communications with and among the Armistice Defendants: over 3,000 emails sent to or from Boyd or Maher, as well as over 100 text message conversations with Boyd and nearly 200 text message conversations with Maher.  *Id.* ¶ 36. Plaintiffs have thus far deposed more than ten individuals, including seven current or former employees or directors of Vaxart.  *Id.* ¶ 37.  As to Armistice, discovery was stayed pursuant to the PSLRA until May 25, 2023.  *Id.* ¶¶ 12, 14; ECF No. 235.  The Armistice Defendants did not produce any documents prior to May 25, 2023, except for some minimal discovery in connection with mediation efforts.  Rubin Decl. ¶¶ 5, 34–35.  Since the discovery stay was lifted, the Armistice Defendants have added to the already-fulsome production in this case, producing over 8,200 documents to date, including 100 text message threads from Boyd's phone (some involving Maher) and a small number of WhatsApp messages from Maher.  *Id.* ¶ 35.

### B.    The Armistice Defendants Took Immediate Steps to Preserve all Potentially Relevant Evidence.

Within two days of learning that Vaxart had received a grand jury subpoena, Armistice sent a litigation preservation notice to all employees on July 29, 2020.  Decl. of Jeffrey P. Jacobson in Support of Plaintiffs' Motion for Spoliation Sanctions ("Pls.' Decl.") Ex. 5; Pls.' Decl. Ex. 7 at 25:7–12, 29:8– 30:18.  Pursuant to the litigation hold, Armistice preserved all company-owned documents and communications, such as emails and Bloomberg chats.  Pls.' Decl. Ex. 7 at 88:4–25, 119:2–16.  It did not stop with a litigation hold and preservation of corporate documents.  While Armistice policy prohibits the use of personal emails for substantive business, Armistice, out of an abundance of caution, inquired into the use of personal email addresses for communications relating to Vaxart.  *Id.* at 90:14– 92:2.  And Armistice's general counsel and outside counsel spoke with Boyd and Maher regarding their

preservation obligations, and both individual defendants understood that the litigation hold applied to all communications, including text messages. Declaration of Steven J. Boyd in Support of the Armistice Defendants' Opposition to Plaintiffs' Motion for Spoliation Sanctions ("Boyd Decl.") ¶¶ 9–10; Declaration of Dr. Keith Maher in Support of the Armistice Defendants' Opposition to Plaintiffs' Motion for Spoliation Sanctions ("Maher Decl.") ¶¶ 7, 9; Declaration of Kaitlin Shapiro in Support of the Armistice Defendants' Opposition to Plaintiffs' Motion for Spoliation Sanctions ("Shapiro Decl.") ¶¶ 2–4. Moreover, counsel reached out to a discovery vendor to begin initial collection and imaging efforts, but that engagement was not finalized before the events at issue here. Shapiro Decl. ¶ 5.

> **C.    Despite Good-Faith and Largely Successful Efforts to Preserve and With No Malicious Intent, a Text Thread Was Deleted and is Not Recoverable.**

Armistice employees are not allowed to use text messages for substantive business. Boyd Decl. ¶ 18. Indeed, the compliance manual instructed employees not to text about substantive business issues. Pls.' Decl. Ex. 7 at 49:14–50:2, 111:23–112:11. Boyd and Maher generally followed this policy. Boyd Decl. ¶ 18; Maher Decl. ¶ 19.

During the COVID-19 pandemic, many interactions that would usually take place in an office took place remotely. Boyd Decl. ¶ 20; Maher Decl. ¶ 21. Boyd and Maher sometimes texted others— and each other—about *non-substantive* matters, such as scheduling meetings, discussing availabilities, and talking about other workplace mundanities or personal topics. Boyd Decl. ¶¶ 19–21, 24; Maher Decl. ¶¶ 21–23, 26; *see, e.g.*, Pls.' Decl. Ex. 26. Those non-substantive texts were not only, or even primarily, about Vaxart. Boyd Decl. ¶ 24; Maher Decl. ¶ 26. Vaxart represented a relatively small position of the fund in June 2020. Boyd Decl. ¶ 8. During the relevant period, Boyd and Maher worked together on a number of investments in the healthcare sector and sat on several boards together. *Id.* ¶ 3.

Simply put, Boyd and Maher handled scores of non-Vaxart investments and regularly texted each other to relay non-substantive business or personal matters.[1]

### 1.    *Boyd Inadvertently Deleted One Text Thread in March 2021.*

After receiving the litigation hold, Boyd read, understood, and took efforts to comply, including preserving the texts on his personal phone.  Boyd Decl. ¶¶ 9–11.  Eight months later, Boyd was virtually seeing a physical therapist three times a week using Zoom on his iPhone 11 Pro.  *Id.* ¶ 25.  During a physical therapy session, on or around March 29 or 30, 2021, Maher repeatedly called Boyd.  *Id.* ¶ 26. Each time that Maher called Boyd, Boyd's Zoom feed was interrupted by a screen prompting Boyd to answer the call.  *Id.*  To stop the disruptive notifications, Boyd tried to send an automated text telling Maher that he was unavailable.  *Id.*  In doing so, Boyd inadvertently swiped and/or clicked his text thread with Maher (Boyd is not certain of the exact mechanics) and accidentally deleted the thread.  *Id.* ¶¶ 26–27.  Boyd did not immediately understand that he deleted the thread with Maher, but once Boyd recognized what occurred—cognizant of his preservation obligations—he immediately, and within a day of deletion, informed Armistice's general counsel.  *Id.* ¶ 28.  Boyd did not contemporaneously inform Maher of the accidental deletion.  *Id.*

Boyd continued to use his iPhone 11 Pro until approximately September 2021 when he replaced it with a newer model, as was his practice.  *Id.* ¶ 33.  By then, an iTunes backup containing the data from Boyd's iPhone 11 Pro had been created, saved on a hard drive, and retained by counsel. *Id.* ¶ 34; Shapiro Decl. ¶¶ 10–11; Declaration of James Whitehead in Support of the Armistice Defendants' Opposition to Plaintiffs' Motion for Spoliation Sanctions ("Contact Decl.") ¶¶ 12–16.  Boyd does not recall precisely what he did with the iPhone 11 Pro after replacing it; when he tried to locate it later, he could not find it. Boyd Decl. ¶¶ 33–34.

---

[1] It is no surprise that there were over 600 texts between Boyd and Maher in June 2020.  That number is entirely consistent with how they communicated during this time period.  Boyd Decl. ¶ 23; Maher Decl. ¶ 25.

### 2.  *Consistent with his Personal Practice, Maher Had Already Deleted Any Texts from June and July 2020 between Himself and Boyd When the Litigation Hold Issued.*

Prior to the issuance of the litigation hold, Maher had **already deleted**—pursuant to his usual practice of deleting text messages, whether personal or work-related—any prior-dated text messages (if any) related to Vaxart, including any texts between himself and Boyd.  Maher Decl. ¶ 13.  When he received the litigation hold notice, Maher read, understood, and took efforts to comply with it, including by immediately ceasing his long-standing practice of regularly deleting his text messages.  *Id.* ¶¶ 9–10, 14.

In 2020, Maher had an Android OnePlus 6 (the "OnePlus").  *Id.* ¶ 12.  This phone constantly dropped calls, refused to connect to the service provider, and shut off indiscriminately, among other problems.  *Id.* ¶ 27.  Maher, not being technologically sophisticated, often relied, both before and after the litigation hold issued, on his then high-school aged son for assistance with his OnePlus.  *Id.* ¶ 28. On one or more occasions in or around early 2021, Maher again asked his son to help with his OnePlus. *Id.* ¶ 31.  Maher did not advise his son about the litigation hold, nor did he instruct his son to delete any data or understand that, in fixing the OnePlus, his son may delete data.  *Id.* ¶¶ 30, 32.  It was not until April 2021—after Armistice had collected Maher's OnePlus—that Maher and Armistice learned that the OnePlus had been factory reset **months** before Boyd inadvertently deleted the text thread on his iPhone 11 Pro.[2]  *Id.* ¶¶ 31–32, 36; Contact Decl. ¶ 26; Pls' Decl. Ex. 7 at 106:20–107:8.  In or around late February or early March 2021, Maher switched to an iPhone.  Maher Decl. ¶ 34.  Maher kept the OnePlus, set it aside, and later provided it to Contact Discovery Services ("Contact").  *Id.* ¶ 34.

---

[2] Without having taken Maher's, Boyd's, or Contact's depositions, Plaintiffs represent that this reset occurred "[a]round th[e] same time" as Boyd's inadvertent deletion.  Mot. at 2.  In fact, that is not true.  Maher Decl. ¶¶ 31–34.

> **D. After Learning of the Inadvertent Deletion, Armistice Mobilized Immediately to Attempt to Recover the Deleted Text Thread.**

Once Armistice learned of Boyd's inadvertent deletion, it promptly sought to recover the text thread. Within two days, counsel engaged Contact and initiated a nearly two-month effort to recover the Boyd/Maher text thread. Shapiro Decl. ¶¶ 5–9; Contact Decl. ¶¶ 8–9. With respect to Boyd's phone, Contact, consistent with standard industry practice, remotely created an iTunes backup, which was loaded onto a hard drive and delivered to Contact.[3] Contact Decl. ¶¶ 12–16, 20. Contact performed multiple analyses in an effort to locate any deleted text messages to or from Maher, but was unsuccessful. *Id.* ¶¶ 17–19. Contact also quickly collected and imaged the OnePlus.[4] Maher Decl. ¶¶ 34–35; Contact Decl. ¶¶ 24–26. Using a full file system image created via Cellebrite UFED and an Android Debug Bridge ("ADB") backup of the device, Contact analyzed the OnePlus and discovered that it had been factory reset and contained very little data. Contact Decl. ¶¶ 26–27. Contact then inquired into additional backups for both devices: it accessed Boyd's iCloud backup and considered obtaining the iCloud backup of Maher's new iPhone, although neither avenue yielded the Boyd/Maher thread. *Id.* ¶¶ 19, 29. Last, Armistice inquired into recovering the Boyd/Maher text thread through Boyd's and Maher's phone carriers and operating systems, which also proved to be unsuccessful. Pls.' Decl. Ex. 7 at 93:6–95:6.

---

[3] Boyd's iTunes backup contained all user-created data that existed on his iPhone 11 Pro. Contact Decl. ¶ 12. Plaintiffs' expert describes the possibility of using a Cellebrite advanced logical full file system image instead of an iTunes backup. Pls.' Decl. Ex. 23 ¶¶ 16, 20–21. This was not possible. In 2021, only law enforcement had access to forensic tools necessary to create an advanced logical full file system image of an iPhone 11 Pro, which was not vulnerable to the Checkm8 exploit. Contact Decl. ¶ 40. And even if a full file system image (which, again could not be obtained in 2021) could have recovered the SMS.DB-WAL file, any information concerning the deletion would have been overwritten within minutes as the active device continued to process data. *Id.* ¶¶ 42–43. And even if Contact could have obtained a Cellebrite advanced logical image, the only difference between it and an iTunes backup is that Contact may have been able to obtain the Sysdiagnose files, which are system-generated files that provide general information regarding the device. *Id.* ¶ 20. But these SysDiagnose files are irrelevant— and provide no helpful or useable information—as to user-created data, such as text messages. *Id.*

[4] Android devices do not have a meaningful equivalent to an iTunes backup, therefore Contact needed the physical OnePlus to create an ADB backup. Contact Decl. ¶ 25.

By early May 2021, Contact had not recovered the deleted text thread despite utilizing best practices and leveraging appropriate, commercially available forensic tools. Contact Decl. ¶¶ 22, 30, 35. Contact provided oral or informal reports to counsel, but it did not prepare a formal investigative report to document its findings. Contact Decl. ¶ 9. Some 18 months later, counsel was still paying data hosting fees to Contact. Shapiro Decl. ¶ 10. Counsel instructed Contact to close out its file, which it did. *Id.* The underlying data (a hard drive containing Boyd's iTunes backup and Maher's OnePlus) which Contact had been maintaining was returned to counsel (where it still resides). *Id.* ¶¶ 10–11; Contact Decl. ¶¶ 23, 31–34.

### E.    With a Good-Faith Understanding of Their Obligations, Counsel for Armistice Disclosed the Inadvertent Loss of the Text Thread on August 29, 2023.

At all times, counsel understood its obligation to ensure the preservation of ESI and to disclose any preservation issues. Rubin Decl. ¶ 19. Indeed, counsel truthfully certified that they had reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), that they had met and conferred with opposing counsel regarding steps taken to preserve relevant evidence, and that they were in compliance with the PSLRA's requirements for evidence preservation during the discovery stay. ECF Nos. 185, 200, 220, 232, 306; Rubin Decl. ¶ 19.

Counsel understood that, if the case proceeded to discovery, the Armistice Defendants may thereafter be obligated to disclose the deletion of the Boyd/Maher thread. Rubin Decl. ¶ 17. Specifically, if, after meeting and conferring with Plaintiffs' counsel, it became clear that the deleted information on the cellphones would have been encompassed in the universe of documents that would have been reviewed for responsiveness, the obligation to disclose would arise. *Id.* When that occurred in August 2023, *see infra* § IV.E, counsel affirmatively disclosed the issue. *Id.* ¶ 18. Following the disclosure, the Armistice Defendants fully cooperated with Plaintiffs' inquiry related to the circumstances of the deleted Boyd/Maher thread. *Id.* ¶¶ 20–31. The Armistice Defendants responded to discovery requests, made a Rule 30(b)(6) witness available to discuss preservation and recovery efforts,

assisted with discovery as to Contact, repeatedly offered to make Boyd and Maher available for

deposition, and encouraged Plaintiffs to depose Contact. *Id.* But Plaintiffs opted not to depose Boyd,

Maher, or Contact before filing this motion seeking terminating sanctions. *Id.* ¶¶ 31–33. In fact,

Plaintiffs filed their motion for sanctions mere days after demanding that Boyd's and Maher's

depositions be postponed until July 2024, thus ensuring that they would not be deposed prior to the

hearing on Plaintiffs' sanctions motion. *Id.*

## III.    LEGAL STANDARDS

Rule 37(b) sanctions are permissible only where a party "fails to obey an order to provide or

permit discovery," Fed. R. Civ. P. 37(b)(2)(A), whereas a court may impose Rule 37(e) sanctions only if

(1) "the information qualifies as ESI"; (2) "the ESI is lost and cannot be restored or replaced through

additional discovery"; (3) "the ESI should have been preserved in the anticipation or conduct of

litigation"; and (4) "the responding party failed to take reasonable steps to preserve the ESI." *Chinitz v.

Intero Real Estate Servs.*, 2020 WL 7389417, at *3 (N.D. Cal. May 13, 2020) (cleaned up). Once that

threshold inquiry is met, courts may order two levels of sanctions. Under Rule 37(e)(1), upon a showing

of prejudice, the court may "order measures no greater than necessary to cure the prejudice." *hiQ Labs,

Inc. v. LinkedIn Corp.*, 639 F. Supp. 3d 944, 975 (N.D. Cal. 2022) (quoting Fed. R. Civ. P. 37(e)(1)).

Should more "severe measures" be warranted, courts may award sanctions under Rule 37(e)(2) only

upon a finding of an "intent to deceive," though courts should "exercise caution." *Colonies Partners,

L.P. v. Cnty. of San Bernardino*, 2020 WL 1496444, at *9 (C.D. Cal. Feb. 27, 2020) (quoting Fed. R.

Civ. P. 37(e)(2) & Adv. Comm. Notes to 2015 Amend.). Given the "severity of [Rule 37(e)(2)]

sanctions," courts have required clear and convincing evidence.[5] *Lokai Holdings LLC v. Twin Tiger*

---

[5] The Ninth Circuit has not weighed in on what standard applies to Rule 37(e)(2) sanctions. *See WeRide Corp. v. Kun Huang*, 2020 WL 1967209, at *9 (N.D. Cal. Apr. 24, 2020) (observing that it is a "close question"). Where, as here, Plaintiffs level accusations including that there were misrepresentations to the Court, such sanctions must be proven by clear and convincing evidence. *See* (continued on next page)

*USA LLC*, 2018 WL 1512055, at *8 (S.D.N.Y. Mar. 12, 2018) (citation omitted); *see also Hynix Semiconductor Inc. v. Rambus Inc.*, 897 F. Supp. 2d 939, 978 (N.D. Cal. 2012) (applying the clear and convincing standard to terminating sanctions).

## IV.    ARGUMENT

Plaintiffs' motion seeks drastic sanctions that are disproportionate to the alleged misconduct.  To be sure, in hindsight, the Armistice Defendants' preservation efforts were imperfect.  But that does not justify the terminating sanctions or other relief Plaintiffs demand, nor the overreach of their accusations.  Their motion ignores the reasonable steps taken to preserve (which resulted in the preservation of nearly all) relevant evidence, overstates any hypothetical prejudice, seeks strikingly disproportionate sanctions, and disregards counsel's good-faith basis for the timing of its disclosure.

### A.    Plaintiffs' Request for Sanctions Ignores the Reasonable Steps Defendants Took to Preserve ESI.

Reasonableness requires proportionality, not perfection.  *Rodriguez v. Google, LLC*, 2021 WL 8085492, at *2 (N.D. Cal. Dec. 1, 2021) ("[W]hether preservation is reasonable 'depends on whether what was done—or not done—was proportional to [the] case.'") (citations omitted); Fed. R. Civ. P. 37 Adv. Comm. Notes to 2015 Amend. ("This rule recognizes that 'reasonable steps' to preserve suffice; it does not call for perfection").  Reasonable steps may lie even if evidence is "inadvertently lost or destroyed after the measures have been implemented."  *Gault v. United States*, 2022 WL 4292340, at *6 (C.D. Cal. Aug. 23, 2022), *report and recommendation adopted*, 2022 WL 4291320 (C.D. Cal. Sept. 15, 2022).

Tellingly, Plaintiffs exaggerate the facts:  they exhort that the Armistice Defendants took "no steps whatsoever to preserve" certain ESI.  Mot. at 13.  Not true.  Armistice acted immediately to

---

*Hynix*, 897 F. Supp. 2d at 978; *cf. Optronic Techs., Inc. v. Ningbo Sunny Elec. Co., Ltd.*, 2020 WL 3617907, at *3 (N.D. Cal. July 2, 2020) (applying the clear and convincing standard to civil contempt proceedings).

preserve, and its in-house counsel issued a litigation hold and spoke with the individual defendants. Pls.' Decl. Ex. 5, Ex. 7 at 90:14–92:2, 119:2–16; Boyd Decl. ¶¶ 9–10; Maher Decl. ¶ 7.  The success of its preservation efforts is not speculative, as Armistice subsequently produced troves of relevant data, such as emails and Bloomberg chats.  *See supra* § II.A; Rubin Decl. ¶¶ 34–35.  Moreover, hundreds of texts were preserved, and responsive messages were produced from Boyd's personal phone (including texts with Maher other than from the deleted thread).  Boyd Decl. ¶¶ 11, 27; Rubin Decl. ¶ 35.  While Maher, lacking technical sophistication, unintentionally caused his OnePlus to be reset, his OnePlus no longer contained relevant text messages from June and July 2020 regarding Vaxart as such texts had already been deleted—before the litigation hold—pursuant to his generally-applicable practice.  Maher Decl. ¶ 13; *see Kelly v. Fashion Nova, Inc.*, 2023 WL 8006877, at *9 (C.D. Cal. Oct. 30, 2023) (the "lack of legal or technical sophistication" can play "a significant role in the consideration of spoliation sanctions"), *report and recommendation adopted*, 2023 WL 8006392 (C.D. Cal. Nov. 16, 2023); *Laub v. Horbaczewski*, 2020 WL 9066078, at 4 (C.D. Cal. July 22, 2020) (courts "should be sensitive to the party's sophistication with regard to litigation in evaluating preservation efforts") (quoting Fed. R. Civ. P. 37 Adv. Comm. Notes to 2015 Amend).

While Plaintiffs insist, despite the evidence to the contrary, that "no steps" were taken to preserve, courts disagree—even the issuance of a litigation hold is a critical step when evaluating reasonableness.  *See Resolute Forest Prods., Inc. v. Greenpeace Int'l*, 2022 WL 16637990, at *8–9 (N.D. Cal. Nov. 2, 2022), *report and recommendation adopted*, 2023 WL 4311255 (N.D. Cal. Apr. 10, 2023); *Colonies Partners*, 2020 WL 1496444, at *8 ("A litigation hold, or preservation order, is often the most appropriate mechanism to ensure potentially relevant documents and information are not lost deliberately or unintentionally.").  Plaintiffs' reliance on cases where entire categories of evidence were lost through "careless" (or nonexistent) preservation efforts are inapposite.  *See, e.g., Phan v. Costco Wholesale Corp.*, 2020 WL 5074349, at *3–*4 (N.D. Cal. Aug. 24, 2020) (defendant's efforts to

preserve were "careless" where defendant lost a video that constituted the plaintiff's "only" affirmative evidence); *John v. Cnty. of Lake*, 2020 WL 3630391, at *4, *6 (N.D. Cal. July 3, 2020) (no reasonable preservation steps where no litigation hold issued until two years later and where the defendants "never conducted a search of the email server").[6]

In all, the Armistice Defendants took reasonable—though in hindsight perhaps not perfect—steps to preserve. Plaintiffs' attempts to impose a heightened (and categorical) preservation requirement—obligating parties to collect, backup, and store all potentially relevant cellphones—is unsupported and should be rejected. *See Resolute*, 2022 WL 16637990, at *9 (rejecting the argument that the defendant should have backed up Skype messages or preserved messages through other means); *cf. Doe LS 340 v. Uber Techs, Inc.*, 2024 WL 107929, at *3 (N.D. Cal. Jan. 9, 2024) (holding that there is no need to "preserve every" piece of ESI and that "[t]o require such broad preservation would cripple organizations . . . and make discovery even more costly and time-consuming.") (citing The Sedona Principles, 19 Sedona Conf. J. 1, 95 (3d ed. 2018)).

## B.    Plaintiffs' Cases Do Not Support the Extreme Sanctions Sought.

Rule 37 sanctions must "fit the wrong" and be "no greater than necessary[.]" *hiQ Labs*, 639 F. Supp. 3d at 975 (quoting Fed. R. Civ. P. 37 Adv. Comm. Notes to 2015 Amend.). Plaintiffs ask the Court to impose a sanction unsupported by its cited cases and reserved for flagrant preservation violations not remotely present here.

---

[6] Plaintiffs also cite to *Brewer*, where the Eastern District of California faulted the plaintiff for failing to "back-up or preserve" a cellphone before it was lost. *Brewer v. Leprino Foods Co., Inc.*, 2019 WL 356657, at *10 (E.D. Cal. Jan. 29, 2019). Nowhere does the *Brewer* court state that a failure to back-up a cellphone categorically constitutes a failure to take reasonable steps to preserve. *See Bolyard v. Village of Sherman*, 2022 WL 16738647, at *4 (N.D. Ill. Nov. 7, 2022) (observing that one need only "maintain possession of [the] phone **or** back-up the digital files on a cloud server or another hard drive") (emphasis added); *Spencer v. Lunada Bay Boys*, 2017 WL 11527978, at *12 (C.D. Cal. Nov. 29, 2017) (holding only that trading in a phone without making a backup constituted a failure to take reasonable steps). Creating a back-up may be a best practice, but failing to create a back-up or to image a cellphone is not categorically a failure to preserve, particularly where, as here, the Armistice Defendants preserved and produced reams of documents. Rubin Decl. ¶¶ 34–35.

***Narrow Scope of Deletions***: At issue is the inadvertent deletion of one text thread (where thousands of other communications, as well as texts from Boyd's phone between Maher, Boyd and others have been produced), not the erasure of multiple devices, text threads, and accounts. *See, e.g.*, *Waymo LLC v. Uber Techs., Inc.*, 2018 WL 646701, at *17 (N.D. Cal. Jan. 30, 2018) (imposing sanctions where "hundreds of deleted text messages" among four individuals were destroyed as well as five discs containing data); *WeRide*, 2020 WL 1967209, at *5, 9 (finding the spoliation was "staggering," involving the deletion of six email accounts and the "wiping" of at least two laptops); *hiQ Labs*, 639 F. Supp. 3d at 973, 980 (imposing sanctions where plaintiff terminated two cloud storage accounts, permitting the deletion of hundreds of gigabytes of data).

***Lack of Malicious Intent***: All evidence demonstrates that the deletion of the text thread was unintentional.  Boyd Decl. ¶¶ 26–27; Maher Decl. ¶ 32; *see, e.g.*, *Burris v. JPMorgan Chase & Co.*, 566 F. Supp. 3d 995, 1008 (D. Ariz. 2021) (granting sanctions where the plaintiff factory reset six phones, purchased Bleachbit and iShredder to remove data on two laptops, "purged" his email account, "wip[ed]" two USB drives, and failed to preserve any text messages before October 30, 2020), *aff'd*, 2024 WL 1672263 (9th Cir. Apr. 18, 2024); *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (affirming sanctions where the plaintiff "ran [a] wiping program" to destroy "over 2,200 files").

***No Incitement to Delete***: Boyd and Maher confirm (and Plaintiffs cannot challenge) that no one instructed them to delete or destroy evidence.  Boyd Decl. ¶ 27; Maher Decl. ¶ 32; *see, e.g.*, *Keating v. Jastremski*, 2020 WL 1809139, at *4, *6 (S.D. Cal. Apr. 9, 2020) (finding that individuals had instructed others to "wipe data from their phones" in a "deliberate plan to destroy evidence"); *GN Netcom, Inc. v. Plantronics, Inc.*, 2016 WL 3792833, at *6–7 (D. Del. July 12, 2016) (finding that one executive deleted more than 40% of his emails over a three-month period and "repeatedly direct[ed] [defendant's] employees to delete emails") (emphasis omitted); *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311,

1321–22, 1328 (Fed. Cir. 2011) (affirming sanctions where the defendant destroyed "300 boxes" of documents during multiple "shred day[s]" and instructed others to "purge his files").

**_Robust Recovery Efforts_**: The Armistice Defendants conducted their own two-month investigation and fully cooperated with recovery efforts, including Plaintiff's discovery requests related to the inadvertent deletion.  Rubin Decl. ¶¶ 20–31; Shapiro Decl. ¶¶ 7–9 _see, e.g._, _Valley Eng'rs Inc. v. Elec. Eng'g Co._, 158 F.3d 1051, 1058 (9th Cir. 1998) (affirming terminating sanctions where the defendant and its witnesses "continued to deny any recollection that [the memo at issue] existed"); _Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills_, 482 F.3d 1091, 1094–95 (9th Cir. 2007) (affirming sanctions where the defendants misleadingly reproduced a docket to commit a "fraud on the court" and "hid the identities and locations" of potential witnesses); _Facebook, Inc. v. OnlineNIC Inc._, 2022 WL 17371092, at *1–3 (N.D. Cal. Oct. 17, 2022) (finding that defendants deleted "over one half"—more than 3 million—relevant database records and "concealed" backups).

In all, Plaintiffs stretch to tie the unfortunate events here to a rank of sanctionable conduct, but Plaintiffs have not adduced any evidence that the Armistice Defendants' conduct even remotely approaches the scale, malice, provocation, and obstinance of the spoliation in the very cases on which they rely.

### C.     Plaintiffs Grossly Overstate Their Alleged Prejudice Under Rule 37(e)(1).

While the Boyd/Maher text thread cannot be recovered, the inadvertent deletion does not per se justify Plaintiffs' overreaching and unsubstantiated claims of prejudice.  Prejudice looks to whether the preservation issue "impaired the non-spoiling party's ability to go to trial," "threatened to interfere with the rightful decision of the case," or "forced" the other party to "rely on incomplete and spotty evidence."  _Leon_, 464 F.3d at 959 (cleaned up).  "The party asserting spoliation must also 'establish a reasonable possibility, based on concrete evidence rather than a fertile imagination, that access to the lost material would have produced evidence favorable to its cause.'"  _Belden v. Cnty. of San Bernardino_, 2020 WL 8515014, at *5 (C.D. Cal. Nov. 10, 2020) (citation omitted); _RG Abrams Ins. v. Law Offices of_

13

*C.R. Abrams*, 342 F.R.D. 461, 507 (C.D. Cal. 2022) (a moving party must "'come forward with plausible, concrete suggestions as to what [the destroyed] evidence might have been.'") (citations omitted).

Plaintiffs baldly assert that the Armistice Defendants impeded their ability to prosecute this action by depriving them of one text thread between Boyd and Maher.  Mot. at 15–16.  But: (1) the scope of discovery to date belies this claim; (2) Plaintiffs have not shown—and cannot show—that the Boyd/Maher text thread would lend any support to their theories; and (3) Plaintiffs have not shown that the timing of disclosure impeded recovery of the Boyd/Maher thread.

        **1.**      ***Plaintiffs' Alleged Prejudice is At Odds with the Extensive Discovery Produced to Date.***

Plaintiffs are missing one text thread, but they have received reams of discovery—including thousands of emails and text messages involving Boyd and Maher.  *See supra* § II.A; Rubin Decl. ¶¶ 35–36.  They have received communications about and with Vaxart from both Boyd and Maher's personal devices.  Rubin Decl. ¶ 35.  They have deposed over ten individuals (although they have not taken depositions of Boyd, Maher, or Contact), none of whom provided testimony suggesting that the Boyd/Maher thread would contain relevant communications.  Rubin Decl. ¶ 37.  In this light, Plaintiffs' insistence that they have been deprived of the "ESI it needs to prove its case" rings hollow.  Mot. at 3.  Where the alleged spoliation is modest relative to substantial discovery, any asserted prejudice is weakened.  *See Al Otro Lado, Inc. v. Wolf*, 2021 WL 631789, at *7 (S.D. Cal. Feb. 18, 2021) (holding that the requested sanctions were "disproportional to the prejudice," as the defendants' productions were "voluminous" and plaintiffs had deposed dozens of witnesses), *report and recommendation adopted sub nom., Al Otro Lado, Inc. v. Mayorkas*, 2021 WL 1170212 (S.D. Cal. Mar. 29, 2021); *see also In re Oracle Sec. Litig.*, 627 F.3d 376, 385–87 (9th Cir. 2010) (observing that as discovery was "voluminous," plaintiffs "should have been able to glean" their proof from the "documents actually produced").  And as Plaintiffs' cases illustrate, prejudice usually arises when, unlike here, the quantity of lost evidence is

disproportionately substantial and critical.  *See Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337, 351, 354 (9th Cir. 1995) (affirming sanctions where the defendant "conceal[ed]" a year's-worth of "original load sheets, and bank deposits and invoices" which were "crucial"); *Gaina v. Northridge Hosp. Med. Ctr.*, 2019 WL 1751825, at *2, *4 & n.2 (C.D. Cal. Feb. 25, 2019) (granting monetary sanctions where plaintiff deleted texts—her "main form of contemporaneous communication"—over an eleven-month period).  In other words, after laying bare Plaintiffs' receipt of substantial discovery, including extensive communications amongst the most critical parties, any alleged prejudice arising from the inadvertent and unfortunate deletion of one text thread is unfounded.

### 2.    *Plaintiffs Fail to Furnish "Concrete Suggestions" in Support of Their Theory.*

Plaintiffs do not provide "concrete" specifics that the Boyd/ Maher thread would establish falsity, scienter, or knowledge.  *See RG Abrams Ins.*, 342 F.R.D. at 507.

*First*, Plaintiffs' rank speculation that the text thread *could* contain hundreds of communications about the Vaxart press release ignores both the nature of Boyd and Maher's professional relationship as well as the available evidence regarding the scope and substance of their communications by text. During the relevant time period, Vaxart was a small position at Armistice, and neither Boyd nor Maher had a usual practice of conducting substantive business—about Vaxart or any investment—through text messages.  *See supra* § II.C; Boyd Decl. ¶¶ 8, 17–18, 21, 24; Maher Decl. ¶¶ 18–19, 26.  Plaintiffs' insinuation that all—or even a majority—of the Boyd/Maher thread concerned substantive Vaxart matters is without support (particularly absent Boyd's and Maher's deposition testimony) and ignores Boyd and Maher's practices and Armistice's business.

*Second*, Plaintiffs fail to identify how their suppositions regarding the Boyd/Maher thread would be borne out given the nature of their allegations.  Plaintiffs assert that the Boyd/Maher thread *could* touch on matters related to Vaxart.  Mot. at 16.  But Plaintiffs' theory of the case is that Armistice obtained material non-public information ***from Vaxart*** and schemed ***with Vaxart*** to manipulate its stock

price; evidence supporting this theory would be reflected in communications **with Vaxart**.  To the extent that these theories are factually accurate, Plaintiffs could obtain this evidence from communications between Vaxart and Boyd or Maher (which they have) and through depositions of Vaxart personnel (which they have taken).  Rubin Decl. ¶¶ 35–37; *see, e.g.*, Pls.' Decl. Ex. 26.  Indeed, Boyd's and Maher's communications with the Vaxart Defendants have been produced.  Rubin Decl. ¶¶ 35–36.  To date, despite this trove of communications, Plaintiffs' theories are not borne out.

*Third*, Plaintiffs' allegations that they are now prejudiced from proving elements of their claims are either illogical, premature, or both.  Plaintiffs do not endeavor to explain how any hypothetical text communications between only Boyd and Maher could establish the falsity of any press release, especially given the overwhelming deposition testimony—including testimony from Vaxart' employees, Attwill's CEO, and the government official responsible for the non-human primate study—that the press releases are accurate and not misleading.  Rubin Decl. ¶¶ 38–42; *see Or. Public Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 606 (9th Cir. 2014) (holding that claims under Rule 10b-5 apply to "objectively false statements").  As to knowledge and scienter, deposition testimony has established that Boyd and Maher were not involved in the drafting of the press releases, were not involved in the negotiation or due diligence of the Attwill memorandum of understanding, and were not given any material non-public information that differed from the content of the press releases.  Rubin Decl. ¶¶ 38–42.  Of course, Plaintiffs may challenge that testimony.  There is other evidence they could have pursued to try to contradict that testimony:  they could have taken the depositions of Boyd and Maher.  But Plaintiffs—apparently as a strategic decision—chose not to.  Without those depositions, Plaintiffs cannot now prematurely seek adverse inference sanctions that flatly contradict the actual facts adduced in third-party discovery.  *See Med. Lab. Mgmt. Consultants v. Am. Broad. Cos., Inc.*, 306 F.3d 806, 825 (9th Cir. 2002) (affirming the denial of spoliation sanctions given the "availability of other evidence" and the plaintiff's "failure to pursue this evidence").

3.      *The Deleted Text Thread Could Not be Recovered Regardless of the Timing of Counsel's Disclosure.*

While Plaintiffs complain of the Armistice Defendants' investigation, nowhere do they claim they could have recovered the Boyd/Maher thread had the inadvertent deletion been disclosed earlier.[7] By May 2021, following an investigation utilizing best practices and leveraging commercially available forensic tools, Contact could not recover the deleted text thread.  Contact Decl. ¶¶ 22, 30, 35.  Plaintiffs complain that Contact *could* have taken additional steps, yet the additional steps Plaintiffs' experts suggest Contact *could* have taken either involve tools unavailable to Contact (and all civilian, non-law-enforcement personnel) or steps that would have been ineffective.  *See supra* § II.D; Contact Decl. ¶¶ 37–41.  Once deleted, there was a near-zero probability that any forensic vendor could have recovered the text thread, whether a day later or months later.  Contact Decl. ¶ 35.  Plaintiffs have identified no prejudice that they incurred by not learning of the Boyd/Maher thread issue earlier than counsel's August 2023 disclosure.

D.      **Plaintiffs' "Very Severe" Sanctions of Dismissal or Adverse Inference are not Adequately Tailored to the Loss of One Text Thread.**

Plaintiffs' motion is a case study in overreach, seeking the full slate of Rule 37(e)(2) sanctions. These requested sanctions are wholly disproportionate to the inadvertent loss of the text thread. Sanctions pursuant to Rule 37(e)(2) are no small matter, and the evidence must be clear and convincing. "Courts should exercise caution" before ordering Rule 37(e)(2) sanctions, and such sanctions may lie only if no lesser sanctions are sufficient to address the issue.  *Colonies Partners*, 2020 WL 1496444, at *9 (quoting Fed. R. Civ. P. 37 Adv. Comm. Notes to 2015 Amend.); *Jones v. Riot Hospitality Grp. LLC*, 95 F.4th 730, 735 (9th Cir. 2024) (holding that Rule 37(e)(2) sanctions are warranted only where, among other things, "lesser sanctions are insufficient to address the loss of the ESI").

---

[7] At most, Plaintiffs' forensic declarant suggests that the Armistice Defendants' vendor did not use *best practices* to recover the text messages, but nowhere does the declarant state that his proposed methods, even if the tools were available to non-law enforcement personnel, would have recovered any deleted texts.  Pls.' Decl. Ex. 23.

1.      ***Default Judgment is Inappropriate and Constitutes Grave Overreach.***

Terminating sanctions are a nonstarter.  "[T]erminating sanctions should be reserved for the most egregious cases of misconduct."  *Colonies Partners*, 2020 WL 1496444, at *12 (recommending denial of terminating sanctions where defendants regularly deleted text message conversations with multiple individuals and an email account after litigation commenced).   As established above, the breadth of discovery to date, the limited nature of the lost communications, the absence of any evidence indicating willfulness, bad faith, or fault, and Plaintiffs' unwillingness to test their allegations through depositions of Boyd, Maher, or Contact bar any meaningful consideration of default judgment.

2.      ***Adverse Inferences Constitute a Drastic, Severe Sanction that is not Warranted.***

Adverse inference sanctions are a "very severe" measure that must be used cautiously.  *Laub*, 2020 WL 9066078, at *3 (quoting Fed. R. Civ. P. 37 Adv. Comm. Note to 2015 Amend.); *Kische USA LLC v. Simsek*, 2018 WL 620493, at *8 (W.D. Wash. Jan. 29, 2018) (adverse inference instructions are a "harsh remedy" to be exercised with "great restraint and discretion") (citations omitted).  To support adverse inferences, there must be clear and convincing evidence of a "specific intent to deprive, rather than a mere knowing failure to preserve."[8]  *hiQ Labs*, 639 F. Supp. 3d at 977; *Hynix*, 897 F. Supp. 2d at 978; *see also Jones*, 95 F.4th at 735 (holding that Rule 37(e)'s "intent" requirement means "the willful destruction of evidence with the purpose of avoiding its discovery by an adverse party").  "Relevant considerations include the timing of destruction, affirmative steps taken to delete evidence, and selective preservation."  *Jones*, 95 F.4th at 735.

**No Evidence of any Affirmative Steps to Delete:** There is no evidence that Boyd or Maher took affirmative steps to delete any text messages.  Rather, Boyd's inadvertent deletion of the

---

[8] Plaintiffs' proposed "culpable state of mind" standard (Mot. at 24 & n.28) predates the 2015 amendments to Rule 37(e), which added the "intent to deceive" requirement and which "foreclose[d] reliance on inherent authority."  Fed. R. Civ. P. 37 Adv. Comm. Notes to 2015 Amend.  This Court must use the "intent to deceive" test.  *See Jones*, 95 F.4th at 735; *see also Wisk Aero LLC v. Archer Aviation Inc.*, 2023 WL 2277112, at *3 (N.D. Cal. Feb. 28, 2023) (collecting cases).

Boyd/Maher thread, and Maher's unintentional factory reset (which occurred after he deleted—pursuant to his regular practice—all texts from June and July 2020 before the litigation hold issued), were unrelated, accidental events, *see supra* § II.C, which do not remotely approach the affirmative, organized deletions in Plaintiffs' cases. *See, e.g.*, *WeRide*, 2020 WL 1967209, at *9 (finding that the defendants' spoliation was "staggering" and that the defendants deleted five email accounts and "wip[ed]" multiple computers after the filing of the complaint); *Facebook*, 2022 WL 17371092, at *1–3 (finding that defendants "created at least 28 PHP scripts and 1 SQL script specifically designed to delete database records and attachment files" and concealed backups).

**Innocuous Timing:** As to timing, Boyd's inadvertent deletion occurred eight months after the litigation hold was issued, and, to the best of Maher's recollection, his OnePlus was reset in early 2021. Maher Decl. ¶ 31; Boyd Decl. ¶ 26. Plaintiffs point to no meaningful events that coincide with these uncoordinated, unintentional incidents and raise no specter of doubt that the deletions were inadvertent. *See Wisk Aero*, 2023 WL 2277112, at *10 (finding no intent to deceive where the defendant deleted certain files from his email and Dropbox "months after the litigation began"); *Laub*, 2020 WL 9066078, at *5–6 (finding "nothing suspicious" about timing when plaintiff discarded his cellphone without backing up text messages more than a year after his preservation obligations arose).

**No Selective Preservation:** Plaintiffs allege only that they have been deprived of the Boyd/Maher thread. True enough. But Boyd and Maher did not pick and choose certain text messages[9] to retain and others to destroy. *Compare Estate of Bosco by and Through Kozar v. Cnty. of Sonoma*, 640 F. Supp. 3d 915, 929 – 30 (N.D. Cal. 2022) (finding an intent to deprive where the defendants retained video footage at all relevant times except for the time at which jail staff found the decedent);

---

[9] To be sure, Maher attempted in good faith to comply with his preservation obligations by searching his cellphone for communications related to Vaxart in September 2020. Maher Decl. ¶¶ 15–17. While he had already deleted any text messages pursuant to his usual policy prior to the litigation hold, he managed to locate and then shared with counsel a few relevant WhatsApp messages, which have been produced. *Id.*

*Jones*, 95 F.4th at 735–36 (finding an intent to deceive where the plaintiff "selectively deleted" some messages to multiple employees while retaining other messages to the same employees during the same time period).  As discussed *supra* § II.C, Maher had a practice of routinely deleting all text messages prior to the litigation hold, only after which he inadvertently lost nearly all remaining data when his cellphone was reset.  Maher Decl. ¶¶ 13, 36.  And *all* of Boyd's texts in his text thread with Maher (but only those) were inadvertently deleted.  Boyd Decl. ¶¶ 26–27.

**Rapid and Robust Efforts to Recover:** As discussed above, *supra* § II.D, the Armistice Defendants undertook an extensive investigation to recover the Boyd/Maher thread.  Shapiro Decl. ¶¶ 7–9.  While Contact—despite following best practices, *see supra* § II.D—was unable to recover the text thread, the Armistice Defendants' rapid, thorough, and costly investigation further demonstrates the lack of any intent to deprive.  Contact Decl. ¶¶ 9–30; Pls.' Decl. Ex. 9 at 20–41; *see hiQ Labs*, 639 F. Supp. 3d at 978 (even if "largely unsuccessful," a party's attempts to recover lost data "indicate a lack of intent to deprive"); *Gaina v. Northridge Hosp. Med. Ctr.*, 2018 WL 6258895, at *5 (C.D. Cal. Nov. 21, 2018) (while the plaintiff did not attempt to recover lost texts until "after the issue of spoliation came before the Court," the plaintiff ultimately demonstrated a "good faith attempt" to recover the lost texts), *aff'd*, 2019 WL 1751825 (C.D. Cal. Feb. 25, 2019).

**Premature:**  Any adverse inferences—in addition to being unwarranted—are also premature.  Plaintiffs elected to bring this motion before deposing Boyd, Maher, or Contact.  Rubin Decl. ¶¶ 31–33.  Courts must not permit adverse inferences to "fill in the gaps" for parties who fail to marshal available evidence.  *See Waymo*, 2018 WL 646701, at *18 (observing that the moving party "seem[ed] unwilling or unable to prove its case at trial with qualified witnesses and evidence and seeks to have the Court fill in the gaps with adverse inferences instead.").  If the Court is entertaining any adverse inference instruction (it should not), the Court should reserve decision until trial, after Plaintiffs' presentation of

their case-in-chief. *See id.* (reserving decision on an adverse inference until after the plaintiff presented

its case-in-chief).

> **E.    As Counsel Affirmatively Disclosed the Loss of the Text Thread When It Believed in Good Faith that Such Obligation Arose, Rule 37(b) Sanctions are Inappropriate.**

Counsel disclosed the preservation issue. The only question here is the timing of counsel's

disclosure and counsel's representations.  Counsel had a reasoned basis to disclose the text issue when it

did: at the first meet and confer after concluding that the deleted information on Boyd's and Maher's

cellular devices were encompassed in the universe of documents that the Armistice Defendants would

have reviewed for responsiveness.  Rubin Decl. ¶ 17.  Until that time, counsel did not believe that those

communications would be included in that universe. *Id.*  This was based both on the preliminary nature

of meet and confer discussions with Plaintiffs prior to that date—with key issues such as search terms,

date ranges, and search protocols still being negotiated—as well as counsel's understanding that the

Boyd/Maher thread was unlikely to be substantive given Armistice's policies, Boyd's and Maher's

practices related to text communications, and Boyd's and Maher's representations regarding the content

of their text message communications. *Id.*; Boyd Decl. ¶¶ 17–21, 23–24; Maher Decl. ¶¶ 18–23, 25–26.

> **1.    *Counsel Abided by its Good-Faith Interpretation of its Disclosure Obligations.***

In general, an obligation to disclose potential preservation issues arises when responding to

discovery requests that potentially encompass the lost evidence.  *See Fast v. GoDaddy.com LLC,* 340

F.R.D. 326, 349, 355 n.18 (D. Ariz. 2022) (admonishing counsel for failing to disclose deleted data

while representing that certain discovery responses were complete); *Jackson Fam. Wines, Inc. v. Diageo

N. Am., Inc.*, 2014 WL 595912, at *5 (N.D. Cal. Feb. 14, 2014) (granting sanctions where the defendants

falsely represented to the court that "every single document" had been produced).  As laid out above,

*supra* § II.E, discovery on the Armistice Defendants began in earnest on June 30, 2023, after which

counsel affirmatively disclosed the preservation issue and complied fully with Plaintiffs' inquiry.  Rubin

Decl. ¶¶ 14–31.  Counsel had a reasoned, good faith understanding of, and complied with, their disclosure obligations.

> **2.     *Counsel Truthfully Represented at All Times that It Understood and Complied with the Preservation Obligations.***

**ESI Protocol**:  In the ESI Stipulation and Protocol, counsel agreed that they understood their preservation obligations and agreed to follow the Court's standard procedures when "disputes arise concerning the production of allegedly inaccessible ESI[.]"  Rubin Decl. ¶ 19; ECF No. 200.  Those statements are true; counsel understood their preservation obligations, and when counsel believed the preservation issue was ripe, the issue was affirmatively disclosed.  Rubin Decl. ¶¶ 17–19; *compare In re StubHub Refund Litig.*, 2023 WL 3092972, at *2 (N.D. Cal. Apr. 25, 2023) (granting a motion to compel given the defendant's refusal to produce linked documents as attachments, in violation of the parties' agreed-upon ESI protocol); *Multifeeder Tech., Inc. v. British Confectionery Co. Ltd.*, 2012 WL 4135848, at *4–6 (D. Minn. Sept. 18, 2012) (granting sanctions where the defendants used "wiping software" to destroy digital evidence and failed to provide computer access to the court-appointed forensic expert as provided for in the ESI protocol).

**PSLRA Obligations**:  The Rule 26(f) statements truly and accurately reflect that the Armistice Defendants understood their obligations to preserve documents under the PSLRA.  Rubin Decl. ¶ 19. The PSLRA requires parties to preserve evidence, which the Armistice Defendants took reasonable steps to do, *supra* § IV.A, and it also stays discovery until the Court "has sustained the legal sufficiency of the complaint."  *See SG Cowen Secs. Corp. v. U.S. Dist. Ct. for N. Dist. of Cal.*, 189 F.3d 909, 912–13 (9th Cir. 1999) (citation and quotation marks omitted).  Once the second amended complaint was sustained in part, and once it was apparent that the deleted messages on the phones would have been encompassed in the universe of documents to be reviewed for responsiveness, counsel affirmatively disclosed the issue.  Rubin Decl. ¶¶ 14–18.

**ESI Guidelines Obligations**: Counsel further confirmed in their Rule 26(f) statements that they and their clients had taken reasonable steps to preserve ESI.  Rubin Decl. ¶ 19.  Counsel believed this to be true, even if the text thread was "inadvertently lost or destroyed after the measures [were] implemented."  *Id.*; *Gault*, 2022 WL 4292340, at *6.  Moreover, the ESI Guidelines provide, as relevant here, that the parties should meet and confer "[i]f there is a dispute concerning the scope of a party's preservation efforts."  Rubin Decl. ¶ 19; ESI Guideline 2.01(d).  Counsel followed the ESI Guidelines and disclosed when the devices were implicated by Plaintiffs' discovery requests.  Rubin Decl. ¶¶ 14–19.  Counsel's representations here are nothing like the deliberate, affirmative deceits in the cases cited by Plaintiffs.  *See Anheuser-Busch*, 151 F.R.D. at 349 (granting terminated sanctions where the defendant "display[ed] an abiding contempt and continuing disregard for this court's orders," including by "continuously l[ying] about [the existence of certain documents] under penalty of perjury"); *Swisher Hygiene Franchise Corp. v. Clawson*, 2018 WL 8642738, at *6, *12 (D. Ariz. Oct. 15, 2018) (holding that an individual defendant "engaged in a fraud on the Court" by submitting a false signed affidavit); *Valley Eng'rs*, 158 F.3d at 1052, 1058 (affirming a dismissal sanction where the defendant "continued to refuse" to acknowledge the existence of "critical" evidence).  At no point did counsel misrepresent the Armistice Defendants' preservation efforts or obligations or the status of any evidence.

///

///

///

///

///

///

///

23

## V.    CONCLUSION

For the foregoing reasons, the Armistice Defendants respectfully request that the Court deny the Plaintiffs' motion for spoliation sanctions.

DATED: May 28, 2024

Respectfully submitted,

CONRAD | METLITZKY | KANE LLP

_____

MIRANDA KANE
WARREN METLITZKY
NATHAN THEOBALD

*Attorneys for Armistice Capital LLC, Armistice Capital Master Fund Ltd., Steven J. Boyd, and Keith Maher, M.D.*