# Exhibit F

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
Master Case No. 3:20-cv-05949-VC
- - - - - - - - - - - - - - - - - - x
In re:

VAXART, INC. SECURITIES LITIGATION

- - - - - - - - - - - - - - - - - - x
This Document Relates to
ALL ACTIONS
- - - - - - - - - - - - - - - - - - x
June 13, 2024
10:12 a.m.

CONFIDENTIAL VIDEO RECORDED DEPOSITION of ANDREI FLOROIU held remotely via Zoom video conference before Sara K. Killian, a Registered Professional Reporter, Realtime Certified Reporter and Notary Public.

So that kind of supported the view of Wouter and Sean that look, there is risk here, is this trial going to happen or not.

So we -- when we talked about whether this is a material development for the company, that's the view that we're taking. You know, we -- and I mean the management -- not being lawyers, to us, the view was is this a material development for the company, which means is this likely to translate into an actual study and is it going to be imminent?

And again, there were two competing viewpoints here. One of them was you never know what the government is going to do. They've been dragging their feet. Who knows, they may pull the rug from under this.

Again, for the first two weeks of my tenure, things haven't moved. To me, the mere selection of our program in Operation Warp Speed even for a non-human primate trial was very notable. This was a huge endorsement and validation of the potential that an oral type of vaccine had

to change how we fight pandemics.

So us saying it is one thing, the government thinking that could be the case was very significant. However, again, my colleagues and former CEO thought look, this may not happen. Sean explained to me that the hang up was that monkeys don't take pills. I didn't know that monkeys don't take pills. They're apparently very smart and they take the pill out of food, out of anything. You can't fool them. I can fool my dog, but you can't fool monkeys.

So you need a long endoscope to actually dose the monkeys. You need to put the pill directly into their stomach. The OWS team didn't have that instrument. It seems trivial, but that was the case.

A few days later -- a few days before this meeting, Sean told me they found -- they got their hands on the endoscope and that the hold up was solved and things were progressing and the CRO, the contracting research organization that was going to do the study, needs to sign some papers.

important to be able to manufacture or say a billion or more doses?

MR. DeBARI: Objection. Form.

MR. MARDER: Join.

A. So we were in a race to develop a vaccine that we believe could change how we fight pandemics here at home in the US and globally. We believe there was a huge need for that and it was very important -- nobody would be interested in somebody that would manufacture 1,000 doses of vaccine.

People would be interested in -- governments, in this case -- would be interested in tens of hundreds of millions or more. The technical team told me that lyophilization of scale was a bottleneck that was known to the government also and being able to find somebody that could scale up this rapidly to this kind of volume was very important and once we found that, again, the technical team felt the need to at least communicate that, including to the US government, so that they know that we had solved a potential problem that we could

have had.

So that was kind of the context of why they thought binding Atwell and signing this MOU was important because, again, it would put us solely in the race to be, you know, considered the candidate for, you know, national and global pandemic vaccine. Organization of scale was not something that was easily done by others, I guess.

MR. KATHREIN: Let's go to the next exhibit, Raffi, tab 43. I believe it's Exhibit 83. Is that already in there?

MR. MELANSON: I just added it to the folder.

THE VIDEOGRAPHER: Just a note, Mr. Kathrein, you're at three hours now.

MR. KATHREIN: I'll try to be quick here.

THE WITNESS: Exhibit which one now?

MR. KATHREIN: Exhibit 83.

THE WITNESS: I have to

CERTIFICATION

I, SARA K. KILLIAN, RPR, RCR, CCR, do hereby certify that ANDREI FLOROIU, the witness whose examination under oath is hereinbefore set forth, was duly sworn, and that such deposition is a true record of the testimony given by such witness.

I FURTHER CERTIFY that I am not related to any of the parties to this action by blood or marriage, and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this 13th day of June, 2024.

______________________________

SARA K. KILLIAN, RPR, RCR, CCR