# EXHIBIT BA

Reed R. Kathrein (139304)
Lucas E. Gilmore (250893)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com

*Lead Counsel*

[Additional counsel on signature page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re VAXART, INC. SECURITIES LITIGATION | Lead Case No.: 3:20-cv-05949-VC |
| | Hon. Vince Chhabria |
| | CLASS ACTION |
| This document relates to: *ALL ACTIONS* | **LEAD PLAINTIFF WEI HUANG'S OBJECTIONS AND RESPONSES TO THE ARMISTICE DEFENDANTS' INTERROGATORIES TO ALL PLAINTIFFS, SET TWO** |

## PRELIMINARY STATEMENT

Pursuant to Federal Rules of Civil Procedure 26 and 33, Lead Plaintiff Wei Huang ("Lead Plaintiff"), by and through his undersigned attorneys, hereby responds and objects to the Armistice Defendants' Interrogatories to All Plaintiffs, SET TWO ("Interrogatories").

The responses and objections stated below are based on the information presently available and known to Plaintiff. Plaintiff reserves his right to amend, modify, or supplement the responses and objections below as new information becomes available. By asserting the specific responses and objections stated below, Plaintiff does not waive his right to challenge the relevance, materiality, or admissibility of the Interrogatories or Plaintiff's responses thereto. Nor does

Plaintiff waive the right to challenge the use of the Interrogatories or Plaintiff's responses thereto in any subsequent proceeding or trial in this action.

**GENERAL OBJECTIONS**

Plaintiff makes the following general objections to the Interrogatories. These general objections are incorporated into each of the specific responses as if they were set forth in full in the response. Further particular objections to individual Interrogatories are intended to amplify the general objections. The assertion of a particular objection neither limits the applicability of any of the general objections nor waives any objections which may, in addition to those set forth, be applicable to the specific Interrogatories.

1. Plaintiff provides these objections without waiving or intending to waive (but on the contrary, preserving and intending to preserve):

   (a) the right to object, on the grounds of competency, privilege, relevance, materiality, admissibility, or any other proper grounds, of the Interrogatories or Plaintiff's responses thereto;

   (b) the right to object to the use of these responses for any purpose, in whole or in part, in any subsequent stage or proceeding in this action; and

   (c) the right to object on any and all grounds, at any time, to other Interrogatories or other discovery procedures relating to the subject matter of the Interrogatories responded to herein.

2. Plaintiff objects to the Interrogatories and their accompanying instructions and definitions to the extent they are vague, ambiguous, overbroad, duplicative, or unduly burdensome.

3. Plaintiff objects to the Interrogatories and their accompanying instructions and definitions to the extent they seek privileged or protected documents. Any disclosure of information protected from discovery by the attorney-client privilege, the work product doctrine or any other applicable privilege, protection, immunity, law, or rule is inadvertent and should not be construed to constitute a waiver.

4. Plaintiff objects to the Interrogatories and their accompanying instructions and definitions to the extent they call for the disclosure of nonpublic, private, personal, confidential, proprietary, commercially sensitive or trade secret information that has been maintained in confidence or is legally required to be maintained in confidence, including documents subject to any other person's constitutional, statutory, or common law right of privacy or protection.

5. Plaintiff objects to the Interrogatories and their accompanying instructions and definitions to the extent they seek information that exceeds the permissible scope of discovery, including information that is neither relevant to any party's claim or defense nor proportional to the needs of this litigation.

6. Plaintiff objects to the Interrogatories and their accompanying instructions and definitions to the extent that they attempt to impose duties upon Plaintiff that are not required by the Federal Rules of Civil Procedure, the Local Rules of the Court, or any other applicable law, rule, or judicial order.

7. Plaintiff objects to the Interrogatories and their accompanying instructions and definitions to the extent they fail to describe with reasonable particularity the information sought.

8. Plaintiff objects to the Interrogatories and their accompanying instructions and definitions to the extent they call for the production of information not kept by Plaintiff in the ordinary course of business.

9. Plaintiff objects to the Interrogatories and their accompanying instructions and definitions to the extent they seek information equally or more accessible to the Armistice Defendants, including information from publicly available documents or those already in the possession, custody, or control of the Armistice Defendants.

10. Plaintiff objects to the Interrogatories and their accompanying instructions and definitions to the extent they seek information from absent class members or purport to require Plaintiff to provide information on behalf of absent class members.

11. Plaintiff objects to the Interrogatories and their accompanying instructions and definitions to the extent they purport to require Plaintiff to reach legal conclusions.

12. Plaintiff objects to the Interrogatories and their accompanying instructions and definitions to the extent they either assume the existence of facts that Plaintiff disputes or that constitute an inaccurate characterization of the facts. In responding to the Interrogatories, Plaintiff does not admit, adopt, or acquiesce in any factual or legal contention, assertion, characterization, or implication contained in a particular Interrogatory.

13. Plaintiff objects to the Interrogatories and their accompanying instructions and definitions to the extent they exceed the number permitted under Fed. R. Civ. P. 33 or otherwise agreed to by the parties. Several of the Interrogatories herein contain discrete subparts, which, under the Federal Rules, should properly be counted as distinct interrogatories. Plaintiff reserves the right to refuse to answer any Interrogatories that exceed the established limit in this litigation.

14. Plaintiff objects to the Interrogatories and their accompanying instructions and definitions to the extent they take the form of a contention interrogatory as to facts or beliefs about the Armistice Defendants. Contention discovery is inappropriate before the substantial completion of pertinent fact and expert discovery. *See, e.g.*, *In re Convergent Technologies Sec. Litig.*, 108 F.R.D. 328, 332 (N.D. Cal. 1985); *Amgen Inc., et al. v. Sandoz Inc., et al.*, 2016 WL 913105, at *2-3 (N.D. Cal. Mar. 10, 2016). Discovery as to the Armistice Defendants remains ongoing, with depositions scheduled for July. Contention interrogatories as to the Armistice Defendants are therefore premature and unduly burdensome. Plaintiff shall supplement his response and objections to any contention interrogatories concerning the Armistice Defendants when such interrogatories become ripe.

15. Plaintiff objects to these Interrogatories and their accompanying instructions and definitions to the extent they call for Plaintiff to state "every" fact or identify "all" Persons. As constructed, such interrogatories are overbroad and unduly burdensome. *See Amgen Inc. v. Sandoz Inc.*, 2017 WL 1352052, at *3 (N.D. Cal. Apr. 13, 2017) (internal citation omitted). Plaintiff thus states those facts that are material in providing any responses below.

16. Plaintiff objects to the Interrogatories and their accompanying instructions and definitions to the extent they constitute premature expert discovery or otherwise call for the

premature production of expert reports, analysis, opinions, or testimony. Pursuant to Fed. R. Civ. P. 33(a)(2), such discovery "need not be answered until designated discovery is complete."

17. Plaintiff's objections are not and shall not be construed as an admission that (a) any such documents or information exist, (b) Plaintiff accepts or admits the existence of any fact set forth or assumed by a particular Interrogatory, or (c) Plaintiff's objection constitutes admissible evidence.

18. Plaintiff reserves the right to make all appropriate objections at any deposition or at any hearing or trial of this matter.

19. The foregoing general objections are hereby expressly incorporated into each of the specific responses below.

## OBJECTIONS TO INTERROGATORY DEFINITIONS

1. Plaintiff generally objects to the Armistice Defendants' definition of "identify" to the extent it contains discrete subparts, which, when in turn causes certain interrogatories to contain discrete subparts, which, under the Federal Rules, should properly be counted as distinct interrogatories.

2. Plaintiff generally objects to the Armistice Defendants' definition of "identify," particularly to its requirement that Plaintiff provide detail about the "date, speaker, title, or substance of the statement" (i) to the extent it causes certain interrogatories to have discrete subparts, which should be counted as distinct interrogatories, and (ii) to the extent it calls on Plaintiff to make findings of fact or offer legal conclusions.

3. Plaintiff generally objects to the Armistice Defendants' definitions of "You" and "Your" as overbroad, unduly burdensome, and not proportional to the needs of this litigation. The Armistice Defendants' definition potentially calls for information from non-parties, as well as information not in Plaintiff's possession, custody, or control. Additionally, the inclusion of Plaintiff's "counsel" in the definitions of "You" or "Your" improperly invades attorney-client privilege, the attorney work product doctrine, and other applicable privileges. For purposes of the

responses below, Plaintiff interprets "You" and "Your" as referring to Plaintiff solely and not Plaintiff's counsel or any other third parties unless specifically stated.

## OBJECTIONS TO INTERROGATORY DEFINITIONS

1. Plaintiff generally objects to the Armistice Defendants' Instruction No. 1 as overbroad, unduly burdensome, and not proportional to the needs of this litigation to the extent it calls for information from non-parties, as well as information not in Plaintiff's possession, custody, or control. Additionally, the requirement that Plaintiff "furnish all available information … in the possession, custody or control of any of [Plaintiff's] attorneys" improperly invades attorney-client privilege, the attorney work product doctrine, and other applicable privileges. For purposes of the responses below, Plaintiff furnishes only information in Plaintiff's possession, custody, or control.

2. Plaintiff generally objects to Instruction No. 2's prohibition against construing an Interrogatory by reference to other Interrogatories. Certain Interrogatories by the Armistice Defendants contradict this Instruction by specifically referencing other Interrogatories. Additionally, certain Interrogatories seek information that is duplicative, in whole or part, of other Interrogatories. Accordingly, Plaintiff disregards Instruction No. 2 to the extent necessary to provide a more fulsome and unduly burdensome response to the enumerated Interrogatories herein.

## OBJECTIONS AND RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 11:**

Identify all statements that You allege are false or misleading and/or omitted information that should have been disclosed for which You are seeking damages in the Action on behalf of You or any putative class member.

**ANSWER:**

Plaintiff objects to this Interrogatory on the following grounds:

1. The Interrogatory has discrete subparts, which, under the Federal Rules, should properly be counted as distinct interrogatories.

2. The Interrogatory seeks information equally or more accessible to the Armistice Defendants, including information from publicly available documents or those already in the possession, custody, or control of the Armistice Defendants.

3. The Interrogatory seeks information potentially subject to expert discovery and thus may call for the premature production of expert reports, analysis, opinions, or testimony. Pursuant to Fed. R. Civ. P. 33(a)(2), such information "need not be answered until designated discovery is complete."

4. The term "allege" is vague and ambiguous. On the one hand, the term could be construed as asking Plaintiff to identify what is already stated in the operative complaint, which was alleged based on Plaintiff's knowledge at the time. On the other hand, the term could be construed as seeking Plaintiff's contention, as informed by, and conforming to, applicable judicial orders and discovery in this matter. For the purposes of these Interrogatories, Plaintiff construes the Armistice Defendants as asking for the latter.

5. The term "statement" is vague and ambiguous, and is thus potentially overbroad and unduly burdensome. In responding to this Interrogatory, Plaintiff construes this term as seeking information about why the Attwill and OWS Press Releases were false or misleading.

6. The modifier "all" further renders the Interrogatory overbroad and unduly burdensome.

7. The Armistice Defendants' definition of "You" is overbroad, unduly burdensome, not proportional to the needs of this litigation, improperly imposes duties on non-parties, and improperly invades on the attorney-client privilege, the attorney work product doctrine, and other applicable privileges. Plaintiff thus construes "You" as meaning only Plaintiff, and not counsel or any other third parties.

Subject to and without waiving these objections, Plaintiff answers as follows:

Plaintiff contends that the Armistice Defendants violated federal securities laws by (i) trading on material nonpublic information and (ii) participating in an intentional scheme to manipulate the price of Vaxart shares for the purpose of selling them at an artificially inflated price. *See* May 2023 MTD Order (Doc. No. 293). In connection with these alleged scheme(s) and acts, Vaxart released news that was false or misleading in the Attwill and OWS Press Release.

In the Attwill Press Release, the following false or misleading statements were made, with the particularly false or misleading aspects emphasized:

- Vaxart, Inc. Signs Memorandum of Understanding with Attwill Medical Solutions Sterilflow, LP ***Enabling Production of A Billion or More COVID-19 Vaccine Doses Per Year*** Through Large Scale Lyophilization, Tableting and Coating ["MOU"]
- We believe AMS' experience coupled with ***its ability to manufacture a billion or more doses per year*** would be a beneficial addition to our group of CDMO partners and ***enable the large scale manufacturing and ultimate supply of our COVID-19 vaccine*** for the US, Europe and other countries in need," said Andrei Floroiu, CEO of Vaxart Inc.

In the OWS Press Release, the following false or misleading statements were made, with the particularly false or misleading aspects emphasized:

- Vaxart's Covid-19 Vaccine ***Selected for the U.S. Government's Operation Warp Speed*** ["OWS"]
- ***OWS to Test*** First Oral COVID-19 Vaccine in Non-Human Primates
- … organized and ***funded by Operation Warp Speed*** …
- "We are very pleased to be ***one of the few companies selected by Operation Warp Speed***, …."

These statements were false or misleading, or otherwise omitted information that should have been disclosed, for the following reasons:

- As announced on May 15, 2020, OWS's vaccine development plan had chosen fourteen promising candidates from the 100+ vaccine candidates currently in

development, and was "narrow[ing] down" the list of 14 candidates "to about eight candidates, which will go through further testing in early stage small clinical trials." These announcements added that "[l]arge-scale randomized trials for the demonstration of safety and efficacy will proceed for three to five of the candidates," while "[a]dditional non-clinical testing will be done in parallel to the extent possible. For instance, multiple animal models may be used to assess vaccine safety and efficacy in order to support the clinical development program."

- In the period leading up to the statements, the public learned, via Bloomberg and *The New York Times*, the identity of five of the OWS finalists—Moderna, AstraZeneca, Johnson & Johnson, Merck & Co., and Pfizer. Reporting also identified that the Biomedical Advanced Research & Development Authority ("BARDA") has granted funding to Sanofi, a vaccine developer that was not included on the Bloomberg and *The New York Times* lists.

- In the period leading up to the statements, the public also learned, via sources from a vaccine committee of a public-private partnership organization organized by NIH to help OWS run clinical trials, that OWS appeared to have selected vaccines based on manufacturing concerns, *i.e.*, were the fastest.

- Additionally, on June 16, 2020, the U.S. Department of Health and Human Services ("HHS") published a fact sheet confirming that OWS was "narrow[ing] down" the list of 14 candidates to "about seven candidates, representing the most promising candidates from a range of technology options, which would go through further testing in early-stage clinical trials" ("Fact Sheet"). The Fact Sheet also reiterated that HHS, as part of OWS, had entered into massive funding agreements with Johnson & Johnson, Moderna, and AstraZeneca, which included investments in manufacturing capabilities.

- Against this backdrop, the Attwill and OWS Press Releases, when read individually and together, "created the materially misleading impression that Vaxart stood at the precipice of pioneering a successful coronavirus vaccine." Dec. 2021 MTD Order at 8 (Doc. No. 182).

- The announced MOU with Attwill suggested Vaxart had in its manufacturing infrastructure a partner with the ***existing*** capacity to manufacture the hundreds of millions of doses of vaccine as part of Operation Warp Speed's mission "to deliver 300 million does of a safe, effective vaccine for COVID-19 by January 2021." In reality, at the time of the Attwill press release, Attwill lacked the regulatory capacity, personnel, and wherewithal to produce even one dose, never mind one billion.

- Vaxart had identified Attwill as a partner approximately ten days before the Attwill press release issued. Vaxart had performed minimal due diligence into Attwill before entering into and announcing the MOU. It was not until later in the year that Vaxart performed a site visit and audit of Attwill's facilities. During the site visit, Vaxart and Attwill focused on a "100 million tablet benchmark" rather than "a billion or more" doses. During the audit, Vaxart's designee identified "major" deficiencies with Attwill's facilities and processes. And the Master Services Agreement executed on or about September 30, 2020, contemplated 150 million, 100 million, and 50 million dose scenarios, not "a billion or more."

- In early 2020, Attwill conducted a "Gap Assessment," which concluded that Attwill faced several significant regulatory gaps that would require substantial time and expense to address before it could manufacture a vaccine like Vaxart's in compliance with 21 C.F.R. §§ 210 and 211—two of the most critical FDA provisions that drug manufacturers must adhere to before they are permitted to manufacture drugs under federal law. Additionally, prior to June 25, 2020, Attwill had not manufactured any products using biologics nor recombinant or synthetic nucleic acid molecules, and thus were not in compliance with 21 C.F.R. §§ 600, 601, and 610 and the NIH Guidelines for Research Involving Recombinant or Synthetic Nucleic Acid Molecules—regulations purportedly applying to Vaxart's vaccine.

- Attwill also lacked necessary capacity and machinery as of July 2020 for manufacturing Vaxart's vaccine, including tableting. In response to an update from Attwill in July 2020 that Attwill intended to purchase a tablet maker, Vaxart told Attwill the purchase was premature unless Attwill intended for significant use by other clients.

- Vaxart employees testified that Vaxart's press releases were designed to include the U.S. Government and other potential sources of funding as primary audiences for the information therein.

- The announcement that Vaxart had been "selected for" OWS similarly exploited the gap in the public's knowledge about OWS and Vaxart's internal affairs by exaggerating Vaxart's role, if any in Operation Warp Speed and the prospects for government funding.

- In March 2020, Vaxart submitted a request for funding to BARDA under a request for submissions relating to COVID ("BAA"). Vaxart believed it would receive a response from BARDA within weeks of submitting the Company's proposal. By mid-May, however, neither Vaxart, nor, as far as Vaxart was aware, any of its peers submitting under the same BAA had been awarded funding from BARDA. Around that same time, however, HHS had granted

funds to Johnson & Johnson, Moderna, and AstraZeneca, all to support OWS vaccine development.

- In May 2020, Vaxart and BARDA/NIAID began discussions with Vaxart regarding preclinical animal efficacy studies. On or about May 17, 2020, Vaxart executed a material transfer agreement to facilitate testing of Vaxart's vaccine at Battelle, a lab with which BARDA had contracted. This MTA was between BARDA & Vaxart and stated that the "effort is funded under BARDA under contracts … and will be used in studies at [BARDA's] Contract research Organizations"—*i.e.*, Batelle. The following day, NIH sent Vaxart a "harmonized NHP protocol is (sic) support of OWS."

- Vaxart did not issue a press release about the Non-Human Primate Study during the information environment known at the time. Instead, in June, it planned to release a press release once primates had been vaccinated. On June 26, 2020, Vaxart issued the NHP Press Release after the Armistice Defendants pressured Vaxart to do so and threatened to release the news itself if Vaxart did not. By this time, the information environment had changed, as did the public's focus on what it meant to be selected for Operation Warp Speed.

- It was not until August 18, 2020, that Battelle reported to BARDA (who then reported to Vaxart) that non-human primates had been dosed with Vaxart's COVID-19 vaccine the day before (on August 17, 2020).

- Other than negotiations with BARDA in May 2020, and irregular check-ins between Sean Tucker and Tanima Shah about the Non-Human Primate Study, Vaxart had no other significant contacts or meetings with the U.S. Government, particularly communications of a type that could suggest serious or imminent consideration of Vaxart as an OWS finalist or recipient for funding.

- Prior to June 25, 2020, Vaxart received no official report or statement from the U.S. Government explicitly stating Vaxart was on any shortlist of 14 candidates or the list of narrowed-down OWS finalists.

- Prior to June 25, 2020, Vaxart received no official report or statement from the U.S. Government explicitly stating it had been selected for Operation Warp Speed.

- On June 2, 2020, Sean Tucker asked Tanima Shah about who within the U.S. Government Vaxart would need to discuss the issuance of a press release regarding "participation in OWS." Shah responded: "Since you're not under BARDA contract you don't have to get it cleared from us. If you like, you may contact the OWS lead at the WH."

- Sean Tucker requested to be removed from the OWS press release prior to its issuance.

- Communications from LifeSci, who was communicating with Vaxart nearly every day in late June and July 2020, suggest the LifeSci staff viewed news about an invitation to the Non-Human Primate Study to not be material.

- On June 26, 2020, HHS Chief of Staff Col. Eric P. Shirley told HHS's Office of Public Affairs: "I've been informed that VaxArt entered into a contract with BARDA. They are not, however, a part of the OWS Vx effort at this time."

- On July 7, 2020, Wouter Latour advised Andrei Floroiu that Vaxart should be fully transparent that "OWS selection" as claimed by Vaxart "only pertains to the NHP study." That same day, LifeSci advised Floroiu against "faux" transparency and issuing non-material news, citing news of the Non-Human Primate Study and Attwill Press Releases as examples.

- On July 25, 2020, *The New York Times* reported that: "Some officials at the Department of Health and Human Services have grown concerned about whether companies including Vaxart are trying to inflate their stock prices by exaggerating their roles in Warp Speed, a senior Trump administration official said. The department has relayed those concerns to the Securities and Exchange Commission, said the official, who spoke on the condition of anonymity."

- On July 25, 2020, the HHS Office of the Assistant Secretary of Public affairs issued messages on the official account HHS Public Affairs Twitter site @SpoxHHS, stating: "The US Department of Health and Human Resources has entered into funding agreements with certain vaccine manufacturers and we are negotiating with others. ***Neither is the case with Vaxart.*** Vaxart's vaccine candidate was selected to participate in preliminary US government studies ***to determine potential areas for possible Operation Warp Speed partnership and support***. At this time, those studies are ongoing and ***no determinations have been made***." (Emphasis added.)

- In January 2021, BARDA instructed Vaxart to remove any characterization suggesting that the BARDA-funded animal studies Vaxart had participated in—the Non-Human Primate Study and a hamster study—were OWS, instructing Vaxart to instead state that it "participat[ed] in [a] non-human primate challenge study, funded by BARDA … under contract with a research laboratory and in collaboration with USG partners."

- By March 2021, the U.S. Government ("USG") had selected the following as finalists: Pfizer, Moderna, AstraZeneca, Johnson & Johnson, Novavax, Sanofi, and Merck (discontinued as of March 2021).

**INTERROGATORY NO. 12:**

For each statement identified in response to Interrogatory No. 11, state every reason why You believe the statement is false or misleading and/or omitted information that should have been disclosed.

**ANSWER:**

Because this Interrogatory references Plaintiff's response to a prior Interrogatory, Plaintiff incorporates by reference all objections raised to that prior Interrogatory. Plaintiff further objects to this Interrogatory on the following grounds:

1. The Interrogatory has discrete subparts, which, under the Federal Rules, should properly be counted as distinct interrogatories.
2. The Interrogatory calls for information that is duplicative of, or substantially overlaps with information responsive to, a prior answered Interrogatory.
3. The Interrogatory misconstrues or improperly seeks to limit the types of information may show to prove the falsity/misleading elements of certain of Plaintiff's surviving claims.
4. The Interrogatory seeks information potentially subject to expert discovery and thus may call for the premature production of expert reports, analysis, opinions, or testimony. Pursuant to Fed. R. Civ. P. 33(a)(2), such information "need not be answered until designated discovery is complete."
5. The modifier "every" further renders the Interrogatory overbroad and unduly burdensome.
6. The Armistice Defendants' definition of "You" is overbroad, unduly burdensome, not proportional to the needs of this litigation, improperly imposes duties on non-parties, and improperly invades on the attorney-client privilege, the attorney work product doctrine, and other applicable privileges. Plaintiff thus construes "You" as meaning only Plaintiff, and not counsel or any other third parties.

Subject to and without waiving these objections, Plaintiff refers the Armistice Defendants to Plaintiff's response to Interrogatory No. 11.

**<u>INTERROGATORY NO. 13</u>:**

State (i) whether You believe that Vaxart was selected for the U.S. Government's Operation Warp Speed in 2020, and (ii), if not, state every reason why You believe the answer is no.

**<u>ANSWER</u>:**

Plaintiff objects to this Interrogatory on the following grounds:

1. The Interrogatory has discrete subparts, which, under the Federal Rules, should properly be counted as distinct interrogatories.
2. The Interrogatory calls for information that is duplicative of, or substantially overlaps with information responsive to, a prior answered Interrogatory.
3. The Interrogatory misconstrues, or improperly seeks to limit, the types of information may show to prove the elements of certain of Plaintiff's surviving claims or rebuff any element of any defense thereto.
4. The Interrogatory seeks information potentially subject to expert discovery and thus may call for the premature production of expert reports, analysis, opinions, or testimony. Pursuant to Fed. R. Civ. P. 33(a)(2), such information "need not be answered until designated discovery is complete."
5. The Interrogatory seeks to have Plaintiffs state all reasons supporting a negative claim. The relevant inquiry is what reasons, if any, support the claim that Vaxart's COVID-19 vaccine ***had been*** "selected for Operation Warp Speed" at the time of the press release, as that representation would have been understood by part of the public at the time of the Press Release. The Interrogatory is thus overbroad and unduly burdensome.

6. The Interrogatory seeks information equally or more accessible to the Armistice Defendants, including information from publicly available documents or those already in the possession, custody, or control of the Armistice Defendants.

7. The phrase "selected for the U.S. Government's Operation Warp Speed" is vague and ambiguous and is thus potentially overbroad and unduly burdensome. The phrase is further rendered vague and ambiguous by the modifier "in 2020." In responding to this Interrogatory, Plaintiff construes these phrases in the manner that they would have been understood by at least part of the public at the time the OWS Press Release issued.

8. The Interrogatory seeks information that is not in Plaintiff's possession, custody, or control as Plaintiff does not and could not have personal knowledge of, among other topics, (i) the U.S. Government's internal deliberations and communications regarding Operation Warp Speed; (ii) every communication within the U.S. Government as to Vaxart; or (iii) every communication between the U.S. Government and Vaxart.

9. The modifier "every" further renders the Interrogatory overbroad and unduly burdensome.

10. The Armistice Defendants' definition of "You" is overbroad, unduly burdensome, not proportional to the needs of this litigation, improperly imposes duties on non-parties, and improperly invades on the attorney-client privilege, the attorney work product doctrine, and other applicable privileges. Plaintiff thus construes "You" as meaning only Plaintiff, and not counsel or any other third parties.

Subject to and without waiving these objections, Plaintiff answers that Plaintiff does not believe Vaxart's COVID-19 vaccine ***had been*** "selected for Operation Warp Speed" at the time of the press release, as that representation was understood by part of the public at the time the Press Release issued, given (i) the absence of persuasive evidence in the total evidentiary record supporting that representation and (ii) the occurrence of events before, during, and after the Press

Release's issuance that evidence the false or misleading nature of such a representation. Plaintiff generally refers the Armistice Defendants to Plaintiff's response to Interrogatory No. 11 for further explanation as to why it was false or misleading to represent on or about June 26, 2020, that Vaxart had been "selected for" OWS.

**INTERROGATORY NO. 14:**

State (i) whether You believe that Vaxart was invited to participate in Operation Warp Speed in 2020 and (ii), if not, state every reason why You believe the answer is no.

**ANSWER:**

Plaintiff objects to this Interrogatory on the following grounds:

1. The Interrogatory has discrete subparts, which, under the Federal Rules, should properly be counted as distinct interrogatories.
2. The Interrogatory calls for information that is duplicative of, or substantially overlaps with information responsive to, a prior answered Interrogatory.
3. The Interrogatory misconstrues, or improperly seeks to limit, the types of information may show to prove the elements of certain of Plaintiff's surviving claims or rebuff any element of any defense thereto.
4. The Interrogatory seeks information potentially subject to expert discovery and thus may call for the premature production of expert reports, analysis, opinions, or testimony. Pursuant to Fed. R. Civ. P. 33(a)(2), such information "need not be answered until designated discovery is complete."
5. The Interrogatory seeks information equally or more accessible to the Armistice Defendants, including information from publicly available documents or those already in the possession, custody, or control of the Armistice Defendants.
6. The Interrogatory seeks to have Plaintiffs state all reasons supporting a negative claim. The relevant inquiry is what reasons, if any, support the claim that Vaxart's ***had been*** "invited to participate in Operation Warp Speed." As discussed below,

that phrase is vague and ambiguous. The Interrogatory is thus overbroad and unduly burdensome.

7. The phrase "invited to participate in Operation Warp Speed" is vague and ambiguous and is thus potentially overbroad and unduly burdensome. The phrase is further rendered vague and ambiguous by the modifier "in 2020." In attempting to respond to this Interrogatory, Plaintiff construes these phrases in the manner that they would have been understood by at least part of the public at the time the OWS Press Release issued.

8. The Interrogatory seeks information that is not in Plaintiff's possession, custody, or control as Plaintiff does not and could not have personal knowledge of, among other topics, (i) the U.S. Government's internal deliberations and communications regarding Operation Warp Speed; (ii) every communication within the U.S. Government as to Vaxart; or (iii) every communication between the U.S. Government and Vaxart.

9. The modifier "every" further renders the Interrogatory overbroad and unduly burdensome.

10. The Armistice Defendants' definition of "You" is overbroad, unduly burdensome, not proportional to the needs of this litigation, improperly imposes duties on non-parties, and improperly invades on the attorney-client privilege, the attorney work product doctrine, and other applicable privileges. Plaintiff thus construes "You" as meaning only Plaintiff, and not counsel or any other third parties.

Subject to and without waiving these objections, Plaintiff is unaware of any document in the documents produced by Vaxart or the U.S. Government that explicitly "invited" Vaxart "to participate in Operation Warp Speed" or officially confirmed Vaxart among any list of candidates being considered as an OWS finalist. In attempt to discern the meaning of the phrase "invited to participate in Operation Warp Speed," Plaintiff observes that the OWS Press Release represents that Vaxart "has been selected to participate in a non-human primate (NHP) challenge study,

organized and funded by Operation Warp Speed." Plaintiff's response to Interrogatory No. 11 explains why this representation was false or misleading. As for Vaxart's participation in a Non-Human Primate Study more generally, documents produced by Vaxart, HHS, and NIH show the following non-exhaustive list of background facts:

Plaintiff answers as follows:

- In February 2020, Tanima Sinha, a scientist at the Biomedical Advanced Research & Development Authority ("BARDA") requested information from Sean Tucker about Vaxart's COVID-19 vaccine candidate. Testimony regarding BARDA and OWS's organizational structure suggest Ms. Sinha was not a division manager, agency manager, or task force manager within BARDA, HHS, or OWS. Further testimony established that individuals other than Ms. Sinha, and divisions other than Ms. Sinha's, were responsible for contracts with the OWS finalists, like Moderna.

- In March 2020, Vaxart submitted a request for funding to BARDA under a BAA. Vaxart believed it would receive a response from BARDA within weeks of submitting the Company's proposal. By mid-May, however, neither Vaxart, nor, as far as Vaxart was aware, any of its peers submitting under the same BAA. Around that same time, however, HHS had granted funds to Johnson & Johnson, Moderna, and AstraZeneca, all to support OWS vaccine development.

- In May 2020, Vaxart and BARDA/NIAID began discussions with Vaxart regarding preclinical animal efficacy studies.

- On May 12, 2020, Allison Totura, a biologist at BARDA, emailed Vaxart, stating: "As both BARDA and NIAID are coordinating vaccine immunogenicity and efficacy studies related to Operation Warp Speed, BARDA requests a material transfer agreement between the parties involved in the study. Attached is the BARDA MTA template for your team to review. If there are any questions about the MTA, please let me know, and I will follow up with responses to your inquiry. If the agreement is acceptable, BARDA and our contractor Battelle will sign to partially execute the MTA. …"

- On May 17, 2020, Vaxart executed a material transfer agreement to facilitate testing of Vaxart's vaccine at Battelle, a lab with which BARDA had contracted with. This MTA was between BARDA and Vaxart, and stated that the "effort is funded under BARDA under contracts …, and will be used in studies at [BARDA's] Contract research Organizations"—*i.e.*, Battelle.

- On May 18, 2020, Clint Florence of NIH sent Vaxart a "harmonized NHP protocol is [sic] support of OWS."

- On or about June 15, 2020, Vaxart sent vials of its vaccine directly to Battelle.

- On June 25, 2020, Vaxart responded to an information request from Battelle.

- On June 26, 2020, media outlets contacted both Vaxart and HHS to further confirm Vaxart's purported connection to Operation Warp Speed.

  - In response to one such media inquiry, in which LifeSci advised that Vaxart provide an informed answer, Andrei Floroiu, Vaxart's CEO at the time, replied "We don't know anything about lists. Or better not to answer this at all?"

  - In response to one such media inquiry, Colonel Eric P. Shirley, Chief of Staff to Operation Warp Speed, relayed to Natalie Baldassarre, Special Assistant of the HHS Office of the Assistant Secretary for Public Affairs that: "I've been informed that VaxArt [sic] entered into a contract with BARDA. They are not, however, a part of the OWS Vx effort at this time."

- On June 30, 2020, Tanima Shah reported she had no updates as to the timing on the Non-Human Primate Study.

- As of July 14, 2020, Vaxart was still in discussions with Battelle about the parameters of the Non-Human Primate Study.

- On July 25, 2020, *The New York Times* reported that: "Some officials at the Department of Health and Human Services have grown concerned about whether companies including Vaxart are trying to inflate their stock prices by exaggerating their roles in Warp Speed, a senior Trump administration official said. The department has relayed those concerns to the Securities and Exchange Commission, said the official, who spoke on the condition of anonymity."

- On July 25, 2020, the HHS Office of the Assistant Secretary of Public affairs issued messages on the official account HHS Public Affairs Twitter site @SpoxHHS, stating: "The US Department of Health and Human Resources has entered into funding agreements with certain vaccine manufacturers and we are negotiating with others. ***Neither is the case with Vaxart.*** Vaxart's vaccine candidate was selected to participate in preliminary US government studies ***to determine potential areas for possible Operation Warp Speed partnership and support***. At this time, those studies are ongoing and ***no determinations have been made***." (Emphasis added.)

- On August 18, 2020, Battelle reported to BARDA (who then reported to Vaxart) that non-human primates had finally been dosed with Vaxart's COVID-19 vaccine the day before (on August 17, 2020).

- On January 21, 2021, BARDA provided Vaxart with edits on a press release regarding a hamster challenge. BARDA instructed to remove any characterization that the hamster challenge or the NHP study reported in the OWS Press Release were OWS-affiliated. As such, BARDA's official position was that Vaxart "participat[ed] in [a] non-human primate challenge study, funded by BARDA … under contract with a research laboratory and in collaboration with USG partners," as opposed to an "OWS non-human primate study."

Plaintiff further refers the Armistice Defendants to Plaintiff's response to Interrogatory No. 11 for further reasons why a representation that Vaxart "invited to" OWS was false or misleading.

**<u>INTERROGATORY NO. 15</u>:**

State (i) whether You believe that the Non-Human Primate Study was an Operation Warp Speed vaccine testing program and (ii), if not, state every reason why You believe the answer is no.

**<u>ANSWER</u>:**

Plaintiff objects to this Interrogatory on the following grounds:

11. The Interrogatory has discrete subparts, which, under the Federal Rules, should properly be counted as distinct interrogatories.

12. The Interrogatory calls for information that is duplicative of, or substantially overlaps with information responsive to, a prior answered Interrogatory.

13. The Interrogatory misconstrues, or improperly seeks to limit, the types of information may show to prove the elements of certain of Plaintiff's surviving claims or rebuff any element of any defense thereto.

14. The Interrogatory seeks information potentially subject to expert discovery and thus may call for the premature production of expert reports, analysis, opinions, or testimony. Pursuant to Fed. R. Civ. P. 33(a)(2), such information "need not be answered until designated discovery is complete."

15. The Interrogatory seeks to have Plaintiffs state all reasons supporting a negative claim. The relevant inquiry is what reasons, if any, support the claim that the Non-Human Primate Study "was an Operation Warp Speed" testing program. As

discussed below, that phrase is vague and ambiguous. The Interrogatory is thus overbroad and unduly burdensome.

16. The Interrogatory seeks information equally or more accessible to the Armistice Defendants, including information from publicly available documents or those already in the possession, custody, or control of the Armistice Defendants.

17. The phrase "was an Operation Warp Speed testing program" is vague and ambiguous, and is thus potentially overbroad and unduly burdensome.

18. The Interrogatory seeks information that is not in Plaintiff's possession, custody, or control as Plaintiff does not and could not have personal knowledge of, among other topics, (i) the U.S. Government's internal deliberations and communications regarding Operation Warp Speed; (ii) every communication within the U.S. Government as to Vaxart; or (iii) every communication between the U.S. Government and Vaxart.

19. The modifier "every" further renders the Interrogatory overbroad and unduly burdensome.

20. The Armistice Defendants' definition of "You" is overbroad, unduly burdensome, not proportional to the needs of this litigation, improperly imposes duties on non-parties, and improperly invades on the attorney-client privilege, the attorney work product doctrine, and other applicable privileges. Plaintiff thus construes "You" as meaning only Plaintiff, and not counsel or any other third parties.

Given the objections above, particularly the vague and ambiguous term "was" used in the Interrogatory, Plaintiff is unable to answer this question. Plaintiff has no personal knowledge or belief, one way or the other, as to whether the Non-Human Primate Study "was" an Operation Warp Speed testing program. Plaintiff generally directs the Armistice Defendants to Plaintiff's responses to Interrogatory Nos. 11 and 14, in which Plaintiff provides more precise positions as to the relationships, if any, between Vaxart, animal challenge studies, and Operation Warp Speed. Plaintiff also defers to the purportedly official characterizations by HHS and BARDA that are

apparent in the document records—specifically, that: (i) Vaxart's vaccine candidate was selected to participate in preliminary U.S. government studies to determine potential areas for possible Operation Warp Speed partnership and support; and (ii) Vaxart "participat[ed] in the non-human primate challenge study, funded by BARDA … under contract with a research laboratory and in collaboration with USG partners," as opposed to an "OWS non-human primate study."

**<u>INTERROGATORY NO. 16</u>:**

State (i) whether You believe that the Non-Human Primate Study was organized and funded by Operation Warp Speed and (ii) if not, state every reason why You believe the answer is no.

**<u>ANSWER</u>:**

Plaintiff objects to this Interrogatory on the following grounds:

1. The Interrogatory has discrete subparts, which, under the Federal Rules, should properly be counted as distinct interrogatories.
2. The Interrogatory calls for information that is duplicative of, or substantially overlaps with information responsive to, a prior answered Interrogatory.
3. The Interrogatory misconstrues, or improperly seeks to limit, the types of information may show to prove the elements of certain of Plaintiff's surviving claims or rebuff any element of any defense thereto.
4. The Interrogatory seeks information potentially subject to expert discovery and thus may call for the premature production of expert reports, analysis, opinions, or testimony. Pursuant to Fed. R. Civ. P. 33(a)(2), such information "need not be answered until designated discovery is complete."
5. The Interrogatory seeks to have Plaintiffs state all reasons supporting a negative claim. The relevant inquiry is what reasons, if any, support the claim that the Non-Human Primate Study was "organized and funded by Operation Warp Speed." As discussed below, that phrase is vague and ambiguous. The Interrogatory is thus overbroad and unduly burdensome.

6. The Interrogatory seeks information equally or more accessible to the Armistice Defendants, including information from publicly available documents or those already in the possession, custody, or control of the Armistice Defendants.

7. The terms "organized" and "funded," both individually and conjunctively, with respect to Operation Warp Speed, are vague and ambiguous. The Interrogatory is thus potentially overbroad and unduly burdensome.

8. The Interrogatory seeks information that is not in Plaintiff's possession, custody, or control as Plaintiff does not and could not have personal knowledge of, among other topics, (i) the U.S. Government's internal deliberations and communications as to Operation Warp Speed; iii) every meeting held within the U.S. Government as to Vaxart; or (iii) every communication between the U.S. Government and Vaxart.

9. The modifier "every" further renders the Interrogatory overbroad and unduly burdensome.

10. The Armistice Defendants' definition of "You" is overbroad, unduly burdensome, not proportional to the needs of this litigation, improperly imposes duties on non-parties, and improperly invades on the attorney-client privilege, the attorney work product doctrine, and other applicable privileges. Plaintiff thus construes "You" as meaning only Plaintiff, and not counsel or any other third parties.

Given the objections above, Plaintiff is unable to answer this question and has no personal knowledge, one way or the other, as to whether the Non-Human Primate Study was "organized and funded" by Operation Warp Speed. Plaintiff defers to the purportedly official characterizations by HHS and BARDA that are apparent in the document records—specifically, that: (i) Vaxart's vaccine candidate was selected to participate in preliminary US government studies to determine potential areas for possible Operation Warp Speed partnership and support; and (ii) Vaxart "participat[ed] in the non-human primate challenge study, funded by BARDA … under contract with a research laboratory and in collaboration with USG partners," as opposed to an "OWS non-

human primate study." Plaintiff further observes that the Material Transfer Agreement Vaxart entered on or about May 17, 2020, was with BARDA, and states that the "effort is funded under BARDA under contracts … and will be used in studies at [BARDA's] Contract research Organizations." Plaintiff otherwise generally directs the Armistice Defendants to Plaintiff's responses to Interrogatory Nos. 11 & 14, in which it provides more precise positions as to the relationships, if any, between Vaxart, animal challenge studies, and Operation Warp Speed.

**INTERROGATORY NO. 17:**

State all facts supporting Your statement that Todd Davis and Robert Yedid were Armistice "loyalists." *See* Dkt. 311.

**ANSWER:**

Plaintiff objects to this Interrogatory on the following grounds:

1. The Interrogatory seeks information not relevant to any surviving claim or defense in this action and not proportionate to the needs of this litigation.
2. The Interrogatory has discrete subparts, which, under the Federal Rules, should properly be counted as distinct interrogatories.
3. The Interrogatory misconstrues, or improperly seeks to limit, the types of information may show to prove the elements of certain of Plaintiff's surviving claims or rebuff any element of any defense thereto.
4. The Interrogatory is vague and ambiguous as to whether it seeks all facts supporting the statement at the time it was made or in the present.
5. The Interrogatory seeks information equally or more accessible to the Armistice Defendants, including information from publicly available documents or those already in the possession, custody, or control of the Armistice Defendants.
6. The modifier "all" further renders the Interrogatory overbroad and unduly burdensome.

7. The Interrogatory takes the form of a contention interrogatory concerning the Armistice Defendants, which is premature and inappropriate until deposition discovery as to the Armistice Defendants is complete.

8. The Armistice Defendants' definition of "You" is overbroad, unduly burdensome, not proportional to the needs of this litigation, improperly imposes duties on non-parties, and improperly invades on the attorney-client privilege, the attorney work product doctrine, and other applicable privileges. Plaintiff thus construes "You" as meaning only Plaintiff, and not counsel or any other third parties.

Subject to and without waiving the objections above, Plaintiff answers as follows:

- For information about Todd Davis's relationship with the Armistice Defendants, Plaintiffs direct the Armistice Defendants to ¶¶ 11, 16, 45, 54, 55, 70, 85, 88, 130, 138, 145-146, 207, 252, 253, 256, and 261-262 of the operative complaint, and the documents underlying such allegations.

- For general information about Robert Yedid's relationship with the Armistice Defendants, Plaintiffs direct the Armistice Defendants to ¶¶ 11, 44, 54, 55, 70, 71, 85, 88, 130, 138, 139, 145-146, 156, 207, 208, 252, 254- 257, 261, and 263 of the operative complaint, and the documents underlying such allegations.

**INTERROGATORY NO. 18:**

State all facts supporting Your allegation that Todd Davis was a "long-time business partner . . . of Armistice." *See* Dkt. 258.

**ANSWER:**

Plaintiff objects to this Interrogatory on the following grounds:

9. The Interrogatory has discrete subparts, which, under the Federal Rules, should properly be counted as distinct interrogatories.

10. The Interrogatory misconstrues, or improperly seeks to limit, the types of information may show to prove the elements of certain of Plaintiff's surviving claims or rebuff any element of any defense thereto.

11. The Interrogatory is vague and ambiguous as to whether it seeks all facts supporting the statement at the time it was made or in the present.

12. The Interrogatory seeks information equally or more accessible to the Armistice Defendants, including information from publicly available documents or those already in the possession, custody, or control of the Armistice Defendants.

13. The modifier "all" further renders the Interrogatory overbroad and unduly burdensome.

14. The Interrogatory takes the form of a contention interrogatory concerning the Armistice Defendants, which is premature and inappropriate until deposition discovery as to the Armistice Defendants is complete.

15. The Armistice Defendants' definition of "You" is overbroad, unduly burdensome, not proportional to the needs of this litigation, improperly imposes duties on non-parties, and improperly invades on the attorney-client privilege, the attorney work product doctrine, and other applicable privileges. Plaintiff thus construes "You" as meaning only Plaintiff, and not counsel or any other third parties.

Subject to and without waiving the objections above, Plaintiff answers as follows:

- For information concerning Armistice and Davis's connection to BioDelivery Sciences International, Inc. ("BDSI"), Plaintiff refers the Armistice Defendants to the facts alleged in ¶and of the operative complaint.

- For information about Todd Davis's relationship with the Armistice Defendants, Plaintiffs direct the Armistice Defendants to ¶¶ 11, 16, 45, 54, 55, 70, 85, 88, 130, 138, 145-146, 207, 252, 253, 256, and 261-262 of the operative complaint.

**<u>INTERROGATORY NO. 19</u>:**

State all facts supporting Your statement that "both prior and current [Vaxart] management deemed participation in the [Non-Human Primate Study] to be immaterial." *See* Dkt. 311.

**<u>ANSWER</u>:**

Plaintiff objects to this Interrogatory on the following grounds:

1. The Interrogatory misconstrues, or improperly seeks to limit, the types of information may show to prove the elements of certain of Plaintiff's surviving claims or rebuff any element of any defense thereto.
2. The Interrogatory is vague and ambiguous as to whether it seeks all facts supporting the statement at the time it was made or in the present.
3. The Interrogatory seeks information equally or more accessible to the Armistice Defendants, including information from publicly available documents or those already in the possession, custody, or control of the Armistice Defendants.
4. The modifier "all" further renders the Interrogatory overbroad and unduly burdensome.
5. The Armistice Defendants' definition of "You" is overbroad, unduly burdensome, not proportional to the needs of this litigation, improperly imposes duties on non-parties, and improperly invades on the attorney-client privilege, the attorney work product doctrine, and other applicable privileges. Plaintiff thus construes "You" as meaning only Plaintiff, and not counsel or any other third parties.

Subject to and without waiving the above objections, Plaintiff answers as follows:

- In May to June 2020, Vaxart's management committee consisted of Watour Latour/Andrei Floroiu (following CEO transition), Brent Biehn, Margaret Echerd, Sean Tucker, and possibly others.

- On or about May 17, 2020, Vaxart entered into a Material Transfer Agreement with BARDA to facilitate Vaxart's participation in a Non-Human Primate Study. Vaxart did not issue a press release regarding the Non-Human Primate Study at that time.

- On or about June 1, 2020, Vaxart's management began considering whether its participation in the Non-Human Primate Study was material after circulating an article by Science Magazine titled "Operation Warp Speed selects billionaire scientist's COVID-19 vaccine for monkey tests."

- On June 2, 2020, Sean Tucker asked Tanima Shah about who within the U.S. Government Vaxart would need to discuss the issuance of a press release regarding "participation in OWS." Shah responded: "Since you're not under

BARDA contract you don't have to get it cleared from us. If you like, you may contact the OWS lead at the WH."

- Vaxart employees testified that Vaxart's press releases were designed to include the U.S. Government and other potential sources of funding as primary audiences for the information therein.

- On June 3, 2020, Bloomberg and *The New York Times* reported that OWS had selected five finalists. Vaxart was not reported to be one of the OWS finalists. Reporting also identified that the Biomedical Advanced Research & Development Authority ("BARDA") has granted funding to Sanofi, a vaccine developer which was not included on the Bloomberg and *The New York Times* lists. At that time, Vaxart had limited, if any, substantive conversations with any USG entity regarding funding to Vaxart.

- On June 6, 2020, Wouter Latour circulated materials to Vaxart's directors disclosing Vaxart's future participation in the Non-Human Primate Study.

- On June 8, 2020, Vaxart held a Board meeting attended by Vaxart's directors, including the Armistice Defendants Boyd and Maher, as well as Vaxart's outside counsel. At this meeting, Vaxart's management again reported on the Non-Human Primate Study. No instruction was provided to issue a press release regarding the Study.

- On June 8, 2020, Boyd requested pre-clearance to trade, certifying neither he, nor Maher, no Armistice possessed material nonpublic information.

- By June 9, 2020, Vaxart's management had determined to issue a press release regarding the Non-Human Primate Study when the first primate had been vaccinated.

- Additionally, on June 16, 2020, the U.S. Department of Health and Human Services ("HHS") published a fact sheet confirming that OWS was "narrow[ing] down" the list of 14 candidates to "about seven candidates, representing the most promising candidates from a range of technology options, which would go through further testing in early-stage clinical trials" ("Fact Sheet"). The Fact Sheet also reiterated that HHS, as part of OWS, had entered into massive funding agreements with Johnson & Johnson, Moderna, and AstraZeneca, which included investments in manufacturing capabilities. Documents and testimony show that Sean Tucker, Andrei Floroiu, and likely others received this information.

- On June 19, 2020, Boyd requested pre-clearance to trade, certifying neither he, nor Maher, no Armistice possessed material nonpublic information.

- On June 25, 2020, in the morning, Boyd requested pre-clearance to trade, certifying neither he, nor Maher, nor Armistice possessed material nonpublic information.

- On June 25, 2020, Vaxart's CEO, Andrei Floroiu, stated: "We just had a full management team meeting, with Faith also, and concluded that what was discussed at the last Board meeting [the invitation to the Non-Human Primate Study] was not MNI, and therefore we confirm the previous CEO's decision that we do not need to put out a press release."

- At his deposition, Andrei Floroiu testified that, after being appointed as CEO, but prior to Boyd's June 25, 2020 afternoon email request for preclearance, Vaxart's management team had met and decided not to issue the OWS Press Release until after primates had been vaccinated. Testimony from other management team members corroborate that this was Vaxart's plan prior to June 25, 2020.

- Sean Tucker requested to be removed from the OWS press release prior to its issuance.

- Communications from LifeSci, who was communicating with Vaxart nearly every day in late June and July 2020, suggest the LifeSci staff viewed news about an invitation to the Non-Human Primate Study to not be material.

- It was not until August 18, 2020, that Battelle reported to BARDA (who then reported to Vaxart) that non-human primates had been dosed with Vaxart's COVID-19 vaccine the day before (on August 17, 2020).

- Prior to June 25, 2020, Vaxart had made no formal inquiry to OWS regarding whether it could issue the OWS Press Release or include a quote of the OWS leads.

- Prior to June 25, 2020, Vaxart received no official report or statement from the U.S. Governments explicitly stating Vaxart was on any shortlist of 14 candidates or the list of narrowed down OWS finalists.

- Prior to June 25, 2020, Vaxart received no official report or statement from the U.S. Governments explicitly stating it had been selected for Operation Warp Speed.

**INTERROGATORY NO. 20:**

State all facts supporting Your statement that Boyd and Maher "received confirmation that Vaxart had not been selected for OWS" in June 2020. *See* Dkt. 344.

**ANSWER:**

Plaintiff objects to this Interrogatory on the following grounds:

6. The Interrogatory calls for information that is duplicative of, or substantially overlaps with information responsive to, a prior answered Interrogatory.

7. The Interrogatory misconstrues, or improperly seeks to limit, the types of information may show to prove the elements of certain of Plaintiff's surviving claims or rebuff any element of any defense thereto.

8. The Interrogatory seeks information equally or more accessible to the Armistice Defendants, including information from publicly available documents or those already in the possession, custody, or control of the Armistice Defendants.

9. The Interrogatory seeks to have Plaintiffs state all reasons supporting a negative claim. The relevant inquiry is what reasons known to Boyd and Maher, if any, supported the claim that Vaxart ***had been*** "selected for Operation Warp Speed" at the time of the OWS Press Release, as that representation would have been understood by part of the public at the time of the Press Release. The Interrogatory is thus overbroad and unduly burdensome.

10. The Interrogatory takes the form of a contention interrogatory concerning the Armistice Defendants, which is premature and inappropriate until deposition discovery as to the Armistice Defendants is complete.

11. The Interrogatory seeks information that was potentially documented in spoliated evidence—*i.e.*, the text messages Defendants Boyd and Maher deleted over the course of at least two, separate spoliation events.

12. The modifier "all" further renders the Interrogatory overbroad and unduly burdensome.

13. The Interrogatory takes the form of a contention interrogatory concerning the Armistice Defendants, which is premature and inappropriate until deposition discovery as to the Armistice Defendants is complete.

14. The Armistice Defendants' definition of "You" is overbroad, unduly burdensome, not proportional to the needs of this litigation, improperly imposes duties on non-parties, and improperly invades on the attorney-client privilege, the attorney work product doctrine, and other applicable privileges. Plaintiff thus construes "You" as meaning only Plaintiff, and not counsel or any other third parties.

Subject to and without waiving the above objections, Plaintiff answers that the following facts (or absence of facts) informed the Armistice Defendants that Vaxart had not been selected for Operation Warp Speed as of the time of publication of the OWS Press Release.

- At the May 13, 2020 Board Meeting, the Board discussed Vaxart's vaccine progress and the status of the Company's proposal submitted to BARDA. Management also discussed the status of interactions with Project Warp Speed, CEPI, and other potential sources of funding. Ms. Garg noted that the Company was led to believe it would receive a response from BARDA within weeks of submitting the Company's proposal, but neither Vaxart, nor, as far as Vaxart was aware, any of its peers submitting under the same BAA, had received responses to date. Though the Armistice Defendants did not attend this meeting, they received Board materials, spoke with Latour at length before and after the meeting, and heard and ratified minutes of the May 13 meeting on June 8.

- On May 15, 2020, the U.S. Government publicly announced that Operation Warp Speed would be winnowing down 100+ vaccine candidates currently in development down to about eight candidates, which will go through further testing in early stage small clinical trials.

- On June 3, 2020, Bloomberg and *The New York Times* further reported the identity of five that had purportedly made the final OWS cut. The reported companies were Moderna, AstraZeneca, Johnson & Johnson, Merck, and Pfizer—all of which were "big pharma" companies, unlike Vaxart. Both Johnson & Johnson and AstraZenca utilized a "replication defective" platform and thus were in same platform category as Vaxart. It had also been reported by June 4, 2020 that BARDA has funded Sanofi.

- On or about June 3, 2020, Andrei Floroiu circulated reports of the OWS finalist identities to Boyd and Maher, positing "I think this means no BARDA money, right?"

- On June 3, 2020, in the evening, Andrei Floroiu wrote to a friend that him "becoming CEO is again on the front burner, and I was asked to sketch a 60-day plan."

- On June 4, 2020, Armistice's head trader, Sergio Smiriglio, forwarded Boyd and Maher a press release regarding the Department of Defense awarding Novavax up to $60 million to support production of its COVID-19 vaccine. The article also repeated reporting from *The New York Times* about the five OWS finalists, stating the finalists were "expected to be officially announced in the next few weeks." Boyd forwarded this article to Andrei Floroiu.

- On June 5, Floroiu responded to Boyd's forwarded email about Novavax: "I have no doubt that we should've and could've done a lot better on both government support and corporate partnerships. But this company just can't sell. And the window of opportunity is closing up soon (if it already hasn't on BARDA ...) I mean, given how many programs are out there, how do you think BARDA reacts to an application saying we'll file a BLA in 2022/2023?!?!? Do you think they have time to say ... oh well, maybe it can be sooner, let's help these guys out because the tech is interesting?"

- That same day, Floroiu began circulating a PowerPoint presentation, versions of which bore the file name "New CEO Plan" and the title "Building Vaxart 3.0." The plan also recognized "NIH/BARDA pre-clinical" as a "key value-creating event[]," suggesting directors were aware of the Non-Human Primate Study prior to the June 8, 2020 Board meeting. Floroiu ultimately sent a version of this PowerPoint presentation to the Armistice Defendants. The presentation to Boyd noted that there was a "short window of opportunity (2-3 months) for capturing COVID-19 opportunity)," Vaxart was "small, alone, coming from behind," and an aggressive communications strategy.

- On June 8, 2020, Vaxart held a Board Meeting at which management reported on major developments with Vaxart's vaccine. Management again reported on the Non-Human Primate Study. There was, however, no further news to report regarding any additional discussions with Operation Warp Speed regarding funding or manufacturing.

- At the June 8, 2020 Board Meeting, Boyd texted Floroiu regarding plans to have Floroiu appointed as CEO immediately. Months prior, Floroiu had told friends that plans to install him as Vaxart's CEO in March were "not happening anymore" as Vaxart had "applied for a BARDA grant for the vaccine, and they don't want to change the CEO in the middle of it, and they wanna sell the company if they get it. But if they don't get it, I'll be back there."

- On or about June 16, 2020, HHS released a Fact Sheet about Operation Warp Speed. This fact sheet reiterated earlier reports that HHS had granted funds to Johnson & Johnson, Moderna, and AstraZeneca, all to support OWS vaccine development. The Fact Sheet also confirmed reports that OWS was narrowing down vaccine candidates to a list of about seven candidates.

- In May and early June 2020, the Armistice Defendants had many, lengthy calls with Wouter Latour about Vaxart. Moreover, beginning at least in early June 2020, the Armistice Defendants exchanged many texts and had many substantive calls with Andrei Floroiu.

- During the Armistice Defendants' frequent communications and correspondence with Vaxart leading up to June 25, 2020, the Armistice Defendants received no information or reports about contacts with the U.S. Government that would suggest imminent consideration to providing Vaxart with manufacturing support or funding.

- Prior to June 25, 2020, Vaxart received no official report or statement from the U.S. Government explicitly stating Vaxart was on any shortlist of 14 candidates or the list of narrowed down OWS finalists.

- Prior to June 25, 2020, Vaxart received no official report or statement from the U.S. Government explicitly stating it had been selected for Operation Warp Speed.

- On June 25, 2020, Vaxart's CEO, Andrei Floroiu, stated: "We just had a full management team meeting, with Faith also, and concluded that what was discussed at the last Board meeting [the invitation to the Non-Human Primate Study] was not MNI, and therefore we confirm the previous CEO's decision that we do not need to put out a press release."

Plaintiff will supplement his response and objections to this contention Interrogatory when such interrogatory becomes ripe—that is, after the Boyd and Maher depositions.

**INTERROGATORY NO. 21:**

State all facts supporting Your statement that Boyd and Maher "coerced the issuance of the [Attwill Press Release]." *See* Dkt. 344.

**ANSWER:**

Plaintiff objects to this Interrogatory on the following grounds:

15. The Interrogatory calls for information that is duplicative of, or substantially overlaps with information responsive to, a prior answered Interrogatory.

16. The Interrogatory misconstrues, or improperly seeks to limit, the types of information may show to prove the elements of certain of Plaintiff's surviving claims or rebuff any element of any defense thereto.

17. The Interrogatory seeks information equally or more accessible to the Armistice Defendants, including information from publicly available documents or those already in the possession, custody, or control of the Armistice Defendants.

18. The Interrogatory incompletely quotes the relevant statement. The complete statement is "coerced the issuance of the June 24 and 25, 2020 press releases."

19. The modifier "all" further renders the Interrogatory overbroad and unduly burdensome.

20. The Interrogatory seeks information that was potentially documented in spoliated evidence—*i.e.*, the text messages Defendants Boyd and Maher deleted over the course of at least two, separate spoliation events.

21. The Interrogatory takes the form of a contention interrogatory concerning the Armistice Defendants, which is premature and inappropriate until deposition discovery as to the Armistice Defendants is complete.

22. The Armistice Defendants' definition of "You" is overbroad, unduly burdensome, not proportional to the needs of this litigation, improperly imposes duties on non-parties, and improperly invades on the attorney-client privilege, the attorney work product doctrine, and other applicable privileges. Plaintiff thus construes "You" as meaning only Plaintiff, and not counsel or any other third parties.

Subject to and without waiving the above objections, Plaintiff answers that the following facts (or absence of facts) show the Armistice Defendants' involvement in the Attwill Press Release.

- On June 8, 2020, the Armistice Defendants moved to have Andrei Floroiu appointed as CEO. As part of Floroiu's discussions with the Armistice Defendants, Floroiu shared with them a PowerPoint presentation outlining his plans for the Company, including an aggressive, public relations campaign to raise Vaxart's media profile.

- Beginning at least in early June 2020, the Armistice Defendants exchanged many texts and had many substantive calls with Andrei Floroiu.

- On June 23, 2020, Boyd spoked with Floroiu on the phone with an elapsed call time of approximately 15 minutes. That same day, Maher and Floroiu exchanged calls with a total elapsed time of approximately 20-23 minutes.

- On June 24, 2020, Maher and Floroiu both texted and spoke via phone in the afternoon. After that call, Maher texted Floroiu: "Can you please make sure that when we release news that it hits the tape and that it hits early in the morning, like before 8 am, etc." Floroiu responded that Vaxart press releases did issue in the prior days by 8 AM and stated "I guess you didn't like the +20%, and thought it should've been +50%." Maher responded: "No they I didn't see them hit the tape, please make sure that lifesci and brant put them out in a way that they hit the news wires."

- On June 24, 2020, the only press releases Vaxart had prepared where the Attwill and the OWS Press Releases. Thereafter, the only press release Vaxart issued in July was a press release on July 13, 2020 titled "Vaxart Raises Approximately $90M in Gross Proceeds Through its At-The-Market-Facility." The events underlying this press release did not materialize until after June 25, 2020.

Plaintiff will supplement his response and objections to this contention Interrogatory when such interrogatory becomes ripe—that is, after the Boyd and Maher depositions.

**INTERROGATORY NO. 22:**

Identify all information that You believe Boyd, Maher, or Armistice possessed about Attwill, Vaxart's due diligence into Attwill, or the Attwill Press Release prior to the issuance of the Attwill Press Release. For purposes of this Interrogatory, "Identify" means to describe the information, state the source of the information, identify the date on which Boyd, Maher, or Armistice learned the information, and state all facts supporting Your belief.

**ANSWER:**

Plaintiff objects to this Interrogatory on the following grounds:

1. The Interrogatory has discrete subparts, which, under the Federal Rules, should properly be counted as distinct interrogatories.

2. The Interrogatory calls for information that is duplicative of, or substantially overlaps with information responsive to, a prior answered Interrogatory.

3. The Interrogatory misconstrues, or improperly seeks to limit, the types of information may show to prove the elements of certain of Plaintiff's surviving claims or rebuff any element of any defense thereto.

4. The Interrogatory seeks information equally or more accessible to the Armistice Defendants, including information from publicly available documents or those already in the possession, custody, or control of the Armistice Defendants.

5. The modifier "all" further renders the Interrogatory overbroad and unduly burdensome.

6. The Interrogatory takes the form of a contention interrogatory concerning the Armistice Defendants, which is premature and inappropriate until deposition discovery as to the Armistice Defendants is complete.

7. The Armistice Defendants' definition of "You" is overbroad, unduly burdensome, not proportional to the needs of this litigation, improperly imposes duties on non-parties, and improperly invades on the attorney-client privilege, the attorney work product doctrine, and other applicable privileges. Plaintiff thus construes "You" as meaning only Plaintiff, and not counsel or any other third parties.

Given the above-listed objections, Plaintiff will supplement his response and objections to this contention Interrogatory when such interrogatory becomes ripe—that is, after the Boyd and Maher depositions. In the meantime, Plaintiff generally refers the Armistice Defendants to Plaintiff's response to Interrogatory Nos. 11, 14, and 21.

**INTERROGATORY NO. 23:**

State all facts supporting Your belief that Boyd, Maher, or Armistice knew the June 25, 2020 Attwill Press Release was false or misleading on or prior to June 29, 2020.

**ANSWER:**

Plaintiff objects to this Interrogatory on the following grounds:

1. The Interrogatory has discrete subparts, which, under the Federal Rules, should properly be counted as distinct interrogatories.

2. The Interrogatory calls for information that is duplicative of, or substantially overlaps with information responsive to, a prior answered Interrogatory.

3. The Interrogatory misconstrues, or improperly seeks to limit, the types of information may show to prove the elements of certain of Plaintiff's surviving claims or rebuff any element of any defense thereto.

4. The Interrogatory seeks information equally or more accessible to the Armistice Defendants, including information from publicly available documents or those already in the possession, custody, or control of the Armistice Defendants.

5. The modifier "all" further renders the Interrogatory overbroad and unduly burdensome.

6. The Interrogatory takes the form of a contention interrogatory concerning the Armistice Defendants, which is premature and inappropriate until deposition discovery as to the Armistice Defendants is complete.

7. The Armistice Defendants' definition of "You" is overbroad, unduly burdensome, not proportional to the needs of this litigation, improperly imposes duties on non-parties, and improperly invades on the attorney-client privilege, the attorney work product doctrine, and other applicable privileges. Plaintiff thus construes "You" as meaning only Plaintiff, and not counsel or any other third parties.

Given the above-listed objections, Plaintiff will supplement his response and objections to this contention Interrogatory when such interrogatory becomes ripe—that is, after the Boyd and Maher depositions. In the meantime, Plaintiff generally refers the Armistice Defendants to:

- Plaintiff's response to Interrogatory Nos. 11, 14 and 21; and
- The Press Release itself which the Armistice Defendants had in their possession before they traded, the timing of which they dictated and had every opportunity upon which to do due diligence as Board members and to discuss with Vaxart's management or counsel.

**INTERROGATORY NO. 24:**

Identify all information that You believe Boyd, Maher, or Armistice possessed about the Non-Human Primate Study prior to the issuance of the OWS Press Release. For purposes of this Interrogatory, "Identify" means to describe the information, state the source of the information, identify the date on which Boyd, Maher, or Armistice learned the information, and state all facts supporting Your belief.

**ANSWER:**

Plaintiff objects to this Interrogatory on the following grounds:

1. The Interrogatory has discrete subparts, which, under the Federal Rules, should properly be counted as distinct interrogatories.
2. The Interrogatory calls for information that is duplicative of, or substantially overlaps with information responsive to, a prior answered Interrogatory.
3. The Interrogatory misconstrues, or improperly seeks to limit, the types of information may show to prove the elements of certain of Plaintiff's surviving claims or rebuff any element of any defense thereto.
4. The Interrogatory seeks information equally or more accessible to the Armistice Defendants, including information from publicly available documents or those already in the possession, custody, or control of the Armistice Defendants.
5. The modifier "all" further renders the Interrogatory overbroad and unduly burdensome.
6. The Interrogatory takes the form of a contention interrogatory concerning the Armistice Defendants, which is premature and inappropriate until deposition discovery as to the Armistice Defendants is complete.
7. The Armistice Defendants' definition of "You" is overbroad, unduly burdensome, not proportional to the needs of this litigation, improperly imposes duties on non-parties, and improperly invades on the attorney-client privilege, the attorney work

product doctrine, and other applicable privileges. Plaintiff thus construes "You" as meaning only Plaintiff, and not counsel or any other third parties.

Given the above-listed objections, Plaintiff will supplement his response and objections to this contention Interrogatory when such interrogatory becomes ripe—that is, after the Boyd and Maher depositions. In the meantime, Plaintiff generally refers the Armistice Defendants to

- Plaintiff's response to Interrogatory Nos. 11, 14, and 19-20;
- The management and director discussions regarding the Non-Human Primate Study at the June 8, 2020 Board meeting, upon which Boyd and Maher had every opportunity to conduct due diligence and discuss with Vaxart management, directors, and counsel before seeking preclearance to trade and subsequently trading Vaxart shares; and
- The OWS Press Release itself, the contents of which the Armistice Defendants (i) possessed or were made aware of before the OWS Press Release issued, as suggested by Boyd's email to Vaxart the evening of June 25, 2020; or alternatively, (ii) recklessly instructed Vaxart to issue, less Armistice release the news itself, without knowing the contents in full and performing sufficient due diligence.

**<u>INTERROGATORY NO. 25</u>:**

State all facts supporting Your belief that Boyd, Maher, or Armistice knew the OWS Press Release was false or misleading on or prior to June 29, 2020.

**<u>ANSWER</u>:**

Plaintiff objects to this Interrogatory on the following grounds:

1. The Interrogatory has discrete subparts, which, under the Federal Rules, should properly be counted as distinct interrogatories.
2. The Interrogatory calls for information that is duplicative of, or substantially overlaps with information responsive to, a prior answered Interrogatory.
3. The Interrogatory misconstrues, or improperly seeks to limit, the types of information may show to prove the elements of certain of Plaintiff's surviving claims or rebuff any element of any defense thereto.

4. The Interrogatory seeks information equally or more accessible to the Armistice Defendants, including information from publicly available documents or those already in the possession, custody, or control of the Armistice Defendants.

5. The modifier "all" further renders the Interrogatory overbroad and unduly burdensome.

6. The Interrogatory takes the form of a contention interrogatory concerning the Armistice Defendants, which is premature and inappropriate until deposition discovery as to the Armistice Defendants is complete.

7. The Armistice Defendants' definition of "You" is overbroad, unduly burdensome, not proportional to the needs of this litigation, improperly imposes duties on non-parties, and improperly invades on the attorney-client privilege, the attorney work product doctrine, and other applicable privileges. Plaintiff thus construes "You" as meaning only Plaintiff, and not counsel or any other third parties.

Given the above-listed objections, Plaintiff will supplement his response and objections to this contention Interrogatory when such interrogatory becomes ripe—that is, after the Boyd and Maher depositions. In the meantime, Plaintiff generally refers the Armistice Defendants to:

- Plaintiff's response to Interrogatory Nos. 11, 14, and 19-20;
- The management and director discussions regarding the Non-Human Primate Study at the June 8, 2020 Board meeting, upon which Boyd and Maher had every opportunity to conduct due diligence and discuss with Vaxart management, directors, and counsel before seeking preclearance to trade and subsequently trading Vaxart shares; and

The OWS Press Release itself, the contents of which the Armistice Defendants possessed as of June 26, 2020, by the latest, and had every opportunity to conduct due diligence and discuss with Vaxart management, directors, and counsel before they traded on June 26 or 29, 2020.

DATED: June 19, 2024

**HAGENS BERMAN SOBOL SHAPIRO LLP**

*/s/ Reed R. Kathrein*

Reed R. Kathrein (139304)
Lucas E. Gilmore (250893)
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
reed@hbsslaw.com
lucasg@hbsslaw.com

Steve W. Berman (pro hac vice)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com

Raffi Melanson (pro hac vice)
1 Faneuil Hall Sq., 5th Floor
Boston, MA 02109
Telephone: (617) 482-3700
Email: raffim@hbsslaw.com

*Lead Counsel for Plaintiffs*

# VERIFICATION

I, Wei Huang, hereby state that I have reviewed the foregoing documents titled:

**LEAD PLAINTIFF WEI HUANG'S OBJECTIONS & RESPONSES TO THE ARMISTICE DEFENDANTS' INTERROGATORIES TO ALL PLAINTIFFS, SET TWO**

I hereby verify that my responses in the foregoing document are true and correct based on the information available to me, and to the best of my knowledge, information, and belief. I reserve the right to supplement and/or revise my responses to correct any errors or omissions, including on the basis of any subsequently discovered documents or information.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed on June 19, 2024.




Wei Huang

**CERTIFICATE OF SERVICE**

I hereby certify that on June 19, 2024, I caused the foregoing document to be served via email on counsel for all surviving parties in this action. I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED: June 19, 2024
at Berkeley, CA

*/s/ Reed R. Kathrein*
Reed R. Kathrein