UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re VAXART, INC. SECURITIES LITIGATION | Case No. 20-cv-05949-VC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SPOLIATION SANCTIONS**<br><br>Re: Dkt. No. 344 |

    This is a securities fraud case. The plaintiffs allege that two executives at a hedge fund conspired to issue press releases that gave investors the misimpression that a company in which the hedge fund was invested was on the verge of mass-producing a vaccine for COVID-19 (and receiving substantial government funding in support of that effort). During the course of discovery, it was revealed that those two executives had both deleted from their phones the text messages between them, and that the deleted text messages could not be recovered. The plaintiffs moved for spoliation sanctions. It is clear that the defendants failed to take reasonable efforts to preserve their text messages. It is also clear that the plaintiffs are prejudiced by the absence of the messages. And based on an evidentiary hearing, several rounds of briefing, and an *in camera* review, it is more likely than not that one of the individual defendants deleted the text messages intentionally. Therefore, the plaintiffs' motion for sanctions is granted in part and denied in part. At trial, the plaintiffs will be entitled to a permissive inference as to scienter.[1]

---

[1] The order to show cause why Akin Gump should not be sanctioned is discharged. The lawyers for Akin handled themselves very poorly after learning about the deletions. But they are not to blame for the deletions themselves.

# I

Vaxart is a company focused on the development of oral vaccines that can be administered in pill form. In late June 2020, Vaxart issued two press releases that the plaintiffs allege were misleading. The first, issued on June 25, 2020, stated that Vaxart had signed a memorandum of understanding with Attwill Medical Solutions, a biotech company with expertise in a manufacturing process necessary to create Vaxart's vaccine prototypes. The press release said that the partnership would "enabl[e] production of a billion or more COVID-19 vaccine doses per year." The second press release was issued the next day, June 26, 2020, and stated that Vaxart's COVID-19 vaccine had been "selected for the U.S. government's Operation Warp Speed" (a Trump administration program aimed at facilitating the development of a COVID-19 vaccine). The plaintiffs say the former release was misleading because Attwill did not actually have the capability to produce one billion or more doses, and the latter because Vaxart was not actually selected for Operation Warp Speed, but for a separate, loosely related nonhuman primate study.

The plaintiffs allege further that Armistice Capital (a hedge fund that once had a majority share in Vaxart) and certain of its employees conspired to issue the misleading press releases and cause Vaxart's share price to pop, allowing Armistice to sell its shares for a substantial profit. In particular, they assert that Steve Boyd (Armistice's founder and sole owner) and Keith Maher (a managing director), both of whom were then Vaxart board members, developed and executed the scheme.

## A

During the period relevant to this litigation, Boyd and Maher regularly texted other people about matters related to Vaxart. Armistice policy prohibited discussing substantive business over text. *E.g.*, Dkt. Nos. 343-6 at 49:20–23; 366-13 ¶ 18. But during the period at issue in this lawsuit—and perhaps because, as Boyd put it, "some rules didn't necessarily apply" during the pandemic, Dkt. No. 426 (Ev. Hr'g Tr.) at 8:11–15—Boyd and Maher did often send texts about work matters beyond mere scheduling or sharing articles. To give just a few

2

examples: In October 2019, Boyd texted Armistice's head trader, Sergio Smiriglio, about a forthcoming press release discussing Boyd's and Maher's appointments to the Vaxart board. *See* Ev. Hr'g Tr. at 14:12–15:10; Ev. Hr'g Ex. 27-A. Before a May 2020 Vaxart board meeting, Maher texted Andrei Floroiu (a former colleague of Boyd's who later became Vaxart CEO), "Please echo points I sent in my email please." Ev. Hr'g Tr. at 128:5–12. In June 2020, before Floroiu's first day as Vaxart CEO, Boyd texted him, "Tomorrow is game time! … Let's also focus on the PR plan, in particular for Tuesday AM! You should work with Faith on getting that out[.]" *Id.* at 10:19–11:16; Ev. Hr'g Ex. 26-G. Later that month, after Floroiu said he was preparing for a presentation, Maher texted him, "Please try to focus on Vaxart, and if you don't need to, please try not to mention Armistice Capital." Ev. Hr'g Tr. at 130:20–131:6; Ev. Hr'g Ex. 28-K. *See also generally* Ev. Hr'g Tr. at 201:5–17 (Armistice's counsel acknowledging that "the records show that [Boyd and Maher were] having business-related conversations" over text); Dkt. No. 343-12 (compilation of texts regarding Vaxart).

Boyd and Maher also regularly texted each other around the time the press releases were issued. For instance, Boyd and Maher sent each other 629 texts in June 2020. *See* Dkt. Nos. 344-2; 344-3; 344-4. They sent each other at least 75 texts on June 24 and 25 (the days preceding each allegedly misleading press release). *Id.*

On July 29, 2020, after a *New York Times* article raised concerns that the press releases had misled investors and the Department of Justice requested information from Vaxart, Armistice's general counsel sent all employees a document preservation notice. The notice instructed them to "not delete, discard, destroy, erase, or alter" any documents related to Vaxart, including electronic communications. Ev. Hr'g Ex. 50. Both Boyd and Maher received this notice, and also discussed their preservation obligations with in-house and outside counsel. Dkt. Nos. 366-13 ¶ 10; 366-14 ¶ 7. Neither had their phones backed up. Dkt. No. 343-6 at 43:1–14.

**B**

Several years into the case, the plaintiffs learned that the thread of texts between Boyd and Maher had been deleted from both phones. What happened to the texts on Maher's phone is

3

relatively clear. Until he received the litigation hold from Armistice's general counsel, Maher had a practice of regularly deleting all text messages on his phone. Ev. Hr'g Tr. at 112:3–114:4; 154:1–9. Thus, when the litigation hold was issued, Maher had already deleted all of his work-related texts from June 2020. *See id.* at 154:10–23. After receiving the hold, he stopped deleting texts related to Vaxart. *Id.* at 113:17–114:4. But at some point or points—he testified that he did not recall exactly when or how often—Maher had phone problems and asked his son for help, and his son factory reset the phone. *Id.* at 166:14–20. Apparently because of the factory reset, by the time efforts to retrieve the deleted texts were made in late March or April 2021, texts from before March 19 were unrecoverable. *See* Dkt. Nos. 423 ¶ 14; 443 at 5; 366-14 ¶¶ 27–37.

What happened with the texts on Boyd's phone is less clear. In response to the plaintiffs' motion for sanctions, the defendants explained Boyd's deletion as follows:

> [In March 2021], Boyd was virtually seeing a physical therapist three times a week using Zoom on his iPhone 11 Pro. During a physical therapy session, on or around March 29 or 30, 2021, Maher repeatedly called Boyd. Each time that Maher called Boyd, Boyd's Zoom feed was interrupted by a screen prompting Boyd to answer the call. To stop the disruptive notifications, Boyd tried to send an automated text telling Maher that he was unavailable. In doing so, Boyd inadvertently swiped and/or clicked his text thread with Maher (Boyd is not certain of the exact mechanics) and accidentally deleted the thread.

Dkt. No. 366 at 4 (internal citations omitted). Boyd also gave this explanation in his deposition and in a declaration. Dkt. Nos. 366-13 ¶ 26 (declaration saying Boyd "inadvertently deleted the text thread" on "either March 29 or March 30, 2021," after "Maher called [his] cellphone multiple times while [he] was participating in a Zoom physical therapy session"); 385-4 at 20:8–21:7, 24:20–25:17, 30:13–32:8, 33:1–6, 36:17–37:1 (affirming declaration and offering similar testimony).

At the evidentiary hearing, the plaintiffs presented evidence rebutting certain elements of this story. They introduced a log of Boyd's Skype calls with his physical therapist, which showed that Boyd did not attend Skype physical therapy on March 30.[2] Ev. Hr'g Tr. at 40:18–21;

---

[2] Although Boyd originally stated that he attended physical therapy on Zoom, he later clarified

Ev. Hr'g Ex. 33. Boyd did attend Skype physical therapy on March 29. Ev. Hr'g Tr. at 40:22–25. But the plaintiffs also introduced Boyd's phone call records, which showed that there were no calls between Boyd and Maher on March 29. *Id.* at 44:18–23; Ev. Hr'g. Ex. 14 at 823–25.

In response, at the evidentiary hearing, Boyd suggested that he had misremembered the details. Ev. Hr'g Tr. at 45:24–46:5. He suggested that he could have deleted the texts during a session on a different date, such as March 18. *Id.* at 48:20–50:13. He also suggested that the person calling him could have been not Maher but Armistice's then–general counsel, Brian Kohn, and that he could have texted Maher to tell Maher to talk to Kohn. *Id.* at 54:21–55:23. He noted that his call logs showed two calls from Kohn during his March 29 physical therapy session. *Id.*; *see also* Ev. Hr'g Ex. 14 at 825.

Boyd insisted that although he could have misremembered the exact details, he had a "very distinct memory" of accidentally deleting the thread while on Skype physical therapy. Ev. Hr'g Tr. at 33:24–34:1; *see also id.* at 45:18–19 ("I remember very clearly it happening during a physical therapy session."). Although with somewhat less certainty, he maintained that after getting called, he sent Maher a pre-written "Can I call you back?" text, and then manually sent a follow-up saying, "30 minutes." *Id.* at 65:12–23. Boyd also testified that, shortly after deleting the texts, he told Brian Kohn about it. *Id.* at 38:4–39:8; 81:12–82:2. And once he told Kohn, he said, Kohn began taking steps to hire a forensics company to see if the texts could be recovered. *Id.* at 39:10–15, 56:14–24.

By the end of the evidentiary hearing, it was hard to know whether the plaintiffs had proven by a preponderance of the evidence that Boyd had intentionally deleted his texts. On the one hand, his story was fishy to begin with, and some of its details were undermined by the call records. On the other hand, memory is often imperfect. *See id.* at 180:23–181:6. And his call logs indicated that Kohn had called Boyd twice during Boyd's March 29 physical therapy session (although the Boyd–Maher texts from March 2021, which had been introduced into evidence, did

---

that it was on Skype.

not show Boyd texting Maher that he'd call him later during that session). And as the defendants emphasized, there didn't seem to be any reason for him to have intentionally deleted the texts in March 2021, about nine months after the litigation hold and seven months after the initiation of this lawsuit. *See id.* at 178:25–180:13, 188:24–189:5, 195:23–24; Dkt. No. 443 at 10–11 (Armistice defendants' post-hearing brief).

## C

The post-hearing briefs, however, revealed some additional information—information that made things look very different. For one thing, the plaintiffs pointed out that Kohn had only called Boyd once during Boyd's March 29 physical therapy session; what appeared as two calls in the call logs was actually one call that was forwarded to voicemail. Dkt. No. 436 at 10 & n.8. With that clarification, there was no late-March pattern of physical therapy and phone calls that aligned with Boyd's recollection—and certainly not with his initial recollection that Maher probably called him three or four times before the texts were deleted. *See* Dkt. Nos. 436-5; 385-4 at 29:8–25. The defendants did not respond to this point or even attempt to offer a timeline consistent with Boyd's version of events. *See* Dkt. No. 443.

More importantly, the post-hearing briefing referenced evidence that supplied, for the first time, an explanation for why Boyd might have been motivated to delete his texts at that particular time—namely, March 2021. Roughly three months earlier, the Department of Justice—which had subpoenaed Armistice—raised the possibility of collecting text messages from Armistice. Dkt. No. 444-1 ¶ 4. To that end, Armistice's outside counsel (Akin Gump) reached out to an ediscovery and forensics company called Contact in January 2021 about collection and preservation of texts. *See id.* ¶ 6 (declaration from Armistice's outside counsel stating that she reached out to the forensics company in January 2021); Dkt. No. 366-10 ¶¶ 5–7 (declaration from same counsel stating that "In or around early 2021, Akin was taking steps to engage Contact" and that "Akin engaged Contact on March 31, 2021"). Boyd and his lawyers had previously attempted to create the impression that outside counsel did not reach out to the forensics company until after Boyd deleted his texts (thus giving the impression that Boyd

6

wouldn't have been motivated to delete his texts by the specter of a forensics company coming to image his phone). *See, e.g.*, Dkt. No. 366-13 ¶ 29 (Boyd stating in declaration that "After I informed Armistice of" the deletion, "I learned . . . that Armistice, through its attorneys, had thereafter contracted with a forensic vendor"); Ev. Hr'g Tr. at 39:10–15.[3]

The disclosure of this new information led to further proceedings. Armistice was ordered to produce a privilege log; the exact terms were left for the parties to negotiate, but the Court suggested identifying any communication or document between Boyd, Maher, Armistice's in-house counsel, Armistice's outside counsel, and the forensics company, "relating to the deletion of texts, the recovery of texts, the imaging of phones, and . . . the preservation of texts." Dkt. Nos. 474 at 2; 468 at 28:7–13. (The parties ultimately adopted this suggestion. Dkt. No. 474 at 3.) The defendants were also encouraged to consider voluntarily waiving privilege over their communications relating to those issues. Dkt. No. 468 at 6:4–11, 18:2–6. Finally, a briefing schedule was set for adjudication of a motion to compel production of documents (in the event the parties could not informally resolve their dispute over whether and to what extent the defendants had already waived privilege). *Id.* at 28:14–29:1.

Following that CMC, the defendants voluntarily waived privilege over, and produced, documents and communications covered by the privilege log order. Dkt. No. 474 at 3. The documents were redacted as to "portions that contained opinion work product" or that "contained privileged communications beyond the scope of Armistice's waiver." *Id.* at 3 n.2. The plaintiffs moved to compel production or *in camera* review of further documents and communications, including the previously produced documents in un- or less-redacted form. Dkt. No. 471-3 at 1. The defendants opposed the motion to compel production, but suggested that they would not object to an *in camera* review. *See* Dkt. No. 474 at 8. The Court therefore ordered the defendants

---

[3] The defendants tried to argue that they had been clear from the start about the timeline with respect to the forensics company. *See* Dkt. No. 468 at 11:9–19, 12:7–15. They were not. While it was technically true that Akin took steps to engage the company "in or around early 2021," the obvious implication was that these steps were first taken only after Boyd deleted his texts. *See id.* at 12:7–9, 12:16–13:18, 14:8–11.

to submit for such review unredacted versions of the documents they had previously produced to the plaintiffs in redacted form, or withheld from the plaintiffs, as privileged or protected work product; as well as communications between Akin and the government or between Armistice and Armistice's lawyers about the government's investigation into Vaxart. Dkt. No. 484 at 18:6–20:22.

**D**

Two things stood out from the materials reviewed *in camera* and those over which Armistice waived privilege. First, as of mid-May 2021, the evidence suggested that Boyd had deleted his texts on March 19—not on March 29 or 30, as Boyd later claimed. *See* In Camera Rev. Docs. ("ICR") Vol. I 65 [Armistice-TPLog00000392–94]; 41 [Arm-Himmelberg_0037512–13].[4] Second, the evidence showed that events occurring in March 2021 could have motivated Boyd to delete his texts when he did. During that period, Armistice was actively engaged in discovery with the U.S. government. Armistice made productions to both the SEC and DOJ on February 24, 2021, and again on April 15, 2021. *See* ICR Vol. II 270–77 [Arm_VC_1688–96].[5] Even more significantly, in March 2021, efforts by Armistice's lawyers to finalize an agreement with the forensics company for the collection of texts intensified. *See* ICR Vol. I 65 at 2 [Armistice-TPLog00000393]; 34 at 1 [Arm-Himmelburg_0037323]; *see also* 52 at 6 [Armistice-TPLog00000081].[6]

That Boyd likely deleted his texts no later than March 19, rather than later in the month as he initially testified and as the defendants initially argued, is supported by several pieces of

---

[4] At the hearing, counsel for the defendants agreed that facts and communications not reflective of Armistice's lawyers' opinions were within the scope of the defendants' privilege waiver.
[5] Armistice's emails to the U.S. government containing its productions to the government are not conceivably privileged.
[6] Even assuming that information about when the lawyers communicated about retaining the forensics company is covered by privilege or work-product protection, any such protection over that information is waived. The defendants put their engagement with that company at issue by noting that "counsel engaged [the company]" within two days of Boyd's deletion and by using this fact to argue that they had diligently tried to recover the deleted texts. *See, e.g.*, Dkt. Nos. 366 at 6 (opposition to motion for sanctions); 366-13 ¶ 29 (declaration from Boyd discussing retention of forensics company); *Moeller v. Taco Bell Corp.*, 2009 WL 10710495, at *2–3 (N.D. Cal. Oct. 6, 2009).

8

circumstantial evidence. For instance, after sending comments on the revised statement of work to Kohn on March 17, Armistice's outside counsel followed up with Kohn on March 22 and 24. And on March 25, outside counsel had a call with Kohn where Kohn "explained hesitance." ICR Vol. I 65 at 2 [Armistice-TPLog00000393]. Then, on the same day, Kohn said he was "fine with" the SOW—but that Armistice should "do nothing" until the government renewed its December 2020 expression of desire for the text messages. *See id.* The most natural interpretation of these communications (given all the other evidence) is that Kohn was hesitant to retain a vendor for text message collection—and did not want to circle back with the government regarding the issue of texts—because Boyd's texts had already been deleted. Separately, the earliest surviving Boyd–Maher text was sent in the afternoon on March 19, suggesting that the deletion was before that time. Ev. Hr'g Ex. 30-A.[7]

## II

Sanctions for spoliation of electronically stored information are governed by Rule 37(e). *See Jones v. Riot Hospitality Group*, 95 F.4th 730, 734–35 (9th Cir. 2024). Rule 37(e) contemplates two levels of sanctions. Both require, as a threshold matter, that ESI has been lost "because a party failed to take reasonable steps to preserve it," and that the lost ESI "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). Upon a finding of

---

[7] What exactly happened to these texts was previously unclear: In a September 2024 letter submitted as an exhibit for the evidentiary hearing, Armistice's counsel stated that they had been "unable to recover any text messages from the March 2021 time frame." Ev. Hr'g Ex. 59 at 4. Under the impression that basically any Boyd–Maher text messages from March must have been deleted and then recovered (based on the suggested deletion dates in late March), the Court ordered the parties to explain "how these text messages were recovered" in their post-hearing briefing. Dkt. No. 425 at 2. Although this didn't stand out at the time, the way Armistice responded to that order suggests that perhaps those surviving texts were never recovered—that perhaps they didn't need to be because they were never deleted. In their brief, the defendants stated that the forensics company "obtain[ed]" Boyd–Maher texts from March 19 to 31. Dkt. No. 443 at 5. They cited to a declaration from an employee of that company, which stated that the backup the company did on Boyd's phone "contained text messages" between Boyd and Maher, including text messages in group chats involving other people (which group chats were never deleted). Dkt. No. 443-1 ¶ 5. It also noted that those text messages were "obtained from" the backup. *Id.* ¶ 9. But it never said that they were recovered, or used any other language that would necessarily mean they had been deleted. If these texts were neither recovered nor deleted, and Boyd deleted his entire thread with Maher (as nobody disputes), then it would only make sense that he deleted that thread before those texts were sent—that is, before or on March 19.

"prejudice to another party from loss of the information," a court "may order measures no greater than necessary to cure that prejudice." Fed. R. Civ. P. 37(e)(1). Upon "finding that the party" responsible for the loss "acted with the intent to deprive another party of the information's use in the litigation," the court may award more serious sanctions, including a mandatory or permissive adverse inference, or even terminating sanctions. Fed. R. Civ. P. 37(e)(2).

Considering all of the evidence, spoliation sanctions are appropriate. The defendants did not take reasonable steps to preserve their text messages. It's almost certain that Boyd and Maher discussed Vaxart matters in the deleted texts—given their timing and given the extent to which they texted about work-related matters generally—which means the plaintiffs are prejudiced by not having access to those texts. And it is more likely than not that Boyd deleted his texts intentionally.

### A

The defendants failed to take reasonable steps to preserve their texts. Boyd and Maher are the key individuals in this case, and the key individuals with respect to Armistice's involvement with Vaxart. But after the litigation hold was issued, neither Boyd nor Maher backed up or otherwise preserved their texts. Indeed, Maher had already deleted his, and yet told nobody at Armistice so that efforts could be taken to recover them from his phone or ensure they were preserved from the phones of the people he texted. *See* Ev. Hr'g Tr. at 137:5–17. Similarly, Maher gave his phone to his son to try to fix it, without warning his son about the litigation hold (or, as far as the record indicates. doing anything else to ensure that his son did not do anything that could delete texts). *See* Dkt. No. 366-14 ¶¶ 28–30. For his part, Boyd (even accepting his version of events), "haphazardly swiped and/or clicked" on his phone so as to delete his text thread with Maher, without ever having backed up his phone. Dkt. No. 366-13 ¶¶ 26–27. And documents reviewed *in camera* show that the importance of preserving texts was communicated to Boyd. *See* ICR Vol. I 67 at 2 [Armistice-TPLog00000397].[8]

---

[8] Any assertion of privilege as to this fact is waived. The defendants put in issue their communications with counsel about their preservation obligations, pointing to it as evidence of

10

**B**

The deletion prejudices the plaintiffs.[9] For Rule 37(e) purposes, prejudice exists where the spoliation impairs the other party's "ability to go to trial" or threatens "to interfere with the rightful decision of the case." *RG Abrams Insurance v. Law Offices of C.R. Abrams*, 342 F.R.D. 461, 507 (C.D. Cal. 2022). The loss of the texts clearly threatens to interfere with the rightful decision of this case. As will be discussed more fully in a ruling on the defendants' motion for summary judgment, there is plenty of evidence that Boyd and Maher were key players in a scheme to boost Vaxart's stock price. The evidence shows that Boyd and Maher both regularly sent business-related texts, and that they texted each other frequently during the period crucial to this litigation. Text messages on the days surrounding the publication of the allegedly misleading press releases could shine light on important issues in the case, such as Boyd's and Maher's knowledge of the contents of the press releases. The defendants are right that many, many other documents have been produced, including Boyd's and Maher's texts with other people and Boyd's and Maher's emails. *See* Dkt. No. 366 at 2. But those communications do not substitute for the text messages sent exclusively between two of the key individuals in the case.

**C**

The plaintiffs have shown that it is more likely than not that Boyd deleted his texts "with the purpose of avoiding its discovery by an adverse party." *Jones*, 95 F.4th at 735.

As an initial matter, courts often avoid deciding the proper burden of proof for sanctions because the same conclusion would be reached whether the standard was preponderance of the evidence or clear and convincing evidence. *See, e.g.*, *In re Facebook, Inc. Consumer Privacy*

---

their efforts to preserve ESI. *See* Dkt. No. 366 at 2–3.

[9] Rule 37(e)(2) does not require a finding of prejudice before an award of sanctions under that subsection. According to the Advisory Committee Notes, this is because "the finding of intent required by the subdivision can support not only an inference that the lost information was unfavorable to the party that intentionally destroyed it, but also an inference that the opposing party was prejudiced by the loss of information that would have favored its position." Fed. R. Civ. P. 37 advisory committee's notes to 2015 amendment; *see also Jones*, 95 F.4th at 736. Nevertheless, it's worth explaining why there's prejudice here, because that prejudice supports both the determination of what sanctions are appropriate and the finding of intent. Moreover, because, as discussed below, Maher did not delete his texts intentionally, a finding of prejudice is necessary to impose sanctions against him under Rule 37(e)(1).

*User Profile Litigation*, 655 F. Supp. 3d 899, 904, 926–27 (N.D. Cal. 2023). In this case, it's at least possible that the evidentiary standard for Rule 37(e) sanctions matters. The Ninth Circuit has not addressed this question, and courts are divided on it. *Compare, e.g.*, *OmniGen Research v. Yongqiang Wang*, 321 F.R.D. 367, 372 (D. Ore. 2017), *with Hynix Semiconductor Inc. v. Rambus Inc.*, 897 F. Supp. 2d 939, 978 (N.D. Cal. 2012). But in civil cases, the Supreme Court has generally held that "unless a statute, a rule or the Constitution requires a higher standard of proof," the preponderance standard should apply. *WeRide Corp. v. Kun Huang*, 2020 WL 1967209, at *9 (N.D. Cal. Apr. 24, 2020) (collecting cases). Exceptions to this principle are uncommon and involve very serious actions, such as termination of parental rights, involuntary commitment, and deportation. *Id.* Imposition of discovery sanctions, while a serious matter, is "not so important as to demand that the facts underlying" the sanctions "be established by clear and convincing evidence." *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 777–78 (7th Cir. 2016). Accordingly, the preponderance standard will apply here.

The plaintiffs have shown by a preponderance of the evidence that Boyd's deletion was intentional. First, his explanation—that he accidentally deleted the thread while trying to swipe back to his Skype physical therapy—is not the strongest on its own terms. Second, and more importantly, there are too many inconsistencies between the documentary evidence and Boyd's version of events. In mid–late March 2021, Boyd attended Skype physical therapy on March 18, 22, 25, and 29. Ev. Hr'g Ex. 33. He did not attend Skype physical therapy on March 19, which is the most likely date of deletion. *See id.* Nor did he attend physical therapy on March 16 or 17—which were in any event likely before the deletion, given that Boyd and Maher texted so regularly and no texts from before March 19 survived. *See id.* And during the Skype physical therapy sessions he did have during that period, his call logs do not show multiple calls from Maher or Kohn in short succession. *See* Dkt. No. 436-5; Ev. Hr'g Ex. 14 at 813, 818, 822, 825. In their post-hearing brief, the defendants did not attempt to explain these inconsistencies or reconcile their explanation with the documentary evidence.

Third, the timing reveals a motive for Boyd to intentionally delete his texts in March.

12

Whether he deleted them on March 19, 29, or 30, he did so in the midst of rolling productions from Armistice to the U.S. government—and more importantly, as negotiations with the forensics company intensified and collection and imaging of his texts grew more and more certain. The increasing likelihood that his texts might be collected and turned over to the government explains why he would choose mid–late March to delete his thread with Maher. This blows a hole in one of Armistice's main points in defense. *See Wisk Aero LLC v. Archer Aviation Inc.*, 2023 WL 2277112, at *10 (N.D. Cal. Feb. 28, 2023) (referring to timing as the "most decisive factor in the intent analysis" (cleaned up)). At the July 2 hearing, the defendants emphasized that there is no evidence confirming that Boyd was kept up to date on the negotiations with the forensics company. But Boyd and Kohn regularly spoke on the phone in March 2021. *See* Ev. Hr'g Ex. 14 at 773–829. It is easy to believe that Kohn mentioned the advancing negotiations during one of these many calls, and virtually impossible to believe that Boyd was unaware that the imaging of his cell phone for a government investigation was impending.

      Fourth, the fact that Boyd gave misleading testimony about the timing of Armistice's decision to contact a forensics company bolsters the conclusion that he intentionally deleted the texts and testified falsely about it at the evidentiary hearing. As discussed previously, Boyd's testimony created the false impression that Armistice reached out to the company after learning that Boyd had deleted his texts, and thus created the false impression that he had no motive to delete them.

      Finally, although this is enough on its own to meet the preponderance standard, it's worth briefly addressing Armistice's counsel's conduct in litigating this sanctions motion and the other proceedings related to it. Although they discovered the deletion in March or April 2021, counsel did not inform the plaintiffs until August 2023—and in the meantime, filed multiple statements affirming their clients' compliance with the PSLRA's document preservation requirements. Dkt. Nos. 185; 220; 232; 306. They joined Boyd in creating the misimpression that they first reached out to the forensics company after the texts were deleted, hiding behind a declaration that

vaguely stated that Akin took steps to engage that company "[i]n or around early 2021." *See* Dkt. No. 468 at 11:9–19, 12:7–13:18, 14:8–11. They implied that the remaining March 2021 Boyd–Maher texts were recovered by the forensics company, whereas they were seemingly never deleted in the first place. None of these statements appear to have been out-and-out lies, but they evince a pattern of opacity that, while not necessary to the conclusion that Boyd deleted his texts intentionally, certainly provides further support for it.[10]

It's true that there are points militating the other way. For instance, after the deletion, Armistice's lawyers did try to recover the texts. *See, e.g.*, Ev. Hr'g Tr. 55:24–56:24; ICR Vol. I 64 [Armistice-TPLog00000388–91]. Recovery efforts, even if unsuccessful, can "indicate a lack of intent." *hiQ Labs, Inc. v. LinkedIn Corp.*, 639 F. Supp. 3d 944, 978 (N.D. Cal. 2022). But they don't show it conclusively, and these efforts can still be reconciled with a finding of intent. For instance, maybe Boyd deleted the texts with intent to deprive and then immediately regretted it, or was quickly told how badly he had messed up. Or maybe reporting it to counsel immediately was part of a plan to make it seem like a mistake. As another example, the defendants emphasize that the deletion was both under- and over-inclusive in that it included all of Boyd's texts with Maher (including innocuous ones and ones unrelated to Vaxart), and left untouched all of his other Vaxart-related communications. That's true, but as discussed above, Boyd and Maher were at the center of Armistice's relationship with Vaxart. So it's entirely plausible that their texts, in particular, would have contained the most unfavorable evidence. And Boyd might have decided to delete the entire thread (instead of just certain texts) because deleting only some texts would look much more suspicious. Ultimately, these considerations are insufficient to counteract the remaining evidence that supports a conclusion that Boyd's deletion was most likely intentional.

One final comment. It's worth reemphasizing the standard of proof that applies here. If this were a criminal bench trial, the Court would not find beyond a reasonable doubt that Boyd intentionally deleted his texts. If the standard were clear and convincing evidence, it would be a

---

[10] Nevertheless, the motion is denied to the extent it seeks sanctions under Rule 37(b), because the defendants' lawyers do not appear to have failed to comply with any order.

difficult question. The Court cannot be sure what happened, and does not take its conclusion lightly. That's why the defendants have been given every opportunity make the case that this was all an incredibly fluky accident. But based on all the evidence, the Court must conclude that it's more likely than not that Boyd intended to delete the texts.

### D

On the other hand, the plaintiffs have not shown that Maher deleted his texts with intent to deprive anyone of their use as evidence. Maher did not take reasonable efforts to preserve his texts. But all evidence indicates that his pre–litigation hold deletions were done only with the intent of keeping his phone clean of messages, and that his son's post–litigation hold factory reset of his phone was a result of Maher's negligence, not his intent.

\* \* \*

At trial, the plaintiffs will be allowed to present evidence regarding Boyd's and Maher's deletion of their text messages. The jury will be told that it may consider Maher's deletion along all the other evidence. *See* Fed. R. Civ. P. 37 advisory committee's notes to 2015 amendment (sanctions under Rule 37(e)(1) include "instructing the jury that it may consider that evidence, along with all the other evidence in the case, in making its decision"). Because Boyd's deletion was more likely than not intentional, the jury will be told that it may draw an adverse inference from his deletion as to the elements of knowledge and scienter. *See Deerpoint Group, Inc. v. Agrigenix, LLC*, 2022 WL 16551632, at \*22 (E.D. Cal. Oct. 31, 2022). The plaintiffs will also be awarded their reasonable fees and costs incurred in litigating this motion. *See Gaina v. Northridge Hospital Medical Center*, 2018 WL 6258895, at \*6 (C.D. Cal. Nov. 21, 2018). These remedies are sufficient but no greater than necessary to cure the prejudice, as they will let the plaintiffs explain why they are missing potentially significant evidence without precluding the defendants from presenting to the jury their arguments for why that evidence would not change the outcome of the case.

**IT IS SO ORDERED.**

Dated: July 7, 2025

_____

VINCE CHHABRIA
United States District Judge