**CONRAD | METLITZKY | KANE LLP**
MIRANDA KANE (SBN 150630)
WARREN METLITZKY (SBN 220758)
NATHAN THEOBALD (SBN 328837)
217 Leidesdorff Street
San Francisco, CA 94111
Telephone: (415) 343-7100
Facsimile: (415) 343-7101
Email: mkane@conmetkane.com
        wmetlitzky@conmetkane.com
        ntheobald@conmetkane.com

*Attorneys for Defendants ARMISTICE CAPITAL
LLC, ARMISTICE CAPITAL MASTER FUND, LTD,
STEVEN J. BOYD, and KEITH MAHER, M.D.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re VAXART, INC. SECURITIES LITIGATION | Lead Case No. 3:20-cv-05949-VC |
| | District Judge: Hon. Vince Chhabria |
| This Document Relates to:<br>    ALL ACTIONS | <u>CLASS ACTION</u> |
| | **ARMISTICE'S OPPOSITION TO PLAINTIFFS' UPDATED STATEMENT OF FEES AND EXPENSES INCURRED IN LITIGATION MOTION FOR SPOLIATION SANCTIONS** |

**<u>TABLE OF CONTENTS</u>**

INTRODUCTION ..................................................................................................................1

RELEVANT BACKGROUND ............................................................................................2

      A.    Plaintiffs Engage in Disjointed Discovery During the Eight Months Leading Up to Their Sanctions Motion (August 2023 to April 2024).........3

      B.    Plaintiffs Prematurely File the Sanctions Motion and Belatedly Attempt to Build a Record (April 2024 to December 2024)........................................4

      C.    Plaintiffs Persist in their Piecemeal Discovery Approach Even After Their Requested Evidentiary Hearing (December 2024 to April 2025)...............5

ARGUMENT .......................................................................................................................6

    I.    PLAINTIFFS HAVE THE BURDEN OF SUPPORTING THE REASONABLENESS OF THEIR REQUESTED FEES AND COSTS................6

    II.    PLAINTIFFS HAVE NOT MET THEIR BURDEN. ............................................7

      A.    Plaintiffs' Piecemeal and Inefficient Litigation Strategy, Though Successful, Vastly Inflated the Requested Fees.....................................7

          1.    *Plaintiffs' Piecemeal Approach Made Spoliation-Related Discovery More Expensive.* ........................................................8

          2.    *Plaintiffs' Hours Are Not Reasonable.* ...........................................9

      B.    Plaintiffs' Requested Fees Must Be Reduced for Other Reasons.............10

          1.    *Plaintiffs' Time Records Are Full of Vague Entries and Block-Billing.* .........................................................................................10

          2.    *Plaintiffs Improperly Seek Reimbursement for Clerical Work and for Paralegal Work at Attorney Rates.* ..........................................12

          3.    *Plaintiffs Should Not Recover for Work Unrelated to the Spoliation Motion.* ........................................................................................12

          4.    *Plaintiffs Should Not Recover Fees for Time Spent Reviewing Defendants' Document Productions.* ..............................................13

          5.    *Plaintiffs Have Not Met Their Burden of Supporting Their Hourly Rates.* ..........................................................................................13

      C.    Plaintiffs Seek Reimbursement for Unnecessary and Inappropriate Costs.14

CONCLUSION..................................................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bademyan v. Receivable Mgmt. Servs. Corp.*,
    2009 WL 605789 (C.D. Cal. Mar. 9, 2009)............................................................................14

*Banas v. Volcano Corp.*,
    47 F. Supp. 3d 957 (N.D. Cal. 2014)..................................................................................11

*Bird v. Wells Fargo Bank*,
    2017 WL 4123715 (E.D. Cal. Sept. 18, 2017)......................................................................6

*Blum v. Stenson*,
    465 U.S. 886 (1984).............................................................................................................13

*Bobrick Washroom Equip., Inc. v. Am. Specialties, Inc.*,
    2013 WL 12129368 (C.D. Cal. Feb. 20, 2013) ................................................................8, 15

*Bos. Ret. Sys. v. Uber Techs., Inc.*,
    No. 4:19-cv-06361 (N.D. Cal. Dec. 4, 2024)......................................................................14

*Brocade Commc'ns Inc. v. A10 Networks, Inc.*,
    2011 WL 13397353 (N.D. Cal. Sept. 6, 2011) ....................................................................13

*Camacho v. Bridgeport Fin., Inc.*,
    523 F.3d 973 (9th Cir. 2008) ..............................................................................................13

*Flores v. City of Westminster*,
    2014 WL 12783201 (C.D. Cal. Oct. 23, 2014).....................................................................12

*Gates v. Deukmejian*,
    987 F.2d 1392 (9th Cir. 1992) ..............................................................................................6

*Harrison v. Metro. Life Ins. Co.*,
    2016 WL 4414851 (N.D. Cal. Jun. 21, 2016).......................................................................8

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ............................................................................................................10

*Holcomb v. BMW of N. Am., LLC*,
    2020 WL 7549285 (S.D. Cal. Feb. 14, 2020)......................................................................14

*In re Facebook, Inc. Consum. Privacy User Profile Litig.*,
    655 F. Supp. 3d 899 (N.D. Cal. 2023)...................................................................................2

*In re Media Vision Tech. Sec. Litig.*,
    913 F. Supp. 1362 (N.D. Cal. 1996)....................................................................................15

*Jordan v. Multnomah County*,
   815 F.2d 1258 (9th Cir. 1987) ...................................................................................7

*Laub v. Horbaczweski*,
   2020 WL 10817257 (C.D. Cal. Nov. 23, 2020) .......................................................10

*Logtale, Ltd. v. IKOR, Inc.*,
   2015 WL 581513 (N.D. Cal. Feb. 11, 2015) ...........................................................13

*Lou v. Am. Honda Motor Co.*,
   2025 WL 1359067 (N.D. Cal. May 9, 2025) ...........................................................14

*Mfg. Automation & Software Sys., Inc. v. Hughes*,
   2018 WL 5914235 (C.D. Cal. Sept. 18, 2018) ..........................................................7

*Missouri v. Jenkins by Agyei*,
   491 U.S. 274 (1989) ................................................................................................12

*Murphy v. Celestron Acquisition, LLC*,
   2024 WL 1221963 (N.D. Cal. Mar. 20, 2024) ...................................................11, 12

*Nadarajah v. Holder*,
   569 F.3d 906 (9th Cir. 2009) ..................................................................................12

P*ennar Software Corp. v. Fortune 500 Sys. Ltd.*,
   2001 WL 1319162 (N.D. Cal. Oct. 25, 2001) ........................................................15

*True Health Chiropractic Inc. v. McKesson Corp.*,
   2015 WL 3453459 (N.D. Cal. May 29, 2015) .....................................................7, 13

*Vogel v. Harbor Plaza Ctr., LLC*,
   893 F.3d 1152 (9th Cir. 2018) ..................................................................................7

*Widrig v. Apfel*,
   140 F.3d 1207 (9th Cir. 1998) ................................................................................13

**Other Authorities**

U.S. Gen. Servs. Admin., *Per Diem Rates: San Francisco*,
   https://tinyurl.com/488hv45f ...................................................................................15

**Rules**

Civil Local Rule 37-4(b)(3) ..............................................................................................6

Civil Local Rule 54-5(b)(3) ............................................................................................13

## INTRODUCTION

Plaintiffs' $2.9 million attorneys' fee request is astonishing.  Although Plaintiffs prevailed on their motion for sanctions, and the Court ordered that Armistice pay **reasonable** fees and costs, awarding anything more than a small fraction of what Plaintiffs seek would not be reasonable.  It would reward inefficiency and a complete abandonment of billing judgment.

There are many reasons why the Court should reject Plaintiffs' bloated fee request.  Plaintiffs' vague and largely block-billed time entries, opaque as they are, reflect pervasive over-lawyering that no paying client would abide, including one attorney spending upwards of 200 hours preparing for an evidentiary hearing, two law firms billing 333 hours for their initial sanctions motion, and four lawyers billing almost 100 hours on one deposition.  Plaintiffs' hourly rates (up to $1,900) are unsupported, and they seek reimbursement for non-spoliation-related tasks and overhead, among other inappropriate line items.

More fundamentally, that a motion was successful does not mean that *how* it was litigated was reasonable.  Reasonable counsel, working for paying clients, would have pursued the discovery they needed to build a complete record on the Boyd-Maher text thread deletion *before* filing a sanctions motion.  That would mean deposing critical players such as Steven Boyd, Dr. Keith Maher, and the forensic vendor, which Armistice encouraged them to do (they *never* did).  It would mean using the 2021 AT&T records, which Plaintiffs had pre-filing, understood the relevance of, evidently spent over 150 hours analyzing, but failed to raise in their motion or at Mr. Boyd's eventual deposition.  Plaintiffs instead chose to delay building their (ultimately successful) record until after moving for sanctions. They continued to choose inefficiency at every turn—for instance, refusing to extend post-hearing briefing while discovery issues were resolved, and pressing ahead (amassing nearly $500,000 in fees) with a motion to compel that had been made unnecessary by Armistice's privilege waiver, which Armistice had previewed to Plaintiffs and then formalized *before* Plaintiffs filed that motion to compel.

1

The Court has ordered an award of reasonable fees, but Plaintiffs are not entitled to millions of dollars for prematurely filing a sanctions motion and then dragging the parties and this Court through their disjointed patching of the record. Little about their approach was reasonable or efficient, and the Court should slash Plaintiffs' fees request accordingly, awarding in any event no more than $700,000–$850,000.[1]

## RELEVANT BACKGROUND

On August 29, 2023, Armistice told Plaintiffs about the deletion of the text thread between Mr. Boyd and Dr. Maher. Dkt. 366-1 ¶ 18. Plaintiffs filed their sanctions motion eight months later. By that time, Plaintiffs had taken enough discovery to identify the critical facts for further development—including by deposing Armistice's former General Counsel Brian Kohn about the text-message deletion; receiving documents from Contact Discovery Services ("Contact"), the forensic vendor that Armistice used to try to recover the text thread; and obtaining phone records for Mr. Boyd and Dr. Maher. *See* Dkt. Nos. 344-8, 344-10, 344-18, 344-19, 386-1 ¶ 2.

But during these eight months between when they learned of the deletion of the text messages and when they filed their Sanctions Motion, Plaintiffs <u>did not</u>:

- Depose Mr. Boyd or Dr. Keith Maher—despite counsel for Armistice attempting to make them available for deposition, *see* Dkt. 366-1 ¶¶ 28–33;
- Depose Contact—despite Armistice's counsel ***encouraging*** Plaintiffs to do so during discovery, *see* Dkt. 366-1 ¶ 27;
- Raise any argument that attorney-client privilege had been waived—despite having deposed Armistice's former General Counsel in October 2023, *see generally* Dkt. 344-8;

---

[1] Armistice is filing this brief within ten days of receiving Plaintiffs' final statement of fees and costs (after Plaintiffs had asked for additional time to support their request), and within a week of the Court's order calling for a response. Dkts. 510, 518. We have filed this response within those time constraints, mindful that the Court need not "achieve auditing perfection" when fixing fees and may "take into account its overall sense of a suit," among all other relevant factors. *In re Facebook, Inc. Consum. Privacy User Profile Litig.*, 655 F. Supp. 3d 899, 925–26, 935–36 (N.D. Cal. 2023) (citation modified). However, if the Court were to entertain awarding anything close to Plaintiffs' full amount of requested fees, Armistice would request an additional 30 days to submit more detailed support for its objections, including expert analysis to assist the Court's consideration. *Cf. id.* at 936 (noting sanctioned parties were able to file a "488-page expert analysis of the requested fees").

- Seek any records concerning Mr. Boyd's physical therapy—despite being made aware in October 2023 of its relevance, *see* Dkt. 344-8 at 34:20–35:25;
- Mention any concern about Mr. Boyd's March 2021 cellphone records—despite having had such records *since November 2023* and despite billing *nearly 150 hours* relating to review of the AT&T records writ large, *see* Dkt. Nos. 344-18, 386-1 ¶ 2; or
- Inquire further about the DOJ subpoena to Armistice—despite learning at Mr. Kohn's deposition that Armistice had been the subject of a grand jury subpoena, *see* Dkt. 344-8 at 123:13–124:7.

In short, Plaintiffs chose to file a motion without deposing Mr. Boyd, Dr. Maher, or Contact, without seeking records regarding Mr. Boyd's physical therapy, without reviewing the March 2021 AT&T records, and without following up on key issues revealed during Armistice's General Counsel's deposition.  As detailed below, Plaintiffs' decision to build the record post-filing, through piecemeal discovery and follow-on motions, consumed enormous resources.

### A. Plaintiffs Engage in Disjointed Discovery During the Eight Months Leading Up to Their Sanctions Motion (August 2023 to April 2024).

In August 2023, counsel for Armistice informed Plaintiffs of the inadvertent deletion.  On October 31, 2023, Plaintiffs deposed Armistice's former General Counsel Brian Kohn.  Mr. Kohn testified to his recollection of the circumstances surrounding Mr. Boyd's and Dr. Maher's deletions; his conversations with Boyd when Boyd reported the deletion; and Armistice's attempts to recover the text thread—including by formally engaging Contact on March 31, 2021, after learning of the deletion.  *See generally* Dkt. 344-8.  Mr. Kohn further testified to his understanding that Mr. Boyd recalled deleting the text thread during a physical therapy session in late March 2021.  *See id.* at 34:20–35:25.  Plaintiffs also learned from Mr. Kohn that Armistice became aware it was the subject of a DOJ subpoena in July 2020.  *See id.* at 123:13–124:7.

Yet Plaintiffs did not follow up on this testimony before filing their motion.  Despite the importance of the recollections of the two text-thread participants, Plaintiffs chose not to depose Mr. Boyd or Dr. Maher or to request documents pertaining to Mr. Boyd's physical therapy (with which they could have questioned him at deposition), until *July 2024*, after briefing on the sanctions motion was complete.  *See* Dkt. 386-7.  Plaintiffs did not seek information about the government subpoenas or argue

that Armistice had waived attorney-client privilege by putting Mr. Kohn's conversations with Mr. Boyd at issue until **December 2024**.  Dkt. 452-1.

Plaintiffs similarly failed to develop facts raised by their time-consuming review of Mr. Boyd's 2021 phone records until well after they filed their motion. In November 2023, Plaintiffs received records in response to subpoenas served on Mr. Boyd's and Dr. Maher's cellphone carriers.  *See* Dkt. Nos. 344-18, 344-19.[2] Between November 2023 and the filing of their Sanctions Motion, **Plaintiffs billed almost 150 hours for their review of the phone records**.  *See* Ex. A.1 (Rows 161, 162, 169, 174-78, 181, 182, 184-90, 192, 195, 198-204, 206, 207, 209, 210, 214, 216-18, 220, 222, 228, 241, 261-64, 279); Ex. C.1 (Rows 29, 31, 33, 35-43, 48, 49, 51-55, 57).  Yet at no point until **September 2024** did Plaintiffs raise any conflict between Mr. Boyd's 2021 phone records and Mr. Kohn's deposition testimony recounting the circumstances of Mr. Boyd's deletion.  *See* Dkt. 386.  They asked not a single question at Mr. Boyd's deposition about the 2021 phone records.

Despite Armistice's prodding, Plaintiffs also failed to pursue relevant information from Contact. In November 2023, Plaintiffs subpoenaed Contact for records relating to its attempt to recover the text thread.  *See* Dkt. 344-1 ¶ 12.  Contact produced over two hundred pages, including a statement of work dated March 31, 2021, and a privilege log.  *See* Dkt. 344-10.  But Plaintiffs never tried to depose Contact, even after Armistice's counsel **encouraged** them to do so in February 2024.  *See* Dkt. 366-1 ¶ 27.  And it was not **until January 2025** that Plaintiffs raised concern about when Armistice's counsel first approached Contact about collecting text messages.  *See* Dkt. 452.

### B. Plaintiffs Prematurely File the Sanctions Motion and Belatedly Attempt to Build a Record (April 2024 to December 2024).

Without following up on the above issues, Plaintiffs filed their Sanctions Motion on April 29, 2024. In early July 2024, weeks after the Sanctions Motion was fully briefed, Plaintiffs finally deposed

---

[2] Although Plaintiffs requested only Mr. Boyd's cellphone records from April 28, 2020 to July 15, 2020, they received a larger set including Mr. Boyd's call and text records through June 2021.  *See* Dkt. Nos. 344-18, 386-1 ¶ 2.

Mr. Boyd and Dr. Maher—but declined to spend significant time with either on spoliation-related topics. Plaintiffs first sought records on Mr. Boyd's physical therapy *after* his deposition, even though Mr. Kohn's deposition had made plain *nine months earlier* the relevance of that topic.  *See* Dkt. 386-7.

In September 2024, just days before the hearing on the Sanctions Motion, Plaintiffs moved for and were granted an evidentiary hearing concerning alleged discrepancies between Mr. Boyd's AT&T records—which Plaintiffs had possessed for nearly a year, failed to raise in their Sanctions Motion, and declined to ask about during Mr. Boyd's deposition—and his testimony. *See* Dkt. 393.  Plaintiffs complained that the 2021 phone records did not align with Mr. Boyd's recollection of how the deletion occurred—which they had known about since October 2023.  *See* Dkt. 386.  Even though discovery had closed in June 2024, Defendants produced additional materials that Plaintiffs opted not to press for before filing their Sanctions Motion.  *See generally* Dkt. 405.

### C.  Plaintiffs Persist in their Piecemeal Discovery Approach Even After Their Requested Evidentiary Hearing (December 2024 to April 2025).

Plaintiffs' counsel insisted that an evidentiary hearing would provide them a "full opportunity" to present their case. *See* Dkt. 388. On December 9, 2024, the Court held that hearing, at which Mr. Boyd and Dr. Maher testified and were subject to cross-examination.  See Dkt. 427. At this hearing, Plaintiffs asked Mr. Boyd about his March 2021 AT&T records for the first time—having chosen not to ask him about such records at his deposition.  And just two days after the hearing, Plaintiffs continued to seek additional spoliation-related discovery.  *See* Dkt. 452-3.  While Armistice proposed extending the post-hearing briefing schedule so the parties could address any remaining discovery and file final briefs on a complete record, Plaintiffs declined. *See* Dkt. 453 at 4. Only after the parties filed their post-hearing briefs in January 2025 did Plaintiffs raise with the Court for the first time three discovery requests:

- Armistice's outside counsel's discussion with the Government mentioning text messages in December 2020 (even though Plaintiffs had known *since October 2023* that Armistice had been the subject of DOJ and SEC subpoenas in 2020 and 2021, *see supra* at 3);
- Armistice's outside counsel's negotiations before the deletion event with Contact (even though Plaintiffs had known of Contact *since October 2023* and had the opportunity to depose Contact over a year prior, *see supra* at 4); and

- Armistice's alleged waiver of the attorney-client privilege (which Plaintiffs had never raised despite deposing Armistice's former General Counsel *in October 2023, see supra* at 3).

Following a February 6, 2025, hearing, the Court ordered both Armistice and Akin to file privilege logs of all privileged communications "relating to the deletion of texts, the recovery of texts, the imaging of phones, and . . . the preservation of texts." Feb. 6, 2025 Hr'g Tr. 18:7–19. Armistice and Akin served privilege logs on February 21, 2025. *See* Dkt. 470-2.

Armistice sought to streamline any remaining disputes, but Plaintiffs again chose a more costly, litigious path. On March 6, Armistice *voluntarily waived* attorney-client privilege over these materials and *agreed to produce* all documents and communications covered by the privilege logs. *See* Dkt. 469-2. Notwithstanding that waiver, Plaintiffs <u>forged ahead filing</u> a motion to compel on March 7, 2025, seeking in part "production of the documents logged in Armistice's and Akin's privilege logs"— documents Armistice had already agreed to produce (and completed production of by March 20). *See* Dkt. 470; Dkt. 474-6.

The Court denied Plaintiffs' motion to compel, instead accepting Armistice's invitation to review certain documents *in camera*. *See* Apr. 8, 2025 Hr'g Tr. 9:4–8. And at a hearing on the motion to compel, the Court confirmed that no further productions to the Plaintiffs would be ordered, because "no matter what gets turned over to the [P]laintiffs, they're going to keep asking for more stuff . . . Give them the world and they'll ask for the universe." *Id.* at 9:9–16. The Court then granted in part and denied in part the Sanctions Motion. Dkt. 513.

## ARGUMENT

### I.    PLAINTIFFS HAVE THE BURDEN OF SUPPORTING THE REASONABLENESS OF THEIR REQUESTED FEES AND COSTS.

As the "fee applicant," Plaintiffs have "the burden of documenting the appropriate hours expended" and "must submit evidence in support of those hours worked." *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992); *see Bird v. Wells Fargo Bank*, 2017 WL 4123715, at *1 (E.D. Cal.

Sept. 18, 2017); Civ. L.R. 37-4(b)(3) (requiring "competent declarations" that "itemize with particularity the otherwise unnecessary expenses, including attorney fees, directly caused by the alleged violation").

This Court "ha[s] a duty to ensure that claims for attorneys' fees are reasonable, and a district court does not discharge that duty simply by taking at face value the word of the prevailing party's lawyer for the number of hours expended on the case." *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1160 (9th Cir. 2018) (citation modified); *see Jordan v. Multnomah County*, 815 F.2d 1258, 1263 n.8 (9th Cir. 1987) ("[T]he district court should not uncritically accept counsel's representations concerning the time expended."). Rather, Plaintiffs "bear[] the burden of proving that the fees and costs taxed are reasonably necessary to achieve the result obtained." *Mfg. Automation & Software Sys., Inc. v. Hughes*, 2018 WL 5914235, at *3 (C.D. Cal. Sept. 18, 2018) (citation modified). The reviewing court must "decide whether the hours claimed by the applicant are adequately documented and whether any of the hours were unnecessary, duplicative, or excessive." *True Health Chiropractic Inc. v. McKesson Corp.*, 2015 WL 3453459, at *1 (N.D. Cal. May 29, 2015).

## II. PLAINTIFFS HAVE NOT MET THEIR BURDEN.

### A. Plaintiffs' Piecemeal and Inefficient Litigation Strategy, Though Successful, Vastly Inflated the Requested Fees.

Armistice does not dispute that Plaintiffs eventually created a fulsome and successful record; however, Plaintiffs' counsel's request for almost $2.89 million in fees for litigating this sanctions motion boggles the mind and reflects a muddled and inefficient approach. The sheer hours on Plaintiffs' time sheets are facially unreasonable: The nearly three-million-dollar bill includes 333 hours for researching and drafting the original sanctions motion, 55 hours for their follow-on motion for an evidentiary hearing, and 240 hours on a supplemental brief following that hearing. *See* Ex. A.1 (Rows 224-25, 277-78, 280-81, 286-88, 290, 293-305, 307-09, 311, 313-23, 326-29, 331-38, 390, 392-400, 612, 614-16, 621, 623, 618, 625-26, 628-30, 632-33, 635, 637, 640-42, 644, 659-60, 655, 646-48, 662-73, 675-703); Ex. C.1 (Rows 63-64, 70-84, 86-88, 91-93, 97-103, 105-113, 115-21, 123, 125-35, 137-54, 191, 193-96,

198, 200-01, 206-07, 209-11, 383, 385, 388-89, 392, 393, 397-408); *cf. Harrison v. Metro. Life Ins. Co.*, 2016 WL 4414851, at *3 (N.D. Cal. Jun. 21, 2016) (finding "facially unreasonable" billing almost 100 hours on one motion). As explained, Plaintiffs have made little effort to justify those enormous numbers.

Such inefficient litigation and billing warrants a hatchet, not a scalpel.  Consider *Bobrick Washroom Equipment, Inc. v. American Specialties, Inc.*, 2013 WL 12129368 (C.D. Cal. Feb. 20, 2013), where the court found spoliation of evidence and awarded reasonable fees and costs as a sanction. The prevailing party requested over $1.15 million in fees and costs, but the court awarded only $134,841. *Id.* at *3. The court explained that the "goal in shifting fees (to either party) is to do rough justice" and that judges may apply their "overall sense of a suit" and estimates as well as "across-the-board cuts" to arrive at a reasonable fee. It applied an 80% across-the-board reduction to hours billed for spoliation-related briefing, based on themes in the time entries including (1) block-billing, (2) inclusion of tangentially related tasks, (3) excessive and vaguely billed time, including by senior attorneys, (4) duplicative work by multiple attorneys, and (5) "a lack of billing judgment." *Id.* at *7–*10, *11.  The same factors are present here, and the Court should do similar rough justice.

### 1. *Plaintiffs' Piecemeal Approach Made Spoliation-Related Discovery More Expensive.*

The spoliation issue could and should have been litigated as most major pre-trial issues are: an orderly period of discovery to establish the relevant facts, followed by a single round of briefing and, if necessary, a hearing. As summarized above, Plaintiffs instead chose to file a premature motion and then spend another year of seriatim discovery and ancillary motion practice, rejecting Armistice's efforts to create a more efficient process.

The evidence on which the Court's sanctions order relied could (and in the normal course would) have been collected and explored through early depositions of Mr. Boyd, Dr. Maher, and Contact, along with effective review of phone records and timely follow-up requests. And much could have been streamlined had Plaintiffs developed the documentary record *before* deposing Mr. Boyd and Dr. Maher (such as by spending some of the 150 hours on phone record review before Mr. Boyd's deposition on

the March 2021 phone records). Instead, Plaintiffs chose piecemeal discovery, seeking documents on the fly as their inquiry continued to expand, ultimately leading the parties and the Court on multiple rounds of supplemental briefing and an evidentiary hearing.

Along the same lines, Plaintiffs' 240 hours and $263,000[3] in fees for their litigation of a motion to compel, filed on March 7, 2025, were unreasonable in light of Defendants' March 6 voluntary waiver of attorney-client privilege—which Armistice took pains to preview on March 4, along with offering to extend the briefing schedule by stipulation to avoid unnecessary briefing by Plaintiffs. *See* Dkt. 469 at 2; Dkt Nos. 470, 478; Theobald Decl. ¶ 2. In general, Plaintiffs billed over $500,000 **after** Armistice's privilege waiver, notwithstanding its significant streamlining of the remaining disputes. This inefficiency alone justifies a significant reduction of fees.

### 2. Plaintiffs' Hours Are Not Reasonable.

Plaintiffs' counsel also billed patently unreasonable amounts of time at every step of their meandering path. Defendants have not had time for exhaustive analysis, but glaring examples abound:

- Plaintiffs' counsel billed *over 150 hours* for review of AT&T and T-Mobile phone records prior to filing their Sanctions Motion. *See* Ex. A.1 (Rows 161-62, 169, 174-78, 181-82, 184-90, 192, 195, 198-204, 206-07, 209-10, 214, 216-18, 220, 222, 228, 241, 261-64, 279; Ex. C.1 (Rows 29, 31, 33, 35-43, 48, 49, 51-55, 57). *Still*, Plaintiffs asked Mr. Boyd no questions about the 2021 phone records at deposition and raised no concerns about the 2021 records until filing a motion for an evidentiary hearing in September 2024 (at a cost of roughly $50,000). *See* Ex. C.1 (Rows 191, 193-96, 198, 200, 201, 206, 207, 209-11); Ex. A.1 (Rows 390, 392-40).
- Four attorneys across two law firms attended in person a single Rule 30(b)(6) deposition in October 2023 and collectively billed *over 90 hours* preparing for it. *See* Ex. A.1 (Rows 102-03, 106, 109, 111, 113-26, 128); Ex. C.1 (Rows 20-28).
- Jeffrey Jacobson billed *over 200 hours* (roughly $160,000) preparing for his approximately 1.5-hour cross-examination and presentation at the December 2024 evidentiary hearing.[4] *See* Ex. C.1 (Rows 282, 285, 289, 292, 294-95, 298, 302, 307, 309, 313-14, 316, 318, 320, 322, 371-72, 367, 369, 376, 379). And imagine any paying client's reaction to Mr. Frederick billing upwards of 13 hours (at $1900 per hour) to play the role of Mr. Boyd in a "mock moot court,". *See* Ex. C.1 (Rows 204, 304)

---

[3] This constitutes the hours and fees that Plaintiffs claim for time spent relating to the motion to compel after Armistice's waiver on March 6, 2025. *See* Ex. A.1 (Rows 782, 787-91, 793-97, 799-801, 804, 817, 831, 836, 838, 839, 842-45, 847, 848, 850, 855-64, 866-80); Ex. C.1 (Rows 462-64, 466, 484, 486, 490, 491, 493-505, 507-09, 511-13).

[4] Armistice should not be responsible for any duplicative hearing prep performed before the October 2024 hearing was continued to December 2024. *See* Dkt. 410.

9

Plaintiffs further inflated their fees by billing enormous amounts of work at senior-partner rates, much of which seemingly could have been done by more junior attorneys. For instance, senior partner Reed Kathrein billed over 60 hours (at between $1200 and $1275) to "review, analyze, and revise sanctions motion," along with related communications, *see* Ex. A.1 (Rows 280, 286-87, 290, 293-94, 299-301, 303, 313-14, 317, 321-22, 328, 334-35, 337), and another 60-plus hours to "discuss" and "review, analyze, and revise post evidentiary hearing brief," *id.* (Rows 615, 625, 637, 644, 659, 663, 675, 689). Bill Fredericks (block-)billed over 49 hours, at $1,900 an hour, for work related primarily to researching, discussing, and drafting a stipulation regarding the authenticity of AT&T phone records. *See* Ex. C.1 (Rows 204, 219, 233, 304, 310, 312, 323, 368, 370, 375, 377).  Mr. Fredericks also billed over $40,000 for performing Westlaw research.  *See id.* (Rows 262, 290, 304, 393, 440, 500). He even billed at $1900 for "travel arrangements" and "travel logistics[.]"  *See id.* (Rows 204, 368).

## B. Plaintiffs' Requested Fees Must Be Reduced for Other Reasons.

Plaintiffs' billing records cannot support their requested fee request for a host of other reasons.

### 1. Plaintiffs' Time Records Are Full of Vague Entries and Block-Billing.

Fee applicants must present "evidence supporting the hours worked and rates claimed" that enables "an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Where "the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* Courts disallow or trim "generic and repetitive task descriptions that make it difficult for the Court to identify the particular nature of the work performed" and can "indicate considerable duplication of effort." *Laub v. Horbaczweski*, 2020 WL 10817257, at *8 (C.D. Cal. Nov. 23, 2020) (reducing requested fees for spoliation from $161,551 to $33,562).

Generic and repetitive task descriptions litter Plaintiffs' records. For example, in September 2024, Reed Kathrein billed 25.5 hours to "prepare for court hearing on spoliation of evidence with Jeff Jacobson," and to attend that hearing—a Zoom hearing that addressed only scheduling and discovery disputes.  See Dkt. 389, 393; see Ex. A.1 (Rows 410, 414, 423). Without a more detailed description of

what Mr. Kathrein did to prepare for that 29-minute hearing, Dkt. 393, Plaintiffs cannot justify over $30,000 in fees for it. Similar examples abound.

Courts particularly criticize and discount "block-billing" in fee applications because it can make it "impossible to determine whether the time requested for any one task" is reasonable. *Banas v. Volcano Corp.*, 47 F. Supp. 3d 957, 966-67 (N.D. Cal. 2014) (applying 20% discount to block-billed entries); *see also, e.g.*, *Murphy v. Celestron Acquisition, LLC*, 2024 WL 1221963, at *4 (N.D. Cal. Mar. 20, 2024) (25% deduction for "the Court's inability to analyze the reasonableness of the block-billings"). Here, nearly all of senior partner's Reed Kathrein's 554.1 hours are block-billed in daily entries of up to 14 hours. Even the longest of these entries often provide only the vaguest of descriptions. For instance, **four** different entries—for 11 hours, 9.5 hours, 9 hours, and 8.5 hours respectively—all read: "Review, analyze, and revise post evidentiary hearing brief. Communicate with co-counsel and Communicate in firm with regarding same." *See* Ex. A.1 (Rows 26, 69, 103, 111)[5]; *see also id.* (Row 531 (11 hours for "Prepare for Evidentiary hearing on sanctions with co-counsel. Preliminary hearinwith [sic] court. Meet and confer with Defendants"), Row 795 (9 hours for "review, analyze, and revise motion to compel. Communicate with co-counsel regarding offer. Communicate with opposing counsel regarding both. Communicate in firm with regard to brief.")).

The vast majority of senior partner Bill Fredericks' time is likewise block-billed in increments up to 11.9 hours, at hourly rates between $1850 and $1900. Those blocks include, alongside more substantive tasks, work such as making "travel arrangements," doing "research re admissibility of use of certified phone records," and reviewing emails regarding a scheduling request (Ex. C.1 (Row 204)), as well as calling the "ATT General desk" and revising stipulations (*id.* (Row 375)).

---

[5] One of these entries also adds: "Finalize and approve for filing." *Id.* Row 69.

**2. *Plaintiffs Improperly Seek Reimbursement for Clerical Work and for Paralegal Work at Attorney Rates.***

Clerical or overhead tasks should not be "billed at hourly rates," and when they are "the court should reduce the hours requested." *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009) (rejecting entirely time billed for organizing and mailing documents and obtaining transcripts from court); *see Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989) ("[P]urely clerical or secretarial tasks should not [even] be billed at a paralegal rate, regardless of who performs them."). It is likewise inappropriate to bill paralegal-level work at attorney rates, or to bill junior-attorney-level work at senior attorney rates. *See Flores v. City of Westminster*, 2014 WL 12783201, at *10 (C.D. Cal. Oct. 23, 2014) (finding it "unreasonable to charge an attorney's rate" for paralegal-level work such as writing deposition summaries); *Murphy v. Celestron Acquisition, LLC*, 2024 WL 1221963, at *6 (N.D. Cal. Mar. 20, 2024) (criticizing "inflated costs" where "partners conducted over half of the 387.80 hours Defendants spent on the preparation and litigation of the terminating sanctions motion").

Plaintiffs' time entries are replete with precisely these problems. For instance, one paralegal billed 24 hours to "convert[]" PDF call records into excel spreadsheets. *See* Ex. C.1 (Rows 30, 36, 38, 49, 51-54). Plaintiffs also should not recover any of the nearly $2,000 they billed related to the ordering of transcripts. *See* Ex. C.1 (Rows 248, 250, 251, 260, 265, 266, 281); Ex. A.1 (Rows 149, 152, 194, 575, 576, 622, 737, 739, 771). Further, one attorney spent over 15 hours creating a "chronology of defendants' communications on June 25, 2020," *see* Ex. A.1 (Rows 642, 646-48, 655), and 17 hours to "compare privilege logs," *see id.* (Rows 760, 768, 781). Senior associate and now-partner Raffi Melanson billed over 20 hours drafting, revising, and noticing subpoenas. *See* Ex. A.1 (Rows 10, 42, 48, 54, 84, 95, 98, 99, 101, 129, 132, 134, 137, 141, 142, 143, 158, 163, 170, 171, 183, 383, 488, 508, 565, 656, 657). The Court should further reduce Plaintiffs' requested fees to account for this below-grade work and lack of billing judgment.

**3. *Plaintiffs Should Not Recover for Work Unrelated to the Spoliation Motion.***

Plaintiffs seek thousands of dollars in fees for time entries devoted at least in part to "class certification" issues. *See, e.g.*, Ex. A.1 (Row 139 (7.0 hours, "Prepare for and participate in conference with co-counsel . . . to prepare for Class Certification hearing and evidentiary hearing."); Row 434 (2.9

hours, "Plan and prepare for October 10, 2024 hearings on motions for sanctions and renewed class certification."), Row 532 (8.6 hours, "Plan and prepare for hearings on spoliation and class certification . . . .")). Plaintiffs cannot recover any fees for these or other issues unrelated to the spoliation motion.

### 4. *Plaintiffs Should Not Recover Fees for Time Spent Reviewing Defendants' Document Productions.*

Plaintiffs billed over $100,000 for reviewing Defendants' document productions. *See* Ex. A.1 (Rows 111-12, 420, 430, 443, 448-49, 451, 475, 481, 483, 486, 489, 548, 550, 572, 811, 813-16, 822, 824-26, 834, 841, 849-53, 881, 883; Ex. C.1 (Rows 244, 247, 256-57, 268, 273, 293, 297, 347-48, 352, 470, 472, 475-77, 482, 485, 487-88, 490, 506, 510, 514-15). Courts often disallow such fees entirely because "[r]eviewing documents in discovery is part of the normal course of litigation[.]" *Logtale, Ltd. v. IKOR, Inc.*, 2015 WL 581513, at *5 (N.D. Cal. Feb. 11, 2015); *see True Health Chiropractic Inc. v. McKesson Corp.*, 2015 WL 3453459, at *3 (N.D. Cal. May 29, 2015) (similar); *Brocade Commc'ns Inc. v. A10 Networks, Inc.*, 2011 WL 13397353, at *5 (N.D. Cal. Sept. 6, 2011 ) (denying time for vaguely described "review of documents"). At the very least, inclusion of these fees should inform the Court's overall assessment of a reasonable fee.

### 5. *Plaintiffs Have Not Met Their Burden of Supporting Their Hourly Rates.*

Plaintiffs have the burden to provide "satisfactory evidence . . . that the requested rates are in line with those prevailing in the community." *Blum v. Stenson*, 465 U.S. 886, 895-96 n.11 (1984). This typically means declarations regarding prevailing rates in the forum where the district court sits. *See Widrig v. Apfel*, 140 F.3d 1207, 1209 (9th Cir. 1998); *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). This Court's rules require declarations or affidavits supporting the "relevant qualifications and experience and a statement of the customary hourly charges of each such person or of comparable prevailing hourly rates or other indication of value." Civ. L.R. 54-5(b)(3). Where—as here—a fee applicant fails to meet its burden of establishing the reasonableness of the requested rates," the court "may exercise its discretion to determine reasonable hourly rates based on its experience and knowledge of prevailing rates in the community." *Bademyan v. Receivable Mgmt. Servs. Corp.*, 2009 WL 605789, at *5 (C.D. Cal. Mar. 9, 2009).

13

Plaintiffs have not met their burden to show that their claimed fees—which range as high as $1900 per hour for Bill Fredericks and $1275 for Reed Kathrein—are reasonable. Despite requesting more time to prepare a fees submission, *see* Dkt. 508, Plaintiffs failed to provide any declarations or other support required for their request.  Instead, they point to two orders granting attorney's fees on a *percentage of recovery* basis in connection with a final settlement, and by reference to voluminous exhibits filed in those cases. *See* Dkt. 517 ¶ 4. In the only one of those cases from this district, the plaintiffs' counsel had achieved a $200 million settlement for the class, and the requested fees reflected that success as well as the contingent nature of the of the fee and the risk of recovering nothing. *See Bos. Ret. Sys. v. Uber Techs., Inc.*, No. 4:19-cv-06361 (N.D. Cal. Dec. 4, 2024), ECF 477 ¶¶ 120–32. In entering a proposed order awarding the fees, the court did not discuss a lodestar calculation in detail, let alone find that hourly rates of up to $1900 are reasonable under these circumstances. And of course, such rates could never be reasonable for some of the low-level and even clerical work contained in Mr. Fredericks' billing entries. *See* p. 12, *supra*.

Plaintiffs also bill paralegals and other non-attorney staff at rates between $325 and $435, without offering evidence that those rates are reasonable—and courts have found lower rates to be unreasonable. *See Lou v. Am. Honda Motor Co.*, 2025 WL 1359067, at *9 (N.D. Cal. May 9, 2025) (reducing paralegal rates from $395 to $295); *Holcomb v. BMW of N. Am., LLC*, 2020 WL 7549285, at *5 (S.D. Cal. Feb. 14, 2020) (reducing paralegal rate from $195 to $100).  The Court should cut all non-attorney's rates by at least 50% to account for this failure of proof and lack of billing judgment.

### C.  Plaintiffs Seek Reimbursement for Unnecessary and Inappropriate Costs.

Plaintiffs' request for $57,457.89 in costs far exceeds the "reasonable" expenses they are entitled to in connection with the spoliation motion. Dkt. 513 at 15. Although time and space constraints don't allow an exhaustive demonstration, a few examples stand out:

**Overhead and other unreasonable costs.** Plaintiffs' counsel seek reimbursement of costs that are their business or personal overhead. *See* P*ennar Software Corp. v. Fortune 500 Sys. Ltd.*, 2001 WL 1319162, at *5 (N.D. Cal. Oct. 25, 2001) (inappropriate to bill for "overhead tasks subsumed within a reasonable hourly rate"). Illustratively, Plaintiffs bill for WiFi while traveling (Ex. D (Rows 109, 110,

111, 112)) and even when not traveling, for meals while working late (*id.* Rows 89, 92, 95). They also bill for **overnight** shipment of hearing materials back to their east coast offices **after** the related hearings had taken place. *See, e.g.*, Ex. B (Rows 46-47 ($300 & $134.97), 84-85 ($359)).

      **Unnecessary and unreasonable travel expenses**. Even if they allow travel costs as a general matter, courts reject unnecessary or unreasonable expenses. *See, e.g.*, *Bobrick Washroom Equip., Inc. v. Am. Specialties, Inc.*, 2013 WL 12129368, at *13 (C.D. Cal. Feb. 20, 2013) (questioning "billing judgment" and reducing cost award where attorneys charged $513 per night for hotel rooms and meals between $52 and $293). Plaintiffs billed over ***$150,000*** in fees for attorneys' time spent on and around planes, including for hearings that were canceled or held on Zoom. *See* Ex. A.1 (Rows 121, 125, 131, 533, 537, 604, 609, 889, 894); Ex. C.1 (Rows 234, 242, 252, 320, 321, 324, 325, 373, 380, 522). Plaintiffs also seek luxury-priced costs without any explanation why cheaper alternatives would not have sufficed. *See, e.g.*, Ex. D, (Nos. 10, 11, 13 & 15 (hotels stays at $978, $933, $774, and $720)); *id.* (Rows 60, 88 & 90 ("car service" between Westchester and airport for $207, $254, and $274)); Ex. B.1 (Oct. 30, 2023 ($92.79 meal for one); *id.* Apr. 6, 2025 ($173.50 meal for two)).

      Rather than "wade through Plaintiff's billings for hotels, meals, and incidentals to isolate the reasonable entries," this Court should award as travel costs no more than the government per diem rate, plus documented airfare and reasonable transportation to and from the airport—and only as necessary for hearings relating to the sanctions motion that the Court held in person. *Bobrick*, 2013 WL 12129368, at *13; *see In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1369–70 (N.D. Cal. 1996); *see also* U.S. Gen. Servs. Admin., *Per Diem Rates: San Francisco*, https://tinyurl.com/488hv45f (rates of $272 for lodging and $92 for meals and incidentals).

## CONCLUSION

      Plaintiffs' fees and cost request far exceeds any amount necessary to cure the prejudice under Rule 37(e)(1) and is unsupported by the records or the law. The Court should award a small fraction of Claimant's request and in any event no more than $700,000–$850,000.

DATED: July 24, 2025

Respectfully submitted,

CONRAD | METLITZKY | KANE LLP


/s/ Miranda Kane
MIRANDA KANE
WARREN METLITZKY
NATHAN THEOBALD

*Attorneys for Armistice Capital LLC, Armistice Capital Master Fund Ltd., Steven J. Boyd, and Keith Maher, M.D.*