**AKIN GUMP STRAUSS HAUER & FELD LLP**
NEAL R. MARDER (SBN 126879)
JOSHUA A. RUBIN (SBN 308421)
LILLIAN RAND (SBN 341581)
1999 Avenue of the Stars, Suite 600
Los Angeles, California 90067
Telephone: (310) 728-3282
Email: nmarder@akingump.com
        rubinj@akingump.com
        lrand@akingump.com

CHARLES F. CONNOLLY (*admitted pro hac vice*)
2001 K Street N.W.
Washington, DC 20006
Telephone: (202) 887-4070
Email: cconnolly@akingump.com

KAITLIN D. SHAPIRO (*admitted pro hac vice*)
DAVID M. GILLER (*admitted pro hac vice*)
One Bryant Park, 44th Floor
New York, NY 10036
Telephone: (212) 872-8096
Email: kshapiro@akingump.com
        dgiller@akingump.com

Attorneys for Defendants ARMISTICE CAPITAL,
LLC, ARMISTICE MASTER FUND LTD,
STEVEN J. BOYD, and KEITH MAHER, M.D.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re VAXART, INC. SECURITIES LITIGATION<br><br>This Document Relates to:<br>    ALL ACTIONS | Lead Case No. 3:20-cv-05949-VC<br><br>District Judge: Hon. Vince Chhabria<br><br><u>CLASS ACTION</u><br><br>**ARMISTICE DEFENDANTS' BRIEF REGARDING SECTION 20A CLASS DEFINITION**<br><br>Date:    October 14, 2025<br>Time:    10:00 AM<br>Ctrm:    4, 17th Floor |

<u>**SHORT ANSWER TO THE COURT'S QUESTION**</u>

**Question***: Was "[t]he issue of the contemporaneous-trading period for the Section 20A claims . . . addressed at the class certification stage, and if not, why?"*

*Answer:* This issue was not addressed at the class certification stage. Plaintiffs offered neither a definition of a contemporaneous trading period as part of their successive motions for class certification nor any expert testimony on this subject either during class certification or the merits phase.

Defendants did not raise this issue previously because (1) it is Plaintiffs' burden to prove the element of contemporaneousness; and (2) Defendants did not know that Plaintiffs were seeking a definition of contemporaneous meaning within *six trading days of Armistice's sales* until very recently, when the parties were negotiating jury instructions. While the parties did not address the issue previously, it is unavoidable now, with dismissal of the Section 20A claims or decertification of the Section 20A subclass the best options.

## I.    <u>INTRODUCTION</u>

Plaintiffs propose a Section 20A insider trading subclass of eight trading days (the two days of Armistice's sales plus six trading days after), representing nearly two weeks on the calendar. On their theory, an individual who bought Vaxart stock on July 8, 2020 (when Plaintiffs' expert claims that price inflation was less than $2 per share) would be deemed to have traded "contemporaneously" with Armistice (who sold Vaxart stock over a week prior, when Plaintiffs' expert claims price inflation was more than $7 a share). This definition is in tension with case law, economics, and the English language. Worse, Plaintiffs seek to implement it at the last minute through a *jury instruction*. *See* Dkt. 548 at 49 ("Purchase and sales that occur on the same day, or within six days of the insider trades, are considered 'contemporaneous.'").

In addition to being wrong on the merits, Plaintiffs missed the boat on defining their Section 20A class. As the Court recognized in its October 14, 2025 Order, contemporaneousness is most sensibly treated as "a question about the definition of the class for the 20A claims." Dkt. 574. Plaintiffs have acknowledged this. *See* Dkt. 550 (Joint Pretrial Conference Statement) at 4

(recognizing that the question is "similar to the determination of a Class Period").  Yet, Plaintiffs did not seek to define the subclass of contemporaneous traders in either of their motions for class certification.  Instead, they included the word "contemporaneousness" in their proposed class definition, ultimately obtaining certification of a class of "all persons or entities who purchased publicly traded Vaxart common stock *contemporaneously* with the June 26 and 29, 2020, sales of Vaxart common stock by the Armistice defendants[.]"  Dkt. 431 at 4-5 (emphasis added).

Even assuming that was proper, the onus was then on Plaintiffs to set forth and then prove (or at least support with evidence) a proposed definition of contemporaneousness during expert discovery.  They did not do so.  Plaintiffs' damages expert submitted four reports, none of which attempted to define contemporaneousness.  Defendants thus lacked an opportunity to challenge the eight trading day class period until Plaintiffs advanced it in a proposed jury instruction.

Plaintiffs' late-breaking proposal illuminates serious issues regarding the viability of Plaintiffs' insider trading theory, of which contemporaneousness is an element.  Plaintiffs assert that "[a]t trial, . . . the question of how far the contemporaneous period extends past June 29 will not present an issue."  Dkt. 550 at 3.  But it will.  The definition of the Section 20A subclass will determine the number of investors whose insider trading claims will rise and fall with those of the lead Plaintiffs, and dramatically impact potential damages.  That is a key issue that the court and parties cannot side-step via an arbitrary jury instruction on the eve of trial.

## II.    ARGUMENT

### A.    Plaintiffs Failed to Address the Section 20A Class Definition of Contemporaneousness in their Class Certification Papers or During Expert Discovery.

#### 1.    *Section 20A's Contemporaneousness Requirement*

As an element of their Section 20A insider trading claim, Plaintiffs must prove that at least one Plaintiff—along with a subclass of investors—bought Vaxart stock "contemporaneously" with Armistice's sales.  15 U.S.C. § 78t–1.  This requirement "limits the private right of action to those who actually traded with someone who had an unfair advantage."  *Middlesex Ret. Sys. v. Quest Software, Inc.*, 2008 WL 7084629, at *14 (C.D. Cal. July 10, 2008).  Because in modern stock

markets it is often difficult or impossible to identify the actual counterparties to an insider's trades, the "contemporaneous" requirement serves as a proxy for privity to protect those who "might, in fact, have traded with the defendant." *Buban v. O'Brien*, 1994 WL 324093, at *3 (N.D. Cal. June 22, 1994). Thus, while contemporaneousness is not a defined term under Section 20A, the Ninth Circuit has held that a definition of contemporaneousness must filter out those "who could not possibly have traded with the insider, given the manner in which public trades are transacted." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1002 (9th Cir. 2002). District courts in the Ninth Circuit and elsewhere have likewise interpreted contemporaneousness as a proxy for privity.[1]

This means that, in order to maintain a class action on behalf of Section 20A investors, Plaintiffs were obligated to set forth a defined subclass of investors who satisfy this privity-by-proxy requirement and "could[] possibly have traded" with Armistice on June 26 and June 29. *Brody*, 280 F.3d at 1002. In other words, Plaintiffs were obligated to prove what "contemporaneous" means under the facts of their case. Instead, they waited until the parties submitted jury instructions to propose an *eight-trading day* definition of "contemporaneousness."

> 2.  *Plaintiffs Failed to Set Forth Their Eight Trading Day Definition of Contemporaneousness in Their Subclass Definition.*

At class certification, Plaintiffs could have offered a subclass definition that identified—by objective characteristics such as date of purchase or time of purchase—the contemporaneous investors whose Section 20A claims were to be adjudicated on a representative basis. Plaintiffs did not do so. Instead, they kept the legal term "contemporaneous" in the class period, creating a class in which an element of their claim ("contemporaneousness") is baked into the class definition. Dkt. 431 at 4-5. Proceeding in this fashion makes identification of class membership

---

[1] *See, e.g.*, *In re Silverlake Grp., L.L.C Sec. Litig.*, 2022 WL 4485815, at *6 (N.D. Cal. Sept. 27, 2022) ("The contemporaneous trading rule does serve as a proxy for contractual privity."); *In re Aldus Sec. Litig.*, 1993 WL 121478, at *7 (W.D. Wash. Mar. 1, 1993) ("the contemporaneous trade requirement functions as a substitute for privity"); *In re AST Research Sec. Litig.*, 887 F. Supp. 231, 232 (C.D. Cal. 1995) ("the 'contemporaneous' concept acts as a proxy for common law privity"); *Brodzinsky v. FrontPoint Partner LLC*, 2012 WL 1468507, at *5 (D. Conn. Apr. 26, 2012) (describing "the concern that Section 20A liability be limited to only the time period in which the non-insider was plausibly disadvantaged by the insider trading.").

administratively infeasible. *See Prado v. Wal-Mart Stores, Inc.*, 2018 WL 11346522, at *5-6 (C.D. Cal. Dec. 18, 2018). Because "contemporaneousness" was not defined in the class period, Defendants and the Court have no way of knowing the size or scope of the Section 20A class. *See Shupe v. Rocket Companies, Inc.*, 752 F. Supp. 3d 735, 786–87 (E.D. Mich. 2024) (denying class certification that referenced but did not define "contemporaneously" because "[w]ithout specifically defining the temporal proximity between a putative Subclass member's trade and [the defendant's] alleged insider trade," the court "cannot feasibly determine Subclass membership" and "[e]ven a one-day difference in the Subclass definition necessarily impacts the claims of a significant number of investors").

> 3. *Plaintiffs Failed to Adduce Any Evidence to Support Their Eight Trading Day Definition During Discovery.*

Admittedly, Defendants did not raise the definition of contemporaneousness at class certification either. And Defendants anticipate that Plaintiffs will point to some cases in which district courts certified Section 20A classes without specifically defining the scope of the class period at the time of certification. *See, e.g.*, *Turocy v. El Pollo Loco Holdings, Inc.*, 2018 WL 3343493, at *17 (C.D. Cal. July 3, 2018).

But importantly, those courts recognized that "how many trading days were contemporaneous with the [insider's] sale . . . is ultimately a merits question." *Id.* Those courts concluded that "the proper definition of 'contemporaneous' [is] properly reserved *for later stages of this litigation*." *In re Under Armour Sec. Litig.*, 631 F. Supp. 3d 285, 299 (D. Md. 2022) (emphasis added). Thus, courts have recognized that, in the event contemporaneousness is not defined at the time the class is certified, it must be defined subsequently through expert testimony regarding the market in which the shares were traded. *See, e.g.*, *Turocy*, 2018 WL 3343493, at *17 (recognizing that plaintiffs had adduced evidence regarding investors' purchases that it would not weigh at the class certification stage); *Kaplan v. S.A.C. Cap. Advisors, L.P*, 311 F.R.D. 373, 377 (S.D.N.Y. 2015) (noting Section 20A class definition could be "subject to further adjustment or decertification if warranted as facts develop"). Nothing in these cases suggests that a plaintiff may

forego *proving* the meaning of contemporaneousness through expert testimony adduced during the expert discovery period.[2]

Plaintiffs failed to do that during expert discovery. Plaintiffs' sole economic expert, Dr. Matthew Cain, offered no opinions regarding whether Plaintiffs traded contemporaneously with Armistice or how contemporaneousness should be defined. Below is every reference to the issue of Section 20A contemporaneousness in Dr. Cain's merits report:

- "I understand that only Class members who traded 'contemporaneously' with Defendants are eligible for recovery of damages under Section 20A." Declaration of Joshua A. Rubin in Support of Armistice Defendants' Brief Regarding Section 20A Class Definitions ("Rubin Decl."), Ex. A ¶ 26;

- "[A]s a result of the schemes, certain investors allegedly traded contemporaneously with Defendants while Defendants possessed material, non-public information, and suffered economic losses therefrom." *Id*. ¶ 43 (citing the Second Amended Complaint);

- "Section 20A assesses losses among investors who purchased securities contemporaneously with Defendants who sold securities while in possession of material, nonpublic information." *Id*. ¶ 180.

Moreover, Plaintiffs did not disclose in their expert disclosures that Dr. Cain would offer testimony supporting an eight trading day Section 20A subclass (or any length subclass for that matter) at trial. Rubin Decl., Ex. B (Plaintiffs' Expert Disclosures). In sum, Plaintiffs failed to adduce any evidence supporting any definition of contemporaneousness, to say nothing of their eight trading day definition, during discovery.

This failure looms especially large given the facts of this case, which the Court has recognized is not a "quintessential" or "normal[]" insider trading case where a defendant trades on information about which the public is completely in the dark, only to be exposed days or weeks later. Dkt. 357 (May 10, 2024 Hearing Tr.) at 22:21-23:12. Here, Plaintiffs' theory is that the issuance of the June 26, 2020 press release sparked an immediate market reaction leading to

---

[2] For that reason, the handful of cases cited by Plaintiffs in their class certification papers supporting definitions of "contemporaneous" longer than one day at the *motion to dismiss* stage are irrelevant to the current posture of this case. *See, e.g.*, *Evanston Police Pension Fund v. McKesson Corp.*, 411 F. Supp. 3d 580, 606 (N.D. Cal. 2019) (expressly noting that a longer definition of contemporaneousness was appropriate "*at this stage of the litigation*," *i.e.*, a motion to dismiss) (emphasis added); *In re Galena Biopharma, Inc. Sec. Litig.*, 117 F. Supp. 3d 1145 (D. Or. 2015).

massive trading volume and a spike in the stock price, followed by price inflation coming out of the stock *within an hour* of market open and then additional "leakage" of inflation over the next week. Thus, according to Plaintiffs' theory, a person who purchased on July 6 did so in a *drastically* different market environment than the one in which Armistice sold. To use Dr. Cain's own numbers, an individual who purchased stock from Armistice at Armistice's average June 26, 2020 sale price of $10.38 bought a stock that was inflated by $7.13 per share, while an individual who purchased end of day on July 6, 2020 paid $6.44 for a Vaxart share allegedly inflated by $1.68 per share. Rubin Decl., Ex. A ¶ 175 & Table C. To label both of these transactions as "contemporaneous" with Armistice's trades under Plaintiffs' new eight trading day subclass is to ignore the realities of the case.[3]

Crucially, the public trading data on which Plaintiffs rely in other contexts rebuts the notion that someone who purchased a week after Armistice sold "could[] possibly have traded" with Armistice on June 26 and June 29. *See Brody*, 280 F.3d at 1002. As Plaintiffs have emphasized, trading volume on June 26 and June 29 was massive, with Armistice's sales representing a relatively small percentage. *See* Rubin Decl., Ex. A ¶ 101 & Table E. Given this volume, any sales by Armistice on June 26 or June 29 would have been rapidly absorbed by investor demand, making it impossible that any investors who purchased after June 29 traded against Armistice. An eight trading day class period would thus undermine the contemporaneous trading rule's function as a proxy for privity.

In fact, the massive trading volume on the days in question makes this case a candidate for a definition of contemporaneousness *narrower* than a single day, as it is implausible that an investor who purchased even an hour after Armistice sold could possibly have traded with it. However, because Plaintiffs' never adduced expert evidence on the proper length of the Section 20A class, this issue could not be addressed by Defendants' rebuttal expert.

---

[3] Of course, both of these investors would still be eligible to recover damages under Plaintiffs' alternative Rule 10b-5 scheme claim, which has no contemporaneousness requirement.

B.    Defendants Had No Prior Opportunity to Address the Proper Length of the
      Section 20A Class Period.

The Court's October 14, 2025 order asked "why" this issue was not previously "addressed at the class certification stage." As explained above, this issue could have been addressed then, and likely should have been addressed by Plaintiffs. *See Tschudy v. J.C. Penney Corp., Inc.*, 2015 WL 8484530, at *6 (S.D. Cal. Dec. 9, 2015) (noting that "[p]laintiffs have the burden to define the 'class and the class claims'" and granting motion to decertify class); *see also* 7B Fed. Prac. & Proc. Civ. § 1798 (3d ed.) ("The burden of establishing a right to maintain an action under Rule 23 falls, of course, on the party seeking to utilize the procedure.").

To the extent the Court is asking why Defendants did not address the issue, Defendants had no notice that Plaintiffs were pursuing an eight trading day period of contemporaneousness until the parties exchanged jury instructions and promptly brought this issue to the Court's attention through the pretrial conference statement. As noted, Dr. Cain never advocated for an eight-day definition of contemporaneousness in any of his four reports. To the contrary, Dr. Cain erroneously concluded that the definition of contemporaneousness was *irrelevant* to the amount of Plaintiffs' claimed Section 20A damages, because that number was fixed by Armistice's profits on its trades—a legal proposition that Plaintiffs abandoned following Defendants' motion to exclude in part Dr. Cain's Report. Dkt. 547 at 1; Dkt. 562 at 3. Now that Plaintiffs' proposed jury instruction has illuminated this fatal flaw in the Section 20A claim, Defendants are pleased to address it.

The parties may have missed this isolated issue (in a sea of many issues) at class certification—but that should not prevent the Court from tackling it now. Indeed, the issue is unavoidable: Plaintiffs' strategic decision to delay proposing the eight trading day class period until this late stage has put the Court in a position where it must: (i) accept Plaintiffs' arbitrary, extreme, and unsupported class definition; (ii) let Plaintiffs untimely adduce evidence in support of that definition; or (iii) dismiss or decertify Plaintiffs' Section 20A claim, because they have failed as a matter of law to provide evidence of contemporaneousness (an element of that claim and key aspect of the class definition). The third option is the best course. Indeed, the Court

already gave Plaintiffs a second bite at the apple to fix the deficiencies in their first motion for class certification, and warned that it would "be the last chance." Dkt. 374 at 12. Any responsibility for yet another failure to meet the requirements of Plaintiffs' case at this stage falls squarely on Plaintiffs.

## III.    <u>CONCLUSION</u>

Defendants welcome the opportunity to discuss this issue with the Court further at the pretrial conference.


Dated:  October 15, 2025                      AKIN GUMP STRAUSS HAUER & FELD LLP


                                        By:    */s/ Neal R. Marder*
                                               Neal R. Marder
                                               Attorney for ARMISTICE CAPITAL, LLC,
                                               ARMISTICE CAPITAL MASTER FUND,
                                               LTD., STEVEN J. BOYD, and KEITH
                                               MAHER, M.D.